186. Defendants owed a duty to Plaintiff under the Eighth Amendment to design, engineer, locate, construct, maintain, and/or otherwise provide housing in a (correctional) facility free of any uncured structural defects, especially those which posed a significant threat and/or imminent risk of serious harm, injury, and/or death to his person.

187. Applicable Defendants owed a duty to Plaintiff under the 8th Amendment to provide conditions of confinement in said housing consisting of an architectural design that is engineered to be safe, humane, and inherently free from potentially fatal health hazards, to include, but not limited to, Carbon Monoxide poisoning and/or chronic exposures to such toxic and/or noxious fumes.

188. Extending from the very first instance of Carbon Monoxide exposure/poisoning at GCCF or any similarly designed and/or constructed private 'for-profit' prison, applicable Defendants knew GCCF suffered from an architectural/engineering defect that posed a significant threat and/or imminent risk of serious harm, injury, and/or death to the structure's residents.

189. Applicable Defendants knew that failure to either: (1) structurally alter or otherwise cure or correct the plant's known architectural-design/engineering defect; or (2) immediately remove State Prisoners from the defectively designed and constructed private 'for-profit' prison(s) would likely result in (future) harm(s), injury(-ies), and/or death(s) to the facility's residents, particularly if the defect went uncorrected or remained without cure.

190. Applicable Defendants were negligent to a severe degree in failing to either: (1) exercise reasonable physical efforts to structurally alter and/or cure the the defective plant's architectural design/engineering flaw(s); (2) take reasonable administrative measures so as to cause the the plant's architectural-design defect to be cured or the potential health hazard to be otherwise corrected; or, (3) immediately remove State Prisoners from the defectively designed/constructed structure so as to abate, avert, thwart, and/or prevent the risk or threat from causing any further (future) harm(s), injury(-ies), and/or death(s) of any of the structure's residents.

191. Defendants owed Plaintiff a duty of care to not confine him in a living environment likely to cause serious harm, injury, and/or death, especially when repetitive and known to be from a particular source and/or with the serious possibility of brain damage or death.

192. By failing to either: (1) exercise reasonable physical efforts to structurally alter and/or cure the plant's defective architectural design flaw; (2) take reasonable administrative measures so as to cause the plant's architectural design defect to be cured or the potential health hazard to be otherwise corrected; or (3) remove State Prisoners from the defectively designed private 'for-profit' prisons (including GCCF) so as to abate, avert, thwart, and/or prevent the known risk or threat of harm, injury, and/or death from causing any further or future damage(s), Defendants egregiously breached their individual and collective duty to house Plaintiff in a reasonably safe physical structure inherently free of potentially deadly health hazards.

193. Such conduct clearly exhibits "deliberate indifference" to the unsafe prison conditions and amounts to inhumane conditions of confinement.

194. With the exception of Corizon and Corizon Defendants, all remaining Defendants are responsible to Plaintiff on this Count either directly or under the doctrines of respondeat superior, agency, or apparent agency.

195. To a severe degree, all actions, omissions, and/or failures to act, by all applicable Defendants, were negligent, willful, wanton, and in gross and reckless disregard for Plaintiff's health, interests, safety, general well-being, and/or very life.

196. Plaintiff suffered immediate and long-term injuries as a direct result of Defendants' conduct.

197. But-for Defendants' individual and collective conduct, Plaintiff is subject to and at-risk for serious future harms associated with Carbon Monoxide poisoning(s) and health problems consistent with and/or attributed to bodily retention of the toxic and/or noxious chemical agent(s) found in the fumes of Carbon Monoxide including, but not limited to, respiratory illness, liver damage, kidney disease, birth defects, endometriosis, infertility, other reproduction and developmental problems, coronary heart disease, and many other types of cancer, especially of the lung, skin, and breast.

198. As a result of the foregoing, Plaintiff has suffered extensive preventable and unnecessary damages and injuries including but not limited to panic attacks, humiliation, (disabling) mental impairment, bouts of confusion, bouts of depression, anxiety, pain and suffering, nervousness, fear, trauma, vomiting, indigestion, paranoia, and severe psychological and emotional distress.

## COUNT V INHUMANE CONDITIONS OF CONFINEMENT: INADEQUATE MAINTENANCE OF A CORRECTIONAL FACILITY IN VIOLATION OF FEDERAL REQUIREMENTS (PURSUANT TO RIGHTS OF U.S. CONSTITUTION)

199. Plaintiff restates each of the preceeding allegations as if fully stated herein.

200. Under the Eighth Amendment, Plaintiff had and maintains a Right to humane conditions of confinement in a correctional facility properly and adequately maintained in accordance with all local, state, and federal regulations and/or requirements.

201. All Defendants knew they were entrusted with and duly responsible for the interests, health, safety, and/or general well-being of State Prisoners confined at GCCF whether directly charged with immediate custody and/or care of the Prisoners, in a position of supervisory authority, as an owner/superintendent of the physical plant, as an architectural designer/engineer of the physical plant, as a builder/constructor, of the actual structure, as an owner/superintendent of the real property GCCF is located on, and/or pursuant to a contract with the State of New Mexico or any agency thereof.

202. As a ward of the State, the State of New Mexico is duly responsible for ensuring that Plaintiff is housed in a correctional facility which is properly maintained in a manner: (1) that is inherently safe and humane; (2) that comports with but is not limited to NMCD goals, State/Federal Health Codes, State/Federal Building Codes, ACA Standards, and the ever-evolving standards of decency; (3) which does not pose any risk or threat of harm, injury, and/or death to the facility's residents; and/or (4) which is reasonably prudent in preventing and/or eliminating any structural and/or mechanical issues which would cause the facility to somehow be in a state of disrepair or 'noncompliance' with any health code(s), building code(s), State/Federal law(s) and/or requirement(s), and/or the specifications of ACA Standards — especially when the the issue or issues of 'noncompliance' created and/or exacerbated a known risk or threat of harm, injury, and/or death to State Prisoners.

203. The GEO Group, Inc., under contract with the State of New Mexico or any agency thereof, has, for a profit, accepted responsibility for the safekeeping of State Prisoners placed in it's custody and/or care, which includes confinement at a correctional facility that is safe and humane and responsibly maintained in a professional manner which: (1) is constent with all contractual obligations; (2) meets or exceeds all State/Federal health codes; (3) meets all State/Federal building codes; (4) is in full compliance with all specifications of ACA Standards; (5) comports with ever-evolving standards of decency; and/or (6) does not pose, cause, or create any risk or threat of harm, injury, and/or death to State Prisoners.

204. Corizon, LLC, under contract with the State of New Mexico or any agency thereof has — for a profit — accepted responsibility for the interests, health, safety, and/or general well-being of all State Prisoners confined by the State of New Mexico which includes, but is not limited to, excercising reasonable efforts or taking reasonable and/or proactive measures to ensure that State Prisoners are not confined in a correctional facility which is irresponsibly maintained in such a state of defectiveness and/or disrepair so as to actually pose, cause, or create a substantial risk or imminent threat of serious harm, injury, and/or death to State Prisoners.

205. Whether or not under contract with the State of New Mexico or any agency thereof, architectural designers and/or engineers are responsible for the safety of their product(s) which includes, but is not limited to, ensuring that any known architectural defects are proactively cured and are not allowed to remain unaddressed and/or uncorrected, especially when the defect is known to pose, cause, or create a substantial risk or imminent threat of serious harm, injury, and/or death to any State Prisoner residing in the defectively designed and inadequately maintained structure.

206. Whether or not under contract with the State of New Mexico or any agency thereof, actual owners and/or superintendents of the actual structure commonly known as Guadalupe County Correctional Facility ("GCCF") are responsible for ensuring that the structure is adequately maintained so as to not pose a threat or risk of harm,

injury, or death to any person.

207. Whether or not under contract with the State of New Mexico or any agency thereof, actual owners and/or superintendents of the real property GCCF is actually located on are duly responsible for ensuring that any structures located on their property are responsibly maintained, and maintained in proper working order and in manners not likely to pose, cause, create, or present any risk or threat of harm, injury, and/or death to any persons residing at the location.

208. Defendants owed a duty of care to Plaintiff under the 8th Amendment to maintain a correctional facility in proper working order in accordance to requirements of the U.S. Constitution and in strict compliance with Federal mandates including, but not limited to, applicable building codes and/or specifications of ACA Standards.

209. Defendants owed a duty of care to Plaintiff to maintain a correctional facility in proper working order and in a manner providing conditions of confinement which are safe, humane, and free of potentially deadly health hazards.

210. Defendants knew or should have known that GCCF and similarly designed and constructed correctional facilities suffered from an inherently defective architectural design and/or engineering flaw which posed, caused, or created a substantial risk and/or imminent threat of serious harm, injury, and/or death to State Prisoners - including Plaintiff - and that the underlying issue needed to be addressed.

211. Defendants knew or should have known that GCCF was not fully maintained in proper working order in strict compliance with State/Federal regulations, as required.

212. Defendants knew or should have known that GCCF was not fully maintained in proper working order in full compliance with ACA Standards.

213. Defendants knew or should have known that GCCF Maintenance personnel were, in some cases, simply not qualified to attempt and/or properly perform the 'maintenance work' necessary for the orderly running/operation of the facility.

214. Defendants knew or should have known that failure/refusal to either: (1) have professional and/or qualified personnel perform and/or complete structural maintenance on the defectively designed structure as necessary and/or otherwise required; have professional and/or qualified personnel perform and/or complete mechanical maintenance on the structure as necessary and/or otherwise required; or (3) remove or cause the removal of State Prisoners from the defectively designed and improperly maintained structure would likely result in serious harm, injury, and/or death to residents and represented a failure or base-refusal to maintain the plant in full compliance with State/Federal regulations and in strict compliance with all legal obligations.

215. By failing or refusing to either: (1) perform and/or complete structural maintenance on the defectively designed structure so as to cure the plant's health hazard; (2) perform and/or complete mechanical maintenance on the structure as necessary and/or otherwise required/mandated; or (3) remove or cause the removal of State Prisoners from the designed and improperly maintained plant, Defendants egregiously

breached their individual and collective duty to care for Plaintiff's interests, health, safety, and/or general well-being in a reasonably prudent manner.

216. Such conduct clearly demonstrates the Defendants' severe and deliberate indifference to the unsafe private 'for-profit' prison conditions and/or for the interests, health, safety, general well-being, and/or very lives of State Prisoners, and amounts to inhumane conditions of confinement.

217. Defendants are legally responsible to Plaintiff for the inhumane conditions of confinement either directly or under the doctrines of respondeat superior, agency or apparent agency (or both) for the conduct of the tortfeasors (as employees and/or agents).

218. To a severe degree, the actions of all Defendants were negligent, willful, wanton and in gross and reckless disregard for Plaintiff's interests, health, safety, and/or very life.

219. But for Defendants' individual and collective conduct, Plaintiff suffered immediate injuries as a direct result of the actions, omissions, and/or failures to act.

220. Plaintiff is at-risk for and subject to serious future harms and health problems associated with (acute) Carbon Monoxide Poisoning and/or consistent with chronic inhalation and/or exposure to the toxic and potentially deadly fumes as a direct result of Defendants' individual and collective conduct.

221. As a result of the foregoing, Plaintiff has suffered extensive preventable and unnecessary damages and injuries including but not limited to (disabling) mental impairment, physical injuries, pain and suffering, severe psychological and emotional distress, panic attacks, humiliation, anxiety, nervousness, fear, trauma, paranoia, depression, trouble sleeping, nightmares, chronic eye and nasal irritations, vomiting, neausea, headaches, mental and psychiatric problems, and is at-risk for and subject to future harms and health problems attributable to (acute) Carbon Monoxide Poisoning and/or repetitive exposure to the noxious fumes.

## COUNT III. INHUMANE CONDITIONS OF CONFINEMENT: INADEQUATE MEDICAL CARE IN VIOLATION OF FEDERAL REQUIREMENTS AND/OR U.S. CONSTITUTION

222. Plaintiff restates each of the preceeding allegations as if fully stated herein.

223. Plaintiff had a Right under the Eighth Amendment to humane conditions of confinement and adequate (Prisoner) medical care which is on par with the community level of care.

224. Defendants knew or should have known at all times that the failure to provide proper immediate and/or follow-up medical treatment to Plaintiff for acute Carbon Monoxide Poisoning and/or cumulative episodes of prolonged exposure of Plaintiff to the noxious fumes above and beyond levels known to be toxic and/or

lethal would allow: (1) the symptoms to persist longer than if proper treatment had been administered ((normal treatment to include but not limited to removal of victims from the toxic environment; (herbal-) remedies for detoxification; high-fiber diet; and/or purified water)); and (2) the poisonous gas to potentially cause more damage —both short-term and long-term— than if proper immediate and/or follow-up medical treatment had been administered, thereby extending and/or causing Plaintiff unnecessary pain and suffering, and threatening his life with future harms and/or health problems associated with acute Carbon Monoxide Poisoning and/or consistent with cumulative episodes of environmental poisoning.

225. Defendants knew or should have known that State Prisoners faced (and are still subjected to) a substantial risk of of serious harm, injury, and/or death if continued to be incarcerated at GCCF or any similarly constructed defectively designed and/or engineered private 'for-profit' prison (in New Mexico) prone to exposing residents to poisonous Carbon Monoxide gases with untreated episodes of exposure and while deprived of the proper immediate and/or follow-up medical treatment for Carbon Monoxide exposure/poisoning as mandated by modern community medical standards and contemporary standards of decency.

226. Notwithstanding their knowledge, none of the Defendants have adequately addressed the (underlying) issue or caused the issue to be effectively addressed.

227. Defendants owed Plaintiff a duty of care under the Eighth and Fourteenth Amendments to not confine him in a manner likely to cause injury and/or death, or subject him to conditions of confinement that are considered "inhumane" and/or offend the ever-evolving standards of decency.

228. Defendants acted—and are continuing to act—with severe deliberate indifference to the risks inherent in refusing to either: (1) effectively cure, resolve, or otherwise remedy or cause to be cured, the proximate cause of the repetitive episodes of Carbon Monoxide exposures and/or poisonings; (2) remove, or cause the removal of State Prisoners from the defectively designed/engineered prison(s); and/or (3) provide proper immediate and/or follow-up medical attention/treatment to Carbon Monoxide exposure victims equal to the modern community level of care and consistent with contemporary standards of decency.

229. By failing to: (1) provide the community level of care to Plaintiff during acute Carbon Monoxide Poisoning(s); (2) provide the community level of care to Plaintiff during repetitive and/or cumulative episodes of prolonged exposure to poisonous Carbon Monoxide gases; (3) provide and/or administer any remedy normal for the treatment of exposure to Carbon Monoxide fumes; (4) perform, or cause to be performed, any of the standard medical tests normally associated with Carbon Monoxide poisoning; (5) refer Plaintiff to be seen by a physician who could provide the community level of care and/or cause the tests normally associated with Carbon Monoxide Poisoning (victims) to be performed on Plaintiff; and/or (6) remove or cause the removal of

-36-

all State Prisoners - including Plaintiff - wrongfully subjected to the substantial risk and/or imminent threat of serious harm, injury, and/or death from the defectively designed/engineered plants, including but not limited to GCCF, LCCF, and/or NENMDF, Defendants have egregiously defaulted on their individual and collective duty to care for State Prisoners' interests, health, safety, general well being, and/or very life in a reasonably prudent manner not to cause injury.

230. To a severe degree, such conduct demonstrates a defective healthcare policy, displays the Defendants' individual and collective deliberate indifference to the unsafe private 'for-profit' prison conditions, and amounts to inhumane conditions of confinement by way of a defective healthcare policy and inadequate medical care in violation of the 8th and/or 14th Amendments.

231. Defendants are responsible to Plaintiff either directly or under the doctrines of respondeat superior, agency, or apparent agency, for the conduct of their employees and/or agents.

232. To a severe degree, the actions of all Defendants under color of law were negligent, willful, wanton, and in gross and reckless disregard for Plaintiff's well-being.

233. Plaintiff suffered immediate injuries as a direct result of Defendants' conduct.

234. Plaintiff is at-risk for and subject to serious future harms and health problems related to acute Carbon Monoxide Poisoning(s) and/or associated with repeated and/or prolonged exposures to the toxic fumes.

235. As a result of the foregoing, Plaintiff has suffered extensive preventable and unnecessary damages and injuries including, but not limited to, headaches, vomiting, nausea, dizziness, cough, nose and eye irritations, diarrhea, indigestion, confusion, blurred vision, memory loss, aching in muscles, aching in joints, difficulty concentrating, fatigue, panic attacks, humiliation, mental and psychiatric problems, depression, loss of quality and enjoyment of life, nervousness, mental anguish, emotional distress, paranoia, fear, trouble sleeping, trauma, and an unknowable extent of (future physical damages and/or mental/psychological injuries as Plaintiff is now subject to serious potential life-threatening health problems consistent with acute Carbon Monoxide Poisoning(s), repetitive and/or cumulative exposures to the toxic/lethal fumes, and/or chronic inhalation of the poisonous gases, with problems such as liver damage, kidney disease, respiratory illness, coronary heart disease, and a variety of cancers.

## COUNT VII. UNLAWFUL INFLICTION OF PUNISHMENT WHICH IS CRUEL AND/OR UNUSUAL IN NATURE

236. Plaintiff restates each of the preceeding allegations as if fully stated herein.

237. Under the First, Fifth, Eighth, and/or Fourteenth Amendments, Plaintiff had - and maintains a Federal Constitutional Right to: (1) confinement under conditions which

-37-

are not "inhumane" or offend ever-evolving standards of decency; (2) confinement under conditions which do not represent and/or inflict any type of punishment(s) deemed brutal, cruel, and/or unusual in nature; (3) due process in the course of prison "grievance" proceedings and carried out in accordance with established rules and principles (NMCD-Policy 150500); (4) petition the Government for a redress of grievances; and/or (5) equal protection of the laws.

238. Whether directly, supervisorally, or contractually, All Defendants know they are (or were) responsible for ensuring that State and Federal (Constitutional) Rights are afforded to all State Prisoners at all times.

239. Defendants owed a duty of care to not confine Plaintiff under terms which violated his Constitutional Rights and/or under conditions likely to cause injury or in manners which offend ever-evolving standards of decency.

240. As a result of previous and recurring instances and/or repetitive episodes of Carbon Monoxide Poisoning and/or Exposure at GCCF and similarly constructed private 'for-profit' prisons (such as LCCF and NENMDF), all Defendants knew or should have known that GCCF, like similarly constructed private prisons, suffered from a defective architectural design and/or engineering flaw which served to pose, cause, create, or contribute to a substantial risk of harm, injury, and/or death to State Prisoners by and through exposure of the toxic fumes to lethal levels.

241. As a result of the numerous prior incidents, all Defendants knew or should have known that GCCF security staff had not been correctly trained — or trained at all — regarding proper procedure(s) in response to serious and/or life-threatening environmental (health) hazards such as exposure to toxic and/or noxious fumes.

242. As a result of the previous repetitive incidents, all Defendants knew or should have known that medical personnel had not been properly trained — or trained at all — regarding proper medical treatments and/or remedies for victims of Carbon Monoxide exposure and/or (acute) poisoning.

243. As a result of the previous repetitive incidents, all Defendants knew or should have known that failure to protect and/or remove State Prisoners from the defectively designed/engineered structure would likely result in harm, injury, and/or death to the structure's prisoners — including Plaintiff Amaro.

244. All Defendants know or should know that State Prisoners — including Plaintiff Amaro — still face a substantial risk of serious harm, injury, and/or death if continued to be confined at GCCF, LCCF, and/or NENMDF, with the underlying cause of the recurring instances and/or repetitive episodes of Carbon Monoxide exposure/poisoning remaining uncured.

245. Notwithstanding individual and/or collective knowledge, none of the Defendants have exercised reasonable efforts or taken reasonable measures to adequately address the life-threatening issue so as to avert, thwart, and/or prevent further instances and/or

episodes of Carbon Monoxide exposure/poisoning **before** the inevitable 'tragic event' takes place.

246. By deliberately failing and/or intentionally refusing to either: (1) exercise reasonable efforts or take reasonable measures to protect State Prisoners (including Plaintiff) from foreseeable, preventable an unnecessary risk of serious harm, injury, and/or death; (2) protect Plaintiff from general conditions of confinement posing a substantial threat or risk and/or likely to cause harm, injury, and/or death; (3) remove State Prisoners, including Plaintiff, from conditions of confinement posing a substantial risk and likely to cause serious harm, injury, and/or death; (4) meaningfully address and/or rectify the conditions creating or giving rise to the substantial risk of serious harm, injury, and/or death; (5) provide State Prisoners (including Plaintiff) with the standard of medical, psychiatric, and/or psychological care normally afforded to victims of Carbon Monoxide Poisoning and/or chronic inhalation of the lethal fumes; (6) provide any meaningful and/or viable avenue of administrative redress, remedy, and/or relief against any of the instances and/or episodes of Carbon Monoxide exposure and/or poisoning; and/or (7) provide any viable or meaningful avenue of administrative redress, remedy, or relief against general conditions of confinement causing or giving rise to the substantial risk of imminent and/or serious harm, injury, and or death of State Prisoners, Defendants breached, and remain in breach of, their Constitutional duty and legal obligation to house State Prisoners - including Plaintiff Amaro - in a reasonably prudent manner under terms of confinement which did not, and do not, violate State and/or Federal Constitutional Rights and/or under conditions likely to cause injury

247. By their individual and collective conduct, Defendants demonstrated - and continue to demonstrate - a severe and reckless degree of deliberate indifference to: (1) the structure's defective design and/or engineering; (2) the serious environmental (health) hazard the structural defect poses, causes, and/or creates; (3) the constant state of peril State Prisoners are subjected to due to the defective design and/or engineering; (4) the degree of medical care - or lack thereof - owed and/or afforded to Prisoners victimized by Carbon Monoxide exposure and/poisoning; (5) the meaning and/or purpose of State and/or Federal Constitutional Rights; (6) actual contractual obligations; (7) any duty of care owed to State Prisoners, including Plaintiff Amaro; and/or (8) the interests, health, safety, general well-being, and/or very lives of State Prisoners - including Plaintiff Amaro.

248. Such conduct involves more than an ordinary lack of due care for Prisoners' interests or safety and clearly (and somewhat maliciously) violates Plaintiff's Federal Constitutional Rights as enumerated in the First, Fifth, Eighth, and Fourteenth Amendments and amounts to conditions of confinement which intentionally inflicts punishment which is totally without penological justification, which is devastating to the human spirit, that is inherently cruel and/or unusual, and which places Plaintiff at a serious risk of harm, injury, and/or death not formally a part of his sentence.

249. Defendants are responsible to Plaintiff either directly and/or under the doctrines of respondeat superior, agency, or apparent agency.
250. To a severe degree, the actions of all Defendants (especially the 'for-profit' Defendants) were negligent, willful, wanton, and in gross and reckless disregard for Plaintiff's interests, health, safety, general well-being, and/or very life.
251. As a direct result of Defendants' individual and collective conduct, Plaintiff Amaro suffered immediate injuries and is now subject to future harms and health problems consistent with Acute Carbon Monoxide Poisoning(s) and/or repetitive, cumulative, and/or chronic exposures to the toxic fumes to levels known to be lethal to humans.
252. As a result of the foregoing, Plaintiff Amaro has suffered extensive foreseeable, preventable, and unnecessary damages and injuries including but not limited to, a near-fatality, difficulty breathing, temporary respiratory arrest, 'grand-mal' type seizure, pain and suffering, confusion, racing heart/palpitations, dizziness, blurred vision, dehydration (thirst), hunger, neausea, vomiting, diarrhea, embarrassment, humiliation, belching, congestion, phlegm, cough/hacking, respiratory discharge, indigestion, nose irritations, eye irritations, disabling mental impairment, irreversible brain damage, severe mental anguish and emotional distress, difficulty concentrating, memory loss, mental fatigue, physical fatigue, speech impairment, trauma, inconvenience, loss of quality and enjoyment of life, nervousness, fear, paranoia, trouble sleeping, nightmares, depression, anxiety, panic attacks, impedence of legal study/work, alienation of familial affection(s) continued wrongful imprisonment, and an unknowable extent of (future) physical damages and/or mental/psychological injuries consistent with Acute Carbon Monoxide Poisoning(s), repetitive and/or cumulative prolonged exposures to the toxic fumes, and/or chronic inhalation of the lethal gases.
253. As a result of the foregoing, Plaintiff Amaro is mentally and emotionally disturbed and contiues to suffer a loss of quality and enjoyment of life due to ongoing harms and/or permanent injuries which include, but are are not limited to, inconvenience and sense of loss built on extensive foreseeable, preventable, and unnecessary damages and injuries such as irreversible brain damage, disabling mental impairment, memory loss, humiliation, speech impairment, embarrassment, respiratory discharge, cough/hacking, headaches, difficulty concentrating, mental fatigue, anxiety, bouts of depression, nervousness, fear, paranoia, nose irritations, eye irritations, panic attacks, trouble sleeping, nightmares, trauma, aching in joints, aching in muscles, impeded legal study/work, alienation of familial affection(s), continued wrongful conviction and imprisonment, and an unknowable extent of damages/injuries consistent with Acute Carbon Monoxide Poisoning(s), repetitive and/or cumulative prolonged exposures to the toxic gases, and/or chronic inhalation of the lethal fumes, not to mention the agonizing over his possible death at any time.

254. As a result of the foregoing, Plaintiff Amaro remains mentally and emotionally disturbed and will continue to torturously endure a knowing loss of quality and enjoyment of life for the rest of his life due to the permanent injuries suffered as a result of foreseeable, preventable, and unnecessary (recurring) events of Acute Carbon Monoxide Poisoning(s), repetitive and/or cumulative prolonged exposures to the toxic gases, and/or chronic inhalation of the lethal fumes such as, but not limited to, irreversible brain damage, memory loss, (disabling) mental impairment, humiliation, speech impairment, embarrassment, respiratory discharge, cough/hacking, headaches, aching in muscles, aching in joints, trouble sleeping, nightmares, anxiety, fear, panic attacks, paranoia, trauma, nose irritations, eye irritations, bouts of depression, and other mental, emotional, psychiatric, and/or psychosomatic problems (some associated with PTSD) as well as impeded legal study/work, alienation of familial affection(s), continued wrongful conviction and imprisonment, and an unknowable extent of (future) damages/injuries consistent with Acute Carbon Monoxide Poisoning(s), repetitive and/or cumulative prolonged exposures to the lethal gases, and/or chronic inhalation of the toxic fumes.

255. As a result of the foregoing, Plaintiff Amaro is at-risk for potentially fatal health hazards and is subject to worry and severe anxiety at approaching injury(-ies) due to the unknowable extent of damages/injuries incurred during the foreseeable, preventable, and unnecessary events of Acute Carbon Monoxide Poisoning(s), repetitive and/or cumulative prolonged exposures to the lethal fumes, and/or chronic inhalation of the toxic gases, and also the unknowable extent of damages and/or injuries yet to be incurred as a result of the body's retention of the lethal chemical agents as Carbon Monoxide Poisoning has been linked to such serious potential life-threatening health problems as respiratory illness, coronary heart disease, kidney disease, liver damage, pain/swelling, inflammation and deformities of the joints, and many other types of cancer, especially of the lung and skin, and, moreso, because the damages and injuries were totally without (penological) justification and are devastating to the human spirit whilst the Defendants are totally without any legitimate arguable defense for the damages and/or injuries.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all counts.

## PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

Plaintiff had previously filed a "Notice of Claim" with the Risk Manage-

Division but has not begun any other lawsuits in either State or Federal court dealing with the same facts involved in this action or otherwise relating to the conditions of (my) imprisonment.

As indicated in the "Facts Common To All Counts" Plaintiff sought administrative relief by enjoining the NMCD "Grievance" Policy/Procedure twice, regarding this issue.

GCCF and NMCD acknowledge the events of Carbon Monoxide Exposure and/or Poisoning but either denied relief or defaulted on the "Grievance" process in whole by failing to answer or complete the procedure(s) stipulated by NMCD Policy 150500, leaving Plaintiff with formal litigation as the only viable means of redress and external oversight of conditions to push the prison administration in the right direction — towards rational and humane conditions.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests judgment as follows:

1. Injunctive Relief against the actual condition(s) of the plants' inherently flawed architectural design and faulty construction at all private 'for-profit' prison facilities operating in New Mexico, namely the Guadalupe County Correctional Facility at Santa Rosa, the Lea County Correctional Facility at Hobbs, and the North Eastern New Mexico Detention Facility at Clayton, so as to reasonably prevent any further damages and/or injuries upon State Prisoners who are now still facing serious injury or death from exposure to Carbon Monoxide.
2. Agency Commitment to staff training and discipline in regards to environmental hazards such as Carbon Monoxide Exposure/Poisoning.
3. Declaratory Relief by way of "Court-Order" to GCCF, LCCF, and NENMDF mandating structural alterations of the prisons' structural flaws or any other reasonable remedy seeking to correct the prisons' unsafe and inherently dangerous conditions so as to prevent and/or abate any further instances of exposure of State Prisoners to Carbon Monoxide, or the immediate shutdown of the plant(s).
4. Reform of Conditions and attitudes endemic to the current correctional culture of 'anti-prisoner incarceration.'
5. For the sheer gravity of the situation, in the best interest of all State Prisoners confined to defectively designed/constructed private 'for-profit' prison facilities in New Mexico, Plaintiff seeks legal termination and/or dissolution of all State contracts with all private 'for-profit' prison companies operating in New Mexico who have been made aware of the structures' defect(s) and, as of the filing of this document, have not, of their own volition, reasonably

acted to avert, thwart, and/or prevent any possible future harms with structural alteration(s), on the grounds of "breach of contract" for the failure to protect State Prisoners from foreseeable, preventable, and unnecessary harm(s).

6. Compensatory Damages for the actual observed harms and/or injuries suffered as a result of the near-death episode of Carbon Monoxide Poisoning, the events of Acute Carbon Monoxide Poisoning, and the cumulative episodes of (additional) instances of exposure to deadly Carbon Monoxide fumes.

7. Compensatory Damages for the mental anguish/distress, psychological trauma, and/or emotional damages, harms, and/or injuries suffered as a result of the near-death experience (of Acute Carbon Monoxide Poisoning) and the cumulative episodes of exposure to the lethal fumes of Carbon Monoxide.

8. Compensatory Damages for the unnecessary stress and strain of the near-death experience and cumulative episodes of Carbon Monoxide Poisoning and/or Exposure have wrought upon Plaintiff Amaro's personal relationships with (close) relatives due to his mental anguish and psychologically disturbed state of mind and possible PTSD.

9. Compensatory Damages for the harms of the psychosomatic symptoms suffered as a result of the near-death and repetitive episodes of Carbon Monoxide Poisoning/Exposure.

10. Compensatory Damages for the permanent injuries/damages incurred as a result of Acute Carbon Monoxide Poisoning(s) and the additional cumulative episodes of prolonged exposure to the toxic gases.

11. Damages for appropriate medical care going forward as Carbon Monoxide may cause or be a factor in the development of serious and/or potentially fatal diseases and/or conditions in the future, as a result of the near-fatal and cumulative episodes of exposure to Carbon Monoxide, including, but not limited to, respiratory illness, coronary heart disease, kidney disease, liver damage, and various cancers.

12. Punitive Damages for the unnecessary and wanton infliction of preventable harms and injuries – not a part of Plaintiff's formal sentence and without (penological) justification – that has clearly resulted in gratuitous suffering, severe emotional harm, agony over possible death, and recognizable psychological trauma including irreversible brain damage due to prolonged deprivation of oxygen: in an amount substantial enough to deter Defendants from similar conduct in the future.

13. Punitive Damages for the wrongful deprivation of Rights enumerated by and/or associated with either New Mexico's own (State) Constitution and Bill of Rights, or the U.S. Constitution and Bill of Rights, or both.

14. Hedonic Damages for the recovery of lost pleasures.

15. Hedonic Damages for the recovery of lost pleasures of which Plaintiff was unaware.

16. Court costs and reasonable attorneys fees, and/or related costs/fees.

and,

17. Any Other Damages or Reliefs the Court deems applicable and/or appropriate, considering the degree of the situation and the gravity of the consequences State Prisoners might suffer as a result of officials' continuing disregard for the intolerable risk of harm, injury, and/or death presented to State Prisoners.

Plaintiff further asks the Court for a substantial amount in damages of such magnitude so as to:

1. effectively deter personnel from The GEO Group, Inc., as well as all other private "for-profit" prison companies operating in New Mexico from continuing to violate federal and/or state Constitutional Rights of State Prisoners;
2. effectively deter State officials from continuing to violate Federal and State Constitutional Rights of State Prisoners;
3. effectively penalize Defendants' individual and collective failures to protect State Prisoners from foreseeable and preventable harms and/or injuries;
4. penalize the GEO Group, Inc.'s insubordination to both federal and State rules regarding the housing of State Prisoners;

and,

5. cause the State to fully and faithfully enforce any and all contractual obligations upon any and all parties to any contract, period, regardless of the political influence(s) and/or tie(s) of any party involved.

Submitted By:

Pedro J. "Pete" Amaro
State Prisoner #44726
GCCF:
P.O. Box 520
Santa Rosa, N. Mex. 88435

DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the Plaintiff in the above action, that he has read the above complaint and that the information contained therein is true and correct to the best of his knowledge. 28 U.S.C. Sec. 1746. 18 U.S.C. Sec. 1621.

Executed at GCCF, Santa Rosa, N. Mex. on August 17, 2016.

Pedro Amaro

USPS TRACKING NUMBER
9505 5104 0031 6245 0028 64

Hasler
08/31/2016
US POSTAGE $011.90

ZIP 88435
011D11649951

FROM:
Pedro Amaro
NMCD# 44726 Unit 112
P.O. Box N20
Santa Rosa, NM 88435

RECEIVED
At Albuquerque NM
SEP 02 2016
MATTHEW J. DYKMAN
CLERK

RECEIVED
At Albuquerque NM
SEP 02 2016
MATTHEW J. DYKMAN
CLERK

LEGAL MAIL

Ship To:
UNITED STATES
DISTRICT COURT
DISTRICT OF NEW MEXICO
ATT: MR. MATTHEW J. DYKMAN, CLERK OF THE COURT
333 Lomas Blvd. NW
Ste. 270
Albuquerque, N. Mex. 87102-9843