PEDRO J. AMARO
STATE PRISONER #44726
GUADALUPE COUNTY CORR. FAC.
P.O. BOX 520
SANTA ROSA, N. MEX. 88435

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

SEP 26 2018

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

PEDRO J. AMARO, Plaintiff,

vs.

SUSANA MARTINEZ, Governor for the
State of New Mexico; NEW MEXICO
GOVERNOR'S OFFICE; BILL RICHARDSON;
HECTOR H. BALDERAS, Attorney General for
the State of New Mexico; NEW MEXICO
ATTORNEY GENERAL's OFFICE; GARY R.
KING; NEW MEXICO DEPARTMENT OF
CORRECTIONS and JOHN(s)/JANE(s) DOE 1;
DAVID JABLONSKI, Secretary of Corrections;
GREGG MARCANTEL; JOE R. WILLIAMS
JAMES R. BREWSTER, NMCD Legal
Counsel; JERRY ROARK, NMCD Deputy
Secretary; TIM LeMASTER, Deputy Director of
Operations; LARRY PHILLIPS, NMCD
Grievance and Disciplinary

) Case No. 1: 16-cv-00993-KG-JHR
) PLAINTIFF's
)  AMENDED
) CIVIL RIGHTS COMPLAINT
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Appeals Manager; STEVE MADRID,            )
NMCD Chief Grievance Officer; ANGELA)
M. MARTINEZ, NMCD Health Services )
Administrator; DAVID SELVAGE, P.A.,)
NMCD Health Services Bureau Chief;      )
YOLANDA RIVERA, NMCD Contract )
Monitor at GCCF; GLORIA CHAVEZ;)
NEW MEXICO DEPARTMENT OF           )
HEALTH and JOHN(s)/JANE(s)          )
DOE 2; NEW MEXICO HUMAN )
SERVICES DEPARTMENT and           )
JOHN(s)/JANE(s) DOE 3;                   )
JOHN(s)/JANE(s) DOE 4 (Unknown   )
Legal Counsels and/or Counsellors serving )
The STATE OF NEW MEXICO or any of its)
 Agents,;; THE GEO GROUP, INC., a    )
foreign corporation registered to do business )
in New Mexico; GEORGE R.              )
WACKENHUT, Founder; RICHARD R.)
WACKENHUT, Founder; GEORGE C.   )
ZOLEY, Founder/CEO; Board Members: )
CLARENCE E. ANTHONY; RICHARD )
H. GLANTON; CHRISTOPHER C.       )
WHEELER; JULIE MYERS. WOOD; )
ANNE N. FOREMAN; NORMAN A. )
CARLSON; JOHN J. BULFIN,         )
General Counsel/Senior Vice President;       )
Senior Vice Presidents: JOHN HURLEY; )
BRIAN R. EVANS; THOMAS M.       )
WIERDSMA; J. DAVID DONAHUE;)

ANN M. SCHLARS, DAVID J. VENTURELLA;)
JOE R. WILLIAMS, Director of Operations for U.S.)
Corrections; Executive Vice Presidents: MATTHEW)
J. DenADEL; PATRICIA M. PERSANTE;      )
JENNIFER L. HOUSTON; AMBER D. MARTIN;  )
CHRISTOPHER D. RYAN; ERNESTO ALVAREZ;)
ADAM M. HASNER; DERRICK D. SCHOFIELD; )
Regional Vice Presidents: REED E. SMITH; JAMES )
H. BLACK; BLAKE R. DAVIS; Divisional Vice  )
Presidents: BLAKE R. BARRAS; DAVID D. MEEHAN;)
JONATHAN P. SWATSBURG; DAVID S. BURCH; )
JOCK A. WALDO; GEO Employees at GCCF:  )
AMY CAMPOS, A.C.A Compliance Administrator;)
Wardens: VINCENT HORTON; J. GAY;      )
GLORIA CHAVEZ; DOMINICA GARNAND;      )
GERALD MORRIS; ERASMO BRAVO; JOHNNY)
JOHNSON; R. ULIBARRI; TIMOTHY HATCH;  )
T. FOSTER; and "BEAIRD"; Chiefs of Security: )
Maj. PHIL ARAGON; G. MORRIS; "RESNICK")
J. JOHNSON; Maintenance Supervisors: "Mr." )
TENORIO; "Mr." CHAVEZ; S. CHAVEZ; and,)
"Mr." CASTILLO; Fire, Safety, and Sanitation    )
Officers: "Mr." EVERHART; "Mr." BRANCH;)
"Ms." GARCIA; "Mr." SWAGGART; and "Mr." )
GERHARDT; Grievance Lieutenants: KRYSTLE )
RIVERA; JESSICA RODGERS a.k.a. JESSICA )
VIGIL; and, GLORIA CHAVEZ; Mental Health  )
Director KRISTEN ROMERO (formerly as   )
ESQUIBEL); Training Officer, BEN RAEL;  )
Accountability Officer, KARLA RAEL;        )

CORIZON, LLC, a foreign corporation regis- )
tered to do business in New Mexico through/under)
CORIZON HEALTH and JOHN(s)/JANE(s) )
DOES 5; LISA STABER, M.D.; CORIZON )
Employees at GCCF: Health Services Administrator,)
KATHERINE ARMIJO; TIMOTHY TRAPP, )
M.D.; Certified Nurse Practitioner or Physician )
Assistant, KATHERIN ALLEN; )
"CENTURION," a foreign corporation regis- )
tered to do business in New Mexico through or )
under CENTURION CORRECTIONAL )
HEALTHCARE OF NEW MEXICO and )
JOHN(s)/JANE(s) DOES 6; "Mr." )
RIVERS, Vice President of Operations; )
DR. MURRAY YOUNG; CENTURION )
Employees at GCCF: Health Services Adminis- )
trator, KATHERINE ARMIJO; Certified )
Nurse Practitioner or Physician Assistant, )
KATHERINE ALLEN; and, "GCCF" and )
JOHN(s)/JANE(s) DOES 7, the Unknown **OWNER(s)** )
or **SUPERINTENDENT(s)** of GCCF and its property, )
and/or The COUNTY OF GUADALUPE, )
          Defendants.

## PRISONER'S AMENDED CIVIL RIGHTS COMPLAINT

Pro Se Prisoner Plaintiff, PEDRO J. AMARO, submits this AMENDED CIVIL RIGHTS COMPLAINT under the Federal Civil Rights Act and respective Constitutions of the United States and the State of New Mexico, bringing such Complaint for the violation and/or deprivation of his Civil Rights, under 42 U.S.C. §1983, where injury has resulted, against:

STATE Defendants: Susana Martinez; New Mexico Governor's Office; Bill Richardson; Hector H. Balderas; New Mexico Attorney General's Office; Gary K. King; David Jablonski; New Mexico Corrections Department; Gregg Marcantel; Joe Williams; James R. Brewster; Jerry Roark; Tim Le Master; Larry Phillips; Steve Madrid; Angela M. Martinez; David Selvage; Yolanda Rivera; Gloria Chavez; Ben Rael; Karla Rael; and John(s)/Jane(s) Does;

for: inhumane conditions of confinement; failure to protect from inherently dangerous conditions of confinement; reckless subjection to hazardous conditions of confinement; failure to provide warning of prison's unique dangers (propensity of living quarters to become flooded with toxic fumes); wrongful endangerment; wrongful subjection to foreseeable, preventable and unnecessary harm; inadequate medical care; defective healthcare policy; failure to ensure, provide, or administer proper medical care/training; assault/battery; unconstitutional infliction of punishment which is cruel and/or unusual; denial of due process; failure to provide adequate avenue of administrative redress/relief; negligent supervision of contractors (GEO, CORIZON, and CENTURION); negligent hiring; credentialing; training, supervision, and retention; grossly negligent operation of a correctional facility; grossly negligent operation of a medical facility; negligence and negligence per se; administrative inadequacy and grossly negligent management; malfeasance, misfeasance, and/or nonfeasance of office; abuse of authority; deprivation of Civil Rights under the 5th/14 Amendments; deprivation of Civil Rights under the 8th/14th Amendments; and, wrongful infliction of punishment which is cruel and/or unusual; for: injunctive relief; and recovery of damages;

against: THE GEO GROUP, INC.; GEO's Controlling Board and/or Oversight Personnel; GCCF Staff; and GEO Defendants,

for: inhumane conditions of confinement; failure to protect from inherently dangerous conditions of confinement; inadequate maintenance of a correctional facility; reckless subjection to hazardous conditions of confinement; failure to provide warning of prison's unique dangers (related to exposure to toxic fumes); wrongful endangerment; wrongful subjection to foreseeable, preventable, and unnecessary harm; inadequate medical care; defective healthcare policy; failure to ensure, provide, or administer proper or adequate medical care and/or training; assault/battery; unconstitutional infliction of punishment which is cruel/unusual; denial of due process; failure to provide adequate avenue of administrative redress/relief; grossly negligent hiring, credentialing, training, supervision, and retention; failure to protect from future foreseeable and preventable harm; failure to protect from future harm associated with toxic poisoning; grossly negligent operation of a correctional facility; grossly negligent operation of a medical facility; negligence and negligence per se; breach of contract; administrative inadequacy and grossly negligent management; abuse of authority under color of law; deprivation of Civil Rights under the 5th/14th Amendments; deprivation of Civil Rights under the 8th/14th Amendments; and, wrongful infliction of punishment which is cruel and/or unusual; for: injunctive relief; recovery of damages; and, dissolution of contract(s);

against: CORIZON, LLC; CORIZON's Controlling Board and/or Oversight Personnel; CORIZON HEALTH; CORIZON Medical Staff; and CORIZON Defendants,

for: failure to protect from inherently dangerous conditions of confinement; failure to provide adequate warning of prison's unique dangers; wrongful endangerment; medical malpractice; inadequate medical care; defective healthcare policy; failure to ensure, provide, or administer proper or adequate medical care/training; assault/battery; unconstitutional infliction of punishment which is cruel and/or unusual; grossly negligent hiring, credentialing, training, supervision, and retention; failure to protect from future foreseeable and preventable harm; wrongful subjection to future harm associated with toxic poisoning; grossly negligent operation of a medical facility; negligence and negligence per se;

breach of contract; administrative inadequacy and grossly negligent management; abuse of (medical) authority; deprivation of Civil Rights under 5th/14th Amendments; deprivation of Civil Rights under the 8th/14th Amendments; and, wrongful infliction of punishment which is cruel and/or unusual; for: recovery of damages;

against: "CENTURION"; CENTURION's Controlling Board and/or Oversight Personnel; CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC; CENTURION Medical Staff; and, CENTURION Defendants, for: failure to protect from inherently dangerous conditions of confinement; failure to provide adequate warning of the prison's 'unique' danger; wrongful endangerment; inadequate medical care; defective healthcare policy; failure to ensure, provide, or administer proper or adequate medical care/training; assault/battery; unconstitutional infliction of punishment which is cruel and/or unusual; grossly negligent hiring, credentialing, training, supervision, and retention; failing to protect from future harm posed by continuing conditions of confinement; failure to protect from future potentially fatal health problems associated with exposure to carbon monoxide and/or Carbon Monoxide Poisoning; wrongful subjection to preventable and unnecessary harm; grossly negligent operation of a medical facility; negligence and negligence per se; breach of contract; administrative inadequacy and grossly negligent management; abuse of (medical) authority; deprivation of Civil Rights under the 5th/14th Amendments; deprivation of Civil Rights under the 8th/14th Amendments; and, wrongful infliction of punishment which is cruel and/or unusual; for: injunctive relief; recovery of damages; and dissolution of contract(s);

and against: JOHN(s)/JANE(s) DOE 7; the Unknown OWNER(s) and/or any SUPERINTENDENT(s) of GCCF's structure and/or property, and GCCF, for: inhumane conditions of confinement; inadequate maintenance of a correctional facility; reckless subjection to hazardous conditions of confinement; failure to provide adequate warning of the prison's 'unique' danger; assault/battery; unconstitutional infliction of harm; grossly negligent operation of a medical facility; negligence and negligence per se; deprivation of Civil Rights under the 5th/14th Amendments; deprivation of Civil Rights under the 8th/14th Amendments; wrongful infliction of punishment which is cruel and/or unusual; for injunctive relief; and, recovery of damages.

and/or the COUNTY OF GUADALUPE, for: defective construction, inhumane conditions of confinement, assault/battery, wrongful endangerment, and harm.

## PARTIES

1) Plaintiff, PEDRO J. AMARO, is an individual who is a Prisoner of the State of New Mexico, confined at the Guadalupe County Correctional Facility ("GCCF") at Santa Rosa, in Guadalupe County, New Mexico.

## STATE DEFENDANTS

2) At all times material to this Complaint, Defendant State Officials and Personnel acted under color of law to confine State Prisoners at GCCF - including the person of Pedro J. Amaro - while having concurrent knowledge or awareness of the private 'for-profit' prison's running-history of Carbon Monoxide Poisoning events through either 'chain-of-command' reporting of issues in emergency response situations, through NMCD's "Grievance" process, with numerous complaints having been submitted by inmates confined at GCCF, or by and through Plaintiff Amaro's Notice of Claim and/or the original complaint filed in this action - true copies of which were mailed directly to the New Mexico Attorney General's Office, yet have decided not to either reasonably respond to GCCF's unsafe conditions of confinement or meaningfully process and/or address prior Grievances to the State (NMCD) by inmates at GCCF - including Plaintiff Amaro's.

3) Upon information and belief, the agent for service of process for all State entities, Officials, and/or Personnel is through the Attorney General's Office, whose address is known to Plaintiff as P.O. Drawer 1508, Santa Fe, New Mexico  87504-1508.

4) Defendant SUSANA MARTINEZ, in your "individual" and/or "personal" "capacity," and also in your "official" capacity as "Governor" for the State of New Mexico, being directly responsible, under color of law, for the interests, health, safety, and general well-being of the State's Prisoners, with an affirmative duty under the 5th, 8th, and 14th Amendments to provide State Prisoners - including Mr. Amaro - with humane conditions of confinement which includes but is not limited to: safe housing environments; prohibition against infliction of punishment without due process of law; adequate medical and/or psychological care (commensurate with the normal standard or community level of care); and, meaningful means of redress against grievances.

5) MARTINEZ, as "Governor of New Mexico," was also obligated under the 8th/14th Amendments, to protect State Prisoners from unnecessary and/or preventable harm; the risk of harm where the threat is known and from a specific or particular source; and, from the infliction of punishment which is cruel and/or unusual or which would offend society's standards of decency.

6) As "Governor of New Mexico" - a position of great authority - MARTINEZ, who knew and/or should have (successively) known about the problematic Carbon Monoxide Poisoning events at GCCF to a degree sufficient to establish a legally culpable state of mind became personally aware of or involved with the life-threatening issue during at least one major or serious Carbon Monoxide Poisoning event in 2012 or with the original filing of the Notice of Claim in December 2014) or through NMCD's year-long plus, 'in-depth' investigation into Defendant CORIZON's health care of State inmates, concluding in 2016, or upon Plaintiff's submission of a true copy of the original complaint in this action to the Attorney General's Office, yet has abjectly decided not to intervene with the hazardous conditions under which The GEO Group (under contract with the State of New Mexico) continues to confine State Prisoners at GCCF.

7) Demonstrating a gross and severe degree of "deliberate indifference", MARTINEZ has not only resolutely refused to avoid this litigation (whether affirmatively or passively), but has contemptuously allowed The GEO Group to continue operating in violation of its contractual obligations while also making a substantial profit by proceeding to house State Prisoners at GCCF

irrespective of the risk of serious harm, injury, or death (to State Prisoners - including Plaintiff) posed by the private prison's structural defect(s) where the risk of harm, injury, or death is specific, known, knowable, foreseeable, and preventable.

8) Upon information and belief, it was brought to the attention of Defendant MARTINEZ, by State entities, State Official(s), and State employees that Defendant CORIZON, LLC was operating in violation of its contractual obligations by providing substandard healthcare to State inmates and otherwise violating the Civil Rights of New Mexico's Prisoners, yet MARTINEZ did not intervene with the contractor's inadequate medical care of inmates but continued allowing Defendant CORIZON to, essentially, bilk New Mexico of tax-payer funds until the respective contract expired, which further demonstrates the 'deliberate indifference' of Defendant MARTINEZ, in regards to the interests, health, safety, or ultimate well-being of New Mexico prisoners.

9) But-for MARTINEZ's misfeasance, malfeasance, and/or nonfeasance of office, and acts, omissions, and/or failure(s) to act, in regards to the ongoing conditions of confinement (GCCF's known history of Carbon Monoxide Poisoning events stemming from recurring mechanical malfunctions of the prison's boiler(s)/flue(s)), the person of Pedro J. Amaro would not have been unnecessarily subjected to the threat of toxic poisoning, actual Carbon Monoxide Poisoning, or the damages inflicted thereby as the injuries incurred by Mr. Amaro on February 6, 2014, were obviously foreseeable and easily preventable, and the continuing threat of exposure to carbon monoxide and corresponding harm, injury, and/or death (to the State's Prisoners - including Plaintiff Amaro) would have long-been corrected, cured, or otherwise abated, and would not still be present at GCCF or directly affecting the quality of Mr. Amaro's life.

10) But-for MARTINEZ's misfeasance, malfeasance, and/or nonfeasance of office, and acts, omissions, and/or failure(s) to act, in regards to the substandard and/or improper medical care and Civil Rights violations of Defendant CORIZON, the person of Pedro J. Amaro would not have been exposed to improper medical care and inadequate/unsafe treatment for Carbon Monoxide Poisoning, taking place at GCCF on February 6, 2014, and would not now be at-risk for future potentially fatal health problems associated with exposure(s) to carbon monoxide - at a higher level of risk than he would have been had he been provided with adequate medical treatment/care and proper remedies.

11) Thus, Defendant MARTINEZ, who at all times pertinent to this Complaint was acting within the course and scope of her office and under color of law, personally caused or contributed to GEO's contractual noncompliance and continuing hazardous conditions of confinement, and allowed Defendant CORIZON to continue - in breach of it's contractual obligations - providing improper medical treatment with substandard healthcare services to New Mexico inmates, and is thereby fully liable to Plaintiff Amaro for injuries immediately sustained as well as for future potentially fatal health problems and damages stemming from exposure(s) to carbon monoxide and Carbon Monoxide Poisoning under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of damages with direct, joint, concurrent, successive, and/or vicarious liability.

12) Defendant MARTINEZ is further responsible to Plaintiff with "Supervisory Personal Liability" for her negligent hiring or employing or appointing of agents or other(s) to manage affairs and/or entities under her purview, and under "Special Relationship Liability."

13) Pursuant to the New Mexico Tort Claims Act ("NMTCA"), the doctrine of respondeat superior is fully applicable against MARTINEZ and the Governor's Office as public entities may be held liable for the acts of its employees.

14) Sovereign immunity does not apply to liability damages caused by negligence or when injury has resulted from a deprivation of any Right secured by the statutory law of the United States or New Mexico.

15) Defendant BILL RICHARDSON, in your "individual" and/or "personal" capacity, where, in your former official capacity as "Governor" for New Mexico, you were directly responsible under color of law for the interests, health, safety, and general well-being of the State's prisoners, with an affirmative duty under the 5th, 8th, and 14th Amendments to provide State Prisoners - including the person of Pedro J. Amaro - with humane conditions of confinement which includes but is not limited to: safe housing environments; prohibition against infliction of punishment without due process of law; adequate medical and/or psychological care (commensurate with the normal standard or community level of care); and, meaningful means of redress of grievances.

16) RICHARDSON, as "Governor of New Mexico" was also obligated under the 8th/14th Amendments to protect State Prisoners unnecessary and preventable harm, the risk of harm where the threat is known and from a specific or particular source, and from the infliction of punishment which is cruel and/or unusual or which would offend society's standards of decency.

17) Upon information and belief, RICHARDSON, while in office as "Governor of New Mexico" knew or should have known about the problematic issue at GCCF to a degree sufficient to establish a legally culpable state of mind, having become personally aware of or involved with at least one serious event of Carbon Monoxide Poisoning at GCCF (in 2007), yet decided not to intervene with the hazardous conditions under which The GEO Group (under contract with the State of New Mexico) continued to confine State Prisoners at GCCF.

18) Demonstrating a gross and severe level of "deliberate indifference," RICHARDSON resolutely refused to avoid this litigation (whether affirmatively or passively) by having contemptuously allowed The GEO Group to continue it's profit-making while violating it's contract by proceeding to house State Prisoners at GCCF irrespective of the risk of serious harm, injury, or death (to State's Prisoners) posed by the private prison's structural defect(s) (pending further mechanical malfunctions of the prison's boiler(s)/flue(s)).

19) But-for RICHARDSON's misfeasance, malfeasance, and/or nonfeasance of office and acts, omissions, and/or failure(s) to act, in regards to the ongoing hazardous conditions of confinement at GCCF and the private prison's unchanged structural defect(s), which have since resulted in a known history of repeating events of exposure to carbon monoxide, the person of Pedro J. Amaro would not have been unnecessarily subjected to the threat of toxic poisoning, actual Carbon Monoxide Poisoning, or the damages caused thereby on February 6, 2014, were obviously

foreseeable and clearly preventable, and the continuing threat of exposure to carbon monoxide and corresponding harm, injury, and/or death would have long-been corrected, cured, or otherwise abated, and would not still be present at GCCF or directly affecting the quality of Mr. Amaro's life.

20) Thus, Defendant RICHARDSON, who at all times pertinent to this Complaint was acting within the course and scope of his office and under color of law, personally caused or contributed to GEO's contractual noncompliance and continuing hazardous conditions of confinement and is thereby fully liable to Plaintiff Amaro for injuries immediately sustained as well as for future potentially fatal health problems and damages stemming from exposure to carbon monoxide and Carbon Monoxide Poisoning under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of damages with direct, joint, concurrent, and/or vicarious liability.

21) Defendant RICHARDSON is further responsible to Plaintiff Amaro with "Supervisory Personal Liability," and under "Special Relationship Liability."

22) Pursuant to NMTCA, the doctrine of respondeat superior is also fully applicable against the Governor's Office and Defendant RICHARDSON as public entities may be held liable for acts of its employees.

23) Defendant HECTOR H. BALDERAS, in your "individual" and/or "personal" capacity, and also in your "official" capacity as "New Mexico Attorney General," being duly responsible under color of law for enforcement of State Officials'/Personnels' compliance with both State and Federal laws and/or legal requirements, as well as providing "legal counsel" and/or "legal defense" for the State's agents, apparent agents, and/or employees including but not limited to officers, administrators, directors, monitors, and/or other employees, and also for the (legal) enforcement of the State's contracts with respective companies, businesses, and/or contractors.

24) BALDERAS, as "Attorney General," knew or should have (successively) known about the problematic Carbon Monoxide Poisoning events at GCCF and the State's corresponding liability to a degree sufficient to establish a legally culpable state of mind and has become personally aware of or involved with the life-threatening issue, yet abjectly decided not to, either, intervene with the hazardous conditions under which The GEO Group (under contract with the State of New Mexico) continues to confine State Prisoners at GCCF or to take reasonable administrative measures so as to ensure that the State's Prisoners are safely and humanely confined in manners consistent with the 5th, 8th, and 14th Amendments' requirements, pursuant to his obligations as "Attorney General," to New Mexico prisoners.

25) Demonstrating a gross and severe level of "deliberate indifference," BALDERAS has resolutely refuse to avoid litigation in this matter (whether affirmatively or passively) by contemptuously allowing The GEO Group to continue violating its contract while also making substantial profits by proceeding to house State Prisoners at GCCF irrespective of the serious risk of imminent harm, injury, or death (to the State's Prisoners) posed by the private prison's structural defect(s) (pending further mechanical malfunctions of the prison's boiler(s)/flue(s)).

26) Upon information and belief, it was brought to the attention of Defendant BALDERAS, by State entities, State Official(s), and State employees that Defendant CORIZON, LLC was operating in violation of its contractual obligations by subjecting State inmates to substandard healthcare services or otherwise violating the Civil Rights of New Mexico Prisoners yet BALDERAS did not intervene with the contractor's inadequate medical care of inmates but continued allowing Defendant CORIZON to essentially bilk New Mexico of tax-payer funds until the respective contract expired, which further demonstrates the "deliberate indifference" of Defendant BALDERAS to the interests, health, safety, or ultimate well-being of New Mexico prisoners.

27) But-for BALDERAS's misfeasance, malfeasance, and/or nonfeasance of office, and acts, omissions, and/or failure(s) to act, in regards to the continuing conditions of confinement at GCCF and the private prison's unchanged structural defect(s), the ongoing threat of Carbon Monoxide Poisoning and corresponding harm, injury, or death (to the State's Prisoners) would have long-been cured, corrected, or abated, and would not still be recklessly present at GCCF or directly affecting the quality of Mr. Amaro's life.

28) But-for BALDERAS's misfeasance, malfeasance, and/or nonfeasance of office, and acts, omissions, and/or failure(s) to act, in regards to the substandard healthcare services and violation of Civil Rights by CORIZON, the person of Pedro J. Amaro would not have been exposed to improper medical care and inadequate follow-up treatment for Carbon Monoxide Poisoning, and would not now be at-risk for future potentially fatal health problems associated with the exposure(s) to carbon monoxide – and at a higher level of risk than he would have been had he been provided with adequate medical care/treatment and proper remedies.

29) Thus, Defendant BALDERAS, who at all times pertinent to this Complaint was acting within the course and scope of his office and under color of law, personally caused or contributed to GEO's contractual noncompliance and GCCF's continuing hazardous conditions of confinement and allowed Defendant CORIZON to continue – in breach of its contractual obligations – providing improper medical treatment with substandard healthcare services to New Mexico inmates, and is thereby fully liable to Plaintiff Amaro for injuries immediately sustained as well as for future potentially fatal health problems and damages stemming from exposure(s) to carbon monoxide and Carbon Monoxide Poisoning under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of damages with direct, joint, concurrent, successive, and/or vicarious liability.

30) BALDERAS is further responsible to Plaintiff Amaro with "Supervisory Personal Liability" for his negligent hiring or employing of a "Deputy" or deputies, agents, or other(s) to manage affairs and/or entities under his purview, and under "Special Relationship Liability."

31) Pursuant to NMTCA, the doctrine of respondeat superior is also fully applicable against the New Mexico Attorney General's Office and Defendant BALDERAS as public entities may be held liable for acts of its employees.

31) Defendant GARY R. KING in your "individual" and/or "personal" capacity where, in your former official capacity as "New Mexico Attorney General" you were directly responsible

-11-

under color of law, for enforcement of State Officials'/Personnels' compliance with both State and Federal laws and/or requirements, as well as for providing "legal counsel" and/or "legal defense" for State agents and/or apparent agents including, but not limited to: officers, administrators, directors, monitors, Secretaries, and/or other employees, and for the (legal) enforcement of the State's contracts with respective companies, businesses, and/or contractors.

32) KING, as "Attorney General," knew or should have (successively) known about the problematic Carbon Monoxide Poisoning events at GCCF and the State's corresponding liability to a degree sufficient to establish a legally culpable state of mind, having become personally aware of or involved with the life-threatening issue through 'chain-of-command' reporting in the State's response to emergency situations at GCCF involving exposure(s) to carbon monoxide, yet abjectly decided not to either intervene with the hazardous conditions under which The GEO Group (under contract with the State of New Mexico) continued to confine State Prisoners - including Pedro J. Amaro - at GCCF or to take reasonable administrative measures so as to ensure that the State's Prisoners were safely and humanely confined in manners consistent with the 5th, 8th, and 14th Amendments' requirements, pursuant to his obligations as "Attorney General," and to New Mexico Prisoners.

33) Demonstrating a gross and severe degree of "deliberate indifference," KING resolutely refused to avoid litigation in this matter (whether affirmatively or passively) by having contemptuously allowed The GEO Group to continue violating its contract while also making substantial profits by proceeding to house State Prisoners at GCCF irrespective of the serious risk of imminent harm, injury, or death (to inmates) posed by the private prison's structural defect(s) - injuries which are clearly knowable, foreseeable, and preventable.

34) But-for KING's misfeasance, malfeasance, and/or nonfeasance of office, and acts, omissions, and/or failure(s) to act, in regards to the continuing unsafe conditions of confinement at GCCF and the private prison's structural defect(s), the person of Pedro J. Amaro would not have been unnecessarily subjected to the ongoing threat of Carbon Monoxide Poisoning, actual Carbon Monoxide Poisoning, or the damages caused thereby where the injuries sustained by Mr. Amaro were clearly knowable, foreseeable, and preventable, and the ongoing threat of Carbon Monoxide Poisoning and corresponding harm, injury, or death (to inmates) would have long-been cured or otherwise corrected or abated, and would not still be present at GCCF or directly affecting the quality of Plaintiff Amaro's life.

35) Thus, Defendant KING, who at all times pertinent to this Complaint was acting within the course and scope of his office and under color of law, personally caused or contributed to The GEO Group's contractual noncompliance and GCCF's continuing hazardous conditions of confinement and is thereby fully liable to Plaintiff Amaro for injuries immediately sustained as well as for future potentially fatal health problems and damages stemming from exposure to carbon monoxide and Carbon Monoxide Poisoning under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of damages with direct, joint, concurrent, successive, and/or vicarious liability.

36) KING is further responsible to Plaintiff Amaro with "Supervisory Personal Liberty" for his negligent hiring or employing of a "Deputy" or deputies, agents, or other(s) to manage affairs and/or entities under his purview and under "Special Relationship Liability."

under color of law, for enforcement of State Officials'/Personnels' compliance with both State and Federal laws and/or requirements, as well as for providing "legal counsel" to and/or "legal defense" for State agents and/or apparent agents including, but not limited to: officers, administrators, directors, monitors, and/or other employees, and for the (legal) enforcement of the State's contracts with respective companies, businesses, and/or contractors.

32) KING, as "Attorney General," knew or should have (successively) known about the problematic Carbon Monoxide Poisoning events at GCCF and the State's corresponding liability to a degree sufficient to establish a legally culpable state of mind, having become personally aware of or involved with the life-threatening issue through 'chain-of-command' reporting in the State's response to emergency situations involving exposure(s) to carbon monoxide at GCCF, yet abjectly decided not to either intervene with the hazardous conditions under which The GEO Group (under contract with the State of New Mexico) continued to confine State Prisoners - including Pedro J. Amaro - at GCCF or to take reasonable administrative measures so as to ensure that the State's Prisoners were safely and humanely confined in manners consistent with the 5th, 8th, and 14th Amendments' requirements, pursuant to his obligations as "Attorney General," to New Mexico prisoners.

33) Demonstrating a gross and severe degree of "deliberate indifference", KING resolutely refused to avoid litigation in this matter (whether affirmatively or passively) by having contemptuously allowed The GEO Group to continue violating its contract while also making substantial profits by proceeding to house State Prisoners at GCCF irrespective of the serious risk of imminent harm, injury, and/or death (to inmates) posed by the private prison's structural defect(s) — injuries which are clearly knowable, foreseeable, and preventable, and the ongoing threat of Carbon Monoxide Poisoning and corresponding harm, injury, or death would have long-been cured, or otherwise corrected or abated, and would not still be recklessly present at GCCF or directly affecting the quality of Plaintiff Amaro's life.

34) Thus, Defendant KING, who at all times pertinent to this Complaint was acting within the course and scope of his office and under color of law, personally caused or contributed to The GEO Group's contractual noncompliance and GCCF's continuing hazardous conditions of confinement and is thereby fully liable to Plaintiff Amaro for injuries immediately sustained as well as for future potentially fatal health problems and damages stemming from exposure to carbon monoxide and Carbon Monoxide Poisoning under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of damages with direct, joint, concurrent, successive, and/or vicarious liability.

35) KING is further responsible to Plaintiff Amaro with "Supervisory Personal Liability" for his negligent hiring or employing of a "Deputy" or deputies, agents, or other(s) to manage affairs and/or entities under his purview, and under "Special Relationship Liability."

36) Pursuant to NMTCA, the doctrine of respondeat superior is also fully applicable against the New Mexico Attorney General's Office" and Defendant KING as public entities may be held liable for acts of its employees.

37) Pursuant to NMTCA, the doctrine of *respondeat superior*, is also fully applicable against the New Mexico Attorney General's Office and Defendant KING as public entities may be held liable for acts of its employees.

38) Defendant NEW MEXICO ATTORNEY GENERAL's OFFICE ("A.G.'s Office") is a public entity whose obligations under color of law include the duty to watch over the State's confinement of individuals and ensure that the State cares for the interests, safety, health and general well-being of its prisoners in accordance with State and Federal standards and/or requirements.

39) The New Mexico A.G.'s Office, pursuant to NMTCA, is liable for acts, omissions, and/or failure(s) to act by its personnel.

40) Defendant NEW MEXICO CORRECTIONS DEPARTMENT ("NMCD") and JOHN(s)/JANE(s) DOE 1 (being NMCD's various Unknown/Unidentified agents, apparent agents, and other employees or personnel in any "individual" and/or "personal" capacity and any "official" capacity where (as applicable) in positions of authority over either the State's Prisoners-including Mr. Amaro - or The GEO Group and GCCF (to include, but not limited to its "Cabinet Secretary(s)," deputy secretary(s), deputies, officers, administrators, monitors, directors, inspectors, and/or investigators), being directly responsible under color of law, pursuant to the 5th, 8th, and 14th Amendments, for the interests, health, safety, and/or general well-being of the State's Prisoners and for providing the State's Prisoners - including Plaintiff Amaro - with humane conditions of confinement, which includes but is not limited to: safe housing environments; adequate medical and/or psychological care (commensurate with normal standards or level of community care); and, meaningful means of redress of grievances.

41) NMCD (together with its 'superintendent' and/or 'superintending personnel') was/is also obligated under the 8th/14th Amendment to protect State Prisoners from unnecessary and/or preventable harm and from the infliction of punishment which is deemed cruel and/or unusual or which would offend society's standards of decency.

42) The NMCD and its "official(s)" and/or personnel who knew or should have known about the problematic Carbon Monoxide Poisoning events at GCCF to a degree sufficient to establish a legally culpable state of mind, became (personally) aware of and/or involved with the life-threatening issue as far back as 2007 - if not sooner - yet has abjectly decided not to intervene with the hazardous conditions under which The GEO Group (under contract with the State of New Mexico) continues to confine State Prisoners housed at GCCF.

43) Defendants NMCD and JOHN(s)/JANE(s) DOES 1 became aware that Defendant CORIZON, LLC was operating in violation of its contractual obligations by providing substandard healthcare to New Mexico inmates and otherwise violating the Civil Rights of the State's prisoners and launched an 'in-depth' investigation into CORIZON.

44) NMCD's investigation into CORIZON took in excess of 12 months to complete and "revealed deep problems with inmate care provided by the company, and of the state's lax over-

sight of the company."

45) Upon information and belief, "despite the red flags raised by [numerous] lawsuits, the Corrections Department allowed [CORIZON] to operate almost unregulated."

46) Upon information and belief, "[o]f about 160 medical audits that should have been done between 2012 and 2015, [NMCD] could only produce records of 20."

47) Defendant NMCD's 'in-depth' investigation into CORIZON and the quality of health-care - or lack thereof - provided to New Mexico prisoners resulted in a several-hundred page long report compiled by NMCD's "Office of Professional Services" that was, ultimately, alleged to have been "information collected or prepared in anticipation of litigation."

48) NMCD did not heed clear warnings about Defendant CORIZON's improper or inadequate medical care of New Mexico prisoners but allowed Defendant CORIZON to essentially bilk New Mexico of tax-payer funds until the respective contract expired (in May 2016), which demonstrates the individual and collective deliberate indifference of NMCD and its personnel, in regards to the interests, health, safety, or general well-being of New Mexico Prisoners - including that of Pedro J. Amaro.

49) But-for the misfeasance, malfeasance, and/or non feasance (of office) and acts, omissions, and/or failure(s) to act of NMCD and/or its 'superintendent' and/or 'superintending' personnel with either actual or constructive knowledge of the life threatening events at GCCF or similarly construc-ted private prisons after having become (personally) aware of or involved with the problematic conditions through 'chain-of-command' notification and/or alerts involving the State's response to carbon monoxide-related emergency situations at GCCF, through complaints from State Prisoners (or their families) during or in regards to any event of Carbon Monoxide Poisoning at GCCF, or through NMCD's 'in-depth' investigation into CORIZON and it's care of inmates, the person of Pedro J. Amaro would not have been unnecessarily subjected to the threat of exposure to carbon monoxide, actual Carbon Monoxide Poisoning, or the damages sustained thereby, where the injuries incurred by Mr. Amaro were clearly foreseeable and preventable, and the continuing threat of Carbon Monoxide Poisoning and corresponding harm/injury, or death (to inmates) would have long-been corrected, cured or otherwise abated, and would not still be present at GCCF or directly affecting the quality of Plaintiff Amaro's life.

50) But-for the misfeasance, malfeasance, and/or non feasance (of office) and acts, omissions, and/or failure(s) to act of NMCD and/or it's 'superintendent' and/or 'superintending' personnel with either actual or constructive knowledge of Defendant CORIZON's substandard and/or improper/inade-quate care and Civil Rights violations of New Mexico inmates, the person of Pedro J. Amaro would not have been exposed to improper medical care and inadequate/unsafe treatment for Carbon Mon-oxide Poisoning, taking place at GCCF on February 6, 2014, and would not now be at-risk for future potentially fatal health problems and damages associated with exposure(s) to carbon monox-ide - at a higher level of risk than he would have been had he been provided with adequate medical treatment/care and proper remedies.

51) Thus, Defendant NMCD and JOHN(s)/JANE(s) DOES #1, who at all times pertinent to this Complaint were acting within the course and scope of office/position and under color of law,

personally caused or contributed to The GEO Group's contractual non-compliance and continuing hazardous conditions of confinement at GCCF, and allowed Defendant CORIZON to continue - also in breach of it's contractual obligations - providing improper medical treatment with sub-standard healthcare services to New Mexico inmates, and is/are thereby fully liable to Plaintiff Amaro for injuries immediately sustained as well as for future potentially fatal health problems and damages stemming from exposure(s) to carbon monoxide and Carbon Monoxide Poisoning under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of harm and/or damages with direct, joint, concurrent, successive, and/or vicarious liability.

52) NMC(s) and JOHN(s)/JANE(s) DOES 1 are further responsible to Plaintiff Amaro with "Supervisory Personal Liability" for negligent hiring or employing it agents or others(s) to manage affairs and/or entities under NMC(s) purview, and under "Special Relationship Liability".

53) Pursuant to NMTCA, the doctrine of respondeat superior is also fully applicable against JOHN(s)/JANE(s) DOES #1 and the NEW MEXICO CORRECTIONS DEPARTMENT as public entities may be held liable for acts of its employees.

54) Defendant DAVID JABLONSKI, in your "individual" and/or "personal" capacity, and also in your "official" capacity as New Mexico's "Cabinet Secretary" of the Corrections Department, being directly responsible under color of law for the interests, health, safety, and general well-being of the State's Prisoners, with an affirmative duty under the 5th, 8th, and 14th Amendments to provide State Prisoners - including Plaintiff Amaro - with humane conditions of confinement which includes but is not limited to: safe housing environments; adequate medical and/or psychological care (commensurate with normal standards or level of community care); and, meaningful means of redress of grievances.

55) JABLONSKI, as "Secretary of Corrections" is also obligated, under the 8th/14th Amendments, to protect State Prisoners from unnecessary and/or preventable harm, especially where the risk of harm is known and from a particular source, and from the infliction of punishment which is cruel and/or unusual or which would offend society's standards of decency.

56) As "Secretary of Corrections" - a position of of great authority - JABLONSKI, who knew or should have (successively) known about the problematic Carbon Monoxide Poisoning events at GCCF (or the similarly constructed private prisons) to a degree sufficient to establish a legally culpable state of mind, became personally aware of or involved with the life-threatening issue during the State's response to carbon monoxide - related "emergency" situations at GCCF or through notifications from the A.G.'s Office regarding Plaintiff's "Notice of Claim" and/or the original complaint filed by Plaintiff Amaro in this matter - true copies of which were mailed directly to the Attorney General, or through JABLONSKI's review of the NMCD report on CORIZON, yet decided not to intervene with the hazardous conditions under which The GEO Group (under contract with the State of New Mexico) continues to confine State in-mates housed at GCCF.

57) Demonstrating a gross and severe degree of "deliberate indifference", JABLONSKI has not only resolutely refused to avoid litigation in this matter (whether affirmatively or passively), but has contemptuously allowed the GEO Group to continuing violating its contract while also making a substantial profit by proceeding to house State Prisoners at GCCF irrespective of the risk of serious

harm, injury, or death (to prisoners) posed by the private prison's structural defect(s) where the risk of serious harm, injury, or death is specific, known, knowable, foreseeable, and preventable.

58) But-for JABLONSKI's misfeasance, malfeasance, and/or nonfeasance of office and acts, omissions, and/or failure(s) to act, in regards to the ongoing hazardous conditions of confinement and GCCF's known history of Carbon Monoxide Poisoning events resulting from recurring mechanical malfunctions of the prison's boiler(s)/flue(s), the continuing threat of Carbon Monoxide Poisoning and corresponding harm, injury, or death (to prisoners) would have long-been corrected, cured, or otherwise abated, and would not still be present at GCCF or directly affecting the quality of Mr. Amaro's life.

59) Thus, Defendant JABLONSKI, who at all times pertinent to this Complaint was acting within the course and scope of office and under color of law, personally caused or contributed to The GEO Group's contractual noncompliance and GCCF's continuing hazardous conditions of confinement and is thereby fully liable to Plaintiff Amaro for injuries sustained, the looming threat of harm, and for future potentially fatal health problems and damages stemming from exposure to carbon monoxide and Carbon Monoxide Poisoning under 42 U.S.C. for the deprivation of his Civil Rights and wrongful infliction of harm and/or damages with direct, joint, concurrent, successive, and/or vicarious liability.

60) JABLONSKI is further responsible to Plaintiff with "Supervisory Personal Liability" for grossly negligent hiring or employing of agents or other(s) to manage affairs and/or entities under his purview, and under "Special Relationship Liability."

61) Pursuant to NMTCA, the doctrine of respondeat superior is also fully applicable against NMCD and JABLONSKI as public entities may be held liable for acts of its employees.

62) Defendant GREGG MARCANTEL, in your individual "and/or "personal" capacity, where, in your former capacity as New Mexico's "Cabinet Secretary of Corrections," you were directly responsible under color of law for the interests, health, safety, and general well-being of the State's Prisoners, with an affirmative duty under the 5th, 8th, and 14th Amendments to provide State Prisoners - including Plaintiff Amaro ~ with humane conditions of confinement which included, but was not limited to: safe housing environments; adequate medical and/or psychological care (commensurate with normal standards or community level of care; and meaningful means of redress of grievances.

63) MARCANTEL, as "Secretary of Corrections," was also obligated, under the 8th/14th Amendments, to protect State Prisoners from unnecessary and/or preventable harm, especially where the risk of harm was his known and from a particular source, and from the infliction of punishment which is cruel and/or unusual or which would offend society's standards of decency.

64) As "Secretary of Corrections" ~ a position of great authority - MARCANTEL, who knew or should have (successively) known about the problematic Carbon Monoxide Poisoning events at GCCF (or the similarly constructed private prisons) to a degree sufficient to establish a legally culpable state of mind, became personally aware of or involved with the life-threatening issue during the State's response to carbon monoxide-related "emergency" situations at GCCF or with the original filing of the Notice of Claim or through complaints from State Prisoners (or their families) or through NMCD's year-long plus, 'in-depth' investigation into Defendant CORIZON's health care of State inmates, or upon Plaintiff's submission of a true copy of the original Complaint in this action to the A.G.'s Office, yet abjectly decided not to

-16-

intervene with the hazardous conditions under which The GEO Group (under contract with the State of New Mexico) continues to confine State Prisoners at GCCF.

65) Demonstrating a gross and severe degree of "deliberate indifference," MARCANTEL has not only resolutely refused to avoid litigation in this matter (whether affirmatively or passively), but has contemptuously allowed The GEO Group to continue violating its contract while also making substantial profits by proceeding to house State Prisoners at GCCF irrespective of the risk of serious harm, injury, or death (to the State's Prisoners) posed by the private prison's structural defect(s), where the risk of serious harm, injury, or death is specific, known, knowable, foreseeable, and preventable.

66) Upon information and belief, it was brought to the attention of Defendant MARCANTEL, by State Official(s), State entities, and State employees that Defendant CORIZON, LLC was operating in violation of its contractual obligations by providing substandard healthcare to State inmates and otherwise violating the Civil Rights of New Mexico Prisoners, yet MARCANTEL did not intervene with the contractor's inadequate medical care of inmates but continued allowing Defendant CORIZON, LLC to, essentially, bilk New Mexico of tax-payer funds until the respective contract expired (in May 2016), which further demonstrates the "deliberate indifference" of Defendant MARCANTEL, in regards to the interests, health, safety, or ultimate well-being of New Mexico Prisoners.

67) But-for MARCANTEL's misfeasance, malfeasance, and/or nonfeasance of office, and acts, omissions, and/or failure(s) to act, in regards to the ongoing conditions of confinement (GCCF's known history of Carbon Monoxide Poisoning events stemming from recurring mechanical malfunctions of the prison's boiler(s)/flue(s)), the person of Pedro J. Amaro would not have been unnecessarily subjected to the threat of toxic poisoning, actual Carbon Monoxide Poisoning, or the damages inflicted thereby as the injuries incurred by Mr. Amaro on February 6, 2014, were easily preventable, and the continuing threat of exposure to carbon monoxide and corresponding harm, injury, and/or death (to the State's Prisoners - including Mr. Amaro) would have long-been corrected, cured, or otherwise abated, and would not still be present at GCCF or directly affecting the quality of Mr. Amaro's life.

68) But-for MARCANTEL's misfeasance, malfeasance, and/or nonfeasance of office, and acts, omissions, and/or failure(s) to act, in regards to the substandard and/or improper medical care and Civil Rights violations of CORIZON - where NMCD conducted an 'in-depth' investigation into CORIZON revealing deep problems with the health care provided by CORIZON and the State's lax oversight of the offending company - the person of Pedro J. Amaro would not have been exposed to improper medical care and inadequate/unsafe treatment for Carbon Monoxide Poisoning, taking place at GCCF on February 6, 2014, and would not now be at-risk for future potentially fatal health problems associated with exposure(s) to carbon monoxide - at a higher level of risk than he would have been had he been provided with adequate medical treatment/care and proper remedies.

69) Thus, Defendant MARCANTEL, who at all times pertinent to this Complaint was acting within the course and scope of office and under color of law, personally caused or contributed to The GEO Group's contractual noncompliance and continuing hazardous conditions of confinement at GCCF, and allowed Defendant CORIZON to continue - also in breach of its contractual obligations - providing improper medical care/treatment with substandard healthcare services to New Mexico

inmates, and is thereby fully liable to Plaintiff Amaro for injuries immediately suffered and/or sustained as well as for future potentially fatal health problems and damages stemming from expo-sure(s) to carbon monoxide and Carbon Monoxide Poisoning under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of harm and/or damages with direct, joint, concurrent, successive, and/or vicarious liability.

70) MARCANTEL is further responsible to Plaintiff Amaro with "Supervisory Personal Liability" for grossly negligent hiring or employing of agents or other(s) to manage affairs and/or entities under his purview, and under "Special Relationship Liability."

71) Pursuant to NMTCA, the doctrine of respondeat superior is also fully applicable against NMCD and MARCANTEL as public entities may be held liable for acts of its employees.

72) Defendant JOE WILLIAMS, in your "individual" and/or "personal" capacity, where, in your former capacity as New Mexico's "Cabinet Secretary of Corrections," you were directly responsible under color of law for the interests, health, safety, and general well-being of the State's Prisoners, with an affirmative duty under the 5th, 8th, and 14th Amendments to provide State Prisoners - including Mr. Amaro - with humane conditions of confinement which included, but was not limited to: safe housing environments; adequate medical and/or psychological care; and meaningful means of redress of grievances.

73) WILLIAMS as "Secretary of Corrections," was also obligated, under the $5^{th}/14^{th}$ Amendments, to protect State Prisoners from unnecessary infliction of punishment which is cruel and/or unusual or which would offend society's standards of decency.

74) As "Secretary of Corrections" - a position of great authority - WILLIAMS, who knew or should have known about the problematic Carbon Monoxide Poisoning events at GCCF (or the similarly constructed private prisons) to a degree sufficient to establish a legally culpable state of mind, became personally aware of or involved with the the life-threatening issue during the State's response to at least one carbon monoxide-related "emergency" situation at GCCF, yet decided not to intervene with the hazardous conditions under which The GEO Group continues to confine State Prisoners at GCCF.

75) Demonstrating a gross and severe degree of "deliberate indifference," WILLIAMS not only resolutely refused to avoid litigation in this matter (whether affirmatively or passively), but contemp-tuously allowed The GEO Group to continue violating its contract while also making substantial profits by proceeding to house State Prisoners at GCCF irrespective of the risk of harm, injury, or death (to inmates) posed by the private prison's structural defect(s), where the risk of harm is speci-fic, known, knowable, foreseeable and preventable.

76) But-for WILLIAMS's misfeasance, malfeasance, and/or nonfeasance of office, and acts, omissions, and/or failure(s) to act, in regards to the unsafe conditions of confinement at GCCF, the person of Pedro J. Amaro would not have been unnecessarily subjected to the threat of toxic poisoning, actual Carbon Monoxide Poisoning, or the damages inflicted thereby as the injuries incurred by Mr. Amaro on February 6, 2014, were easily preventable, and the continuing threat of exposure to carbon mon-oxide and corresponding harm, injury, or death (to the State's Prisoners - including Mr. Amaro) would have long-been cured or otherwise abated, and would not still be present at GCCF or directly affecting the quality

of Mr. Amaro's life.

77) Thus, Defendant WILLIAMS, who at all times pertinent to this Complaint was acting within the course and scope of office and under color of law, personally caused or contributed to The GEO Group's contractual noncompliance and GCCF's continuing hazardous conditions of confinement, and is thereby fully liable to Plaintiff Amaro for injuries immediately sustained as well as for future potentially fatal health problems and damages stemming from exposure(s) to carbon monoxide and actual Carbon Monoxide Poisoning under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of damages with direct, joint, concurrent, successive, and/or vicarious liability.

78) WILLIAMS is further responsible to Plaintiff Amaro with "Supervisory Personal Liability" for grossly negligent hiring or employing of agents or other(s) to manage affairs and/or entities under his purview, and under "Special Relationship Liability."

79) Pursuant to NMTCA, the doctrine of respondeat superior is also fully applicable against NMCD and WILLIAMS as public entities may be held liable for acts of its employees.

80) Defendant JAMES R. BREWSTER, in your "individual" and/or "personal" capacity, and also in your "official" capacity as NMCD's "General Counsel," being directly responsible under color of law for providing "legal counsel" to NMCD and its personnel regarding the (legal) interests of NMCD as well as the interests, health, safety, and general well-being of the State's prisoners, with an affirmative duty to ensure NMCD complies with State and Federal Rules and Regulations regarding the confinement of the State's prisoners by NMCD, and – by extension – to enforce and/or protect the Civil Rights of inmates from violation by NMCD and/or any of its agents, apparent agents, or other person(s) acting on behalf of NMCD, under color of law, including, but not limited to: Rights of Due Process; Right to be free from inhumane and/or unsafe conditions of confinement; Right to adequate medical care; Right against unreasonable/unnecessary infliction of harm; Right against unreasonable/ unnecessary suffering; and the Right against punishments deemed cruel and/or unusual, or which would shock the conscience of the public at-large.

81) BREWSTER, as NMCD's "General Counsel," ultimately possesses management 'authority' over NMCD regarding the health and/or welfare of the State's prisoners, Prisoner's Rights – or the deprivation thereof – and, the conditions under which said prisoners are confined, including the prisoners confined under contract with The GEO Group, at GCCF.

82) Upon information and belief, BREWSTER became aware or knew of GCCF's problematic history of Carbon Monoxide Poisoning events to a degree sufficient to establish a legally culpable state of mind through 'chain-of-command' alerts related to the State's response in "emergency" situations at GCCF or with Plaintiff's submission of the "Notice of Claim" or through (legal) 'evaluation' or review of complaints to NMCD from prisoners (or their families) or through NMCD's year-long plus, 'in-depth' investigation into Defendant CORIZON or upon Plaintiff's submission of a true copy of the original complaint in this action to the A.G.'s Office.

83) Demonstrating a gross and severe degree of "deliberate indifference" for the lives of the State's prisoners and/or the life-threatening conditions of confinement at GCCF, BREWSTER

Rights from violation by NMCD and/or any of its agents, apparent agents, and/or other person(s) acting on behalf of NMCD, under color of law, including, but not limited to Rights of Due Process, Right to be free from from inhumane and/or unsafe conditions of confinement, Right to adequate medical care, Right against unreasonable and/or unnecessary infliction of harm, Right against unreasonable/unnecessary suffering, and the Right against punishments deemed cruel and/or unusual, or which would shock the conscience of the public at-large.

81) BREWSTER, as NMCD's "General Counsel," ultimately possesses management 'authority' over NMCD regarding the health and/or welfare of the State's prisoners, Prisoner's Rights or deprivation thereof, and the conditions under which said prisoners are confined, including the prisoners confined under contract with The GEO Group at GCCF.

82) Upon information and belief, BREWSTER knew or had awareness of GCCF's problematic history of Carbon Monoxide Poisoning events to a degree sufficient to establish a legally culpable state of mind through 'chain-of-command' alerts related to "emergency" situations at GCCF or with Plaintiff's submission of the "Notice of Claim" or through evaluation of complaints to NMCD from prisoners (and/or their families) or through NMCD's year-long plus, 'in-depth' investigation into Defendant CORIZON or upon Plaintiff's submission of a true copy of the original Complaint in this action to the A.G.'s Office.

83) Despite his particular knowledge and awareness, BREWSTER abjectly decided not to intervene with the hazardous conditions under which The GEO Group continues to confine persons at GCCF.

84) Upon information and belief, it was brought to the attention of Defendant BREWSTER, by State entities, State Official(s), and State employees, that Defendant CORIZON, LLC was operating in violation of its contractual obligations by providing substandard healthcare to State inmates and otherwise violating the Civil Rights of New Mexico prisoners *yet BREWSTER did not intervene with the contractor's inadequate medical care of inmates but continued allowing Defendant CORIZON, LLC to, essentially, bilk New Mexico of millions of dollars in tax-payer funds until the respective contract expired (in May 2016), which demonstrates Defendant BREWSTER's gross and severe degree of "deliberate indifference" towards the interests, health, safety, and/or general well-being of New Mexico Prisoners.

85) Further demonstrating a gross and severe degree of "deliberate indifference" for the lives of the State's prisoners and/or the life-threatening conditions of confinement at GCCF, BREWSTER — who allowed CORIZON to operate in breach of its contractual obligations — has also negligently ignored The GEO Group's responsibilities to NMCD and/or the State's prisoners confined under contract, stipulations of the contract itself regarding adequate and/or humane conditions of confinement for the State's prisoners, and his duties under color of law — as well as his obligations as a "legal professional" and "officer of the court" — and has thereby allowed The GEO Group to also continue making substantial profits while operating in violation of its obligations.

86) But-for BREWSTER's misfeasance, malfeasance, and/or nonfeasance of duties (as either a State agent or "legal professional"), and acts, omissions, and/or failure(s) to act on behalf of New Mexico inmates, having either actual or constructive knowledge of the Carbon Monoxide Poisoning events at GCCF,

negligently ignored **The GEO Group's** responsibilities to NMCD and/or the State's prisoners confined under contract, stipulations of the contract itself regarding adequate and/or humane conditions of confinement for the State's Prisoners and his duties, under color of law, as well as his obligations as a "legal professional" and "Officer of the Court," and has thereby allowed The GEO Group to continue violating its contract while also making substantial profits.

84) But-for BREWSTER's misfeasance, malfeasance, and/or nonfeasance of duties (as either a "State agent" or "legal professional"), and acts, omissions, and/or failure(s) to act on behalf of New Mexico inmates, having either actual or constructive knowledge of the Carbon Monoxide Poisoning events at GCCF, the person of Pedro J. Amaro would not have been unnecessarily subjected to the threat of exposure to carbon monoxide, actual Carbon Monoxide Poisoning, or the damages sustained thereby, where the injuries incurred by Mr. Amaro were foreseeable, preventable, and... unnecessary, and the continuing threat of Carbon Monoxide Poisoning and corresponding harm, injury, or death (to inmates) would have long-been corrected, cured, or otherwise abated, and would not still be directly affecting the quality of Mr. Amaro's life.

85) Upon information and belief, it was brought to the attention of Defendant BREWSTER, by State entities, State Official(s), and/or State employees, that Defendant CORIZON, LLC was operating in violation of its contractual obligations by providing substandard healthcare to State inmates and otherwise violating the Civil Rights of New Mexico prisoners.

86) With BREWSTER's knowledge, NMCD's "Office of Professional Services" conducted an "in-depth" investigation into Defendant CORIZON which took more than a year to complete.

87) The year-long plus investigation into CORIZON "revealed deep problems with inmate care provided by [CORIZON], and of the state's lax oversight of the company."

88) Upon information and belief, with BREWSTER's knowledge, "despite the red flags raised by [numerous] lawsuits, the Corrections Department allowed [CORIZON] to operate almost unregulated" – "[o]f about 160 medical audits that should have been done between 2012 and 2015, [NMCD] could only produce records of 20."

89) According to BREWSTER, the several-hundred page report compiled by NMCD's "Office of Professional Services," as a result of the "in-depth" investigation into CORIZON and the quality of healthcare - or lack thereof - provided to New Mexico's prisoners, was "information collected or prepared in anticipation of litigation"

90) By all accounts and apparent indications from the context of BREWSTER's response(s) to the <u>Santa Fe New Mexican</u>, BREWSTER's preparation for "litigation" was against the very New Mexico inmates he should have acted to protect from CORIZON's improper medical care as a "State agent," employed by NMCD, where - instead of protecting the inmates from having their Civil Rights violated by the contractor - BREWSTER prepared to defend NMCD against inmate-initiated lawsuits over having been (knowingly) exposed to Defendant CORIZON's inadequate healthcare services and other Civil Rights violations.

91) Despite his particular knowledge and degree of awareness, BREWSTER did not intervene with the contractor's inadequate medical care of inmates but allowed Defendant CORIZON to continue, essentially, bilking New Mexico of millions of dollars in tax-payer funds until

the respective contract expired (in May 2016), which explicitly demonstrates Defendant BREWSTER's gross and severe degree of "deliberate indifference" towards the interests, health, safety, and/or general well-being of New Mexico Prisoners.

92) But-for BREWSTER's misfeasance, malfeasance, and/or nonfeasance of office, and acts, omissions, and/or failure(s) to act, in regards to the substandard and/or improper medical care and Civil Rights violations of Defendant CORIZON, the person of Pedro J. Amaro would not have been exposed to improper medical care and/or inadequate/unsafe treatment for Carbon Monoxide Poisoning, taking place on February 6, 2014, and would not now be at-risk for future potentially fatal health problems and damages associated with exposure(s) to carbon monoxide — at a higher level of risk than he would have been had he been provided with adequate medical treatment, care, and proper remedies.

93) Thus, Defendant BREWSTER, who at all times pertinent to this Complaint was acting within the course and scope of office and under color of law, personally caused or contributed to The GEO Group's contractual noncompliance and GCCF's continuing hazardous conditions of confinement and allowed CORIZON, LLC to continue - also in breach of its contractual obligations - providing improper and/or incompetent medical treatment with substandard healthcare services to New Mexico inmates, and is thereby fully liable to Plaintiff for injuries immediately sustained as well as for future potentially fatal health problems and damages stemming from exposure to carbon monoxide and Carbon Monoxide Poisoning under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

94) BREWSTER is further liable to Plaintiff Amaro with "Supervisory Personal Liability" for negligent hiring or employing of agents or other(s) to manage affairs and/or entities under his purview, and under "Special Relationship Liability."

95) Pursuant to N.M.T.C.A., the doctrine of respondeat superior is also fully applicable against NMCD and BREWSTER as public entities may be held liable for acts of its employees.

96) Defendant JERRY ROARK, in your "individual" and/or "personal" capacity, and also in your "official" capacity as NMCD's "Deputy Secretary" and/or "Director of Adult Prisons," being directly responsible under color of law for the interests, health, safety, and general well-being of the State's prisoners, with an affirmative duty under the 5th, 8th, and 14th Amendments to provide State Prisoners - including Plaintiff Amaro - with: due process and meaningful means of redress against grievances; safe and humane conditions of confinement; adequate medical and/or psychological care; protection against threats or unreasonable risk(s) of harm; against unreasonable suffering; against unreasonable infliction of unnecessary harm and/or injury which was foreseeable and preventable; and, against unreasonable infliction of any punishment which is deemed cruel and/or unusual or which would shock the conscience of the public at-large.

97) ROARK, as "Deputy Secretary" and/or "Director of Adult Prisons," knew or should have known about the problematic history of Carbon Monoxide Poisoning at GCCF to a degree sufficient to establish a legally culpable state of mind, yet decided not to intervene with the private prison's

-21-

unsafe conditions of confinement and/or act in any reasonable manner so as to protect the State's prisoners from the risks posed by GCCF's structural defect(s) which, inadvertently, result in repetitive events of Carbon Monoxide Poisoning.

98) Demonstrating a gross and severe level of deliberate indifference," ROARK has not only refused to avoid litigation in this matter (whether affirmatively or passively), but has allowed The GEO Group to continue violating its contract while also making a substantial profit by continuing to house State Prisoners at "GCCF" irrespective of the risk of serious harm, injury, or death posed by the private prison's structural defect(s) where the risk is specific, known, knowable, foreseeable, and preventable.

99) But-for ROARK's misfeasance, malfeasance, and/or nonfeasance of office (duties, and acts, omissions, and/or failure(s) to act, in regards to GCCF's unsafe conditions of confinement, record of Carbon Monoxide Poisoning events, and/or noncompliance with NMCD's "Grievance Policy/Procedure," the person of Pedro J. Amaro would not have been unnecessarily subjected to the threat of Carbon Monoxide Poisoning, actual Carbon Monoxide Poisoning, or the damages thereof as the injuries incurred by Mr. Amaro were foreseeable and preventable, and the continuing threat of of Carbon Monoxide Poisoning and corresponding harm, injury, or death would have long-been corrected, cured, or otherwise abated and would not still be present at GCCF or directly affecting the quality of Mr. Amaro's life.

100) Upon information and belief, ROARK, as "Deputy Secretary" and/or "Director of Adult Prisons", had it brought to his attention that Defendant CORIZON, LLC was operating in violation of its contractual obligations by providing substandard healthcare to State Prisoners and otherwise violating the Civil Rights of New Mexico inmates.

101) Despite his particular awareness and degree of knowledge, ROARK decided not to intervene with the contractor's inadequate medical care of inmates but allowed Defendant CORIZON, LLC to continue, essentially, bilking New Mexico of tax-payer funds until the respective contract expired, which further demonstrates Defendant ROARK's gross and severe degree of "deliberate indifference" towards the interests, health, safety, or general well-being of New Mexico Prisoners.

102) But-for ROARK's misfeasance, malfeasance, and/or nonfeasance of office (duties, and acts, omissions, and/or failure(s) to act, in regards to the substandard and/or improper medical care and Civil Rights violations of Defendant CORIZON, the person of Pedro J. Amaro would not have been exposed to improper medical care and/or inadequate/unsafe treatment for Carbon Monoxide Poisoning, taking place on February 6, 2014, and would not now be at-risk for future potentially fatal health problems and damages associated with exposure(s) to carbon monoxide - at a higher level of risk than he would have been had he been provided with adequate medical treatment/care and proper remedies.

103) Thus, Defendant ROARK, who at all times pertinent to this Complaint was acting within the course and scope of office and under color of law, personally caused or contributed to The GEO Group's contractual noncompliance and GCCF's continuing hazardous conditions of confinement and allowed CORIZON, LLC to continue - also in breach of its contractual obligations-

-22-

providing improper and/or incompetent medical treatment with substandard healthcare services to New Mexico prisoners, and is thereby fully liable to Plaintiff for injuries immediately sustained as well as for future potentially fatal health problems and damages stemming from exposure(s) to carbon monoxide and Carbon Monoxide Poisoning under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

104) ROARK is further liable to Plaintiff with "Supervisory Personal Liability" for negligent hiring or employing of agents or other(s) to manage affairs and/or entities under his purview, and under "Special Relationship Liability."

105) Pursuant to NMTCA, the doctrine of respondeat superior is also fully applicable against NMCD and ROARK as public entities may be held liable for acts of its employees.

106) Defendant TIM LeMASTER, in your "individual" and/or "personal" capacity, and also in your "official" capacity as NMCD's "Deputy Director of Operations" and/or (former) position involving NMCD's Grievance process, being directly responsible under color of law for the interests, health, safety, and general well-being of the State's prisoners, with an affirmative duty under the 5th-8th, and 14th Amendments to provide State Prisoners - including Plaintiff Amaro - with humane conditions of confinement which includes but is not limited to: safe housing environments; adequate medical/psychological cares and, meaningful means of redress of grievances.

107) LeMASTER, as "Deputy Director of Operations" and/or (former) position involving NMCD's "Grievance" process, is also obligated, under the $8^{th}/14^{th}$ Amendments, from unnecessary and/or preventable harm, especially where the risk of harm is known and from a particular source, and from the infliction of punishment which is cruel and/or unusual or which would offend society's standards of decency.

108) As "Deputy Director of Operations" and/or (former) position involving NMCD's Grievance process, LeMASTER knew or had an awareness of GCCF's problematic history of Carbon Monoxide Poisoning events at GCCF to a degree sufficient to establish a legally culpable state of mind, yet decided not to intervene with the private prison's unsafe conditions of confinement or act in any reasonable manner so as to protect the State's prisoners from the risks posed by GCCF's structural defect(s) which, inadvertently, result in repetitive events of Carbon Monoxide Poisoning.

109) Demonstrating a gross and severe degree of "deliberate indifference", LeMASTER has not only refused to avoid litigation in this matter (whether affirmatively or passively), but has allowed The GEO Group to continue violating its contract while also making a substantial profit by continuing to house State Prisoners at GCCF irrespective of the risk of serious harm, injury, or death posed by the private prison's structural defect(s) where the risk is specific, known, knowable, foreseeable, and preventable.

110) But-for LeMASTER's misfeasance, malfeasance, and/or nonfeasance of office/duties, and acts, omissions, and/or failure(s) to act, in regards to GCCF's unsafe conditions of confinement, record of Carbon Monoxide Poisoning events, and/or noncompliance with NMCD's "Grievance Policy/Procedure", the person of Pedro J. Amaro would not have been unnecessarily subjected to the threat

of Carbon Monoxide Poisoning, actual Carbon Monoxide Poisoning, or the damages thereof as the injuries incurred by Mr. Amaro were foreseeable and preventable, and the continuing threat of Carbon Monoxide Poisoning and corresponding harm, injury, or death would have long-been corrected, cured, or otherwise abated and would not still be present at GCCF or directly affecting the quality of Mr. Amaro's life.

111) Upon information and belief, LeMASTER had it brought to his attention that Defendant CORIZON, LLC was violating its contractual obligations by providing substandard healthcare to inmates and otherwise violating the Civil Rights of New Mexico prisoners.

112) Despite his particular knowledge, LeMASTER decided not to intervene with the contractor's substandard medical care of inmates but allowed Defendant CORIZON, LLC to continue bilking New Mexico until the respective contract expired, which further demonstrates Defendant LeMASTER's gross and severe degree of "deliberate indifference" towards the interests, health, safety, or general well-being of New Mexico Prisoners.

113) But-for LeMASTER's misfeasance, malfeasance, and/or nonfeasance of office/duties, and acts, omissions, and/or failure(s) to act, in regards to the substandard and/or improper medical care and Civil Rights violations of Defendant CORIZON, the person of Pedro J. Amaro would not have been exposed to improper medical care and/or inadequate/unsafe treatment for Carbon Monoxide Poisoning, and would not now be at-risk for future potentially fatal health problems and damages associated with exposure(s) to carbon monoxide - at a higher level of risk than he would have been had he been provided with adequate medical treatment/care and proper remedies.

114) Thus, Defendant LeMASTER, who at all times pertinent to this Complaint was acting within the course and scope of his office and under color of law, personally caused or contributed to The GEO Group's contractual noncompliance and GCCF's continuing hazardous conditions of confinement and allowed CORIZON, LLC to continue - also in breach of its contractual obligations - providing improper and incompetent medical treatment with substandard healthcare services to New Mexico prisoners, and is thereby fully liable to Plaintiff Amaro for injuries immediately sustained as well as for future potentially fatal health problems and damages stemming from exposure(s) to carbon monoxide and Carbon Monoxide Poisoning under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

115) LeMASTER is further liable to Plaintiff with "Supervisory Personal Liability" for negligent hiring or employing of agents or other(s) to manage affairs and/or entities under his purview, and under "Special Relationship Liability."

116) Pursuant to NMTCA, the doctrine of respondeat superior is also fully applicable against NMCD and LeMaster as public entities may be held liable for acts of its employees.

117) Defendant LARRY PHILLIPS, in your "individual" and/or "personal" capacity, and also in your "official" capacity as NMCD's "Grievance/Disciplinary Appeals Manager," being directly responsible under color of law for the interests, health, safety, and general well-being of the State's prisoners, with an affirmative duty under the 5th, 8th, and 14th Amendments to provide

State Prisoners – including Plaintiff Amaro – with rights of due process and meaningful means of redress of grievances, and to ensure, through the Grievance process, inmates are provided with humane conditions of confinement, safe housing environments, and adequate medical and/or psychological care.

118) PHILLIPS, as "Grievance/Disciplinary Appeals Manager" was also obligated, under the $8^{th}/14^{th}$ Amendments, to protect inmates from unnecessary and/or preventable harm, especially where the risk of harm is known and from a particular source, and from punishment which is cruel and/or unusual or which would offend society's standards of decency.

119) As "Grievance/Disciplinary Appeals Manager," PHILLIPS knew or had an awareness of GCCF's problematic history of Carbon Monoxide Poisoning events to a degree sufficient to establish a legally culpable state of mind, yet decided not to intervene with the private prison's unsafe conditions of confinement or act in any reasonable manner so as to protect the State's prisoners from the risks posed by GCCF's structural defect(s) which result in repetitive events of Carbon Monoxide Poisoning.

120) Demonstrating a gross and severe degree of "deliberate indifference, PHILLIPS has not only refused to avoid litigation in this matter (whether affirmatively or passively), but has allowed The GEO Group to continue violating its contract while also making substantial profits by proceeding to house State Prisoners at GCCF irrespective of the risk of serious harm, injury, or death posed by the private prison's structural defect(s) where the risk is specific, known, knowable, foreseeable, and preventable.

121) But-for PHILLIPS's misfeasance, malfeasance, and/or nonfeasance of office/duties, and acts, omissions, and/or failure(s) to act, in regards to GCCF's unsafe conditions of confinement, record of Carbon Monoxide Poisoning events, and/or non compliance with NMCD's "Grievance Policy/Procedure", the person of Pedro J. Amaro would not have been unnecessarily subjected to the threat of exposure to carbon monoxide, Carbon Monoxide Poisoning, or the damages thereof as the injuries incurred by Mr. Amaro were foreseeable and preventable, and the continuing threat of exposure to carbon monoxide and corresponding harm harm, injury, or death would have long-been corrected, cured, or otherwise abated and would not still be present at GCCF or directly affecting the quality of Mr. Amaro's life.

122) Upon information and belief, PHILLIPS had it brought to his attention that Defendant CORIZON, LLC was violating its contractual obligations by providing substandard healthcare to inmates and otherwise violating the Civil Rights of New Mexico prisoners.

123) Despite his particular knowledge of NMCD's investigation into CORIZON, PHILLIPS decided not to intervene with the contractor's substandard medical care of inmates but allowed CORIZON to continue bilking New Mexico until the respective contract expired, which further demonstrates the gross and severe degree of "deliberate indifference" PHILLIPS harbors toward the health, safety, interests, or general well-being of New Mexico Prisoners.

124) But-for PHILLIPS's misfeasance, malfeasance, and/or nonfeasance of office/duties, and acts, omissions, and/or failure(s) to act, in regards to the substandard and/or improper medical care and Civil Rights violations of Defendant CORIZON, the person of Pedro J. Amaro would

not have been exposed to improper medical care and/or inadequate/unsafe treatment for Carbon Monoxide Poisoning, and would not now be at-risk for future potentially fatal health problems and damages associated with exposure(s) to carbon monoxide – at a higher level of risk than he would have been had he been provided with adequate medical treatment/care and proper remedies.

125) Thus, Defendant PHILLIPS, who at all times pertinent to this Complaint was acting within the course and scope of his office and under color of law, personally caused or contributed to The GEO Group's contractual noncompliance and GCCF's continuing hazardous conditions of confinement and allowed CORIZON, LLC to continue – also in breach of it's contractual obligations – providing improper and/or incompetent medical treatment with substandard healthcare services to New Mexico prisoners, and is thereby fully liable to Plaintiff Amaro for injuries immediately sustained as well as for future potentially fatal health problems and damages stemming from exposure(s) to carbon monoxide and Carbon Monoxide Poisoning under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

126) PHILLIPS is further liable to Plaintiff with "Supervisory Personal Liability" for negligent hiring or employing of agents or other(s) to manage affairs and/or entities under his purview, and under "Special Relationship Liability."

127) Pursuant to NMTCA, the doctrine of respondeat superior is also fully applicable against NMCD and PHILLIPS as public entities may be held liable for acts of its employees.

128) Defendant STEVE MADRID, in your "individual" and/or "personal" capacity, and also in your "official" capacity as NMCD's "Chief Grievance Officer", being directly responsible under color of law for the interests, health, safety, and general well-being of the State's prisoners, with an affirmative duty under the 5th, 8th, and 14th Amendments to provide State Prisoners – including Plaintiff Amaro – with rights of due process and meaningful means of redress of grievances, and to ensure, through the Grievance process, inmates are provided with humane conditions of confinement, safe housing environments, and adequate medical/psychological care.

129) MADRID, as "Chief Grievance Officer," was also obligated under the 8th/14th Amendments, to protect inmates from unnecessary and/or preventable harm, especially where the risk of harm is known and from a particular source, and from the infliction of punishment which is cruel and/or unusual or which would offend society's standards of decency.

130) As "Chief Grievance Officer," MADRID knew or had awareness of GCCF's problematic history regarding both Carbon Monoxide Poisoning events and Defendant Lt. KRYSTLE RIVERA's failure to complete or properly process inmate Grievances in accordance with NMCD Grievance Policy/Procedure, as well as the substandard healthcare Defendant CORIZON, LLC was providing to New Mexico Prisoners, yet decided not to intervene with either the private prison's unsafe conditions of confinement or CORIZON's improper and/or incompetent medical care of State inmates.

131) Demonstrating a gross and severe degree of "deliberate indifference," MADRID has not only refused to avoid litigation in this matter (whether affirmatively or passively) but has allowed

The GEO Group to continue violating its contract while also making substantial profits by proceeding to house State Prisoners at GCCF irrespective of the private prison's noncompliance with NMCD Policy/Procedure and/or the risk of serious harm, injury, or death posed by the prison's structural defect(s) where the risk is specific, known, knowable, foreseeable, and preventable, and also allowed Defendant CORIZON, LLC to continue - also in breach of its contractual obligations - providing improper and/or incompetent medical treatment with substandard health-care services to New Mexico prisoners.

132) But-for MADRID's misfeasance, malfeasance, and/or nonfeasance of office/duties, and acts, omissions, and/or failure(s) to act, in regards to GCCF's unsafe conditions of confinement, record of Carbon Monoxide Poisoning events, and/or noncompliance with NMCD's "Grievance Policy/Procedure," the person of Pedro J. Amaro would not be unnecessarily subjected to the threat of exposure to carbon monoxide or the damages thereof as the risk of harm is known, knowable, foreseeable, and preventable and should not still be present at GCCF or directly affecting the quality of Plaintiff Amaro's life.

133) But-for MADRID's misfeasance, malfeasance, and/or nonfeasance of office/duties, acts, omissions, and/or failure(s) to act, regarding the substandard and/or improper medical care and Civil Rights violations of Defendant CORIZON, the person of Pedro J. Amaro would not have been exposed to improper medical care and/or inadequate/unsafe treatment for Carbon Monoxide Poisoning, and would not now be at-risk for future potentially fatal health problems and damages associated with exposure(s) to carbon monoxide - at a higher level of risk than he would have been had he been provided with adequate medical care/treatment and proper remedies.

134) Thus, Defendant MADRID, who at all times pertinent to this Complaint was acting within the course and scope of his office and under color of law, personally caused or contributed to The GEO Group's contractual noncompliance and GCCF's continuing hazardous conditions of confinement and allowed CORIZON, LLC to continue - also in breach of its contractual obligations - providing improper and incompetent medical treatment with substandard healthcare services to New Mexico prisoners, and is thereby liable to Plaintiff for injuries immediately sustained as well as for future potentially fatal health problems and damages stemming from exposure(s) to carbon monoxide and Carbon Monoxide Poisoning under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

135) MADRID is further liable to Plaintiff with "Supervisory Personal Liability" for negligent hiring or employing of agents or other(s) to manage affairs and/or entities under his purview, and under "Special Relationship Liability."

136) Pursuant to NMTCA, the doctrine of respondeat superior is applicable against NMCD and MADRID as public entities may be held liable for acts of its employees.

137) Defendant ANGELA M. MARTINEZ, in your "individual/personal" capacity where, in your former capacity as NMCD's "Health Services Administrator" ("HSA"), you were directly responsible under color of law for the interests, health, safety, and general well-being of the State's Prisoners, with an affirmative duty under the 5th, 8th, and 14th Amendments to provide State inmates with

adequate medical/psychological care commensurate with normal standards and/or level of community care, to (preventatively) protect prisoners from unsafe conditions of confinement which pose or present an unnecessary risk of serious harm, injury, or death (especially where the risk of harm is known and from a particular source), and also from the infliction of punishment either without due process of law or which is cruel and/or unusual or which would offend society's standards of decency.

138) As NMCD's "HSA", MARTINEZ knew about GCCF's problematic history of Carbon Monoxide Poisoning events as well as LORIZON's improper and/or incompetent medical care of State Prisoners, yet decided not to intervene with either the private prison's unsafe conditions of confinement or CORIZON's substandard healthcare services.

139) Demonstrating a gross and severe degree of "deliberate indifference", A. MARTINEZ allowed The GEO Group to continue violating its contract while proceeding to house State Prisoners at GCCF irrespective of the private prison's risk of serious harm, injury, or death posed by the prison's structural defect(s) where the risk is specific, known, knowable, foreseeable, and preventable, and also allowed CORIZON to continue - also in breach of its contractual obligations - providing improper and/or incompetent medical treatment with substandard healthcare services to New Mexico prisoners.

140) But-for A. MARTINEZ's misfeasance, malfeasance, and/or nonfeasance of office/duties, and acts, omissions, and/or failure(s) to act, in regards to GCCF's unsafe conditions of confinement and record of Carbon Monoxide Poisoning events, the person of Pedro J. Amaro would not have been unnecessarily subjected to the threat of exposure to carbon monoxide, Carbon Monoxide Poisoning, or the damages thereof as the injuries incurred by Mr. Amaro were foreseeable and preventable, and the continuing threat of Carbon Monoxide Poisoning and corresponding harm, injury, or death would have long-been corrected or otherwise abated and would not still be present at GCCF or directly affecting the quality of Mr. Amaro's life.

141) But-for A. MARTINEZ's misfeasance, malfeasance, and/or nonfeasance of office/duties, and acts, omissions, and/or failure(s) to act, in regards to the substandard medical care and Civil Rights violations of Defendant CORIZON, the person of Pedro J. Amaro would not have been exposed to improper medical care and/or inadequate/unsafe treatment for Carbon Monoxide Poisoning, and would not now be at-risk for future potentially fatal health problems and damages associated with exposure(s) to carbon monoxide - at a higher level of risk than he would have been had he been provided with adequate medical care/treatment and proper remedies.

142) Thus, Defendant A. MARTINEZ, who at all times pertinent to this Complaint was acting within the course and scope of her office and under color of law personally caused or contributed to The GEO Group's contractual noncompliance and GCCF's continuing hazardous conditions of confinement, and allowed CORIZON to continue — also in breach of its contractual obligations - providing improper and incompetent medical treatment with substandard healthcare services to New Mexico inmates, and is thereby liable to Plaintiff Amaro for injuries immediately sustained as well as for future potentially fatal health problems and damages stemming from exposure(s) to carbon monoxide, and Carbon Monoxide Poisoning under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

143) A. MARTINEZ is further liable to Plaintiff with "Supervisory Personal Liability and under

"Special Relationship Liability."

144) Pursuant to NMTCA, the doctrine of respondeat superior is applicable against NMCD and A. MARTINEZ.

145) Defendant DAVID SELVAGE, P.A., in your "individual/personal" capacity and also in your "official" capacity as NMCD's "Health Services Bureau Chief" ("HSBC"), being directly responsible under color of law for abiding by and/or fulfilling State/Federal requirements and/or regulations regarding the conditions of confinement of State prisoners including but not limited to: the obligation to provide humane and reasonably safe conditions of confinement; obligation to provide due care for prisoners' interests, health, safety, and general well-being, including protection from known, foreseeable, and preventable harm; and, obligation of providing adequate medical/psychological care to each prisoner, ensuring that each prisoner - including Plaintiff Amaro - actually receives such care.

146) As NMCD's "HSBC," SELVAGE, who knows or should know about the problematic Carbon Monoxide Poisoning events and corresponding inadequate medical/psychological care at GCCF to a degree sufficient to establish a legally culpable state of mind, has failed to intervene with the hazardous conditions at GCCF, the inadequate care provided to prisoners at GCCF, and/or the State's continuing confinement of Prisoners at the inherently dangerous private prison, thereby demonstrating a defective healthcare policy with a gross and severe level of "Deliberate indifference" to the interests, health, safety, and/or general well-being of the State's inmate population.

147) But for SELVAGE's misfeasance, malfeasance, and/or nonfeasance of office/duties and acts, omissions, and/or failure(s) to act, in regards to the ongoing hazardous conditions of confinement at GCCF and the continuation of inadequate care provided to the inmate population at GCCF by Defendant CENTURION's Medical Staff (formerly CORIZON's Medical Staff), the unsafe conditions of confinement at GCCF would have been corrected or otherwise abated and would not still be present at GCCF or negatively affecting the quality of Mr. Amaro's life, and Plaintiff would not fret or 'stress' regarding the level of medical care he will be afforded during future emergency situations related to exposure to carbon monoxide.

148) Thus, Defendant SELVAGE, who at all times pertinent to this Complaint was acting within the course and scope of his office and under color of law, personally caused or contributed to The GEO Group's contractual noncompliance and GCCF's continuing hazardous conditions, and has allowed CENTURION to continue - also in breach of its contractual obligations - providing improper and incompetent medical treatment with substandard healthcare services to inmates in (recent) cases of exposure to carbon monoxide, and is thereby liable to Amaro for injuries immediately sustained as well as future potentially fatal health problems and damages stemming from exposure(s) to carbon monoxide and Carbon Monoxide Poisoning under 42 U.S.C., for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

149) SELVAGE is further liable to Plaintiff with "Supervisory Personal Liability" for negligent hiring or employing of agents or other(s) to manage affairs and/or entities under his purview, and under "Special Relationship Liability."

150) Pursuant to NMTCA, the doctrine of respondeat superior is applicable against NMCD and Defendant SELVAGE.

151) Defendant YOLANDA RIVERA ("Y. RIVERA"), in your "individual/personal capacity, and also in your "official" capacity as the NMCD "Contract Monitor stationed at GCCF, being directly responsible under color of law for monitoring and enforcing the terms of the State's contracts upon respective contract holders and/or service providers, to include: The GEO Group, Inc.; GEO Defendants; CORIZON, LLC; CORIZON HEALTH; CORIZON Defendants; "CENTURION"; CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC; and, CENTURION Defendants, with oversight responsibility for contractual obligations which include prisoners' interests, health, safety, and general well-being.

152) The terms of the State's contracts with GEO, CORIZON, and/or CENTURION included duties of the businesses to fulfill all State and Federal requirements regarding the confinement of prisoners including 5th, 8th, and 14th Amendment provisions such as adequate medical care, protection from known threats or risk(s) of harm, and reasonably safe conditions of confinement.

153) As NMCD's "Contract Monitor," Y. RIVERA, who was previously a "GEO employee," possessed personal knowledge of - and has been affected by - GCCF's history of Carbon Monoxide Poisoning events, inadequate level of medical care, and/or GCCF's dysfunctional Grievance program, and, yet, decided to not intervene with the hazardous conditions of confinement, the inadequate level of medical care provided to inmates, and/or require GCCF's compliance with NMCD Grievance process through proper enforcement of the State's contracts with the for-profit businesses either operating GCCF (as a correctional facility) or providing medical services to the State's prisoners confined at GCCF (GEO and, now, CENTURION, respectively), thereby demonstrating a gross and severe degree of "deliberate indifference to the interests, health, safety, and/or general well-being of (the State's) inmates - including Plaintiff Amaro.

154) But-for Y. RIVERA's malfeasance, misfeasance, and/or nonfeasance of office/duties and acts, omissions, and/or failure(s) to act in regards to GCCF's continuing hazardous conditions of confinement, noncompliance with NMCD Grievance Policy/Procedure, and CENTURION's continuation of inadequate medical/psychological care provided to prisoners at GCCF in response to recent carbon monoxide-related events, the unsafe conditions would have been addressed and/or cured; GCCF's noncompliance with NMCD Grievance Policy/Procedure would be a non-issue; and, prisoners would not need proper and/or adequate medical/psychological care related to exposure to carbon monoxide and/or actual Carbon Monoxide Poisoning, and the person of Pedro J. Amaro would not have been unnecessarily subjected to the threat of exposure to carbon monoxide, the Carbon Monoxide Poisoning, or the damages sustained thereby, where the injuries incurred by Mr. Amaro were foreseeable and preventable, and the continuing threat of Carbon Monoxide Poisoning and corresponding harm, injury, or death would have long-been corrected or otherwise abated, and would not still be present at GCCF or directly affecting the quality of Mr. Amaro's life.

155) Thus, Defendant Y. RIVERA, who at all times pertinent to this Complaint was acting within the course and scope of office and under color of law, personally caused or contributed to The GEO

Group's contractual noncompliance and GCCF's continuing hazardous conditions of confinement, and has allowed Defendant CENTURION to continue providing substandard healthcare services to New Mexico inmates, and is thereby liable to Plaintiff Amaro for injuries immediately sustained as well as for future potentially fatal health problems and damages stemming from exposure to carbon monoxide and Carbon Monoxide Poisoning under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of damages with direct, joint, concurrent, successive, and/or vicarious liability.

156) Y. RIVERA is further responsible to Plaintiff with "Supervisory Personal Liability," and under "Special Relationship Liability."

157) Pursuant to NMTCA, the doctrine of respondeat superior is also applicable against NMCU and Y. RIVERA.

158) Defendant GLORIA CHAVEZ, in your "individual/personal" capacity, where in your former "official" capacity as NMCD's "Contract Monitor" at GCCF, you were directly responsible under color of law for monitoring and enforcing the terms of the State's contracts upon respective contract holders and/or service providers to include: The GEO GROUP, INC.; GEO Defendants; CORIZON, LLC; CORIZON HEALTH; and, CORIZON Defendants, with oversight responsibility for contractual obligations.

159) As NMCD's "Contract Monitor," G. CHAVEZ, who was previously a "GEO employee"- and is again a "GEO employee"- possessed personal knowledge of, and has been affected by GCCF's history of Carbon Monoxide Poisoning events, inadequate level of medical care, and/or dysfunctional Grievance process, and, yet, decided not to intervene with the hazardous conditions of confinement or the inadequate level of medical care, or require GCCF's compliance with NMCD's Grievance process through proper enforcement of the State's contracts with the for-profit companies either operating GCCF as a correctional facility or providing medical services to the inmate population at GCCF (GEO and CORIZON, respectively), thereby demonstrating a gross and severe degree of "deliberate indifference" to the interests, health, safety, and/or general well-being of inmates.

160) Additionally, G. CHAVEZ, as NMCD's "Contract Monitor" had particular knowledge of CORIZON's substandard healthcare as well as NMCD's 'in-depth' investigation into CORIZON for its substandard medical care and Civil Rights violations, yet still did not intervene with CORIZON's practices.

161) But-for G. CHAVEZ's misfeasance, malfeasance, and/or nonfeasance of office/duties, and acts, omissions, and/or failure(s) to act, in regards to GCCF's unsafe conditions of confinement and record of Carbon Monoxide Poisoning events, the person of Pedro J. Amaro would not have been unnecessarily subjected to the threat of exposure to carbon monoxide, Carbon Monoxide Poisoning, or the damages thereof as the injuries incurred by Mr. Amaro were foreseeable and preventable, and the continuing threat of Carbon Monoxide Poisoning and corresponding harm, injury, or death would have long-been addressed and corrected or cured and would not still be present at GCCF or directly affecting the quality of Mr. Amaro's life.

162) But for G. CHAVEZ's misfeasance, malfeasance, and/or nonfeasance of office/duties, and acts, omissions, and/or failure(s) to act, in regards to the substandard medical care and Civil Rights violations of CORIZON, the person of Pedro J. Amaro would not have been exposed to improper medical care and/or inadequate/unsafe treatment for Carbon Monoxide Poisoning, and would not now be at-risk for future potentially fatal health problems and damages associated with exposure(s) to carbon monoxide - at a higher level of risk than he would have been had he been provided with adequate medical care/treatment and proper remedies.

163) Thus, Defendant G. CHAVEZ, who at all material times was acting within the course and scope of her office and under color of law, personally caused or contributed to The GEO Group's contractual noncompliance and GCCF's continuing hazardous conditions of confinement, and allowed CORIZON to continue - also in breach of its contractual obligations - providing improper and in-competent medical treatment with substandard healthcare services to inmates, and is thereby fully liable to Plaintiff Amaro for injuries immediately sustained as well as for future potentially fatal health problems and damages stemming from exposures to carbon monoxide, and Carbon Monoxide Poisoning under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

164) G. CHAVEZ is further liable to Plaintiff Amaro with "Supervisory Personal Liability," and under "Special Relationship Liability."

165) Pursuant to NMTCA, the doctrine of respondeat superior is fully applicable against HMCU and G. CHAVEZ.

166) Defendants NEW MEXICO DEPARTMENT OF HEALTH and JOHN(s)/JANE(s) DOES #2 ("DOH"); and, NEW MEXICO HUMAN SERVICES DEPARTMENT and JOHN(s)/JANE(s) DOES #3 ("HSD"), respectively, being any/all Unknown and/or Unidentified Cabinet Secretary(s), Deputy Secretary(s), Director(s), General Counsel(s), Deputy General Counsel(s), agents, apparent agents, or other personnel, respectively, in a position of authority or superintendency (such as officers, administrators, directors, inspectors, and/or investi-gators) under color of law, with management authority or capability over HMCU regarding the health and/or welfare of the State's Prisoners and/or under the conditions under which the State's Prisoners are confined, including the Prisoners housed at GCCF, with actual or constructive know-ledge of the life-threatening Carbon Monoxide Poisoning issue at GCCF or similarly constructed private prisons, having become (personally) aware of or involved with the problematic conditions of confinement to a degree sufficient to establish a legally culpable state of mind, and who failed to intervene with the hazardous conditions or to take reasonable administrative measures so as to ensure that the State's Prisoners were safely and humanely confined in manners consistent with society's standards of decency and the 5th, 8th, and 14th Amendments' requirements, extending from the first instance of any event of Carbon Monoxide Poisoning or Exposure at GCCF or similarly constructed private prison(s), in your 'individual/personal" capacity and also in your 'official" capacity if/where applicable.

167) Upon information and belief, V.I.P.s from each Defendant Department were duly

notified by NMCD's 'chain-of-command' personnel or other State agents/employees during the more serious Carbon Monoxide-related events taking place at GCCF.

168) Upon information and belief, both the DOH and HSD possess the authority-under color of law- to "shut down" or even condemn dangerous buildings and/or dwellings.

169) Demonstrating a gross and severe level of "deliberate indifference" for the lives of the inmate population and/or the life-threatening conditions of confinement at GCCF, respective DOH and/or HSD personnel resolutely refused to avoid litigation in this matter (whether affirmatively or passively) by having allowed the State - by and through its agents, apparent agents, or other personnel - to continue allowing The GEO Group to proceed housing the State's Prisoners irrespective of the serious risk of imminent harm, injury, or death posed by the private prison's structural defect(s) (pending further mechanical malfunctions of the prison's boiler(s) and/or flue(s).

170) But-for DOH/HSD's nonfeasance of office/duties, and acts, omissions, and/or failure(s) to act, regarding GCCF's unsafe conditions of confinement, the person of Pedro J. Amaro would not have been subjected to the threat of exposure to carbon monoxide, actual Carbon Monoxide Poisoning, or the damages thereof as the injuries incurred by Mr. Amaro were foreseeable and preventable, and ongoing threat of Carbon Monoxide Poisoning and corresponding harm, injury, or death would have long-been addressed and/or cured and would not still be present at GCCF or directly affecting the quality of Mr. Amaro's life.

171) Thus, Defendants DOH/HSD and JOHN(s)/JANE(s) DOES #2 and #3, respectively, who at all material times were acting within the course and scope of office and under color of law, personally contributed to The GEO Group's contractual noncompliance and GCCF's continuing hazardous conditions of confinement, and is thereby liable to Plaintiff Amaro for injuries immediately sustained as well as for future potentially fatal health problems and damages stemming from exposures to carbon monoxide and Carbon Monoxide Poisoning under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

172) DOH/HSD and JOHN(s)/JANE(s) DOES #2 and #3 are further responsible to Plaintiff with "Supervisory Personal Liability" and under "Special Relationship Liability."

173) Pursuant to NMTCA, the doctrine of respondeat superior is also fully applicable against both DOH and HSD, regarding JOHN(s)/JANE(s) DOES #2 and JOHN(s)/JANE(s) DOES #3.

174) Defendants JOHN(s)/JANE(s) DOES #4 ("DOES 4") are all other Unknown/Unidentified persons and/or firms representing or advising the State and/or any of its agents or apparent agents, or other State personnel, acting or having acted (under color of law) in the place and/or stead of 'legal counsel' to/for any of the State's actors, agents, or apparent agents, having actual or constructive knowledge of and/or advising State Officials or other State personnel in any capacity regarding any/all instances of carbon monoxide exposures or poisonings of any State Prisoner not lawfully sentenced to death who decided not to take reasonable administrative measures so as to

ensure that the State's Prisoners were safely and humanely confined in manners consistent with the 5th, 8th, and 14th Amendments, and their respective requirements.

175) Upon information and belief, various "(legal) counsellors" and/or "(legal) representatives for the State or its agents, with actual or constructive knowledge of problematic Carbon Monoxide Poisoning issue at GCCF and/or similarly constructed private prisons, having become personally aware of or involved with the life-threatening conditions of confinement to a degree sufficient to establish a legally culpable state of mind, choosing not to either intervene with the hazardous conditions or reasonable administrative measures so as to ensure – as a "legal counselor" or "legal representative" to its employer or client" – that the State/GEO tell into compliance with Constitutional requirements (to provide safe and humane conditions of confinement, and not to inflict punishment without due process of law) and/or otherwise acted affirmatively to protect the third-party prisoners from a specific, known, knowable, foreseeable, and preventable harm.

176) Demonstrating a gross and severe degree of "deliberate indifference" for the lives of New Mexico's inmate population and/or the life-threatening conditions of confinement at GCCF and similarly constructed private prisons, thereby assuming direct, joint, concurrent, successive, and/or vicarious liability, law firms, legal counselors, and/or legal representatives hired or employed by either the State of New Mexico or the State's agents resolutely refused to avoid litigation in this matter (whether affirmatively or passively) by having allowed the State, NMCD, and/or The GEO Group to proceed housing the State's Prisoners at GCCF irrespective of serious risk of imminent harm, injury, or death posed by the private prison's structural defect(s) (pending further mechanical malfunctions of the prison's boiler(s)/flue(s)).

177) But-for the professional misfeasance, malfeasance, nonfeasance, and/or malpractice, and acts, omissions, and/or failure(s) to act of the lawyers, law firms, legal counsellors, or legal representatives used or employed by, or otherwise hired or working for the State of New Mexico or any of its agents or apparent agents, including but not limited to: A.G.'s Office; NMCD; DOH; HSD; The GEO Group; CORIZON, LLC; and CENTURION, or the GOVERNOR's Office, having either actual or constructive knowledge of the deadly conditions of confinement and/or Carbon Monoxide Poisoning events at GCCF and failing to either protect their respective employers/clients from liability or intervene on behalf of the inmate population, the person of Pedro J. Amaro would not have been unnecessarily subjected to unsafe conditions of confinement, threat of exposure to carbon monoxide, actual Carbon Monoxide Poisoning, or the damages sustained thereby, where the injuries incurred by Mr. Amaro were clearly foreseeable and preventable, and the continuing threat of Carbon Monoxide Poisoning and corresponding harm, injury, and/or death would have long-been addressed, cured, or otherwise abated and would not still be recklessly present at GCCF or directly affecting the quality of Mr. Amaro's life.

178) Thus, Defendants DOES #4, who at all material times were acting within the course and scope of office or employment under color of law – by 'extension', if not directly – personally caused or contributed to The GEO Group's contractual noncompliance and GCCF's continuing hazardous conditions of confinement and is thereby liable to Plaintiff Amaro for injuries immediately sustained as well as for future potentially fatal health problems and damages stemming from exposure to carbon

monoxide and Carbon Monoxide Poisoning under 42 U.S.C. 1983 for the deprivation of his Civil Rights and wrongful infliction of damages with direct, joint, concurrent, successive, and/or vicarious liability.

179) DOES #4 are further responsible to Plaintiff Amaro under "Special Relationship Liability"

180) Pursuant to the doctrine of respondeat superior, employers of malpracticing attorneys and/or law firms are liable for the acts of their employees.

181) Pursuant to NMTCA, the doctrine of respondeat superior is applicable against State-affiliated lawyers/lawfirms and their respective hiring/employing entity.

182) Pursuant to NMTCA, the doctrine of respondeat superior is fully applicable against the Defendant GOVERNOR'S OFFICE as public entities may be held liable for acts of its employees, where, in this case, STATE Defendants were in positions of power as a direct result of the decisions of either Defendant SUSANA MARTINEZ and the "MARTINEZ Administration" or Defendant BILL RICHARDSON and the "RICHARDSON Administration".

183) Thus, the NEW MEXICO GOVERNOR'S OFFICE, the respective 'Administration' notwithstanding, through grossly negligent hiring, 'appointing', or employing of agents or other(s) to manage affairs and/or entities under its purview – implicating "Supervisory Personal Liability"– 'personally' caused or contributed to The GEO Group's contractual noncompliance, GCCF's continuing hazardous conditions of confinement, CORIZON's practice of substandard healthcare services, and/or CENTURION's continuation of the practice of substandard healthcare, and is thereby fully liable to Plaintiff Amaro for: subjection to unsafe and inhumane conditions of confinement; failure to protect from the infliction of unnecessary harms; failure to protect from a known threat of harm, from a specific source, and in a particular manner; injuries immediately sustained; and, for future potentially fatal health problems and damages stemming from exposures to Carbon Monoxide and Carbon Monoxide Poisoning under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of harm/damages (which were foreseeable and preventable), with direct, joint, concurrent, successive, and/or vicarious liability, and is further responsible to Plaintiff Amaro under "Special Relationship Liability."

184) Collectively, STATE Defendants, Parties 2-183, as Officials, officers, administrators, deputies, directors, monitors, Secretary(s), employees, agents, and/or apparent agents of the State of New Mexico, acting on behalf of the State and/or its interests, are hereafter generally referred to as either "(the) State" or "State Defendants".

## THE GEO GROUP and GEO DEFENDANTS

185) During all times relevant to this Complaint, Defendant The GEO Group, Inc. ("GEO") has operated the Guadalupe County Correctional Facility ("GCCF") pursuant to a contract with the State of New Mexico or an agency thereof to house State Prisoners 'for-profit' at the privately owned/operated correctional facility and, thus, operates as an agent for the State, under color

of (State) law, and is thereby directly responsible for and liable to Plaintiff Amaro under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability, where GEO has unduly subjected the person of Pedro J. Amaro to such Civil Rights violations as (but not only): confinement in conditions which are neither safe nor humane; the failure to protect from the infliction of unnecessary harm; failure to protect from a known threat of harm from a specific source and in a particular manner; exposures to toxic fumes and poisoning; assault/battery with bodily intrusion; Carbon Monoxide Poisoning; immediately sustained injuries; inadequate medical/psychological care; future potentially fatal health problems associated with carbon monoxide and/or Carbon Monoxide Poisoning; infliction of punishment without due process of law; denial of due process in regards to NMCD's Grievance Policy/Procedure; and, infliction of punishment which is cruel and/or unusual, in violation of the 5th, 8th, and/or 14th Amendments.

186) Defendant GEO is a foreign corporation registered to do business in New Mexico, whose registered agent for service of process is Corporate Creations Network, Inc., 400 N. Pennsylvania Avenue #600, Roswell, New Mexico 88201.

187) Defendant GEO which bills itself as "the world's largest provider of diversified correctional, detention, reentry, and electronic monitoring systems," is a (multi-) billion dollar corporation 're-branded' from the 'lawsuit-plagued' "Wackenhut Corrections Corporation" ("WCC"), which had a troubled history of habitually committing and/or practicing Civil Rights violations against persons confined at its 'for-profit' prison facilities.

188) Upon information and belief, Defendant GEO was founded by Defendants GEORGE R. WACKENHUT; RICHARD R. WACKENHUT; and, GEORGE C. ZOLEY, who each share controlling interests and corresponding responsibility for the actions of GEO which includes the continuing violation of Civil Rights and damages caused to Plaintiff Amaro by and through the grossly negligent and deliberately indifferent conduct of GEO personnel acting under purview of The GEO Group and/or its founders.

189) Defendant GEO is a 'combined' company and part of a large conglomeration of incorporated businesses which includes: The GEO Group, Inc. ("GEO"); Correctional Services Corporation ("CSC"); Centracore Properties Trust ("CPT"); Cornell Companies; BI Incorporated ("BI"); GEO Transport, Inc. ("GTI"); GEO Care, Inc.; Just Care, Inc.; GEO REIT; and, LCS Corrections Services, whose corporate office and global headquarters is currently located at ONE Park Place, Suite 700, 621 Northwest 53rd Street, Boca Raton, FL 33487, with new global headquarters to be located at 4955 Technology Way, Boca Raton, FL.

190) At all material times, Defendant GEO acted under control and/or interests of its founders, Chief Executive Officer, Board of Directors, Senior Vice Presidents, Executive Vice Presidents, Regional Vice Presidents, Divisional Vice Presidents, General Counsel and various legal representatives, and its "Director of Operations for U.S. Corrections", whose grossly negligent conduct, oversight and/or management and acts, omissions, and/or failure(s) to act - coupled with severe deliberate indifference towards GCCF's running history of Carbon Monoxide Poisoning events, Civil Rights violations, unsafe conditions related to structural defects, and 'threat' of carbon monoxide-related

litigation – directly caused or contributed to GCCF's continuing risk of harm (from unsafe conditions of confinement) Carbon Monoxide – related injuries wrongfully inflicted upon the person of Pedro J. Amaro, the risk of future potentially fatal health problems associated with exposure to carbon monoxide and/or Carbon Monoxide Poisoning, and other violations to the Civil Rights of Plaintiff Amaro, and are thus fully liable to Plaintiff Amaro personally, individually, corporately, and/or officially "(as agents for the State of New Mexico) for injuries immediately sustained as well as for future harm/damages stemming from exposures to carbon monoxide and/or Carbon Monoxide Poisoning under 42 U.S.C §1983 for the deprivation of his Civil Rights under color of law and the wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability, with such persons being the persons of:

191) Defendant GEORGE R. WACKENHUT, Founder
192) Defendant RICHARD R. WACKENHUT, Founder
193) Defendant GEORGE C. ZOLEY, Founder/CEO

BOARD-MEMBERS:
194) Defendant CLARENCE E. ANTHONY,
195) Defendant RICHARD H. GLANTON,
196) Defendant CHRISTOPHER C. WHEELER,
197) Defendant JULIE MYERS-WOOD,
198) Defendant ANNE N. FOREMAN,
199) Defendant NORMAN A. CARLSON, and
200) Defendant JOHN HURLEY;
201) Defendant JOHN J. BULFIN, Senior Vice President, General Counsel, and former Board-Member.

SENIOR VICE PRESIDENTS:
202) Defendant BRIAN R. EVANS,
203) Defendant THOMAS M. WIERDSMA,
204) Defendant J. DAVID DONAHUE,
205) Defendant ANN M. SCHLARB, and
206) Defendant DAVID J. VENTURELLA;
207) Defendant JOE R. WILLIAMS, Director of Operations for U.S. Corrections;

EXECUTIVE VICE PRESIDENTS:
208) Defendant MATHEW J. DenADEL,
209) Defendant PATRICIA M. PERSANTE,
210) Defendant JENNIFER L. HOUSTON,
211) Defendant AMBER D. MARTIN,
212) Defendant CHRISTOPHER D. RYAN,
213) Defendant ERNESTO ALVAREZ,
214) Defendant ADAM M. HASNER, and,
215) Defendant DERRICK D. SCHOFIELD;

REGIONAL VICE PRESIDENTS:
216) Defendant REED E. SMITH,

217) Defendant JAMES H. BLACK, and

218) Defendant BLAKE R. DAVIS;

DIVISIONAL VICE PRESIDENTS:

219) Defendant BLAKE R. BARRAS,

220) Defendant DAVID O. MEEHAN,

221) Defendant JONATHAN P. SWATSBURG,

222) Defendant DAVID S. BURCH, and

223) Defendant JOCK A. WALDO;

224) Collectively, GEO Defendants, Parties 190-223, as founders, CEO, Board-Members, Vice Presidents, and Director of Operations for U.S. Corrections, responsible for controlling Defendant GEO's actions, business affairs, and acquisition of contracts, are hereafter referred to as "GEO"; "GEO's Controlling Board"; "GEO's Oversight Personnel"; and/or "GEO Defendants".

225) Defendant GEO's Controlling Board and/or Oversight Personnel are further personally, individually, and/or officially responsible to Plaintiff Amaro with "Supervisory Personal Liability" for grossly negligent hiring or employing of agents or other(s) to manage powers, affairs, and/or entities under their respective purviews, and also under "Special Relationship Liability."

226) Pursuant to NMTCA, the doctrine of respondeat superior is also fully applicable against The GEO Group's Oversight Personnel.

227) At all material times, Defendants GEO and its body of Oversight Personnel directly controlled and/or operated GCCF under color of law by acting through its staff of Directors, Administrators, Monitors, Wardens, Chiefs of Security, Training Officers, Corrections Officers, Grievance Lieutenants/Officers, Maintenance Supervisors, Accountability Officers, administrative staff, and various other employees, agents, and/or apparent agents hired, utilized, and/or employed by GEO and/or its Oversight Personnel to personally manage GCCF's daily affairs and to direct its day-to-day operations— implicating "Supervisory Personal Liability"— and is thereby directly responsible for their acts, omissions, and/or failure(s) to act as well as for their grossly negligent conduct and severe degree of "deliberate indifference" regarding the deprivation of Civil Rights and wrongful infliction of harm and/or damages upon the person of Pedro J. Amaro, with such persons being the persons of:

228) Defendant AMY CAMPOS was "A.C.A. Compliance Administrator" at GCCF at all material times.

229) Upon information and belief, CAMPOS, acting under color of law, was "personally" and "officially" responsible for oversight of GCCF, in regards to State/Federal Constitutional requirements and/or prohibitions, and the standards set by the American Correctional Association, as well as for GCCF's actual compliance with these requirements, prohibitions, and/or standards, including conditions of confinement, inmate safety, and application of statutorily mandated (NMCD) Policy/Procedure.

230) Defendant VINCENT HORTON was Warden of GCCF at all material times.

231) Upon information and belief, Defendant HORTON, acting in a supervisory role over GCCF, was personally and officially responsible for oversight of GCCF, including proper management, oversight, and developing appropriate formal and informal policies, procedures, and inmate safety

protections at GCCF.

232 ) Defendant J. GAY was Warden at GCCF at all material times.

233 ) Defendant GAY, acting in a supervisory role at GCCF, was personally and officially responsible for oversight of GCCF, including proper management, oversight, and developing appropriate formal and informal policies, procedures, and inmate safety protections at GCCF.

234) Defendant GLORIA CHAVEZ ("G. CHAVEZ") was Warden at GCCF at all material times.

235) Defendant G. CHAVEZ, acting in a supervisory role at GCCF, was personally and officially responsible for oversight of GCCF, including proper management, oversight, and developing appropriate formal and informal policies, procedures, and inmate safety protections at GCCF.

236) Defendant DOMINICA GARNAND was Warden at GCCF at all material times.

237) GARNAND, acting in a supervisory role at GCCF, was personally and officially responsible for oversight of GCCF, including proper management, oversight, and developing appropriate formal and informal policies, procedures, and inmate safety protections at GCCF.

238) Defendant GERALD MORRIS was Warden at GCCF at all material times.

239) MORRIS, acting in a supervisory role at GCCF, was personally and officially responsible for oversight of GCCF, including proper management, oversight, and developing appropriate formal and informal policies, procedures, and inmate safety protections at GCCF.

240) Defendant ERASMO BRAVO was Warden at GCCF at all material times.

241) BRAVO, acting in a supervisory role at GCCF, was personally and officially responsible for oversight of GCCF, including proper management, oversight, and developing appropriate formal and informal policies, procedures, and inmate safety protections at GCCF.

242) Defendant R. ULIBARRI was Warden at GCCF at all material times.

243) ULIBARRI, acting in a supervisory role at GCCF, was personally and officially responsible for oversight of GCCF, including proper management, oversight, and developing appropriate formal and informal policies, procedures, and inmate safety protections at GCCF.

244) Defendant JOHNNY JOHNSON was Warden at GCCF at all material times.

245) JOHNSON, acting in a supervisory role at GCCF, was personally and officially responsible for oversight of GCCF, including proper management, oversight, and developing appropriate formal and informal policies, procedures, and inmate safety protections at GCCF.

246) Defendant TIMOTHY HATCH was Warden at GCCF at all material times.

247) HATCH, acting in a supervisory role at GCCF, was personally and officially responsible for oversight of GCCF, including proper management, oversight, and developing appropriate formal and informal policies, procedures, and inmate safety protections at GCCF.

248) Defendant T. FOSTER was Warden at GCCF at all material times.

249) FOSTER, acting in a supervisory role at GCCF, was personally and officially responsible for oversight of GCCF, including proper management, oversight, and developing appropriate formal and informal policies, procedures, and inmate safety protections at GCCF.

250) Defendant "Mr. BEAIRD" was Warden at GCCF at all material times.

251) BEAIRD, acting in a supervisory role at GCCF, was personally and officially responsible for

oversight of GCCF, including proper management, oversight, and developing appropriate formal and informal policies, procedures, and inmate safety protections at GCCF.

252) Thus, Defendant WARDENS, who, at all material times, were acting within the course and scope of office and under color of law personally caused or contributed to The GEO Group's contractual noncompliance and GCCF's continuing hazardous conditions of confinement and either allowed CORIZON to provide substandard healthcare services to inmates or allowed CENTURION to continue providing substandard healthcare services to inmates at GCCF, and are thereby fully liable to Plaintiff Amaro for confinement under unsafe conditions, injuries immediately sustained, and for future potentially fatal health problems and damages stemming from exposures to carbon monoxide and/or Carbon Monoxide Poisoning under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

253) Defendant WARDENS are (each) further responsible to Plaintiff with "Supervisory Personal Liability" for grossly negligent hiring or employing of agents or other(s) to manage affairs and/or entities under their purview, and under "Special Relationship Liability."

254) Pursuant to NMTCA, the doctrine of respondeat superior is also fully applicable against Defendant WARDENS and The GEO Group.


255) Defendant Maj. PHIL ARAGON was "Chief of Security" at GCCF at all material times.

256) Upon information and belief, Defendant ARAGON, acting in a supervisory role at GCCF, was personally/officially responsible for oversight of GCCF's safety and/or security, including proper management of GCCF's security personnel and staff, as well as staff response to emergency situations and/or breaches of the institution's safety and/or security, and was also responsible for developing formal and informal policies, procedures, and inmate safety protections at GCCF, with the duty to protect GCCF's inmate population from harm and, especially known threats of harm.

Additional, respective, "Chiefs of Security," at GCCF with the same powers, authority, and responsibilities as Defendant ARAGON during times material to this Complaint include:

257) Defendant GERALD MORRIS,

258) Defendant "Mr. RESNICK", and

259) Defendant JOHNNY JOHNSON;

260) Thus, Defendant "CHIEFs of SECURITY," who, at all material times, were acting within the course and scope of office and under color of law, personally caused or contributed to The GEO Group's contractual noncompliance and GCCF's continuing hazardous conditions of confinement, and are thereby fully liable to Plaintiff, under 42 U.S.C. §1983, for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

261) Defendant "CHIEFs of Security" are (each) further liable to Plaintiff with "Supervisory Personal Liability", and under "Special Relationship Liability".

262) Pursuant to NMTCA, the doctrine of respondeat superior is also fully applicable against Defendant "CHIEFs of SECURITY" and The GEO Group.

263) Defendant BEN RAEL was a "Training Sergeant" at GCCF at all material times

264) B. RAEL, acting in a supervisory role at GCCF, was personally/officially responsible for oversight and training of GCCF staff, including proper management and oversight, ensuring and/or maintaining the training and qualifications of GCCF staff, ensuring GCCF staff knew and followed current correctional standards and/or requirements, and implemented all applicable safety protections at GCCF.

265) Thus, Defendant B. RAEL, who at all times pertinent to this Complaint was acting within the course and scope of office and under color of law, personally caused or contributed to GEO's contractual noncompliance and GCCF's continuing hazardous conditions of confinement - through grossly negligent oversight and training of GCCF staff - and is thereby fully liable to Plaintiff Amaro, under 42 U.S.C. §1983, for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

266) B. RAEL is further responsible to Plaintiff with "Supervisory Personal Liability" and under "Special Relationship Liability."

267) Pursuant to NMTCA, the doctrine of respondeat superior is also fully applicable against GEO and B. RAEL.

268) Defendant KARLA RAEL was an "Accountability Officer at GCCF during all material times

269) Upon information and belief, K. RAEL, acting in a supervisory role at GCCF, was personally and/or officially responsible for oversight of officer accountability, and staff conduct, action(s), and behavior, and ensuring GCCF staff knew, applied, and/or implemented all NMCD/GEO/GCCF Policies and/or Procedures as well as all applicable State and Federal correctional facility standards and/or requirements, and implemented all current inmate safety protections at GCCF.

270) Thus, Defendant K. RAEL, who at all material times was acting within the course and scope of office and under color of law, personally caused or contributed to GEO's contractual noncompliance and GCCF's continuing hazardous conditions of confinement - through grossly negligent oversight and accountability of GCCF staff - and is thereby fully liable to Plaintiff Amaro, under 42 U.S.C. §1983, for the deprivation of his Civil Rights and wrongful infliction of harm and/or damages with direct, joint, concurrent, successive, and/or vicarious liability.

271) K. RAEL is further responsible to Plaintiff with "Supervisory Personal Liability" and under "Special Relationship Liability."

272) Pursuant to NMTCA, the doctrine of respondeat superior is also fully applicable against GEO and K. RAEL.

273) Defendant "Mr." CASTILLO was a "Maintenance Supervisor" at GCCF at all material times.

274) Upon information and belief, Defendant CASTILLO, acting in a supervisory role at GCCF, was personally and officially responsible for proper maintenance and/or repair work, as well as the physical and structural safety of GCCF through 'hands-on' work and also oversight of Maintenance Technicians or other persons slated to perform actual repairs or maintenance work on the prison's structure and/or grounds, with an obligation to provide safe living environments and humane conditions of confinement.

Additional, respective, "Maintenance Supervisors" at GCCF with the same powers, authority, and responsibilities as Defendant CASTILLO during times material to this Complaint include:

275) Defendant S. CHAVEZ,

276) Defendant "Mr." CHAVEZ (not "S. CHAVEZ"), and

277) Defendant "Mr." TENORIO;

278) Thus, Defendant "Maintenance Supervisors" who, at all material times, were acting within the scope and course of office and under color of law, personally caused or contributed to The GEO Group's contractual noncompliance and GCCF's continuing hazardous conditions of confinement - through grossly negligent oversight or performance of 'maintenance' and/or shoddy repair work, or other - and are thereby fully liable to Plaintiff Amaro, under 42 U.S.C §1983, for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

279) Pursuant to NMTCA, the doctrine of respondeat superior is also fully applicable against GEO and Defendant "Maintenance Supervisors."

280) Defendant "Mr." GERHARDT was a "Fire, Safety, and Sanitation Officer" ("FSSO") at GCCF at all material times.

281) Upon information and belief, Defendant GERHARDT, acting in a supervisory role or position at GCCF, was responsible for the oversight of GCCF's "safety," to include the health, safety, and general well-being of the inmate population at GCCF, as well as ensuring safe and humane conditions of confinement.

Additional, respective "FSSOs" at GCCF with the same powers, authority, and responsibilities as Defendant GERHARDT during times material to this Complaint include:

282) Defendant "Mr." SWAGGART,

283) Defendant "Ms." GARCIA,

284) Defendant "Mr." BRANCH, and

285) Defendant "Mr." EVERHART;

286) Thus, Defendant "FSSOs," who, at all material times, were acting within the course and scope of office and under color of law, personally caused or contributed to The GEO Group's contractual noncompliance and GCCF's continuing hazardous conditions of confinement - through grossly negligent performance of official 'safety'-related responsibilities as an "FSSO" - and are thereby fully liable to Plaintiff Amaro, under 42 U.S.C. §1983, for the deprivation of his Civil Rights and wrongful infliction of harm/damages with joint, direct, concurrent, successive, and/or vicarious liability.

287) Defendant "FSSOs" are further liable to Plaintiff with "Supervisory Personal Liability" and under "Special Relationship Liability."

288) Pursuant to NMTCA, the doctrine of respondeat superior is also fully applicable against The GEO Group and Defendant "FSSOs."

289) Defendant Lt. KRYSTLE RIVERA was a "Grievance Lieutenant" at GCCF at all material times.

290) Upon information and belief, Lt. K. RIVERA, acting in a supervisory role or position at GCCF, was duly responsible for conducting the affairs and proceedings of NMCD's "Grievance" program in full accordance with published "NMCD Policy/Procedure 150500," as statutorily prescribed by State and Federal regulations and/or Constitutional requirements, which necessarily entails or includes direct and/or oversight responsibility for ensuring that each prisoner is afforded all rights of "Due Process" in the course of prison "grievance" proceedings (pursuant to the 5th, 8th, and/or 14th Amendments) and against the infliction of punishment(s) without due process of law, with an affirmative duty to also ensure that the conditions of confinement are both reasonably safe and humane and fully comply with Constitutional requirements and/or A.C.A. standards.

291) Thus, Defendant Lt. K. RIVERA, who at all material times was acting within the course and scope of office and under color of law, personally caused or contributed to The GEO Group's contractual noncompliance and GCCF's continuing hazardous conditions of confinement as well as to having allowed CORIZON to continue providing substandard healthcare services to the inmate population at GCCF - through grossly negligent conduct as "Grievance Lieutenant" and/or the denial of due process in choosing not to complete or properly process inmate "grievances" — and is thereby liable to Plaintiff Amaro, under 42 U.S.C. §1983, for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

292) Lt. K. RIVERA is further responsible to Plaintiff with "Supervisory Personal Liability" for grossly negligent employing of "Grievance Techs" to manage affairs under her purview, and under "Special Relationship Liability."

293) Pursuant to NMTCA, the doctrine of respondeat superior is also fully applicable against GEO and Defendant Lt. K. RIVERA.

294) Defendant JESSICA RODGERS aka. JESSICA VIGIL was a "Grievance Lieutenant" at GCCF at all material times.

295) Upon information and belief, RODGERS, acting in a supervisory role or position at GCCF, was duly responsible for conducting the affairs and proceedings of NMCD's "Grievance" program in full accordance with published "NMCD Policy/Procedure 150500," as statutorily prescribed by State and Federal regulations and/or Constitutional requirements, which necessarily entails or includes direct and/or oversight responsibility for prisoners' interests, health, safety, and general well-being, and that the conditions of confinement are reasonably safe and humane.

296) As "Grievance Lieutenant," Defendant RODGERS possessed particular knowledge and awareness of GCCF's history of Carbon Monoxide Poisoning events through both Grievance investigations and personal involvement in GCCF's carbon monoxide-related emergencies, yet decided not to intervene with the hazardous conditions of confinement.

297) But-for RODGERS's grossly negligent acts, omissions, and failure(s) to act, in regards to GCCF's continuing hazardous conditions of confinement, the person of Pedro J. Amaro would not

have been unnecessarily subjected to the threat of exposure to carbon monoxide, Carbon Monoxide Poisoning, or the damages sustained thereby, where the injuries incurred by Mr. Amaro were foreseeable and preventable, and the continuing threat of Carbon Monoxide Poisoning and corresponding harm, injury, or death would have long-been addressed and corrected or otherwise abated and would not still be present at GCCF or directly affecting the quality of Mr. Amaro's life.

298) Thus, Defendant RODGERS/VIGIL, who at all material times acted within the course and scope of office and under color of law, personally caused or contributed to GEO's contractual non-compliance and GCCF's continuing hazardous conditions of confinement and is thereby fully liable to Plaintiff Amaro, under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of harm/damages with joint, direct, concurrent, successive, and/or vicarious liability.

299) RODGERS/VIGIL is further responsible to Plaintiff Amaro with "Supervisory Personal Liability," and under "Special Relationships Liability."

300) Pursuant to NMTCA, the doctrine of respondeat superior is also fully applicable against GEO and Defendant RODGERS/VIGIL.

301) Defendant GLORIA CHAVEZ ("G. CHAVEZ") was a "Grievance Lieutenant" at GCCF at all material times.

302) Upon information and belief, G. CHAVEZ, acting in a supervisory role or position at GCCF, was duly responsible for conducting the affairs and proceedings of NMCD's "Grievance" program in full accordance with published "NMCD Policy Procedure 150500," as statutorily prescribed by State and Federal regulations and/or Constitutional requirements, which necessarily entails or includes direct and/or oversight responsibility for prisoners' interests, health, safety, and general well-being, and that the conditions of confinement are humane and reasonably safe.

303) As "Grievance Lieutenant" Defendant G. CHAVEZ possessed particular knowledge and awareness of GCCF's history of Carbon Monoxide Poisoning events through both Grievance investigations and personal involvement/presence during GCCF's carbon monoxide-related emergencies, yet decided not to intervene with the hazardous conditions of confinement.

304) But-for G. CHAVEZ's grossly negligent acts, omissions, and/or failure(s) to act, in regards to GCCF's continuing hazardous conditions of confinement, the person of Pedro J. Amaro would not have been unnecessarily subjected to the threat of exposure to carbon monoxide, Carbon Monoxide Poisoning, or the damages sustained thereby, where the injuries incurred were foreseeable and preventable, and the continuing threat of Carbon Monoxide Poisoning and corresponding harm, injury, or death would have long-been addressed, corrected, or otherwise abated and would not still be present at GCCF or directly affecting the quality of Mr. Amaro's life.

305) Thus, Defendant G. CHAVEZ, who at all material times acted within the course and scope of office and under color of law, personally caused or contributed to GEO's contractual non-compliance and GCCF's continuing hazardous conditions of confinement and is thereby fully liable to Plaintiff Amaro, under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of harm and damages with direct, joint, concurrent, successive, and/or vicarious liability.

306) G. CHAVEZ is further responsible to Plaintiff with "Supervisory Personal Liability," and

ings of any State Prisoner not lawfully sentenced to death who decided not to take reasonable administrative measures so as to ensure that the State's Prisoners were safely and humanely confined in manners consistent with the 5th, 8th, and 14th Amendments, and their respective requirements.

316) Defendant GEO, acting on behalf of the State of New Mexico, is thereby – under color of law – an agent or actor of the State, and Plaintiff Amaro hereby incorporates the content, claims, and allegations of paragraphs 174–181 against Defendant GEO's "General Counsel", Defendant JOHN J. BULFIN, GEO's Unknown/Unidentified Albuquerque-based legal counselors/representatives, and any other lawyers/firms hired, employed, or otherwise utilized by Defendant GEO fitting the description of paragraphs 174–181.

317) Collectively, GEO Defendants, Parties 227–316, as GCCF's A.C.A. Compliance Administrator, Wardens, Chiefs of Security, Training Sergeant, Accountability Officer, Maintenance Supervisors, FSSO's, Grievance Lieutenants, Mental Health Director, and DOES #4, responsible for management of GCCF and its daily affairs, staff's conduct/behavior, and/or control of its day-to-day operations are hereafter referred to as "GEO", "GCCF Staff", and/or "GEO Defendants."

318) Defendant GEO's GCCF Staff are further responsible to Plaintiff Amaro with "Supervisory Personal Liability" for grossly negligent hiring or employing of agents or other(s) to manage powers and/or affairs under their respective purviews and/or failure(s) to engage supervisory and/or oversight powers and/or exert proper authority so as to protect GCCF's inmate population - including Plaintiff Amaro - from undue harm, especially where such harm was foreseeable, preventable, and from a known and particular source, and where the risk of harm is on a continuing basis with a direct threat to the interests, health, safety, and/or general well-being of GCCF's coming from the risk of exposure to the deadly fumes of carbon monoxide pending further mechanical malfunctions of the prison's propane-powered boiler(s)/flue(s).

319) Pursuant to NMTCA, the doctrine of respondeat superior is fully applicable against both GEO and GEO's GCCF Staff.

## CORIZON, LLC and CORIZON Defendants

320) Upon information and belief, during all times relevant to this Complaint, Defendant CORIZON, LLC operated Defendant CORIZON HEALTH in New Mexico for the purpose of contracting with the State or an agency thereof to the ends that, pursuant to said contract, CORIZON, LLC would, ultimately, provide its healthcare services to New Mexico's inmate population – through its apparent subsidiary.

321) Defendant CORIZON, LLC is a foreign corporation registered to do business in New Mexico through (its apparent subsidiary) Defendant CORIZON HEALTH, whose registered agent for service of process is CT Corporation System, 123 East Marcy, Santa Fe, New Mexico 87501.

322) Defendant CORIZON, LLC , "the nation's largest 'for-profit' provider of inmate

healthcare," is "a Tennesse company that has faced over 150 lawsuits by more than 200 inmates in the State since 2007 over allegations of negligent care, civil rights violations, and sexual abuse," which was-ultimately- the subject of an 'in-depth' investigation by NMCD who prepared a corresponding report "in anticipation of litigation", whose headquarters is located at 103 Powell Court, Brentwood, Tennessee 37027.

323) At all material times, Defendant CORIZON, LLC acted under control of JOHN(s)/ JANE(s) DOES #5 who are its Unknown/Unidentified Founders, Owners, President(s) and/or CEO(s), Board of Directors, Vice Presidents), Directors, agents, and/or apparent agents, whose grossly negligent conduct, oversight, and/or management and acts, omissions, and/or failure(s) to act, with a severe degree of "deliberate indifference" towards GCCF's running-history of Carbon Monoxide Poissoning events and the inadequate medical treatment(s) with substandard healthcare services provided to GCCF's inmate population by Defendant CORIZON HEALTH, directly caused or contributed to the Carbon Monoxide-related injuries wrongfully inflicted upon Plaintiff Amaro as well as GCCF's continuing unsafe conditions of confinement and ongoing risk of Carbon Monoxide-related harm, and are thus fully liable to the person of Pedro J. Amaro for injuries immediately sustained, exposure to inadequate/unsafe medical care, medical malpractice, and also for future potentially fatal health problems and damages stemming from Carbon Monoxide Poisoning and CORIZON's inadequate/improper treatment of Plaintiff Amaro in response to exposure to carbon monoxide to toxic levels under 42 U.S.C. §1983 for the deprivation of his Civil Rights under color of law and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

324) Collectively, CORIZON Defendants, Parties 320-323, including JOHN(s)/JANE(s) DOES #5, as the Unknown/Unidentified Founders, Owners, President(s)/CEO(s), Board of Directors, Vice President(s), agents, and/or apparent agents responsible for controlling Defendant CORIZON HEALTH's actions and/or business affairs, are hereafter referred to as "CORIZON", "CORIZON's Controlling Board," "CORIZON's Oversight Personnel", and/or "CORIZON Defendants".

325) Defendant CORIZON's Controlling Board and/or Oversight Personnel are further responsible to Plaintiff Amaro with "Supervisory Personal Liability" for grossly negligent hiring or employing of agents or other(s) to manage powers, affairs, and/or entities under their respective purviews, and also under "Special Relationship Liability."

326) Pursuant to NMTCA, the doctrine of respondeat superior is also fully applicable against CORIZON, LLC and its Oversight Personnel regarding the acts, omissions, and/or failure(s) to act or other negligent conduct of Defendant CORIZON HEALTH.

326) At all material times, Defendant CORIZON, LLC and its body of Oversight Personnel directly controlled and/or operated Defendant CORIZON HEALTH under color of law by acting through its staff of Directors, Administrators, Providers, employees, agents, and/or apparent agents, including but not limited to, office management, nurses, doctors, physician assistants, certi- fied nurse practitioners,, technicians, and various other staff hired, utilized, and/or employed

by Defendant CORIZON and its Oversight Personnel to personally manage CORIZON HEALTH's daily affairs and to direct day-to-day operations, and is thereby directly responsible for their acts, omissions, and/or failure(s) to act as well as for their grossly negligent conduct, medical malpractice, and severe degree of "deliberate indifference" regarding substandard healthcare services, the deprivation of Civil Rights, and the wrongful infliction of harm/damages upon the person of Pedro J. Amaro, with direct, joint, concurrent, successive, and/or vicarious liability.

327) Defendant LISA STABER, M.D., is a "Medical Doctor" who served Defendant CORIZON, LLC as "Regional Director" over New Mexico, out of CORIZON, LLC's "Regional New Mexico Office" - Defendant "CORIZON HEALTH", located at 6745 Academy, N.E., Suite A, Albuquerque, New Mexico 87109.

328) Upon information and belief, Defendant LISA STABER, M.D., duly acting in a supervisory role or position over Defendant CORIZON HEALTH and CORIZON's Medical Staff at GCCF, was personally responsible for the management and oversight, and/or training of CORIZON's Medical Staff at GCCF, which included "Emergency Response" and ensuring that New Mexico's inmate population are afforded - and actually receive - proper and/or adequate medical care and/or services, and was also directly responsible for utilization review and authorizing treatment(s) for New Mexico's prisoners.

329) As "Regional Director", with power/authority to authorize or deny medical treatment(s) for inmates, Defendant STABER possessed particular knowledge of GCCF's history of Carbon Monoxide Poisoning events as a direct result of her review of recurring carbon monoxide-related "Emergency" and/or "Medical" responses at GCCF by CORIZON's Medical Staff.

330) Upon information and belief, STABER - as CORIZON's "Regional Director" - was ultimately responsible - for CORIZON - for prisoners' interests, health, safety, and general well-being, which necessarily included 'oversight authority' over GEO at GCCF, in areas related to health and/or welfare of GCCF's inmate population, and, yet, decided not to intervene with the hazardous conditions of confinement despite particular medical knowledge of carbon monoxide's effect on a person's health.

331) Thus, Defendant STABER, who at all material times was acting within the course and scope of office and under both "Medical" authority and color of law, personally caused or contributed to CORIZON's substandard healthcare services (to inmates) as well as GEO's contractual noncompliance and GCCF's continuing hazardous conditions of confinement, and is thereby, fully liable to Plaintiff Amaro, under 42 U.S.C. §1983, for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

332) Defendant KATHERINE ARMIJO was "Health Services Administrator" ("HSA") for Defendant CORIZON HEALTH at GCCF at all times pertinent hereto.

333) As Defendant CORIZON HEALTH's "HSA", Defendant ARMIJO, acting in a supervisory role, was directly responsible for oversight of the day-to-day operation of GCCF's "Medical Facility" and the medical treatment of prisoners at GCCF, including providing proper management (with training) of CORIZON's Medical personnel during emergency situations, ensuring

GCCF's prisoners were afforded proper care and/or medical attention, and for providing GCCF's prisoners with the community level or standard of care.

334) As CORIZON's "HSA" at GCCF, Defendant ARMIJO - through personal involvement-possessed particular knowledge of GCCF's history of Carbon Monoxide Poisoning events and, yet, irrespective of her direct responsibility for prisoners' interests, health, safety, and/or general well-being, decided not to exercise or exert her position's 'oversight authority' upon GEO and did not act to intervene with the hazardous conditions of confinement or the State's continued imprisonment of inmates at the inherently unsafe correctional facility.

335) Thus, Defendant ARMIJO, who at all material times was acting within the course and scope of office and under color of law, personally caused or contributed to CORIZON's substandard healthcare services as well as GEO's contractual noncompliance and GCCF's continuing hazardous conditions of confinement, and is thereby fully liable to Plaintiff Amaro, under 42 U.S.C, §1983, for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

336) Defendant TIMOTHY TRAPP, M.D., is a "Medical Doctor" who, at all material times, was employed by Defendant CORIZON, LLC through (its apparent subsidiary) Defendant CORIZON HEALTH to provide competent medical care to the inmate population at GCCF.

337) As a "(Medical) Provider" at GCCF, Defendant TRAPP, M.D, was personally and directly responsible for providing due and proper medical care and/or attention to GCCF's prisoners with a community level or standard of care, and with adequate treatment(s), and/or the normal course(s) of action in response to a given ailment, diagnosis, and/or prognosis.

338) At no time following the February 6, 2014 medical care of Plaintiff Amaro for exposure to carbon monoxide at GCCF did Defendant TRAPP, M.D. perform or cause to be performed any of the standard medical tests typically afforded to victims of Carbon Monoxide Poisoning.

339) Instead, on April , 2016, TRAPP finally refused to conduct or order appropriate medical tests related to possible respiratory damage resulting from exposure to carbon monoxide on the grounds that he would not provide documentation of any possible (respiratory) damage that could be used in a suit at law.

340) Despite direct responsibility for prisoners' interests, health, safety, and/or general well-being, personal knowledge of GCCF's history of Carbon Monoxide Poisoning events, and particular medical knowledge of the effects of carbon monoxide on a person's health, Defendant TRAPP decided not to exercise 'oversight authority' over GEO at GCCF, and did not act to intervene with the hazardous conditions of confinement or the State's continued imprisonment of inmates at the inherently unsafe correctional facility.

341) Thus Defendant TRAPP, M.D., who at all material times was acting within the course and scope of office and under color of law, personally caused or contributed to CORIZON's substandard healthcare services as well as GEO's contractual noncompliance and GCCF's continuing hazardous conditions of confinement, and is thereby fully liable to Plaintiff Amaro, under 42 U.S.C. §1983, for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

342) Upon information and belief, Defendant KATHERINE ALLEN is a "Physician Assistant" who at all material times was employed by Defendant CORIZON, LLC through (its apparent subsidiary) Defendant CORIZON HEALTH to provide medical care to prisoners at GCCF.

343) As a "(Medical) Provider" at GCCF, Defendant ALLEN was directly responsible for providing due and proper medical care and/or attention to GCCF's prisoners with a community level or standard of care, and with adequate treatment(s) and/or the normal course(s) of action in response to a given ailment, diagnosis, and/or prognosis.

344) At no time following the medical care of Plaintiff Amaro for exposure to carbon monoxide at GCCF did Defendant ALLEN perform or cause to be performed any of the standard medical tests typically afforded to victims of Carbon Monoxide Poisoning.

345) Despite direct responsibility for prisoners' health, safety, interests, and/or general well-being, personal knowledge of GCCF's history of Carbon Monoxide Poisoning events, and particular medical knowledge of the effects of carbon monoxide on a person's body/health, Defendant ALLEN decided not to exert or exercise 'oversight authority' over GEO at GCCF and did not act to intervene with the hazardous conditions of confinement or the State's continued imprisonment of inmates at the inherently unsafe correctional facility.

346) Thus, Defendant ALLEN, who at all times pertinent to this Complaint was acting within the course and scope of office and under color of law, personally caused or contributed to CORIZON's substandard healthcare services as well as GEO's contractual noncompliance and GCCF's continuing hazardous conditions of confinement, and is thereby fully liable to Plaintiff Amaro, under 42 U.S.C. § 1983, for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

347) Defendant JOHN(s)/JANE(s) DOES #4 ("DOES #4"), as indicated at paragraph 174, is all other Unknown/Unidentified persons and/or firms representing or advising the State and/or any of its agents, or apparent agents, ... acting or having acted (under color of law) in the place and/or stead of 'legal counsel' to/for any of the State's actors, agents, or apparent agents, having actual or constructive knowledge of and/or advising State Officials or other State personnel in any capacity regarding any/all instances of carbon monoxide exposures and/or poisonings of any State Prisoner not lawfully sentenced to death who decided not to take reasonable administrative measures so as to ensure that the State's Prisoners were safely and humanely confined in manners consistent with the 5th, 8th, and 14th Amendments, and their respective requirements.

348) Defendants CORIZON HEALTH and CORIZON, LLC, acting on behalf of the State of New Mexico, are thereby - under color of law - agents or actors of the State, and Plaintiff Amaro hereby incorporates the content, claims, and allegations of paragraphs 174-181 against Defendant CORIZON's Unknown/Unidentified legal representatives including, but not limited to, any CORIZON-specific "General Counsel" or team of lawyers, and any other 'counsellors,' lawyers, firms, or representatives hired, employed, or otherwise utilized by Defendant CORIZON, LLC and/or CORIZON HEALTH fitting the description of paragraphs 174-181.

-50-

349) Thus, at all material times, Defendant CORIZON, LLC directly controlled and/or operated the "Medical Facility" at GCCF by and through Defendant CORIZON HEALTH and its staff of Directors, Administrators, Providers, assistants, C.N.P.s, P.A.s, M.D.s, nurses, technicians, office management, and various other staff hired, employed, or otherwise utilized to render medical care, attention, and/or treatment to prisoners at GCCF under color of law pursuant to a contract with the State of New Mexico or an agency thereof thereby directly causing or contributing to the medical malpractice on prisoners at GCCF as well as the continuation of GEO's contractual noncompliance and GCCF's hazardous conditions of confinement, and is thereby fully liable to Plaintiff Amaro, under 42 U.S.C. § 1983, for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

350) Collectively, Defendants, Parties 326 - 348, as Defendant CORIZON HEALTH, and CORIZON HEALTH's Regional Director and Medical Staff at GCCF, including the Regional Director, Administrators, Medical Doctor(s), and Physician Assistant(s), responsible for providing proper care and adequate medical attention and/or treatment(s) to GCCF's inmate population on a day-to-day basis, are hereafter referred to as "CORIZON", "CORIZON Medical Staff", and/or CORIZON Defendants."

351) Defendants CORIZON HEALTH, STABER, M.D., and ARMIJO are further responsible to Plaintiff with "Supervisory Personal Liability" for grossly negligent hiring, employing, and/or training of agents or other(s) to render proper care and/or adequate medical attention and/or treatment.

352) Pursuant to NMTCA, the doctrine of respondeat superior is fully applicable against CORIZON's Medical Staff, Defendant STABER, M.D., and CORIZON HEALTH.

353) Defendants CORIZON HEALTH, STABER, M.D., and CORIZON's Medical Staff are also responsible to Plaintiff Amaro under "Special Relationship Liability."

## "CENTURION" and CENTURION Defendants

354) Upon information and belief, during all times relevant to this Complaint, Defendant CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC operated the Medical Facility at GCCF under purview of a 'parent company' pursuant to a contract with the State of New Mexico or an agency thereof for the (sole) purpose of providing its healthcare services to New Mexico's inmate population.

355) Defendant CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC's ("CCH-NM") 'parent company' is known to Plaintiff Amaro only as "CENTURION," with a mailing address of P.O. Box 4090, Farmington, Missouri 63640-4198.

356) Upon information and belief, Defendant "CENTURION" is a foreign corporation registered to do business in New Mexico through its New Mexico-based subsidiary whose registered agent for service of process, if there is one, is unknown to Plaintiff Amaro.

357) Upon information and belief, the address of CENTURION's subsidiary – CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC – is thought to be next to

New Mexico Medical Board at 2055 S. Pacheco St., Building 400, Santa Fe, New Mexico 87505.

358) At all material times, Defendant "CENTURION" acted under control and/or interests of Defendants JOHN(s)/JANE(s) DOES #6 ("DOES #6"), who are its Unknown/Unidentified Founder(s), Owner(s), President(s)/CEO(s), Board of Directors, Vice Presidents (s) Directors, agents, and/or apparent agents whose grossly negligent conduct, oversight, and/or management - coupled with acts, omissions, and/or failure(s) to act - have thereby directly caused or contributed to GEO's contractual noncompliance and GCCF's continuation of the known risk of serious harm, injury, or death, as well as the continued substandard healthcare services afforded to victims of exposure to carbon monoxide at GCCF.

359) Upon information and belief, Defendant "Mr." RIVERS is the "Vice President of Operations" for the parent company known only as "CENTURION."

360) Upon information and belief, Defendant CENTURION's "Vice President of Operations" - "Mr." RIVERS - acting in a supervisory role or position over Defendant CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC, is personally and officially responsible for the management, oversight, and/or training of CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC and it's Medical Staff at GCCF, which includes "Emergency Response" and ensuring that New Mexico's prisoners are afforded and actually receive proper and adequate medical treatment and/or healthcare services, and are free from unreasonable risks to their health, safety, and/or general well-being.

361) Upon information and belief, Defendant RIVERS, did not act to intervene with GEO's contractual noncompliance and GCCF's hazardous conditions of confinement or the State's continued imprisonment of inmates at the inherently unsafe correctional facility.

361) As a direct result of the gross and severe degree of 'deliberate indifference' of Defendants CENTURION, DOES #6, and RIVERS to GEO's contractual noncompliance and GCCF's running-history of Carbon Monoxide Poisoning events, and the ongoing failure of CENTURION's own Medical Staff to exercise or exert its 'medical (oversight) authority' so as to protect the inmate population at GCCF from a known and specific threat of serious harm, injury, or death, the unduly continuing hazardous conditions of confinement have given way to additional incidents of exposure to carbon monoxide (at GCCF) since the February 6, 2014 incident and the subsequent filing of this action "ifp" in September of 2016, each taking place in conjunction with or during recurring mechanical malfunctions of the prison's boiler(s)/flue(s), in which Plaintiff Amaro sustained immediate injury by experiencing physical symptoms of exposure to carbon monoxide in direct relation to at least two of the of the more serious additional incidents (on February 4, 2018; and again, on March 27, 2018), and where the residual, 'lingering' gas(es) of the noxious fumes caused or contributed to (temporary conditions of) a phenomenon coin "sick building syndrome" as the toxic fumes are not contained in any one area of the prison's structure but are disbursed throughout the affected Housing Unit (if not the majority of the facility) in decreasing ratios.

362) Plaintiff Amaro also experienced symptoms of exposure to carbon monoxide (eye irritation, nasal irritation, headaches, dizziness, and light neausea) from approximately October 18-23, 2016,

which also coincided with Housing Unit #2 "borders malfunctioning."

363) Having been exposed to carbon monoxide, GCCF's inmate population also must face the prospect of Carbon Monoxide Poisoning-related medical care and/or treatment(s) from a (mostly retained) Medical Staff who, formerly under **CORIZON**, have a history of Civil Rights violations and of rendering inadequate/unsafe medical treatment(s) with substandard healthcare services to victims of exposure to toxic levels of carbon monoxide, and who continue to only offer "I-Prin" and/or "Apap" as the standard treatment and/or remedy.

364) Thus, Defendants "CENTURION", DOES #6, and RIVERS are personally and/or offially fully liable to Plaintiff Amaro, under 42 U.S.C. §1983, for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

365) Collectively, "CENTURION" Defendants, Parties 354→364, as "CENTURION," DOES #6, the "Vice President of Operations," and the Unknown Founders, CEO(s)/President(s), Board of Directors, Vice President(s), agents, and/or apparent agents, responsible for controlling the action(s) and/or business affairs of CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC, are hereafter referred to as "CENTURION," "CENTURION's Controlling Board", "CENTURION's Oversight Personnel," and/or "CENTURION Defendants."

366) Defendant CENTURION's Controlling Board are further personally, individually, and/or offially responsible to Plaintiff Amaro with "Supervisory Personal Liability" for grossly negligent hiring or employing of agents or other(s) to manage powers, affairs, and/or entities under their respective purviews, and also under "Special Relationship Liability."

367) Pursuant to NMTCA, the doctrine of respondeat superior is also fully applicable against RIVERS, DOES #6, and CENTURION.

368) At all material times, Defendant CENTURION and its body of Oversight Personnel directly controlled and/or operated the Medical Facility at GCCF under color of law by acting through CCH-NM and its staff of Director(s), Administrator(s), Provider(s), employees, agents, and/or apparent agents, including but not limited to office management, nurses, technicians, physician assistants, certified nurse practitioners, doctors, and various other staff hired, utilized, and/or employed by Defendant CENTURION's Controlling Board to personally manage CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC's daily affairs and to direct day-to-day operations at GCCF, and is thereby directly liable for their individual and/or collective acts, omissions, and/or failure(s) to act as well as for their grossly negligent conduct, medical malpractice, failure to treat, and severe deliberate indifference regarding substandard healthcare services, the deprivation of Civil Rights, and the wrongful infliction of harm/damages upon the person of Pedro Jr Amaro, with direct, joint, concurrent, successive, and/or vicarious liability.

369) Upon information and belief, Defendant MURRAY YOUNG, M.D., is a "Medical Doctor" who serves Defendant CENTURION as "Regional Medical Director" over New Mexico out of CENTURION's New Mexico office — CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC — located in Santa Fe, New Mexico.

370) Upon information and belief, Defendant MURRAY YOUNG, M.D., duly acting in a supervisory role or position over Defendant CCH-NM and CENTURION's Medical Staff at GCCF, was personally responsible for the management and oversight, and/or training of CENTURION's Medical Staff at GCCF, which included "Emergency Response" and ensuring that New Mexico's inmate population are afforded - and actually receive - proper and/or adequate medical care and/or services, and was also directly responsible for utilization review and authorizing treatment(s) for New Mexico's prisoners.

371) As "Regional Medical Director," with power/authority to authorize or deny medical treatment(s) for inmates, Defendant YOUNG possessed particular knowledge of GCCF's history of Carbon Monoxide Poisoning events as a direct result of his review of "Emergency" and/or "Medical" responses by CENTURION Medical Staff to carbon-monoxide related events at GCCF.

372) Upon information and belief, YOUNG - as CENTURION's "Regional Medical Director" - was ultimately responsible - for CENTURION - for prisoners' interests, health, safety, and general well-being, which necessarily included "(medical) oversight authority' over GEO at GCCF, in areas related to health and/or welfare of GCCF's inmate population, and, yet, decided not to intervene with the hazardous conditions of confinement despite particular medical knowledge of carbon monoxide's effect on a persons health.

373) Thus, Defendant YOUNG, M.D., who at all material times was acting within the course and scope of office and under both "Medical authority" and color of law, personally caused or contributed to CENTURION's substandard healthcare services (to inmates) as well as GEO's contractual non-compliance and GCCF's continuing hazardous conditions of confinement, and is thereby fully liable to Plaintiff Amaro, under 42 U.S.C. §1983 for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

374) Defendant KATHERINE ARMIJO was "Health Services Administrator" ("HSA") for Defendant CCH-NM at GCCF at all times pertinent hereto.

375) As Defendant CCH-NM's "HSA", Defendant ARMIJO, acting in a supervisory role or position, was directly responsible for oversight and management of the day-to-day operations of GCCF's "Medical Facility" and the medical treatment(s) of prisoners at GCCF, including providing proper management (with training) of CENTURION's Medical Staff and personnel during emergency situations, ensuring GCCF's prisoners were afforded proper care and/or medical attention, and for providing GCCF's prisoners with the community level or standard of care.

376) As CENTURION's "HSA" at GCCF, Defendant ARMIJO - through direct personal involvement - possessed particular knowledge of GCCF's history of Carbon Monoxide Poisoning events and, yet, decided not to exercise or exert her position's 'oversight authority' upon GEO and did not act to intervene with the hazardous conditions of confinement at GCCF or the State's continued imprisonment of inmates at the inherently unsafe correctional facility - irrespective of her direct responsibility for prisoners' interests, health, safety, and/or general well-being.

377) Thus, Defendant ARMIJO, who at all material times was acting within the course and scope of office and under color of law, personally caused or contributed to CENTURION's substandard healthcare services as well as GEO's contractual noncompliance and GCCF's continuing hazardous conditions

of confinement, and is thereby fully liable to Plaintiff Amaro, under 42 U.S.C. §1983, for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

378 ) Upon information and belief, Defendant KATHERINE ALLEN is a "Physician Assistant" who at all material times was employed by Defendant "CENTURION" through (its apparent subsidiary) CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC to provide medical care to prisoners at GCCF.

379 ) As a "(Medical) Provider" at GCCF, Defendant ALLEN was directly responsible for pro-viding due and proper medical care and/or attention to GCCF's prisoners with a community level or standard of care, and with adequate treatment(s) and/or the normal course(s) of action in response to a given ailment, diagnosis, and/or prognosis.

380 ) At no time during her medical care of Plaintiff Amaro did Defendant ALLEN perform or cause to be performed any of the standard medical tests typically afforded to victims of Carbon Monoxide Poisoning – even with full knowledge of Plaintiff's Carbon Monoxide Poisoning on February 6, 2014, and subsequent exposures to the fumes of carbon monoxide and complaints of carbon-monoxide-related medical issues.

381 ) Despite direct responsibility for prisoners' health, safety, interests, and general well-being, personal knowledge of GCCF's running history of Carbon Monoxide Poisoning events, and particular medical knowledge of the effects of carbon monoxide on a person's body/health, Defendant ALLEN decided not to exercise or exert '(medical) oversight authority' over GEO at GCCF and did not act to intervene with the hazardous conditions of confinement or the State's continued imprisonment of inmates at the inherently unsafe correctional facility.

382 ) Thus, Defendant ALLEN, who at all times pertinent to this Complaint was acting within the course and scope of office and under color of law, personally caused or contributed to CCH-NM's substandard healthcare services as well as GEO's contractual noncompliance and GCCF's continuing hazardous conditions of confinement, and is thereby fully liable to Plaintiff Amaro, under 42 U.S.C. §1983, for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

383 ) Defendant JOHN(s)/JANE(s) DOES #4 ("DOES #4"), as indicated at paragraph 174, is all other Unknown/Unidentified persons and/or firms representing or advising the State and/or any of its agents, or apparent agents, ... acting or having acted (under color of law) in the place and/or stead of 'legal counsel' to /for any of the State's actors, agents, or apparent agents, having actual or constructive knowledge of and/or advising State Officials or other State personnel in any capacity regarding any/all in-stances of carbon monoxide exposures and/or poisonings of any State Prisoner not lawfully sentenced to death who decided not to take reasonable administrative measures so as to ensure that the State's Prisoners were safely and humanely confined in manners consistent with the 5th, 8th, and 14th Amendments, and their respective requirements.

384) Defendants "CENTURION" and CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC, acting on behalf of the State of New Mexico, are thereby - under color of law - agents or actors of the State, and Plaintiff Amaro hereby incorporates the content, claims, and allegations of paragraphs 174-181 against Defendant CENTURION's Unknown/Unidentified legal representatives including, but not limited to, any CENTURION- specific "General Counsel" or team of lawyers, and any other 'counsellors,' lawyers, firms, or representatives hired, employed, or otherwise utilized by Defendant "CENTURION" and/or CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC fitting the discription and/or terms of paragraphs 174-181.

385) Thus, at all material times, Defendant "CENTURION" directly controlled and/or operated the "Medical Facility" at GCCF by and through Defendant CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC and its staff of Directors, Administrators, Providers, assistants, CNPs, P.A.s, M.D.s, nurses, technicians, office management, and various other staff hired, employed, or otherwise utilized to render medical care, attention, and/or treatment to prisoners at GCCF under color of law pursuant to a contract with the State of New Mexico or an agency thereof thereby directly causing or contributing to the medical malpractice on prisoners at GCCF as well as the continuation of GEO's contractual noncompliance and GCCF's hazardous conditions of confinement, and is thereby fully liable to Plaintiff Amaro, under 42 U.S.C. §1983, for the deprivation of his Civil Rights and wrongful infliction of harm/damages with direct, joint, concurrent, successive, and/or vicarious liability.

386) Collectively, CENTURION Defendants, Parties 368-385, as CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC and CCH-NM's Regional Medical Director and Medical Staff at GCCF, including the Regional Medical Director, Administrators, Medical Doctor(s), and Physician Assistant(s), responsible for providing proper care and adequate medical attention and/or treatment(s) to GCCF's inmate population on a day-to-day basis, are hereafter referred to as "CENTURION", "CENTURION Medical Staff," "CENTURION CORR. H/C", and/or "CENTURION Defendants."

387) Defendants CENTURION CORR. H/C, YOUNG, M.D., and ARMIJO are further responsible to Plaintiff with "Supervisory Personal Liability" for grossly negligent hiring, employing, and/or training of agents or other(s) to render proper care and/or adequate medical attention and/or treatment.

388) Defendants CENTURION CORR. H/C, YOUNG, M.D., and CENTURION Medical Staff are also responsible to Plaintiff Amaro under "Special Relationship Liability."

389) Pursuant to NMTCA, the doctrine of respondeat superior is fully applicable against CENTURION Medical Staff, CENTURION CORR. H/C, Defendant YOUNG, M.D., CENTURION, and CENTURION's Controlling Board.

## DEFENDANT OWNERS

390) Defendants JOHN(s)/JANE(s) DOES #7 ("DOES #7") are the Unknown/Unidentified OWNER(S) of the real property bearing the street address of 1039 Agua Negra Rd., Santa Rosa,

-56-

New Mexico 88435, upon which the physical structure commonly known as the "Guadalupe County Correctional Facility" was constructed.

391) Upon information and belief, at all times relevant to this Complaint, the structure of the Guadalupe County Correctional Facility and the real estate it was constructed upon have remained under ownership of Unknown JOHN(s)/JANE(s) DOES, separate and aside from The GEO Group and/or the State of New Mexico, who operates the prison on a 'for-profit' basis.

392) Upon information and belief, DOES #7 erected the physical structure for the sole purpose of profiteering by engaging in contract(s) with the State of New Mexico or an agency and/or agent thereof to the ends that the structure would be put to lease either to the State of New Mexico and/or an agency thereof, or to an agent acting on, or intending to act on, behalf of the State and/or its agency and, ultimately, used under color of law to house a portion of New Mexico's inmate population as a "Correctional Facility" duly sanctioned by the State of New Mexico.

393) The physical structure itself - through its design and construction - has proven itself to be prone to repeating events of toxic contamination of the prison's sleeping quarters and living environments during and/or in relation to mechanical malfunctions of the prison's boiler(s)/flue(s).

394) To the best of Plaintiff Amaro's knowledge, the running history of carbon monoxide-related events at GCCF extends back to at least 2007.

395) Upon information and belief, during the 10-year-plus span of time of knowledge and/or awareness of the structure's inherently unsafe underlying conditions of confinement, neither any of the aforementioned DEFENDANTS nor the Unknown OWNER(S) have acted to address the structure's apparently defective design/construction.

396) But-for the grossly negligent acts, omissions, and/or failure(s) to act, of Defendant DOES #7, the unsafe conditions would have been addressed and/or cured and the person of Pedro J. Amaro would not have been unnecessarily subjected to the threat of exposure to carbon monoxide, Carbon Monoxide Poisoning, or the damages sustained thereby, where the injuries incurred by Mr. Amaro were clearly foreseeable and easily preventable, and the continuing threat of Carbon Monoxide Poisoning and corresponding harm, injury, or death would have long-been corrected or otherwise abated and would not still be present at GCCF or directly affecting the quality of Mr. Amaro's life.

397) With a severe degree of deliberate indifference, Defendants DOES #7 have quietly stood by while GEO Defendants have chronicled numerous 'minor' incidents of exposure to carbon monoxide and documented several 'major' or 'serious' events of Carbon Monoxide Poisoning, and, yet, have decided not to intervene with the hazardous conditions of confinement at GCCF.

398) The ongoing failure of Defendants DOES #7 to take or accept responsibility for their prison's apparent structural defect(s), while reaping profits as the inmate population at GCCF is knowingly subjected to a continuing risk of serious harm, injury, or death amounts to reckless endangerment as well as assault/battery.

399) DOES #7, as the OWNER(S) of a defectively designed/constructed private prison, specifically engineered for the sole purpose of profiteering through industrialized 'for-profit' confinement, are directly liable to Plaintiff Amaro for injuries to his person incurred by the structure's apparent defect(s).

400) DOES #7, as the OWNER(S) of the real property and its plainly defective structure, whether directly or by extension, are also - in fact and essence - agents and/or actors of/for the State of New Mexico and are thereby liable to Plaintiff, under 42 U.S.C. § 1983, for the deprivation of his Civil Rights and wrongful infliction of harm/damages resulting from the structure's inherently unsafe conditions of confinement with direct, joint, concurrent, successive, and/or vicarious liability.

401) Defendants DOES #7 are further personally and/or individually responsible to Plaintiff with "Supervisory Personal Liability for grossly negligent hiring or employing of agents or other(s) to manage power(s), affairs, and/or entities under their purview where DOES #7, having constructed a prison facility, employed The GEO Group to operate the facility on their behalf and for their benefit.

402) DOES #7 are also responsible to Plaintiff under "Special Relationship Liability."

403) Plaintiff hereby incorporates the full content, claims, and allegations of paragraphs 174-181 against the Unknown/Unidentified legal counselors and/or representatives of Defendants DOES #7 who fit the terms and description of the stated paragraphs.

* 404) It has been alleged to Plaintiff Amaro by a somewhat questionable authority that the Unknown/Unidentified OWNER(S) of GCCF and its property - whom Plaintiff has named Defendants JOHN(s)/JANE(s) DOES #7 - may in fact be the actual "County of Guadalupe" itself, however, Plaintiff - in his capacity as a "State Prisoner," with very limited capabilities and highly restricted access to information - has been unable to confirm the basis of this allegation. * 405) Plaintiff proceeds with naming the COUNTY OF GUADALUPE as the possible DOES #7 Defendant(s) until the fact of the matter is settled.

406) Plaintiff contends that, respectively, each DEFENDANT is responsible for having immediately and/or proximately caused the deprivation of his Civil Rights and the harm, injury, and/or damages resulting from or related to the deprivation of his Civil Rights.

## JURISDICTION AND VENUE

407) Jurisdiction is asserted pursuant to 42 U.S.C. § 1983, with pendent jurisdiction existing as to State law claims (invoked pursuant to 28 U.S.C. § 1343 (a)(3)).

408) This Court has subject-matter jurisdiction.

409) This Court has jurisdiction over the parties as the matter arises from Plaintiff's confinement at the Guadalupe County Correctional Facility at Santa Rosa, New Mexico and all parties are either individuals working or residing in New Mexico and/or corporate personnel and their respective corporations and/or entities doing business in and/or with the State of New Mexico or an agent/agency thereof.

-58-

410) Venue is proper in this Court as all of the events leading up to this lawsuit occurred in New Mexico.

411) In accordance with PLRA requirements, Plaintiff has exhausted or attempted to exhaust the avenues of administrative remedy available to State Prisoners under NMCD Policy and Procedure (Policy 150500 - Inmate Grievances) with State and/or GEO Defendants either denying relief from the hazardous conditions of confinement and/or refusing to answer or respond to said attempts at administrative relief.

## NATURE OF THE CASE

**CAUSE A:** As to the underlying Claims of unconstitutional confinement in conditions which are unsafe and inhumane, contrary to the Constitutional requirements and/or proscriptions of the 5th, 8th, and 14th Amendments:

412) To Plaintiff's personal knowledge, GCCF has a running-history of known/documented Carbon Monoxide Poisoning events which date back in excess of 10 (ten) years.

413) During the decade-long-plus duration of knowledge or awareness of the unsafe underlying conditions of confinement, not one of the respective DEFENDANTS have acted to address the facility's underlying conditions which cause or result in toxic contamination of the prison's sleeping quarters and living environments during or in direct relation to mechanical malfunctions of the prison's boiler(s) and/or flue(s).

414) In each of the incidents, the carbon monoxide-related event was predicated by a mechanical malfunction of the prison's boiler(s)/flue(s).

415) Due to the structure's design/construction, Carbon Monoxide escaping from the mechanically malfunctioning boiler(s)/flue(s) accumulates in common space shared with H.V.A.C. ductwork.

416) As the carbon monoxide is delivered to individual cells, the logical conclusion is that, in addition to to filling space and spreading naturally, at some point, the concentration of carbon monoxide in the 'shared' space infiltrates the H.V.A.C. ductwork and gets routed directly into the sleeping quarters - individually - and on-top-of the normal, natural spreading (which further indicates that the H.V.A.C. duct-work itself may not be correctly or efficiently sealed or sealed as well as it should be).

417) While it is given and clearly foreseeable that, at some point, the prison's boiler(s)/flue(s) will again malfunction, such malfunctions need not result in life-threatening toxic contaminations of the prison's sleeping quarters and/or living environments.

418) Future 'additional' events of exposure to carbon monoxide are easily preventable in the following ways:

  a. A properly placed flue should not malfunction or be prone to malfunctions or malfunctioning;
  b. The creation of a ceil between the boilers and 'attic' area, and - when combined with a secondary means of (open) ventilation - would effectively create a dedicated 'boiler-

room' and (if completed with quality workmanship) would positively correct the structure's current flaws and act to avert and/or abate any further carbon monoxide-related incidents by containing/releasing any escaping fumes before they could threaten or harm the inmate population at GCCF;

c. A complete transition from natural-gas/propane-fuelled boilers to electric boilers would absolutely moot the presently unsafe underlying conditions altogether.

419) Demonstrating a gross and severe degree of deliberate indifference, DEFENDANTS have each effectively denied or refused to accept responsibility and have opted to turn a 'blind-eye' to the structure's plainly exposed defect(s) and the corresponding risk of harm while continuing to knowingly place–and leave–people in harm's-way.

420) To date, not any of the DEFENDANTS have bothered to provide any warning to anyone of the structure's life-threatening issues –'posted' or otherwise.

421) STATE Defendants owed a duty to Plaintiff to confine him and/or ensure the confinement of his person in conditions which are humane and reasonably safe.

422) STATE Defendants breached the duty owed to Plaintiff by allowing The GEO Group to maintain an inherently unsafe correctional facility while continuing to house a portion of New Mexico's inmate population at GCCF.

423) GEO Defendants owed a duty to Plaintiff to house him in conditions of confinement which are humane and reasonably safe and free from harm.

424) GEO Defendants breached the duty owed to Plaintiff by operating and maintaining a correctional facility which is known to be inherently unsafe while continuing to house a portion of New Mexico's inmate population at the affected facility.

425) CORIZON Defendants owed a duty of (medical) care to Plaintiff regarding his interests, health, safety, and general well-being.

426) CORIZON Defendants breached the duty owed to Plaintiff by choosing not to exercise or exert its medical-based oversight authority, where it possessed the power to intervene with GCCF's inherently dangerous conditions of confinement, yet decided not to intervene and thereby perpetuated the status quo of recklessly endangering New Mexico's inmate population by knowingly subjecting the prisoners to inherently unsafe conditions of confinement.

427) CENTURION Defendants owed a duty of (medical) care to Plaintiff regarding his interests, health, safety, and general well-being.

428) CENTURION Defendants breached the duty owed to Plaintiff by choosing not to exercise or exert its medical-based oversight authority, where it possessed the power to intervene with GCCF's inherently dangerous conditions of confinement, yet decided not to intervene and thereby perpetuated the status quo of recklessly endangering New Mexico's inmate population by knowingly subjecting the prisoners to inherently unsafe conditions of confinement.

429) Defendant OWNER(S), in choosing to engage in the 'for-profit confinement' industry, owed a duty to Plaintiff to provide him with conditions of confinement which are humane and reasonably safe and free from harm.

430) Defendant OWNER(S) breached the duty owed to Plaintiff by constructing a prison

facility which is plainly afflicted with an underlying life-threatening structural defect or defect(s) which present a known, knowable, foreseeable, preventable, and unnecessary risk of serious harm, injury, or death.

431) Instead of 'fixing' the problem or enacting adequate inmate protections to prevent the infliction of harm or otherwise establishing a system or systems to protect the inmate population at GCCF from future exposures to carbon monoxide, all DEFENDANTS have allowed the underlying conditions to remain as if no risk of harm was present.

432) The continuing risk of harm, coupled with the lack of any warning whatsoever, expresses to the inmate population at GCCF that inmate safety is, essentially, a low priority, which is a fact of knowledge that damages the human psyche, through its fact and longevity, and by causing mental trauma with severe emotional harm and needless suffering.

433) Plaintiff's attempts at administrative remedy have been met with denials of liability, disbelief of situation, and/or anti-prisoner-based repression.

434) Thus, Plaintiff Amaro is wrongfully subjected to conditions of confinement which have proven themselves to be plainly unsafe, and, inhumanely, continue to be utterly hazardous, in violation of his 8th and 14th Amendments' Rights to conditions which are humane and reasonable safe and free from harm.

435) In attempting to formally address this issue and cause the matter to be affirmatively cured, Plaintiff was once slated for 'emergency transfer' shortly after the September 2, 2016, initial-filing of this action "ifp," but was not retaliatorily relocated due, in part, to an "Education-Hold" as he was then enrolled in a two-year vocational program.

436) Even with the removal of Plaintiff from the facility, the underlying conditions would still continue to be unsafe as the threat of harm stems from the inherently defective design and/or construction of the facility and not from Plaintiff's presence at GCCF.

437) Despite the sheer gravity of the situation and the looming threat of a tragic event, the underlying conditions of confinement remain unchanged and continue to present a known risk of serious harm, injury, or death from a specific source in a particular manner.

438) But-for the acts, omissions, and/or failure(s) to act of the DEFENDANTS - both, individually and collectively - in regards to GCCF's continuing threat of serious harm, injury, or death resulting from hazard(s) posed by the underlying conditions of confinement, the person of Pedro J. Amaro would not have been wrongfully and recklessly subjected to the un-necessary endangerment and risk of corresponding harm, and the continuing threat of exposure to carbon monoxide and/or actual Carbon Monoxide Poisoning would have long-been addressed and corrected, cured, or otherwise abated and would not still be present at GCCF or directly affecting the quality of Mr. Amaro's life.

439) Thus, DEFENDANTS - individually and collectively - who at all times were acting within the course and scope of office or ownership and under color of law, who have each had the power and/or authority to intervene with the unsafe conditions of confinement and, yet, decided not to act and/or 'make waves', but chose to maintain the status quo of indifference to the risk of harm and gravity of the threat of carbon monoxide, personally caused or contributed to the ongoing

risk of serious harm, injury, or death stemming from the prison's unchanged hazardous underlying conditions of confinement, and are thereby fully liable to Plaintiff Amaro, under 42 U.S.C. §1983, for the deprivation of his Civil Rights and reckless subjection to the endangerment of prison-conditions which present a known and preventable risk of serious harm, injury, or death from exposure to carbon monoxide pending further mechanical malfunctions of the prison's boiler(s)/(flue(s) with direct, joint, concurrent, successive, and/or vicarious liability.

440) DEFENDANTS are further responsible to Plaintiff - individually and collectively - under "Special Relationship Liability."

441) STATE Defendants S. MARTINEZ, RICHARDSON, BALDERAS, KING, NMCD, JABLONSKI, MARCANTEL, WILLIAMS, BREWSTER, ROARK, LeMASTER, PHILLIPS, A. MARTINEZ, SELVAGE, V. RIVERA, G. CHAVEZ, and The NEW MEXICO GOVERNOR'S OFFICE are responsible to Plaintiff with "Supervisory Personal Liability" for grossly negligent hiring or employing of agents or other(s) to manage affairs, powers, and/or entities under their respective purviews.

442) GEO's Controlling Board; GEO Defendants CAMPOS, HORTON, GAY, G. CHAVEZ, GARNAND, MORRIS, BRAVO, ULIBARRI, JOHNSON, HATCH, FOSTER, BEAIRD, Maj. ARAGON, MORRIS, RESNICK, JOHNSON, CASTILLO, S. CHAVEZ, "Mr." CHAVEZ, TENORIO, Lt. K. RIVERA, G. CHAVEZ, RODGERS/VIGIL; and, The GEO Group are responsible to Plaintiff with "Supervisory Personal Liability."

443) CORIZON's Controlling Board; CORIZON Defendants STABER and ARMIJO; and, CORIZON HEALTH and CORIZON, LLC are responsible to Plaintiff with "Supervisory Personal Liability."

444) CENTURION's Controlling Board; CENTURION Defendants RIVERS, YOUNG, and ARMIJO; CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC and "CENTURION" are responsible to to Plaintiff with "Supervisory Personal Liability."

445) OWNER(s), JOHN(s)/JANE(s) DOES #7 and/or The COUNTY OF GUADALUPE, as "Defendants," are responsible to Plaintiff with "Supervisory Personal Liability."

446) Pursuant to NMTCA, the doctrine of respondeat superior is fully applicable against the Defendants cited in paragraphs 440, 441, 442, 443, 444, and 445 and their respective entities.

## CLAIMS of CAUSE A : DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983

447) Plaintiff contends that each of the Defendants is and/or has been in some way or another actionably negligent in depriving him of his Civil Rights where the facts of CAUSE A coupled with the reference(s) of/to the respectively cited Defendants state multiple 5th/8th/14th Amendment claims by and through Constitutional violations in the following ways:
* All previous paragraphs are incorporated herein by reference.

448) CLAIM 1: Negligent Construction of a Correctional Facility; by Defendant OWNER(S), JOHN(s)/JANE(s) DOES #7 and/or The COUNTY OF GUADALUPE.

449) Defendant OWNER(S), in choosing to cash-in on New Mexico's 'for-profit confinement' industry by erecting a correctional facility upon their property with the express intent of leasing it to a separate party to the ends that a portion of New Mexico's inmate population would be confined in the Defendant OWNER(S)'s structure, Defendant OWNER(S) owed a clear duty to Plaintiff to provide a prison facility which would meet and/or exceed Constitutional requirements and which was reasonably safe and free from harm.

450) But-for the specific intent of the Defendant OWNER(S) to engage in and capitalize on the 'for-profit confinement' industry, the grossly negligent construction of a defectively designed prison facility would not have been undertaken and State inmates would not be subjected to the unsafe conditions of confinement presented by GCCF.

451) CLAIM 2: Inhumane Conditions of Confinement; against STATE and GEO Defendants.

452) As the facility's history shows, the physical structure of GCCF lends itself to repeating events of carbon monoxide-related 'emergencies' in which the prison's sleeping quarters and living environments are toxically contaminated with deadly fumes.

453) Confinement in conditions which invariably transform individual cells into veritable 'gas-chambers' - for prisoners who are not sentenced to death - is inhumane in that the inhospitable conditions inflict unreasonable suffering by damaging the human psyche through causing mental trauma with severe emotional harm and needless suffering.

454) CLAIM 3: Failure to Protect GCCF's Inmate Population from Dangerous Conditions of Confinement; against STATE, GEO, CORIZON, and CENTURION Defendants.

455) Defendants owed a duty to Plaintiff to protect his person from conditions of confinement which pose or present a risk of harm, especially where the risk is known and preventable.

456) Defendants breached that duty by choosing not to compel GEO or GEO Defendants to address and rectify or otherwise abate GCCF's particular underlying conditions and/or structural defects which allow gas(es) escaping from mechanically malfunctioning boiler(s)/flue(s) to toxically contaminate the prison's sleeping quarters and living environments while continuing to allow GEO to exercise custody over State prisoners at the inherently unsafe prison.

457) CLAIM 4: Inadequate Maintenance of a Correctional Facility; by GEO, GEO Defendants, and Defendant OWNER(S), JOHN(s)/JANE(s) DOES #7 and/or the COUNTY OF GUADALUPE.

458) But-for the purpose of the facility's construction and intended use to house a portion of New Mexico's inmate population, the grossly negligent and utterly, ineffably inadequate maintenance of the facility would not pose a threat of harm to the State's prisoners amounting to a clear deprivation of the right to humane and reasonably safe conditions of confinement.

459) CLAIM 5: Reckless Subjection of GCCF's Inmate Population to Hazardous Conditions of confinement; by State and GEO Defendants.

460) By actively moving to allow GEO to exercise custody over New Mexico inmates at GCCF irrespective of the prison's inherently unsafe conditions of confinement amounts to a wrongfully

reckless subjection of the prisoners to conditions known to be capable of presenting a risk and/or inflicting harm, injury, and/or death upon unsuspecting inmates.

461) CLAIM 6: Failure To Provide Warning of GCCF's Inherently Unsafe Conditions of Confinement; by any/all DOES #7/OWNER(S), STATE, GEO, CORIZON, and CENTURION Defendants.

462) When DEFENDANTS were made aware of possible instances of harm or known threat(s) of harm (during the first incident of exposure to carbon monoxide), they owed a clear duty to Plaintiff to provide adequate warning of the risk and possible consequences, and the failure to do so resulted in unnecessary mental trauma.

463) CLAIM 7: Wrongful Endangerment; by all DOES #7/OWNER(S), STATE, GEO, CORIZON, and CENTURION Defendants.

464) In choosing to confine inmates at GCCF - a prison facility prone to experiencing potentially deadly events of exposure to carbon monoxide - Defendants DOES #7, STATE Defendants, and GEO Defendants wrongfully place a portion of New Mexico's inmate population directly in harm's-way, thereby wrongfully exposing the prisoners - Mr. Amaro included - to the dangers of a known risk of harm.

465) In choosing not to exercise their '(Medical) oversight authority' and intervene with the confinement of prisoners at GCCF, CORIZON and CENTURION Defendants wrongfully caused State prisoners to be placed directly in harm's-way by recklessly allowing the inmates to be exposed to the dangers of a known risk of harm.

466) CLAIM 8: Wrongful Subjection of Prisoners To Foreseeable, Preventable, and Unnecessary Harm; by STATE and GEO Defendants.

467) Despite clear knowledge of GCCF's problematic history of Carbon Monoxide Poisoning events, STATE and GEO Defendants, who exercise control and direct custody over inmates, wrongfully continue to recklessly utilize GCCF as a place of confinement and thereby knowingly subject a portion of New Mexico's inmate population to the risk of unnecessary harm which is both foreseeable and preventable.

468) CLAIM 9: Defective Health/Care Policy; by STATE, GEO, CORIZON, and CENTURION Defendants.

469) Defendants, who owed a clear duty to protect inmates' interests, health, safety, and general well-being from harm, demonstrate a defective health/care policy by breaching their duty to protect inmates from a known risk of harm, irrespective of the harm/damage(s) that may result, where the threat is preventable and unnecessary, which also induces a degree of mental trauma.

470) CLAIM 10: Assault; by STATE and GEO Defendants.

471) Defendants, insolently placing or allowing the placement of the person of Pedro J. Amaro in a position to receive harm, great bodily harm, or even death, have, thereby, committed an assault on his person by and through the subjection to a known threat of harm.

472) CLAIM 11: Unconstitutional Infliction of Punishment Which Is Cruel and/or Unusual; by all DOES #7, STATE, GEO, CORIZON, and CENTURION Defendants.

473) The imprisonment of Plaintiff by STATE and GEO Defendants in conditions of confinement which are known to be harmful and potentially fatal amounts to an infliction of

punishment which is especially cruel and very unusual in that the known threat of harm in this case, comes from the sudden presence of carbon monoxide in the prison's sleeping quarters and general living environments — without any prior warning.

474) Defendants CORIZON and CENTURION, irrespective of the dangerous conditions of confinement, allowed STATE and GEO Defendants to exercise control and custody over inmates at GCCF, and, in choosing not to intervene with '(Medical) oversight authority', caused or contributed to the unconstitutional infliction of punishment which is both cruel and unusual.

475) Defendants DOES #7 and/or the COUNTY OF GUADALUPE, as the OWNER(S) of GCCF, caused or contributed to the unconstitutional infliction of punishment which is both cruel and unusual by erecting and making available to The GEO Group and/or the State of New Mexico, a prison facility which presents a known risk of harm to the inmates thereat confined as a result of unaddressed and/or uncorrected, or otherwise unabated structural defects.

476) CLAIM 12: Wrongful Infliction Of Punishment Without Due Process Of Law; by all DOES #7 and/or COUNTY OF GUADALUPE, STATE, GEO, CORIZON, and CENTURION Defendants.

477) Each Defendant — having wrongfully inflicted punishment upon the person of Pedro J. Amaro by and through imprisonment in inherently unsafe conditions of confinement — inflicted the punishment without due process of law, where subjection to hazardous, potentially deadly conditions of confinement is strictly not a part of Plaintiff's formal sentence.

478) CLAIM 13: Failure To Provide Adequate Avenue Of Redress or Relief; by STATE and GEO Defendants.

479) Per published NMCD Policy/Procedure 150500 "Inmate Grievances," Plaintiff engaged the Grievance process so as to cause the hazardous underlying conditions of confinement to be addressed and/or cured, or otherwise abated.

480) Despite the clearly outlined process and procedures, GEO's Staff at GCCF did not provide any adequate or viable means of redress or relief.

481) The culture of GEO's Staff at GCCF includes a disregard of NMCD's "Grievance" Policy — as well as its importance — irrespective of the Constitutional Rights of inmates.

482) STATE Defendants are clearly aware or should be aware of GEO's contractual noncompliance, in regards to NMCD Grievance Policy, yet choose not to meaningfully intervene and require GEO's Staff at GCCF to properly process each "Informal Complaint" and any subsequent (formal) "Grievance".

483) The failure of STATE and GEO Defendants to provide Plaintiff with a meaningful avenue of (administrative) redress and/or relief of grievances violated his Right to Due Process of a statutorily mandated avenue of (administrative) redress and/or relief.

484) But-for the violation of Plaintiff's 5th/14th Amendments' Right(s) to/of Due Process of law, STATE and GEO Defendants, as a result of the neutral completion of NMCD's Grievance process, would have been (administratively) compelled to take steps to not just identify the cause(s) of the recurring events of exposure to carbon monoxide, but to take the necessary steps to neutralize the inherently dangerous underlying conditions of confinement.

485) CLAIM 14: Negligent Supervision Of GEO; by STATE Defendants.

486) STATE Defendants demonstrate their individual and collective negligent supervision of GEO by allowing GEO to not only breach the terms of their respective contract with the State of New Mexico, but also in continuing to allow GEO to excercise custody and control over a portion of New Mexico's inmate population at an inherently dangerous prison facility.

487) CLAIM 15; Negligent Supervision Of CORIZON; by STATE Defendants.

488) STATE Defendants demonstrate their individual and collective negligent supervision of CORIZON by having allowed CORIZON to not only breach the terms of their respective contract with the State of New Mexico, but in having allowed CORIZON to breach the terms of its contract with the State on a large scale by disregarding its duty to protect inmates from known threats of harm, injury, or death, and doing so while neglecting to conduct medical audits as scheduled.

489) CLAIM 16: Negligent Supervision Of CENTURION; by STATE Defendants.

490) STATE Defendants demonstrate their individual and collective negligent supervision of CENTURION by having allowed CENTURION to not only breach the terms of their respective contract with the State of New Mexico, but in allowing CENTURION to breach the terms of its contract on a large scale by disregarding its duty to protect inmates from known threats of harm, injury, or death, where, upon information and belief, the State continues to neglect to conduct medical audits as scheduled.

491) CLAIM 17. Negligent Hiring, Credentialing, Training, Supervision, and Retention; by GEO, GEO Oversight Personnel, and GEO Defendants.

492) At all material times, Defendant GEO, responsible for the due and proper care of inmates, through its employees and agents, was required to use the ordinary care of a reasonably prudent entity in hiring, credentialing, training, supervising, and staffing, and in having policies in place to ensure that inmates at GEO-operated prison facilities in New Mexico were not needlessly endangered.

493) The portion of New Mexico's inmate population confined at GCCF are confined in conditions of confinement which are inherently unsafe due to structural defects stemming from a flawed architectural design and/or construction.

494) At no time, extending from the first instance of Carbon Monoxide Poisoning, has GEO's Maintenance Supervisors - who have identified the underlying cause(s) of toxic contaminations - acted to meaningfully address the structure's physical defects.

495) At no time has GEO's respective Wardens and/or supervisory staff at GCCF meaningfully acted to compel respective Maintenance Supervisors to address and correct, cure, or otherwise abate the underlying cause(s) of toxic contaminations.

496) At no time has GEO's Oversight Personnel meaningfully acted to compel GEO's respective Wardens and/or supervisory staff at GCCF to compel GEO's Maintenance Supervisors to meaningfully address, correct, cure, or otherwise abate the structure's underlying cause(s) of the recurring toxic contaminations.

497) Thus, beginning with GEO and GEO Oversight Personnel, the sequence of negligent qualifying, hiring, credentialing, training, supervising, and/or retention of persons who have personally caused

or contributed to the ongoing threat and risk of harm presented by and through GCCF's physical structure is demonstrated:

    a. but-for the negligent qualifying, hiring, training, supervision, and retention of Maintenance Supervisors by Wardens, the hazardous underlying conditions of confinement would have automatically addressed by a properly qualified, trained, supervised, and retained Maintenance Supervisor and his staff;

    b. but-for the negligent qualifying, hiring, training, supervision, and retention of GCCF supervisory staff of Deputy Wardens, Associate Wardens, Chiefs of Security, Grievance Lieutenants, and A.C.A. Compliance Administrators by Wardens and/or GEO Oversight Personnel, properly qualified, credentialed, trained, supervised, and retained supervisory staff would have meaningfully compelled Maintenance Supervisors to address the hazardous underlying conditions of confinement;

    c. but-for the negligent qualifying, hiring, credentialing, training, supervision, and retention of respective Wardens by GEO and GEO Oversight Personnel, properly qualified, credentialed, trained, and supervised Wardens would have properly qualified, hired, credentialed, trained, supervised, and retained quality Maintenance Supervisors and supervisory staff who were not negligent and who would have either automatically acted to address the hazardous underlying conditions of confinement or would have meaningfully compelled Maintenance Supervisors to do so at once, for the safety of the inmate population at GCCF.

498) CLAIM 18: Negligent Hiring, Credentialing, Training, Supervision, and Retention; by CORIZON, CORIZON Oversight Personnel, and CORIZON Defendants.

499) At all material times, Defendant CORIZON, responsible for the due and proper care of inmates' health, through its employees and agents, was required to use the ordinary care of a reasonably prudent entity in hiring, credentialing, training, supervising, and staffing, and in having policies in place to ensure that inmates of New Mexico were not needlessly endangered.

500) The portion of New Mexico's inmate population confined at GCCF are confined under conditions of confinement which are inherently unsafe due to structural defects.

501) At no time during CORIZON's tenure at GCCF, through multiple events of Carbon Monoxide Poisoning, did CORIZON's HSA and/or Medical Staff at GCCF exert medical 'oversight authority' to meaningfully compel GEO to address GCCF's hazardous underlying conditions of confinement.

502) At no time during CORIZON's tenure at GCCF, did CORIZON's "Regional Director" meaningfully compel the HSA and/or Medical Staff at GCCF to exert medical 'oversight authority' to compel GEO to address GCCF's hazardous underlying conditions of confinement.

503) At no time during CORIZON's tenure at GCCF, did CORIZON's Oversight Personnel meaningfully compel its "Regional Director" to either exert medical 'oversight authority' and compel GEO to address GCCF's hazardous underlying conditions of confinement, or compel the HSA to exert medical 'oversight authority' to compel GEO to address GCCF's hazardous underlying conditions of confinement.

504) At no time during its tenure as the healthcare provider to New Mexico's inmate population did CORIZON or CORIZON Oversight Personnel meaningfully act to compel the State of New Mexico to exert its authority over GEO so as to cause GEO and/or DOES #2 and/or the COUNTY OF

GUADALUPE to address GCCF's hazardous underlying conditions of confinement for the safety of the inmate population confined thereat.

505) Thus, beginning with CORIZON and CORIZON Oversight Personnel, the sequence of negligent hiring, credentialing, training, supervising, and/or retention of persons who personally caused or contributed to the ongoing threat and risk of harm presented by and through GCCF's physical structure is demonstrated:

    a. but-for the negligent qualifying, hiring, credentialing, training, supervision, and retention of CORIZON's HSA and Medical Staff at GCCF, CORIZON's HSA and/or Medical Staff- properly qualified, credentialed, trained, and supervised - would have meaningfully acted to compel GEO to address the hazardous underlying conditions of confinement so as to protect GCCF's inmates from the known risk of harm;

    b. but-for the negligent qualifying, hiring, credentialing, training, supervision, and retention of CORIZON's Regional Director, by CORIZON and CORIZON Oversight Personnel, a properly qualified, credentialed, trained, and supervised HSA would have properly qualified, hired, credentialed, trained, supervised, and/or retained quality Medical Staff at GCCF who were not negligent and who would have either meaningfully acted to compel GEO to address the underlying cause(s) of the toxic contaminations, or would have acted to compel the State to require GEO to address the unsafe conditions of confinement for the overall safety of the prison's inmate population.

506) CLAIM 19: Negligent Hiring, Credentialing, Training, Supervision, and Retention; by CENTURION, CENTURION Oversight Personnel, and CENTURION Defendants.

507) At all material times, Defendant CENTURION, responsible for the due and proper care of inmates' health, through its employees and agents, was required to use the ordinary care of a reasonably prudent entity in hiring, credentialing, training, supervising, and staffing, and in having policies in place to ensure that inmates of New Mexico were not needlessly endangered.

508) The portion of New Mexico's inmate population confined at GCCF are confined under conditions of confinement which are inherently unsafe due to structural defects.

509) At no time during CENTURION's tenure at GCCF, through repeated events of Carbon Monoxide Poisoning, has CENTURION's HSA and/or Medical Staff at GCCF exerted medical 'oversight authority' to meaningfully compel GEO to address GCCF's hazardous conditions of confinement.

510) At no time during CENTURION's tenure at GCCF has CENTURION's 'Regional Medical Director" meaningfully compel the HSA and/or Medical Staff at GCCF to exert medical 'oversight authority' to compel GEO to address GCCF's hazardous underlying conditions of confinement.

511) At no time during CENTURION's tenure at GCCF, has CENTURION's Oversight Personnel meaningfully acted to compel the Regional Medical Director to either exert medical 'oversight authority' and compel GEO to address GCCF's hazardous underlying conditions of confinement, or compel the HSA to exert medical 'oversight authority' to compel GEO to address GCCF's hazardous underlying conditions of confinement.

512) At no time during its tenure at GCCF as the healthcare provider to New Mexico's inmate population has CENTURION or CENTURION Oversight Personnel meaningfully acted to

the State of New Mexico to exert its authority over GEO so as to cause GEO and/or DOES #7 and/or the COUNTY OF GUADALUPE to address GCCF's hazardous underlying conditions of confinement for the safety of the inmate population confined thereat.

513) Thus, beginning with CENTURION and CENTURION Oversight Personnel, the sequence of negligent hiring, credentialing, training, supervising, and/or retention of persons who personally caused or contributed to the ongoing threat and risk of harm presented by and through GCCF's physical is demonstrated:

    a. but for the negligent qualifying, hiring, credentialing, training, supervision, and retention of CENTURION's HSA and/or Medical Staff at GCCF, CENTURION's HSA and/or Medical Staff - properly qualified, credentialed, trained, and supervised - would have meaningfully acted to compel GEO to address the hazardous underlying conditions of confinement so as to protect GCCF's inmates from the known risk of harm;

    b. but for the negligent qualifying, hiring, credentialing, training, supervision, and retention of CENTURION's Regional Medical Director, by CENTURION and CENTURION Oversight Personnel, a properly qualified, credentialed, trained, and supervised HSA would have properly qualified, hired, credentialed, trained, supervised, and/or retained quality Medical Staff at GCCF who were not negligent and who would have either meaningfully acted to compel GEO to address the underlying cause(s) of the toxic contaminations, or would have acted to compel the State to require GEO to address the unsafe conditions of confinement for the overall safety of the prison's inmate population.

514) CLAIM 20: Negligent Hiring, Credentialing, Training, Supervision, and Retention; by STATE Defendants.

515) At all material times STATE Defendants, responsible for the due and proper care of inmates' interests, health, safety, and general well-being, through the State's Officials, employees, and agents, were required to use the ordinary care of a reasonably prudent entity in appointing, hiring, credentialing, training, supervising, and staffing, and in having policies in place to ensure that New Mexico's prisoners were not needlessly endangered.

516) With knowledge or awareness of STATE Defendants, the portion of New Mexico's inmate population confined at GCCF are confined under conditions of confinement which are inherently unsafe due to structural defects.

517) Extending from the first serious event of Carbon Monoxide Poisoning at GCCF, at no time has any STATE Defendant acted to meaningfully compel either GEO or DOES #7 and/or the COUNTY OF GUADALUPE to address GCCF's hazardous conditions of confinement.

518) At no time has any STATE Defendant acted to meaningfully compel the State ATTORNEY GENERAL'S OFFICE to become involved so as to protect the State's prisoners from preventable harm and/or enforce the terms of the State's contract upon GEO and/or DOES #7 and/or the COUNTY OF GUADALUPE.

519) Thus, beginning with the State's GOVERNOR'S OFFICE and respective GOVERNORs (Defendants S. MARTINEZ and RICHARDSON), the sequence of grossly negligent appointments, hiring, credentialing, training, supervision, and/or retention of persons who have personally

caused or contributed to the ongoing threat and risk of harm presented by and through GCCF's physical structure is demonstrated:

a. but-for the grossly negligent staffing of respective State Departments by CABINET SECRETARIES, NMCD, DOH, and HSD would have been adequately staffed with quality personnel who were properly hired, credentialed, trained, and supervised, and who would have meaningfully compelled either GEO or DOES #7/COUNTY OF GUADALUPE (or both) to immediately address GCCF's hazardous underlying conditions of confinement, or would have compelled the A.G.'s OFFICE to become involved for the safety of the inmates confined at GCCF;

b. but-for the grossly negligent appointments, hiring, credentialing, training, supervision, and retention of respective Cabinet Secretaries by Defendants S. MARTINEZ and RICHARDSON, respectively, properly qualified, credentialed, trained, and supervised Cabinet Secretaries would have been appointed/hired for New Mexico's CORRECTIONS DEPARTMENT, DEPARTMENT OF HEALTH, and HUMAN SERVICES DEPARTMENT, who would have meaningfully compelled either GEO or DOES #7/COUNTY OF GUADALUPE to address GCCF's hazardous underlying conditions of confinement so as to protect State inmates from the preventable harm and its risk;

c. but-for the grossly negligent appointments, hiring, credentialing, training, supervising, and retention of respective Cabinet Secretaries by Defendants S. MARTINEZ and RICHARDSON, properly qualified, credentialed, trained, and supervised Cabinet Secretaries and/or their respective faculties would have meaningfully compelled the New Mexico A.G.'s OFFICE to become involved so as to both enforce the terms of the State's contracts upon the contract holders and to require either GEO and/or DOES #7/COUNTY OF GUADALUPE to meaningfully address, correct, cure, or otherwise abate the structure's underlying cause(s) of the recurring toxic contaminations.

520 ) CLAIM 21: Negligent Hiring, Credentialing, Supervision, and Retention; by Defendants DOES #7 and/or the COUNTY OF GUADALUPE.

521 ) At all material times, Defendants DOES #7/COUNTY OF GUADALUPE, having erected a structure, intending — ultimately — to profit from the confinement of State Prisoners at the GUADALUPE COUNTY CORRECTIONAL FACILITY, were required to use the ordinary care of a reasonably prudent entity in 'hiring'/leasing, credentialing, supervising, and/or retention of the party selected to operate the correctional facility as a 'for-profit' private prison.

522 ) But-for the grossly negligent 'hiring' or leasing, credentialing, supervision, and/or retention of The GEO Group to operate GCCF as a profit-making prison facility, by Defendants DOES #7 and/or the COUNTY OF GUADALUPE, a quality 'for-profit' prison operator would have been employed to operate GCCF and would have automatically acted to address the prison's hazardous underlying conditions of confinement and cause(s) of the recurring toxic contaminations so as to protect prisoners from the risk of preventable harm, injury, or death.

523 ) CLAIM 22: Failing To Protect the Inmate Population At GCCF From Foreseeable, Preventable, And Unnecessary Harm, Injury, Or Death Posed By The Continuation OF the Hazardous

Conditions Of Confinement; by all STATE, GEO, and CENTURION Defendants as well as by OWNER(S), DOES #7 and/or COUNTY OF GUADALUPE.

524) In continuing to exercise control/custody over State inmates at GCCF, DEFENDANTS— who all have either knowledge of the prison's structural defects and/or awareness of possible harm to inmates confined thereat from exposure to carbon monoxide — demonstrate their ongoing individual and collective failure to protect New Mexico inmates from foreseeable, preventable, and unnecessary harm, injury, or death.

525) CLAIM 23: Failing To Protect The Inmate Population At GCCF From Any Future Potentially Fatal Harm(s)/Damage(s) Associated With Carbon Monoxide And/Or Carbon Monoxide Poisoning; by all STATE, GEO, and CENTURION Defendants, as well as by OWNER(S), DOES #7 and/or COUNTY OF GUADALUPE.

526) In continuing to exercise control/custody over inmates at GCCF irrespective of the prison's hazards, DEFENDANTS demonstrate their ongoing individual and collective disregard for both the immediate dangers and long-term effects of exposure to carbon monoxide and/or Carbon Monoxide Poisoning.

527) CLAIM 24: Negligent Operation Of A Correctional Facility; by all STATE, GEO, and CENTURION Defendants, and also OWNER(S), DOES #7/COUNTY OF GUADALUPE.

528) The operating, or enabling or allowing the operation of GCCF as a place of confinement even as it poses a continuing risk of serious harm, injury, or death from a known source in a particular manner, demonstrates intentional conduct that constitutes the grossly negligent operation of a for-profit prison as inmates are knowing subjected to risk of harm.

529) CLAIM 25: Negligent Operation Of A Medical Facility; by all STATE, GEO, and CENTURION Defendants, and also OWNER(S), DOES #7/COUNTY OF GUADALUPE.

530) The operating, or enabling or allowing the operation of the Medical Facility at GCCF, by CENTURION, even as the prison's structure and/or design poses a continuing risk of serious harm, injury, or death from carbon monoxide pending further mechanical malfunctions of the prison's boiler(s)/flue(s), demonstrates intentional conduct that constitutes the grossly negligent operation of a Medical Facility as all respective DEFENDANTS are allowed by CENTURION's Medical Staff to continue subjecting inmates to a known risk of harm while the Medical Staff chooses neither to exert its medical oversight authority nor to otherwise intervene with the hazardous underlying conditions of confinement for the safety of the inmates.

531) CLAIM 26: Negligence And Negligence Per Se; by all STATE, GEO, CORIZON, and CENTURION Defendants, as well as DOES #7 and/or COUNTY OF GUADALUPE.

532) Defendant OWNER(S), DOES #7 and/or COUNTY OF GUADALUPE, intending the confinement of a portion of the State's inmate population at their facility, owed a duty to Plaintiff to provide a prison that was reasonably safe and free from harm and/or structural defects.

533) Defendant GEO owed a duty to Plaintiff to use ordinary care in operating and managing GCCF as a 'for-profit' prison.

534) Defendant CORIZON owed a duty to Plaintiff to use ordinary care in protecting his person from known risks of harm through exertion of medical oversight authority, in this case.

535) Defendant CENTURION owed a duty to Plaintiff to use ordinary care in protecting his person from the known risk of harm in this case through exertion of medical oversight authority.

536) STATE Defendants— entities, officials, employees, and personnel— owed a duty of care to Plaintiff Amaro to use ordinary care in acting to confine his person under color of law.

537) By choosing not to use ordinary care to prevent foreseeable harm, DEFENDANTS have acted willfully, recklessly, wantonly, negligently and/or were grossly negligent per se, breaching the respective duty they owed to Plaintiff in multiple ways including, but not limited to the following:

   a. Choosing not to protect Plaintiff from a known risk of serious harm, injury, or death;

   b. Choosing not to warn Plaintiff about the known risk of harm;

   c. Choosing to subject Plaintiff to the known risk of harm;

   d. Choosing to allow the known risk of harm to continue unabated;

   e. Choosing to deny administrative relief and/or remedy to Plaintiff;

   f. Choosing to inflict emotional distress on Plaintiff through extreme negligence and deliberately indifferent conduct towards Plaintiff, the unsafe conditions of confinement at GCCF, and for the gravity of the situation as a whole.

538) CLAIM 27: Breach Of Contract Claim By Plaintiff Amaro; against GEO, CORIZON, and CENTURION.

539) The for-profit contracts under which The GEOGroup; CORIZON, LLC; CORIZON HEALTH; "CENTURION"; and/or CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC performed services at the Guadalupe County Correctional Facility compelled them to execute their functions and duties thereunder professionally, competently, safely, and reasonably and in full compliance with applicable State and Federal standards.

540) These contracts required Defendants GEO, CORIZON, and CENTURION to take all steps reasonably necessary to protect the safety and security of the inmates at GCCF, and to prevent reasonably foreseeable harm to the inmates, including harm from the prison's inherently defective design and/or construction and negligent or shoddy maintenance work or repairs of the facility and/or its grounds, as well as future harm from toxic poisoning.

541) Defendants GEO, CORIZON, and CENTURION breached these duties through their decisions not to adequately evaluate, qualify, train, monitor, supervise, discipline, and/or enforce policies in order to prevent foreseeable harm to inmates.

542) Plaintiff Amaro was an intended third-party beneficiary to the contracts under which GEO, CORIZON, and CENTURION performed their services.

543) The breach of their service contracts, by GEO, CORIZON, and CENTURION, have proximately put Plaintiff Amaro in a position to receive harm including great bodily harm, invasion of bodily integrity, physical pain and suffering, psychological pain and suffering, severe psychological and emotional distress, denial of competent medical care, risk of future harm from potentially fatal health problems related to exposure to carbon monoxide and/or Carbon Monoxide Poisoning, or death.

544) Defendants' GEO and CENTURION's ongoing breach of their service contracts and duty (-ies) owed acts to perpetuate the continuing risk of foreseeable harm from GCCF's conditions of confinement.

545) CLAIM 28: Legal Malpractice; by ATTORNEYs GENERAL, GENERAL COUNSELs for/of STATE Defendants, GEO, CORIZON, and CENTURION.

546) As legal counselors, representatives, and/or advisors to their respective clients and/or employers, each lawyer/firm, in acting for agents of the State of New Mexico regarding the for-profit confinement of persons, under color of law had a duty to protect their respective clients and/or employers from liability and especially liability from negligent advisement.

547) Legal counselors, representatives, and/or advisors to agents of the State of New Mexico – regarding the for-profit confinement of persons under color of law – thereby assume, by extension, a duty to protect State Prisoners from foreseeable harm, especially where the harm was preventable and unnecessary, and constitutes a violation to the Civil Rights of the inmates by the clients, respectively.

548) But-for the legal malpractice of the State's ATTORNEYs GENERAL, GENERAL COUNSELs for/of STATE Defendants, GEO, CORIZON, and CENTURION, the person of Pedro J. Amaro would not be unnecessarily in harm's way and/or under terms of confinement which pose a continuing risk of serious harm, injury, or death.

549) CLAIM 29: Malfeasance, Misfeasance, and/or nonfeasance; by STATE Defendants S. MARTINEZ, RICHARDSON, BALDERAS, KING, JABLONSKI, MARCANTEL, and WILLIAMS.

550) The acts, omissions, and/or failure(s) of State Officials to perform the distinct duties of their respective offices, in breach of duty of public concern, or improperly performing the duties of office in a wrongful or injurious manner, establishes misfeasance, malfeasance, and/or nonfeasance of Defendants S. MARTINEZ, RICHARDSON, BALDERAS, KING, JABLONSKI, MARCANTEL, and WILLIAMS in the following ways:

   a. Choosing not to duly ensure the safety of New Mexico inmates, including Plaintiff;
   b. Choosing not to duly protect New Mexico inmates from harm that is known, knowable, foreseeable, and preventable;
   c. Intentionally choosing to subject New Mexico inmates to wrongful endangerment;
   d. Choosing not to provide New Mexico inmates with any meaningful avenue of administrative remedy or relief;
   e. Choosing to engage in contracts with for-profit companies who have a history of failing to adequately perform the governmental functions for which they were enjoined to perform;
   f. Choosing to effectively condone or endorse a contractor's noncompliance and/or substandard performance by failing to enforce the terms of the State's contract upon the contractor or otherwise failing to compel the contractor to cease from the breaching of the contract;
   g. Choosing to effectively condone or endorse a contractor's violation of inmates' Civil Rights;
   h. Choosing to ignore contractual infractions and allow for-profit contractors to bilk the State of New Mexico through contractual noncompliance;
   i. Choosing to ignore serious warnings from numerous sources concerning the unsafe conditions of confinement at GCCF thereby putting and/or leaving the health of New Mexico prisoners wrongfully in harm's way.

551) The deliberate decision of State Officials S. MARTINEZ, BALDERAS and JABLONSKI, in

allowing GEO and CENTURION to, essentially, defraud the State by operating in breach of breach of their respective contracts by either failing to abide by the terms of their respective contracts and/or inadequately performing the services they were engaged to render or provide, amounts to both malfeasance of office and misconduct in office.

552) The deliberate, contemplated conduct of Defendants S. MARTINEZ, RICHARDSON, BALDERAS, KING, JABLONSKI, MARCANTEL, and WILLIAMS demonstrates the individual and collective depravity of those persons in regards to the official, private, and/or social duties each respective Defendant owed to the State of New Mexico, New Mexico's society at-large, as well as to New Mexico's prisoners.

553) As a direct and proximate result of the intentional, willful, reckless or grossly negligent acts, omissions, and/or failure(s) to act of Defendants S. MARTINEZ, RICHARDSON, BALDERAS, KING, JABLONSKI, MARCANTEL, and WILLIAMS, coupled with their individual and collective misfeasance, nonfeasance, malfeasance, misconduct, and/or moral turpitude, Plaintiff Amaro was put in a position to receive harm, including great bodily harm, invasion of bodily integrity, physical pain and suffering, psychological pain and suffering, severe psychological and emotional distress, denial of competent medical care, risk of future harm from potentially fatal health problems related to exposure to carbon monoxide and/or Carbon Monoxide Poisoning or death.

554) CLAIM 30: Abuse Of Authority Under Color Of Law; by STATE and GEO Defendants.

555) The exertion of authority by STATE Defendants and exercise of authority by GEO Defendants in utilizing, acting to utilize, and/or allowing or enabling the utilization of GCCF as a ('for-profit') place of imprisonment for a portion of New Mexico's inmate population amounts to a sheer abuse of authority as the Defendants knowingly and deliberately continue to confine and unnecessarily risk the health, safety, and general well-being of persons at a facility that is afflicted with recurring events of toxic contaminations of the prison's sleeping quarters and living environments irrespective of their level of awareness of the problem and/or the risk of serious harm, injury, or death the unsafe conditions present to the prisoners confined thereat.

556) CLAIM 31: Deprivation Of The 8th/14th Amendments' Rights Of Inmates by all STATE, GEO, CORIZON, and CENTURION Defendants, as well as OWNER(S), DOES #'7 and/or COUNTY OF GUADALUAE.

557) As each DEFENDANT had a personal role in operating or enabling/allowing the operation of GCCF as a place of confinement or maintains a personal role in operating or enabling/allow the operation of GCCF as a place of confinement, each Defendant has, respectively, personally acted to deprive Plaintiff Amaro of his Civil Rights under the 8th/14th Amendment in ways that include but are not limited to:

   a. Choosing to confine his person under conditions which are inherently unsafe and pose a known risk of harm to a portion of New Mexico's inmate population;

   b. Choosing to confine his person under conditions which are both cruel and unusual in that the conditions present confinement in a veritable 'gas-chamber';

   c. Choosing to wrongfully endanger his life by confining his person under conditions which pose a known risk of harm to a portion of New Mexico's inmate population;

   d. Choosing to expose his person to a known risk of serious harm, injury, or death which is

both preventable and unnecessary; and,

e. Choosing to inhumanely inflict severe psychological and emotional distress through subjection to cruel and unusual punishment with exposure to a known risk of serious harm, injury, or death under conditions which amount to confinement in a veritable 'gas-chamber', where persons in positions of sufficient power and/or authority to intervene for the safety of the inmates choose not to intervene, but, instead, choose to perpetuate both the hazardous underlying conditions of confinement AND the operation and/or utilization of the GUADA-LUPE COUNTY CORRECTIONAL FACILITY as a place of confinement irrespective of the risk it presents to the portion of New Mexico's inmate population confined thereat, which further amounts to unreasonable suffering.

558) CLAIM 32: Deprivation Of The 5ᵗʰ/14ᵗʰ Amendments' Rights Of Due Process; by all STATE, GEO, CORIZON, and CENTURION Defendants, as well as OWNER(S), DOES #7 and/or COUNTY OF GUADALUPE.

559) As the continuing conditions conditions of confinement present a known risk of harm from exposure to carbon monoxide   pending further mechanical malfunctions of the prison's boiler(s)/flue(s) and amount to conditions that inflict punishment which is inherently cruel and unusual — through inhumane confinement in a veritable 'gas-chamber' — the infliction of this punishment is not lawfully prescribed nor Constitutionally sanctioned.

560) As the infliction of such punishment — through inhumane confinement in a veritable 'gas-chamber' of persons not formally sentenced to death — is neither lawfully prescribed nor Constitutionally sanctioned, the infliction of such punishment, beyond cruel and unusual, amounts to the infliction of punishment without due process of law.

561) As each DEFENDANT either had a personal role in operating or enabling/allowing the operation of GCCF as a place of confinement, or has a personal role in operating or enabling/allowing the operation of GCCF as a place of confinement, each DEFENDANT has personally - respectively - deprived Plaintiff Amaro of his Right to Due Process of Law (before the infliction of punishment).

562) Additionally, STATE and GEO Defendants have further deprived Plaintiff Amaro of his Right to Due Process by choosing not to provide any meaningful or adequate avenue of administrative remedy and/or relief as statutorily prescribed by and through NMCD Policy 150500 'Inmate Grievances'.

563) CLAIM 33: Wrongful Infliction Of Punishment Which Is Cruel And/Or Unusual; by STATE Defendants: GOVERNOR'S OFFICE, S. MARTINEZ, ATTORNEY GENERAL'S OFFICE, BALDERAS, NMCD, JABLONSKI, BREWSTER, ROARK, LeMASTER, PHILLIPS, MADRID, SELVAGE, and Y. RIVERA; GEO and GEO's Controlling Board and/or Oversight Personnel, and GEO Defendants A. CAMPOS, HORTON, GAY, G. CHAVEZ, Maj. A. ARAGON, "Mr." TENORIO, "Mr." EVERHART, Lt. K. RIVERA, and ROMERO; "CENTURION", CENTURION's Controlling Board and/or Oversight Personnel, CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC, and CENTURION Defendants "Mr." RIVERS, YOUNG, and ARMIJO; and OWNER(S), JOHN(S)/JANE(S) DOES #7 and/or the COUNTY OF GUADALUPE, and DOES #4.

564) The continuing confinement of Plaintiff under the totality of the present circumstances and conditions of confinement and cumulative bases of tortious action, together with their respective points

of emotional distress – on top of and in addition to the known threat and continuing risk of serious harm, injury, or death, infliction of unreasonable suffering, and Claims 1–32, in their aggregate, incontrovertibly and inescapably amounts to the wrongful infliction of punishment which is cruel and/or unusual, in perpetuity, by the cited Defendants.

565 ) In choosing to continue utilizing the Guadalupe County Correctional Facility as a place of confinement for a portion of New Mexico's inmate population, irrespective of the structure's on-going risk of serious harm, injury, or death from unwilling exposure to carbon monoxide – effectively transforming the prison's Housing Units into variegating degrees of veritable 'gas-chambers' – DEFENDANTS demonstrate a severe degree of intentional, willful, reckless, and/or grossly negligent conduct which acted or acts to imperil the lives of persons confined at GCCF, in violation of the proscriptions and/or requirements found under the 8th and 14th Amendments.

566 ) The duration of awareness of the conditions and longevity of the DEFENDANTS' gross and severe level of 'deliberate indifference' to the known risk of harm irrespective to the possible immediate injuries and/or potentially fatal future health problems associated with exposure to carbon monoxide and/or Carbon Monoxide Poisoning, coupled with the outrageous intention of the currently applicable Defendants to continue either operating or allowing/enabling the operation of the Guadalupe County Correctional Facility as a viable place of confinement despite its inherently unsafe conditions until absolutely forced, through this litigation, to meaningfully address, correct, and/or cure or otherwise abate the occurrence of the toxic contaminations, by the Court, demonstrates extreme and grossly negligent conduct that is done knowingly, intentionally, willfully, wantonly, recklessly, and with sheer disregard for the health, safety, and very lives of the persons confined there-at; currently applicable Defendants being: STATE Defendants GOVERNOR'S OFFICE, S. MARTINEZ, ATTORNEY GENERAL'S OFFICE, BALDERAS, NMCD, JABLONSKI, BREWSTER, ROARK, LeMASTER, PHILLIPS, MADRID, SELVAGE, and Y. RIVERA; GEO and GEO's Oversight Personnel, and GEO Defendants A. CAMPOS, HORTON, GAY, G. CHAVEZ, Maj. A. ARAGON, TENORIO, EVERHART, Lt. K. RIVERA, and ROMERO; "CENTURION," CENTURION's Oversight Personnel, and CENTURION DEFENDANTS RIVERS, YOUNG, and ARMIJO; OWNER(S), DOES #7 and/or the COUNTY OF GUADALUPE; and DOES #4.

567 ) As a direct and proximate result of the knowing, intentional, willful, wanton, reckless, and/or grossly negligent acts, omissions, and/or failure(s) to act of DEFENDANTS — all STATE Defendants; GEO, GEO's Oversight Personnel, and GEO Defendants; CORIZON, CORIZON's Oversight Personnel, CORIZON HEALTH, and CORIZON Defendants; "CENTURION", CENTURION Oversight Personnel, CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC, and CENTURION Defendants; OWNER(S), DOES #7 and/or COUNTY OF GUADALUPE, and DOES #4 — Plaintiff, along with a portion of New Mexico's inmate population, is confined under continuing conditions which present a known risk of harm from a specific source in a particular manner, and has unreasonably suffered severe psychological and emotional damages including

mental trauma and emotional distress, as well as physical pain and suffering.

## NATURE OF THE CASE

CAUSE B: As to the Claims of unconstitutional confinement under inherently hazardous and inhumane conditions resulting in personal injury and bodily harm, contrary to the Constitutional proscriptions and/or requirements of the 5th, 8th, and 14th Amendments:

568) Plaintiff, the person of Pedro J. Amaro, was unconstitutionally subjected to hazardous conditions of confinement at the Guadalupe County Correctional Facility where the prison's underlying conditions pose an obvious risk of harm, injury, or death from a known and particular source in that the prison, by its design and/or construction, has proven itself to be prone to recurring events of Carbon Monoxide Poisoning and susceptible to carbon monoxide's toxic contamination of GCCF's sleeping quarters and living environments pending sporadic mechanical malfunctions of the prison's boiler(s) and/or flue(s).

569) With knowledge of the hazardous underlying conditions, Plaintiff Amaro filed a complaint and pursued administrative relief and remedy, through the prison's Grievance program, relating to the recurring events of Carbon Monoxide Poisoning and had, essentially, pursued protection from the obvious risk of harm, injury, or death from the conditions yet was denied any form of relief by both GEO Defendants and STATE Grievance Personnel.

570) On February 6, 2014, at least one boiler and/or flue mechanically malfunctioned and toxically contaminated GCCF's Housing II-B-pod ("H2-B") with carbon monoxide to a potentially fatal level.

571) In direct response to the mechanical malfunction(s) and toxic contamination of H2-B, GCCF's Security staff placed the pod under "emergency evacuation" status and ordered all prisoners assigned to H2-B pod to report to the facility's gymnasium.

572) In the gym, Lt. Gallegos immediately identified Plaintiff as a person clearly suffering from and exhibiting outward signs of (acute) Carbon Monoxide Poisoning, and removed Plaintiff from the "emergency count" line-up with direct orders (to Plaintiff) to "See Medical" ("Medical" at that time was CORIZON's Medical Staff who had also reported to the gym).

573) Lt. Gallegos simultaneously alerted CORIZON's Medical Staff to Plaintiff Amaro's condition and visually obvious 'distress' by pointing him out to Medical Staff, from

other prisoners.

574) CORIZON's Medical Staff - who were experienced in responding to carbon monoxide-related events at GCCF - conducted an "$O_2$ saturation test" on Plaintiff, on-the-spot, and quickly began escorting Plaintiff Amaro to GCCF's "Medical Facility."

575) During the emergency situation, GCCF Security staff began focusing a hand-held video camera on Plaintiff Amaro, continuing to record him vomiting and being interviewed by CORIZON's Medical Staff while suffering from the effects and symptoms of exposure to carbon monoxide.

576) A Plaintiff had already been removed from the toxically contaminated Pod, all CORIZON's Medical Staff knew to do was to offer "APAP or I-Prin" to Plaintiff Amaro for the treatment of Carbon Monoxide Poisoning.

577) Plaintiff Amaro received no further treatment for the prolonged exposure to the deadly fumes and was not at any point referred to any medical center/facility or any medical care personnel who could professionally and accurately assess the level of carbon monoxide saturation and provide or prescribe an appropriate remedy for the treatment of Carbon Monoxide Poisoning or the means with which to lessen the deadly gas's long-term effects (through absorption and/or filtration).

578) In the aftermath of the event, in accordance with NMCD Policy/Procedure (ISO500 "Inmate Grievances"), Plaintiff Amaro engaged the prison system's Grievance process by submitting an "Informal Complaint" (NMCD Form 150501.3) regarding the incident and again seeking relief from the ongoing hazardous conditions of confinement, and remedy for the harm (damage(s)) inflicted upon his person.

579) The Informal Complaint and remedy/relief sought was summarily denied by GCCF Staff and Plaintiff immediately submitted a corresponding "(formal) Grievance" (NMCD Form 150501.1) with the Informal Complaint attached as specified by the Policy's directives.

580) Upon the Grievance Lieutenant's failure to respond to the "Grievance" by mid-April 2014, Plaintiff verbally asked officer Lt. K. RIVERA about the status of the "Grievance", to which she responded that she had not been able to process it due to a need for investigations of the facility's rise in violent incidents and violence-related lock-downs, and that she would need time to investigate (the matter) and provide a response.

581) During this time, Plaintiff - seeking/soliciting attorney representation - had begun to interact with a legal representative from the lawfirm of Saiontz and Kirk, out of Maryland (the records for which are in the prison's possession, "in 'storage'"), regarding the matter.

582) In attempts at interviewing Plaintiff, the attorney called the prison but was not allowed to verbally communicate with Plaintiff, with such persons as Defendant Y. RIVERA (who was then a "GEO Employee" holding the position of "Case Manager") denying the attorney's requests for to speak with Plaintiff.

583) Plaintiff, in kind, attempted to place an "Attorney Call" to the firm and its representative, but Y. RIVERA also denied Plaintiff's requests to speak with the attorney.

584) The firm's representative utilized the U.S.P.S. to mail a "Carbon Monoxide - Intake Form" to Plaintiff Amaro, which was "accidentally opened" by Mailroom Personnel outside of Plaintiff's presence.

585) Upon receipt of the packet and Intake Form - minus "the enclosed envelope" - Plaintiff promptly answered the relevant questions and submitted the packet to the prison's mail system along with a

facility "Debit Memo" to cover the cost of postage.

586) Plaintiff was subsequently charged for postage but the packet never made it back to the firm.

587) Due to the level of harassment and lack of return of the intake packet, the representative relayed the message to Plaintiff that he (Plaintiff) would need to find another attorney for the matter.

588) But for the prison's action(s) and conduct, especially that of Defendant Y. RIVERA (as a GEO Employee) Plaintiff would have had strong legal representation and the matter could have been addressed before any additional carbon monoxide-related events took place.

589) In the prison's reply to Plaintiff's attempt at obtaining (strong) legal representation and simultaneous quest for a formal response to his "Grievance", Plaintiff was 'inexplicably' reassigned from the bottom bunk of cell #112 to the top bunk of cell #201.

590) The prison's pattern of harassment against Plaintiff Amaro was wide-spread and included denying requests to go to the prison library or to check-in with the Education Department as part of his prison-job, and the delay in relaying to him that his Visitor(s) had showed up and were waiting for him in the Visitation Room, as well as severe treatment during shakedowns.

591) As Grievance Officer Lt. K. RIVERA repeatedly led Plaintiff Amaro to believe that a proper and formal response to the "Grievance" was forthcoming, Plaintiff - in good faith - complied with Lt. K. RIVERA's verbal requests for extensions of time beyond NMCD Policy's 90-day-process specification, especially as the facility had been experiencing issues with violence and lockdowns.

592) Plaintiff Amaro ultimately had to seek professional psychological care and be placed on a course of anti-depressant medication for treatment of depression and depression-related anger issues stemming in large part, directly from the February 6, 2014 incident of exposure to carbon monoxide and Carbon Monoxide Poisoning, as well as the abject 'denial' of administrative remedy/relief, CORIZON Medical Staff's failure to diagnose the cause of Plaintiff's respiratory discharge, Medical's repeated interruption of Plaintiff's 'chronic' medications, the attorney-related issues, the pattern of harassment, and the continuation of the hazardous underlying conditions of confinement where he viewed his existence as living in a veritable 'gas-chamber' - never knowing when the gas would come again.

593) On October 2, 2014, Plaintiff again visited the Grievance Office in regards to his "Grievance", and was informed by Grievance Tech. B. Zarate, who referenced the "Grievance Log," that (despite the additional time) the Grievance had still not been resolved.

594) Plaintiff Amaro, at that point, questioned Lt. K. RIVERA's actual intent to respond to his Grievance" and proceeded with the PLRA's requirements as he considered his administrative remedies to be exhausted on the grounds that the Grievance Lieutenant "and her Tech." had been allowed every opportunity and ample time to 'investigate' the matter and provide a formal response to the "Grievance", with multiple extensions of time granted, yet had still not provided any response or answer to the "Grievance."

595) Plaintiff, a State Prisoner who maintains a record of "clear conduct" (in excess of 10 years), chose for the sake of his physical safety and mental health, to submit a request to be relocated to the "Old Man's Pod'", from the "Honor Pod," so as to evade the threat of death from unwilling exposure to carbon monoxide.

596) Due to the nature of his request, Plaintiff, as part of the pattern of harassment and despite his record and history of clear conduct, was removed from the "Honor Unit" but, instead of the "Old Man's

Pod "(in H1-D), was reassigned to a top bunk in H2-E, which, at that time, was a Pod notoriously known for its number of inmates with behaviorial health problems.

597) While assigned to a top bunk in H2-E, Plaintiff received injuries sustained in a fall from the top bunk where, but-for the pursuit of his Grievance he would not have been removed from the bottom bunk (of H2-B, cell #112), and but-for his persistence in seeking a response to the Grievance, he would not have been reassigned to H2-E, and where, but-for the recurring events of exposure to carbon monoxide in H2-B, he would have happily stayed in the "Honor Unit" and would have had no cause to file a carbon monoxide-related complaint or seek remedy/relief for the hazardous underlying conditions of confinement.

598) In September 2014, Plaintiff was finally reassigned to the "Old Man's Pod", which was in Housing Unit #1-D-Pod at that time (cell #103, top bunk).

599) Shortly thereafter, it was brought to Plaintiff's remembrance and attention that H1-D was also afflicted with the same structural defect(s) as H2-B and had also been directly exposed to carbon monoxide under the same circumstances, where the toxic contamination is related to mechical malfunction of the prison's boiler(s) (flue(s).

600) In October 2014, 6CCF Staff were conducting the "10:30 P.M. Stand-Up Count" in the "Old Man's Pod" at approximately 11:15 P.M.

601) Plaintiff, who is prescribed medication that induces drowsiness, had been asleep when he was awakened and required to stand on the ground.

602) Plaintiff, half-asleep and under the influence of strong medication, began to dismount his top bunk when he missed the table, causing him to 'fall' several feet to the cement flooring bare-foot and in such a manner that the balls of both feet were bruised.

603) As a result of the fall and force of the bare footed impact, Plaintiff sustained injuries to his right foot/heel and left hip which have resulted in permanent injuries and pain.

604) As with the injuries sustained from a fall from the top bunk in August/September 2014, in H2-E, the injuries sustained from the fall from the top bunk in October 2014, in H1-D, are attributable to the threat of Carbon Monoxide Poisoning on the grounds that, but-for the threat and risk of serious harm, injury, or death from unwilling exposure to carbon monoxide, Plaintiff would not have pursued a Carbon Monoxide Poisoning-related "Grievance" and, but-for the consequences and degree of harm possible from exposure to carbon monoxide, Plaintiff would not have requested to leave the "Honor Pod" in the first place.

605) Within 90-days from the date of exhaustion of administrative remedies, Plaintiff submitted his "Notice of Claim" as required under the NMTCA and PLRA, dated December 29, 2014.

606) In December 2015, the "Old Man's Pod" was transplanted from H1-D to H2-D.

607) In August 2016, Plaintiff submitted the initial filing of this matter, with the Court Clerk recording September 2, 2016, as the date of filing.

608) In October 2016, Plaintiff became agonizingly aware of the fact that his original request to exit H2-B — the "Honor Unit" — so as to avoid further instances of exposure to carbon monoxide was not a true remedy to the possibility of exposure to carbon monoxide or actual Carbon Monoxide Poisoning as, although H1-D and H2-B are the Pods most drastically affected

during the more serious events of toxic contamination incidents, the fumes of carbon monoxide are not contained in any one area of the prison's structure but are disbursed through-out the the affected Housing Unit in decreasing ratios.

(609) The residual 'lingering' gas(es) of the noxious fumes, concentrated in the 'attic'-areas of the Pods, cause or contribute to (temporary conditions of) a phenomenon coined "sick building syndrome" and continue 'mild' or 'minor' symptoms of exposure to carbon monoxide.

(610) On October 18, 2016, Plaintiff, who had not been feeling well, recognized that the symptoms he was afflicted with were signs of exposure to the fumes of carbon monoxide: fatigue, headache, 'heavy' chest, eye irritation, nasal irritation, nausea, 'hunger', confusion/delusional, and dizziness or light-headed.

(611) On October 21, 2016, Defendant Warden Horton issued a GEO "Memorandum" acknow-ledging his awareness of the boilers in Housing #2 malfunctioning.

(612) On October 23, 2016, the worst of Plaintiff's symptoms began to clear.

(613) On February 4, 2018, GCCF's Housing #2 again suffered another serious event of expo-sure to carbon monoxide with the most severely affected Pod (H2-B) being evacuated from the Unit while Pods A, C, D, and E, naturally, experiencing decreasing rations of ('minor') exposure, were kept confined to the Unit.

(614) Plaintiff suffered signs of exposure to carbon monoxide such as headache, fatigue, 'heavy' chest, eye irritation, nasal irritation, abnormal 'hunger', light-headedness, and an increase in respiratory discharge.

(615) In the aftermath of the incident, Plaintiff suffered the symptoms in lessening degrees, attributable to "sick building syndrome."

(616) On March 27, 2018, GCCF's Housing #2 suffered yet another serious event of exposure to carbon monoxide with the most drastically affected Pod (H2-B) being evacuated from the Unit two times in one day while Pods A, C, D, and E, experiencing decreasing ratios of (minor) exposure were again kept confined to the Unit.

(617) Plaintiff, again, suffered signs of exposure to carbon monoxide such as: headache, fatigue 'heavy' chest, eye irritation, nasal irritation, abnormal 'hunger', light-headedness, and an increase in respiratory discharge.

(618) In the aftermath of the incident, Plaintiff suffered the symptoms in lessening degrees, attributable to 'sick building syndrome'.

(619) Additional events of carbon monoxide-related incidents have also taken place, but Plaintiff is unable to relate symptoms to those events and therefore omits citation of them.

(620) Despite the growing number of carbon monoxide-related incidents — both the 'serious' and the 'not-so-serious' (although every incident is actually very serious) — the hazardous underlying conditions remain unaddressed and completely unchanged, thereby perpetuating the continu-ation of the well-known risk of serious harm, injury, or death from a specific source, in a particular manner.

(621) Plaintiff restates paragraph 588, but for the prison's action(s) and conduct regarding the law firm of Saiontz and Kirk and their representative — where GCCF Staff (and especially

Y. RIVERA) wrongfully interfered between Plaintiff and the law firm — Plaintiff would have had strong legal representation and the matter could have been addressed and resolved *before* any additional carbon monoxide - related events could have taken place.

622 ) Upon the foregoing facts, Plaintiff submits this Amended Complaint for Civil Rights violations under 42 U.S.C. §1983, where claims are based on and/or related to hazardous conditions of confinement resulting in injuries and unduly placing the person of Pedro J. Amaro at-risk of potentially fatal future harm(s) and/or damages associated with carbon monoxide, cumulative exposures to carbon monoxide, and/or Carbon Monoxide Poisoning, where the specific source and particular manner of the toxic contaminations and hazardous underlying conditions of confinement were known and the risk of harm as well as the injuries sustained were clearly foreseeable, easily preventable, and completely unnecessary.

623 ) Upon the foregoing facts, Plaintiff states $8^{th}/14^{th}$ Amendment violation claims against OWNER(S), DOES #7 and/or COUNTY OF GUADALUPE; STATE Entities, Officials, and Personnel; GEO and GEO Defendants; CORIZON and CORIZON Defendants; and/or CENTURION and CENTURION Defendants for Civil Rights violations that include, but are not limited to:

   a. Defective construction of a correctional facility;
   b. Failure to protect prisoner from inherently dangerous conditions of confinement;
   c. reckless subjection of prisoner to hazardous conditions of confinement;
   d. wrongfully exposing prisoner to foreseeable, preventable, and unnecessary harm;
   e. failure to ensure, provide, or administer proper or adequate medical care and/or training;
   f. failing to protect prisoner from the foreseeable, preventable, and unnecessary harm, injury, or
      death posed by the continuing hazardous conditions of confinement going into the future; and,
   g. failing to protect prisoner from any future potentially fatal harm(s)/damage(s) associated with
      exposure to carbon monoxide and/or Carbon Monoxide Poisoning.

which demonstrates a status quo of nonchalance towards the interests, health, safety, and general well-being of the State's prisoners as well as a gross and severe level of deliberate indifference to the inherently dangerous conditions of confinement and the sheer gravity of the situation, and directly caused, causes, or contributes to the continuation of the hazardous conditions of confinement at the Guadalupe County Correctional Facility and the wrongful infliction of punishment and/or injuries upon the person of Pedro J. Amaro.

624 ) Upon the foregoing facts, Plaintiff further states $8^{th}/14^{th}$ Amendment violation claims against STATE Entities, Officials, and Personnel for their individual and collective failure(s) to require:

   a. The GEO Group to:
      (i) come into full compliance with the terms of its contract and/or inherent responsibilities; and
      (ii) address and correct, cure, or otherwise abate GCCF's continuing, mounting number
         of incidents involving toxic contamination of the inmates' sleeping quarters and

living environments so as to prevent future harm, injuries, and/or death(s);

b. CORIZON, LLC and CORIZON HEALTH to:

(i) come into full compliance with the terms of its contract and/or inherent responsibilities;

(ii) competently provide the due, proper, and adequate medical attention required for a given ailment;

(iii) provide healthcare services to New Mexico's inmates with the standard and/or community level of care; and/or,

(iv) exert its medical oversight authority against the hazardous conditions of confinement and/or for the safety of the inmates;

and/or

c. CENTURION and CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC to:

(i) come into full compliance with the terms of its contract and/or inherent responsibilities;

(ii) competently provide the due, proper, and adequate medical attention required for a given ailment;

(iii) provide healthcare services to New Mexico's inmates with the standard and/or community level of care; and/or,

(iv) exert its medical oversight authority against the hazardous conditions of confinement and/or for the safety of the inmates,

where such (basic) failures demonstrate a status quo of nonchalance towards the interests, health, safety, or general well-being of the State's prisoners as well as a gross and severe level of deliberate indifference to the inherently dangerous conditions of confinement and the sheer gravity of the situation and which directly caused, causes, or contributes to the continuation of the hazardous conditions of confinement at the Guadalupe County Correctional Center and wrongful infliction of punishment and/or injuries upon the person of Pedro J. Amaro, and also continues to negatively affect or otherwise impact the quality of Plaintiff Amaro's life.

625) Upon the foregoing facts, Plaintiff also states 5th/14th Amendment violation claims against Defendants S. MARTINEZ, NMCD, JABLONSKI, MARCANTEL, ROARK, LeMASTER, PHILLIPS, MADRID, Y. RIVERA, and G. CHAVEZ; and GEO, GEO Oversight Personnel, and GEO Defendants: A. CAMPOS, HORTON, GAY, G. CHAVEZ, GARNAND, MORRIS, BRAVO, ULIBARRI, JOHNSON, HATCH, FOSTER, BEAIRD, Maj. P. ARAGON, G. MORRIS, RESNICK, and Lt. K. RIVERA for deprivation of Right to Due Process in the course of the prison system's "Grievance" proceedings as statutorily specified under NMCD Policy 150500, "Inmate Grievances", in accordance with State and Federal Constitutional requirements where, in failing to respond to Plaintiff's "Grievance", complete the Grievance process in accordance with the Policy, and/or at least address GCCF's inherently dangerous conditions of confinement, GCCF's Grievance Officer, Lt. K. RIVERA,

-83-

and Grievance Tech. B. Zarate, demonstrated:

    a. a status quo of nonchalance towards NMCD's "Grievance" Policy, its process, and its fundamental purpose; and,

    b. a gross and severe level of deliberate indifference to both the obvious risk of serious harm, injury, or death to prisoners from a known and particular source present at GCCF <u>and</u> the sheer gravity of the hazardous and potentially fatal situation,

and where both GEO's supervisory staff at GCCF and NMCD's Contract Monitors and/or Grievance personnel have established and maintained a culture that effectively ratified GCCF's perpetual noncompliance with NMCD's Grievance Policy/Procedure and the officers' misfeasance and/or nonfeasance of duty by allowing Defendant Lt. K. RIVERA to maintain her position of authority despite the problematic history with her failure to complete job-related tasks and/or perform the duties of her position's job-description, which directly caused, causes, or contributed to the continuing hazardous conditions of confinement at GCCF and the wrongful infliction of injuries upon the person of Pedro J. Amaro, and also continues to negatively affect or otherwise impact Plaintiff's quality of life.


626) Plaintiff further states $5^{th}/14^{th}$ Amendment violation claims against Defendant OWNER(s), DOES #7 and/or COUNTY OF GUADALUPE; STATE Entities, Officials, and Personnel; GEO and GEO Defendants, CORIZON and CORIZON Defendants; and CENTURION and CENTURION Defendants for causing or having caused or contributed to the punishments inflicted upon the person of Pedro J. Amaro without due process of law, where the punishments inflicted were neither lawfully prescribed nor Constitutionally sanctioned, but are inherently cruel and unusual and includes, but is not limited to:

    a. confinement in conditions which are neither humane nor reasonably safe and free from harm;

    b. reckless subjection of Plaintiff to a known risk of serious harm, injury, or death, where the risk of harm is preventable and unnecessary;

    c. exposures to poisonous fumes of carbon monoxide;

    d. assault/battery with bodily intrusion;

    e. subjection to Carbon Monoxide Poisoning (acute);

    f. immediately sustained injuries;

    g. secondary injuries;

    h. inadequate medical/psychological care;

    i. future potentially fatal health problems associated with carbon monoxide and/or Carbon Monoxide Poisoning;

    j. denial of due process in regards to NMCD's Grievance Policy/Procedure;

    k. oppressive abuse of authority;

    l. pattern of (retaliatory) harassment; and,

    m. infliction of punishment which is beyond cruel and unusual by subjecting Plaintiff to conditions of confinement that amount to life in a veritable 'gas-chamber',

which, through the deprivation of his Civil Rights, inflicted physical and emotional damages including

physical injury, physical pain and suffering, violation of bodily integrity, severe psychological and emotional distress, and is now at-risk for future harm/damage(s) stemming from potentially fatal health problems associated with exposure to carbon monoxide, cumulative exposures to carbon monoxide, and/or (acute) Carbon Monoxide Poisoning — at a higher level than he would have been had he been provided with the community level of care and/or standard remedies for the treatment of exposure(s) to carbon monoxide and/or (acute) Carbon Monoxide Poisoning.

627) Despite the sheer gravity of the situation and the looming threat of a tragic event, the underlying conditions of confinement remain unchanged and continue to present a known risk of serious harm, injury, or death from a specific source, in a particular manner.

628) But-for the acts, omissions, and/or failure(s) to act of the DEFENDANTS - both individually and collectively — in regards to GCCF's known and continuing threat of serious harm, injury, or death resulting from the hazard(s) posed by the underlying conditions of confinement, the prison's infliction of actual injuries/damages through toxic contamination and/or poisoning, inadequate/unsafe medical treatment and/or substandard healthcare services, noncompliance with contractual obligations, and noncompliance with NMCD Policy/Procedure, the person of Pedro J. Amaro would not have been wrongfully subjected to unnecessary endangerment and/or the infliction of harm/damages or the risk of future potentially fatal health problems stemming from exposure to carbon monoxide, cumulative exposures to carbon monoxide, and/or (acute) Carbon Monoxide Poisoning, and the continuing threat of exposure to carbon monoxide or Carbon Monoxide Poisoning would have long-been addressed and corrected, cured, or otherwise abated, and would not still be present at GCCF or directly affecting the quality of Mr. Amaro's life.

629) Thus, DEFENDANTS - individually and collectively - who at all times were acting within the course and scope of office or ownership and under color of law — who have each had the power and/or authority to intervene with the unsafe conditions of confinement and, yet, decided not to act but chose to maintain the status quo of deliberate indifference to the risk of harm and sheer gravity of the threat of carbon monoxide, personally causes, caused, or contributed to the ongoing risk of serious harm, injury, or death stemming from the prison's unchanged hazardous underlying conditions of confinement, and are thereby fully liable to Plaintiff Amaro, under 42 U.S.C. §1983, for the deprivation of his Civil Rights resulting in personal injury, with direct, joint, concurrent, successive, and/or vicarious liability.

630) DEFENDANTS are further responsible to Plaintiff - individually and/or collectively - under "Special Relationship Liability."

631) STATE Defendants S. MARTINEZ, RICHARDSON, BALDERAS, KING, NMCD, JABLONSKI, MARCANTEL, WILLIAMS, BREWSTER, ROARK, LeMASTER, PHILLIPS, A. MARTINEZ, SELVAGE, Y. RIVERA, G. CHAVEZ, and the NEW MEXICO GOVERNOR'S OFFICE are responsible to Plaintiff with "Supervisory Personal Liability" for grossly negligent

hiring or employing of agents or other(s) to manage affairs, powers, and/or entities under their respective purviews.

632) GEO's Controlling Board; GEO Defendants CAMPOS, HORTON, GAY, G. CHAVEZ, GARNAND, MORRIS, BRAVO, ULIBARRI, JOHNSON, HATCH, FOSTER, BEAIRD, Maj. P. ARAGON, MORRIS, RESNICK, JOHNSON, CASTILLO, S. CHÁVEZ, "Mr." CHAVEZ, TENORIO, Lt. K. RIVERA, G. CHAVEZ, RODGERS/VIGIL; and The GEO Group, INC, are responsible to Plaintiff with "Supervisory Personal Liability."

633) CORIZON's Controlling Board; CORIZON Defendants STABER and ARMIJO; and, CORIZON, LLC, and CORIZON HEALTH are responsible to Plaintiff with "Supervisory Personal Liability."

634) CENTURION's Controlling Board; CENTURION Defendants RIVERS, YOUNG, and ARMIJO; CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC and "CENTURION" are responsible to Plaintiff with "Supervisory Personal Liability."

635) OWNER(S), DOES #7 and/or the COUNTY OF GUADALUPE, as "Defendants," are responsible to Plaintiff with "Supervisory Personal Liability."

636) Pursuant to NMTCA, the doctrine of respondeat superior is fully applicable against the DEFENDANTS cited in paragraphs 630, 631, 632, 633, 634, and 635, and their respective entities.


## CLAIMS of CAUSE B: DEPRIVATION OF CIVIL RIGHS UNDER 42 USC, § 1983 RESULTING IN PERSONAL INJURY

637) Plaintiff contends that each of the named DEFENDANTS is and/or has been in some way or another actionably negligent in depriving him of his Civil Rights where the facts of CAUSE B coupled with the references of/to the respectively cited Defendants state multiple 5th, 8th, and 14th Amendment claims by and through Constitutional violations in the following ways: *All previous paragraphs are incorporated herein by reference.

638) CLAIM I: Negligent And/Or Defective Construction Of A 'For-Profit' Correctional Facility.

639) Plaintiff was a ward of the State of New Mexico and confined by State Entities, Officials, and personnel — under color of law — at the Guadalupe County Correctional Facility, a 'for-profit' prison facility privately owned by JOHN(S)/JANE(S) DOES #7 and/or the COUNTY OF GUADALUPE, at Santa Rosa, New Mexico, at all times pertinent to this Complaint.

640) Upon information and belief, as "OWNER(S)" of a structure, regardless of its intended purpose, Defendants DOES #7 and/or the COUNTY OF GUADALUPE owed a clear duty to ensure that their structure was reasonably safe and free from harm.

641) Upon information and belief, the contractual obligations of the Defendant OWNER(S)

include a provision requiring the OWNER(S) to provide a structure which is reasonably safe and free from harm.

642) Defendant OWNER(S), in choosing to cash-in on New Mexico's 'for-profit confinement' industry by erecting a "Correctional Facility" upon their property with the express intent of leasing the structure to a separate party to the ends that a portion of New Mexico's inmate population would be confined in the Defendant OWNER(S)'s structure, Defendant OWNER(S) owed a clear duty to Plaintiff to provide a prison facility which would meet and/or exceed Constitutional requirements regarding humane conditions of confinement which are reasonably safe and free from harm.

643) The running-history of the Guadalupe County Correctional Facility includes a mounting number of "emergency" incidents involving toxic contamination of the inmates' sleeping quarters and living environments with the first carbon monoxide-related "emergency" taking place in excess of 10-years ago.

644) Defendant GEO's GCCF Staff quickly ascertained that the carbon monoxide-related emergencies:

    a. were directly related to mechanical malfunctions of the prison's respective boiler(s) and/or flue(s) in either Housing Unit #1 and/or in Housing Unit #2;

and,

    b. involved the delivery of the toxic gas(es) to individual cells via the H.VAC. duct-work contained in the 'attic' areas of the structure.

645) In each instance, the malfunctioning boiler(s)/flue(s) has been repaired or replaced, however, the underlying conditions of confinement that allow escaped fumes to enter the prison's living environments and/or congregate in 'common-space' shared with H.VAC. duct-work before penetrating the ductwork and, thereby, getting pumped straight into the inmates' sleeping quarters, remains completely unaddressed and unchanged.

646) As the Guadalupe County Correctional Facility is subject to toxic contamination of the prison's sleeping quarters and/or living environments, the facility can in no way be legitimately deemed safely habitable, and thereby:

    a. violates the 8th/14th Amendments' requirement that conditions of confinement be reasonably safe and free from harm;

    b. violates the 8th/14th Amendments' requirement that condition of confinement be humane; and,

    c. recklessly continues to pose a standing risk of serious harm, injury, or death from a known and specific source in a particular manner, which is foreseeable, preventable, and unnecessary, to a portion of the State's inmates confined thereat.

647) CLAIM II: Inhumane/Hazardous Conditions Of Confinement By STATE Defendants, GEO and GEO Defendants, and OWNER(S), DOES #7 and/or COUNTY OF GUADALUPE.

648) Plaintiff was a ward of the State of New Mexico and confined by STATE Entities, Officials, and/or personnel at the Guadalupe County Correctional Facility, a privately-owned 'for-profit' prison operated by The GEO Group, Inc., at Santa Rosa, New Mexico, at all times pertinent to this Complaint.

649) Upon information and belief, Defendant GEO's contractual obligations include a provision requiring GEO to provide reasonably safe housing and humane conditions of confinement.

650) STATE Defendants and GEO and GEO Defendants owed a duty of care to Plaintiff, under the $8^{th}/14^{th}$ Amendments, to provide humane conditions of confinement which are reasonably safe and free from harm.

651) Defendants knew, know, should know, and/or have been made aware that GCCF's physical structure lends itself to repeating events of Carbon Monoxide Poisoning of State prisoners during mechanical malfunctions of the prison's boiler(s) and/or flue(s), thereby presenting a basis supporting the conclusion that GCCF's architectural design and corresponding construction are both inherently defective.

652) The sporadic repetition of Carbon Monoxide Poisoning events at GCCF establishes the fact that the prison's structure and physical conditions of confinement are also inherently unsafe and present a known danger to confined prisoners as carbon monoxide is scientifically proven and widely known to be deadly.

653) As the prison, through its structure, can in no way be termed as "reasonably safe" due to its known risk of serious harm, injury, or death from a particular source and in a specific manner, confinement of persons at the prison by the Defendants directly violates the $8^{th}/14^{th}$ Amendments and constitutes cruel and/or inhumane conditions of confine by and through the prison's known hazards.

654) CLAIM III: Failure To Protect From Inherently Dangerous Conditions Of Confinement.

655) STATE Defendants, GEO Defendants, CORIZON Defendants, and CENTURION Defendants each owed a duty to Plaintiff to protect him from known risks of harm and/or conditions presenting a known risk of harm.

656) Deliberate confinement of prisoners by the Defendants at a "Correctional Facility" known for its propensity to sporadically expose its residents to the deadly fumes of carbon monoxide directly violates the $8^{th}/14^{th}$ Amendments and constitutes failure to protect from inherently dangerous conditions of confinement.

657) CLAIM IV: Inadequate Maintenance Of A Correctional Facility.

658) Defendants GEO and OWNER(S), DOES #7 and/or the COUNTY OF GUADALUPE, owed a duty to Plaintiff to maintain the Guadalupe County Correctional Facility is such a fashion that the structure itself posed no inherent danger or risk of harm.

659) Defendants knew, know, should know, or have been made aware that GCCF is plagued by recurring events of Carbon Monoxide Poisoning pending mechanical malfunctions of the prison's boiler(s) and/or flue(s).

660) Defendant GCCF Staff acknowledge that, in addition to toxically contaminating the living environments, escaped fumes congregate in 'common-space' shared with H.V.A.C. ductwork, penetrates the ductwork, and, ultimately, gets routed to the cells, individually, and pumped directly into the sleeping quarters,

661) Defendant GEO's GCCF "Maintenance Supervisors" nor "Maintenance Employees" are known to be "Boiler Specialists" yet have continued to perform the majority of the maintenance and/or repair work on the prison's boilers (despite having priors for having 'worked' on a boiler/flue immediately preceeding a carbon monoxide-related incident and/or emergency.

662) At no time, to date, have any of GEO's GCCF Staff or "Maintenance Supervisors" (or other Maintenance employees) meaningfully acted to address the underlying conditions of the prison and its structure that allows escaped fumes to congregate in 'common-space' shared with H.V.A.C, duct-work or to prevent the deadly fumes from entering GCCF's living environments or sleeping quarters, thereby posing a hazard to GCCF's residents.

663) At no time, to date, have any other GCCF Staff or GEO Defendants (in whole or in part) meaningfully acted to cause the dangerous underlying conditions of confinement to be addressed so as to prevent further events of Carbon Monoxide Poisoning or future incidents of exposure to carbon monoxide.

664) Defendant GEO's (GCCF) Maintenance Supervisors and employees owed a duty to GEO, the State, and Plaintiff Amaro to properly perform all required maintenance work and/or repairs so as to render GCCF reasonably safe and habitable.

665) Defendant OWNER(S) owed a duty to Plaintiff to ensure that maintenance work and/or repairs done or performed on their structure was properly completed so as to render GCCF reasonably safe and habitable.

666) Failure to properly perform maintenance work and/or repairs or otherwise address and/or correct a known structural defect constitutes inadequate maintenance of a correctional facility, especially when the unaddressed/uncorrected defect poses an imminent risk of serious harm, injury, or death from a known and specific source, in a particular manner.

667) CLAIM X: Reckless Subjection To Hazardous Conditions Of Confinement.

668) STATE and GEO Defendants know, should know, and/or have been made aware that the Guadalupe County Correctional Facility is plagued by recurring events of Carbon Monoxide Poisoning pending mechanical malfunctions of the prison's boiler(s) and/or flue(s).

669) Defendants, in deliberately continuing to utilize GCCF as a place of confinement despite the known risk of serious harm, injury, or death, are knowingly, intentionally, willfully, negligently, and/or recklessly subjection a portion of New Mexico's prisoners to hazardous conditions of confinement without regard to the possible outcome and/or consequences of their actions.

670) CLAIM XI: Failure To Provide Adequate Warning Of GCCF's Inherently Dangerous Conditions Of Confinement, Propensity Of Living Environments And/Or Sleeping Quarters To Suddenly Become Toxically Contaminated With Fumes Of Carbon Monoxide To Potentially Fatal Levels, And/Or The Health Risks Associated With Carbon Monoxide Poisoning, Exposure To Carbon Monoxide, The Long-Term Effects Of Carbon Monoxide, Or Prolonged And/Or Cumulative Exposures To Carbon Monoxide.

671) All STATE, GEO, CORIZON, CENTURION, and OWNER(s) Defendants know, should know, and/or have been made aware that GCCF is plagued by recurring events of Carbon Monoxide Poisoning pending mechanical malfunctions of the prison's boiler(s)/flue(s).

672) Defendants, aware of the conditional situation and potentially deadly environment, have each unreasonably neglected to either:

a. warn State prisoners about GCCF's particular risk of harm, injury, or death;

or,

b. post "Notice(s)" at the facility itself regarding the prison's habitual events of Carbon Monoxide Poisoning.

673) DEFENDANTS' individual and/or collective failure(s) to provide adequate warning of GCCF's unsafe conditions of confinement demonstrates a gross and severe deliberate indifference to the potentially deadly environment and the very lives of the persons confined thereat.

674) CLAIM VII : Wrongful Endangerment.

675) All STATE, GEO, CORIZON, CENTURION, and OWNER(S) Defendants who knew, know, should know, or have been made aware of GCCF's unsafe conditions of confinement, have not only failed to intervene with the known risk of harm presented by the structure (of GCCF) but have also wrongfully endangered the health, safety, and/or very lives of State prisoners by deliberately, intentionally, willfully, negligently, and/or recklessly continuing to utilize or enable/allow the utilization of the inherently defective and hazardous facility as a place of confinement.

676) DEFENDANTS' individual and collective conduct demonstrates a gross and severe level of deliberate indifference to the dangers of GCCF's conditions and for the lives of persons confined thereat, and directly violates the 8th/14th Amendments.

677) CLAIM VIII : Wrongful Subjection To Foreseeable, Preventable, and Unnecessy Harm.

678) In continuing to utilize or enable/allow the utilization of GCCF as a place of confinement without acting to intervene or address and/or cure the prison of its problematic history of Carbon Monoxide Poisoning events — thereby causing or contributing to the continuation of the facility's known risk of harm — All STATE, GEO, CORIZON, CENTURION, and OWNER(S) Defendants have caused Plaintiff to experience exposure to carbon monoxide and cumulative exposures to carbon monoxide, and to suffer from (acute) Carbon Monoxide Poisoning.

679) DEFENDANTS, in having personally cause Plaintiff to experience exposure to carbon monoxide, cumulative exposures to carbon monoxide, and suffer from (acute) Carbon Monoxide Poisoning at a correctional facility known by DEFENDANTS for its unsafe conditions of confinement without regard for the possible outcome and/or consequences, thereby wrongfully subjected the person of Pedro J. Amaro to actual harm, injuries, and potentially fatal future health problems associated with exposure to carbon monoxide, cumulative exposures to carbon monoxide, and/or Carbon Monoxide Poisoning where the risk of harm was known and the harm itself was foreseeable, preventable, and clearly unnecessary in that the actual harm stemmed from a known

-90-

risk and specific source in a particular manner that is recurring and could have been avoided with due diligence and proper maintenance.

680) DEFENDANTS' willful, wanton, reckless, and/or grossly negligent conduct stands in direct violation of the $8^{th}/14^{th}$ Amendments with a severe degree of deliberate indifference.

681) CLAIM IX: Inadequate Medical Care.

682) Plaintiff, at all times pertinent to this Complaint was under the care and responsibility of STATE Defendants, GEO and GEO Defendants, CORIZON and CORIZON Defendants, and/or CENTURION and CENTURION Defendants.

683) Upon information and belief, STATE Defendants S. MARTINEZ and the GOVERNOR'S OFFICE, KING and the A.G.'s OFFICE, DOH and DOES #2, HSD and DOES #3, NMCD, MARCANTEL, WILLIAMS, BREWSTER, ROARK, LeMASTER, PHILLIPS, A. MARTINEZ, and G. CHAVEZ, and GEO and GEO Defendants knew, should have known, or had become aware of numerous allegations from separate parties and/or multiple sources regarding inadequate medical treatment and/or substandard healthcare services being provided to New Mexico's inmate population by CORIZON and CORIZON Defendants.

684) The allegations included improper care, sexual abuse, and Civil Rights violations and ultimately triggered an 'in-depth', year-long-plus investigation into CORIZON by NMCD and "revealed deep problems with inmate care provided by [CORIZON], and of the state's lax oversight of the company."

685) Upon information and belief, CORIZON's legal representative(s) became aware of the allegations and of CORIZON's substandard healthcare services being provided to New Mexico inmates yet failed to advise CORIZON to come into compliance with its contractual obligations and/or intervene on behalf of the State's inmate population and to save CORIZON from liability regarding the grossly negligent conduct.

686) In regards to having experienced exposure to carbon monoxide and varying levels of Carbon Monoxide Poisoning on:

    a. February 6, 2014;

    b. October 18-23, 2016;

    c. February 4, 2018; and,

    d. March 27, 2018,

Defendants have each failed in and/or through their respective duty(ies) to either:

    a. provide Plaintiff with the normal standard or community level of medical care regularly afforded to victims of exposure to carbon monoxide and/or Carbon Monoxide Poisoning in the community at-large;

    b. cause Plaintiff to be afforded the normal standard or level of medical care regularly afforded to victims of Carbon Monoxide Poisoning in the community at-large; or

    c. ensure that Plaintiff was or had been duly afforded the normal standard or level of medical care regularly afforded to victims of Carbon Monoxide poisoning in the community at-large.

687) As a "State Prisoner" (State Prisoner #44726), Plaintiff was owed a clear duty of care by the State and STATE Defendants GOVERNOR'S OFFICE, S. MARTINEZ, A.G.'s OFFICE, BALDERAS, KING, DOES #4, NMCD, JABLONSKI, MARCANTEL, WILLIAMS, BREWSTER, ROARK, LeMASTER, A. MARTINEZ, SELVAGE, Y. RIVERA, and G. CHAVEZ, yet was not provided with the 'normal' level of medical care, attention, or treatment(s) in response to Carbon Monoxide Poisoning.

688) GEO Defendants, performing a government function pursuant to a contract with the State of New Mexico or an agency thereof, owed Plaintiff a duty of care care to ensure he was duly provided with proper medical care and/or attention, a function GEO did not perform.

689) CORIZON Defendants, providing medical attention and/or healthcare services to prisoners as a government actor pursuant to a contract with the State of New Mexico or an agency thereof, did not provide or afford Plaintiff the standard or community level of care as specified or required under contract or by the Constitution, and at no time performed or caused to be performed any of the tests typically performed on victims of.

690) Instead, CORIZON and CORIZON Defendants failed to treat Plaintiff and/or failed to provide proper treatment to his person, with respect to the February 6, 2014 incident.

691) Upon CORIZON's exit as NMCD's "Medical Provider" to State prisoners, "CENTURION" obtained the respective healthcare services contract with the State of New Mexico or an agency thereof, and, with personnel and medical staff retained from CORIZON, maintained the status quo of treatment or lack thereof, in regards to medical care and/or attention for the treatment of exposure to carbon monoxide and/or Carbon Monoxide Poisoning.

692) At no time did CENTURION or CENTURION Defendants perform or cause to be performed any of the standard tests typically performed on victims of Carbon Monoxide Poisoning.

693) In regards to the toxic poisonings of:
  a. October 18-23, 2016;
  b. February 4, 2018; and,
  c. March 27, 2018,
CENTURION Defendants focused attention on residents of H2-B and did not treat or offer treatment to GCCF residents in A, C, D, or E Pods who 'only' felt 'minor' exposures.

694) The DEFENDANTS' individual and collective failure(s) to afford Plaintiff the standard or community level of care or provide his person with treatment(s) normally provided to persons suffering from exposure to carbon monoxide and/or Carbon Monoxide Poisoning amounts to a gross and severe degree of deliberate indifference to a serious medical need and constitutes inadequate medical care in direct violation of the 8th/14th Amendments.

695) **CLAIM X**: Medical Malpractice

696) In asserting 'medical authority' under color of law – pursuant to respective healthcare services contracts with New Mexico – and failing to render attention or proper medical care to normal professional standards is negligent conduct that amounts to medical malpractice by CORIZON and CORIZON Defendants as well as CENTURION and CENTURION Defendants.

(697) In failing to render the course of medical care and/or treatment(s) typically afforded to victims of Carbon Monoxide Poisoning despite owing a duty of care, Defendants CORIZON and CENTURION and their respective Defendants willfully, recklessly, or negligently failed to provide Plaintiff Amaro with adequate medical care and thereby violated the standard of healthcare providers in New Mexico in ways that include, but are not limited to:

a. Failing to render proper treatment for exposure to carbon monoxide;

b. Choosing not to provide or administer remedies known to lessen the harmful effects of carbon monoxide through absorption and/or filtration (such as a high-fiber diet and/or distilled water);

c. Choosing not to perform or cause to be performed the typical tests normally associated with exposure to carbon monoxide and afforded to victims of Carbon Monoxide Poisoning;

d. Choosing not to apply professional standards for proper treatment for exposure to carbon monoxide and/or toxic poisoning; and,

e. Choosing to improperly assert "APAP" and/or "I-PRIN" tablets to be the remedy, cure, and proper course of treatment for exposure to carbon monoxide and/or Carbon Monoxide Poisoning.

(698) DEFENDANTS' conduct demonstrates a gross and severe level of deliberate indifference to a serious medical need and amounts to a denial of competent medical care and exposure to substandard medical treatment and/or healthcare services in direct violation of the 8th/14th Amendments.

(699) CLAIM XI: Defective Healthcare Policy.

(700) STATE Defendants, GEO and GEO Defendants, CORIZON and CORIZON Defendants, and CENTURION and CENTURION Defendants through their willful, negligent, and reckless conduct, in regards to perpetuating failures related to inadequate medical care, substandard healthcare, and/or medical malpractice, in failure to render proper medical attention and/or treatment(s) to persons suffering from or afflicted with varying levels of Carbon Monoxide Poisoning, thereby demonstrate the longstanding practice of a defective healthcare policy, especially where the failures are continually repeated with every new mechanical malfunction of the prison's boiler(s)/flue(s) & ensuing exposure of persons to carbon monoxide.

(701) Defendants' practice of a defective healthcare policy directly violates the 8th/14th Amendments.

(702) CLAIM XII: Failure To Ensure, Provide, Or Administer Proper Or Adequate Medical Care And/Or Training.

(703) The continuing practice of a defective healthcare policy establishes that medical staff respectively stationed at GCCF were either:

a. not properly trained;

or,

b. were otherwise prevented from providing and/or administering due, proper, or adequate medical care in response to exposure to carbon monoxide and/or Carbon Monoxide Poisoning.

-93-

704) The continuing practice of a defective healthcare policy also establishes the failure of STATE Defendants S. MARTINEZ and the GOVERNOR'S OFFICE, BALDERAS and the A.G.'s OFFICE, DOES #4, NMCD, JABLONSKI, BREWSTER, ROARK,, LeMASTER, PHILLIPS, MADRID, SELVAGE, and Y. RIVERA; GEO, GEO Oversight Personnel, and GEO Defendants A. CAMPOS, HORTON, GAY, G. CHAVEZ, Maj. P. ARAGON, Lt. K. RIVERA, and ROMERO; and, CENTURION, CENTURION's Oversight Personnel, and CENTURION Defendants RIVERS, YOUNG, and ARMIJO to ensure that New Mexico's prisoners are provided due and proper medical care.

705) The continuing practice of a defective healthcare policy further establishes the failure of CENTURION, CENTURION Oversight Personnel, CCHIC-NM, and CENTURION Defendants RIVERS, YOUNG, and ARMIJO to equip their Medical Providers and/or treatment "gatekeepers" with proper training in regards to either:

    a. "Emergency Response" to toxic poisoning and/or the damaging, long-term effects; and/or,

    b. follow-up and/or after-care related to exposure to carbon monoxide and/or acute Carbon Monoxide Poisoning.

706) The failure of Defendants to ensure, provide, or administer proper or adequate medical care and/or training improperly places prisoners at GCCF at-risk of harm and/or future harm from inadequate medical care and/or medical malpractice, with no regard for the bodily intrusion and/or internal damage caused by the toxic poisoning, in direct violation of the 8th/14th Amendments.

707) CLAIM XIII: Assault / Battery - With Damaging Bodily Intrusion And Long-Term, Potentially Fatal Effects.

708) As OWNER(S) of a structure, Defendants DOES #7 and/or the COUNTY of GUADALUPE owed a basic and clear duty to ensure their structure was reasonably safe and free from harm upon completion of the construction and remained reasonably safe and free from harm for the duration of its usage.

709) Defendant OWNER(S), DOES #7 and/or the COUNTY OF GUADALUPE, in providing a structure designed to perform a governmental function (through confinement), owed a duty to the State of New Mexico to provide a structure which was not only reasonably safe and free from harm, but also fell into full compliance with both State and Federal standards and/or Constitutional requirements regarding confinement of persons and the conditions of said confinement.

710) Defendant OWNER(S), DOES #7 and/or the COUNTY OF GUADALUAE, owed a duty to intended and impending leasees to provide a structure that was reasonably safe and free from harm.

711) Defendant OWNER(S), DOES #7 and/or the COUNTY OF GUADALUPE, owed a duty to intended prisoners confined or to be confined at the Guadalupe County Correctional Facility to provide a structure which was reasonably safe and free from harm.

712) Defendant OWNER(S), DOES #7 and/or the COUNTY OF GUADALUPE, breached the duty owed by providing an inherently defective structure which lends itself to recurring events of carbon

monoxide-related 'emergencies' and/or Carbon Monoxide Poisoning, with toxic contamination of the prison's sleeping quarters and/or living environments, to which Plaintiff was confined and where he suffered from (acute) Carbon Monoxide Poisoning and cumulative exposures to carbon monoxide, thereby sustaining immediate injuries and unwilling bodily invasion through inhalation of the noxious fumes, with damaging long-term effects of the toxic gas(es).

713) STATE Defendants S. MARTINEZ and the GOVERNOR'S OFFICE, RICHARDSON, BALDERAS and the A.G.'s OFFICE, KING, NMCD, JABLONSKI, MARCANTEL, WILLIAMS, ROARK, and LeMASTER; and GEO, GEO Oversight Personnel, and GEO Defendants A CAMPOS, HORTON, GAY, C. CHAVEZ, GARNAND, MORRIS, BRAVO, ULIBARRI, JOHNSON, HATCH, FOSTER, and BEAIRD, who knew, should have known, and/or was made aware of GCCF's problematic history of carbon monoxide-related events, owed a duty to plaintiff to confine his person in a relatively safe manner at a reasonably safe prison, and in an environment not presenting or constituting inherently dangerous conditions of confinement.

714) The STATE and GEO Defendants cited immediately above, utilizing power and authority under color of law (whether directly or pursuant to a contract), acted intentionally, willfully, wantonly, negligently, and/or recklessly to breach their respective duties owed to prisoners of the State of New Mexico by deliberately confining and continuing to confine persons at the structurally defective and inherently dangerous Guadalupe County Correctional Facility, thereby knowingly subjecting such vulnerable persons to a known threat and risk of serious harm, injury, or death involving an invasion of bodily integrity through unwilling inhalation of carbon monoxide, where doing so inflicted severe psychological and emotional distress and caused Plaintiff to be in fear for his life and, thus, amounted to an assault on his person.

715) The STATE and GEO Defendants cited in paragraph 713, having either placed Plaintiff in a position to receive harm, great bodily harm, or even death, and having caused his person to actually suffer an undesired infliction of physical injuries through successive unwilling invasions of cherished personal security through unwilling inhalation of toxic gas(es), thereby committed battery upon the person of Pedro J. Amaro on February 6, 2014; October 18-23, 2016; February 4, 2018; and on March 27, 2018.

716) GEO, GEO Oversight Personnel, and GEO Defendants A. CAMPOS, HORTON, GAY, G. CHAVEZ, GARNAND, MORRIS, BRAVO, ULIBARRI, JOHNSON, HATCH, FOSTER, 'BEAIRD,' CASTILLO, S. CHAVEZ, "Mr." CHAVEZ, TENORIO, GERHARDT, SWAGGART, GARCIA, BRANCH, and/or EVERHART, respectively, in:

    a. Choosing to order or require maintenance and/or repair work to be done on GCCF's boiler(s) and/or flue(s) by either unqualified GCCF Maintenance staff and/or inmate workers;

    b. Choosing to perform and/or supervise maintenance and/or repair work to be done on GCCF's boiler(s)/flue(s) by either unqualified GCCF Maintenance staff and/or inmate workers; and/or,

    c. Choosing not to address or cause to be addressed the underlying hazardous conditions of confinement allowing the toxic contamination of the inmates' sleeping quarters and/or living environ-

ments,

personally and directly caused Plaintiff to be in harm's way and receive injuries and damages to his person, and thereby committed assault and a series of batterys on the person of Pedro J. Amaro.

717) STATE Defendants DOES #4, BREWSTER, ROARK, LeMASTER, PHILLIPS, MADRID, A. MARTINEZ, SELVAGE, Y. RIVERA, G. CHAVEZ, D.O.H. and DOE(s) #2, and/or H.S.D. and DOE(s) #3; GEO, GEO Oversight Personnel, and GEO Defendants Maj. P. ARAGON, G. MORRIS, "RESNICK", JOHNSON, GERHARDT, SWAGGART, GARCIA, BRANCH, EVERHART, Lt. K. RIVERA, RODGERS/VIGIL, G. CHAVEZ, and ROMERO; CORIZON, CORIZON Oversight Personnel, and CORIZON Defendants STABER, ARMIJO, TRAPP, and ALLEN; and, CENTURION, CENTURION Oversight Personnel, and CENTURION Defendants RIVERS, YOUNG, ARMIJO, and ALLEN, in having either passively or affirmatively enabled and/or allowed:

   a. the utilization of the Guadalupe County Correctional Facility as a place of confinement; and/or,

   b. the placement of Plaintiff Amaro in a position to receive harm, great bodily harm, or death, and having caused Plaintiff to actually suffer an undesired infliction of physical injuries through or as a result of individual and/or successive unwilling invasions of cherished personal security through unwilling inhalation of toxic gas(es), thereby committed battery upon the person of Pedro J. Amaro on February 6, 2014; October 18-23, 2016; February 4, 2018; and, March 27, 2018.

718) Defendants TRAPP and ALLEN, as medical authorities intentionally touching the person of Pedro J. Amaro under the guise of providing appropriate medical care while simultaneously refusing or failing to provide proper care and/or render adequate medical attention or treatment for the specific situation and its circumstances, legally converted the grossly negligent act(s) or action(s) into an extended series of batterys as the contacts served no legitimate (medical) purpose and were therefore unlawful.

719) Thus, all Claim-related DEFENDANTS, insolently placing Plaintiff in a position to receive bodily harm from a known threat, causing him to suffer from the actual infliction of physical injuries, and proceeding to unlawfully touch his person under the guise of "providing appropriate medical care" while failing to apply the professional standard of care to a person affected with Carbon Monoxide Poisoning, individually and/or collectively personally caused or contributed to the subjection of the person of Pedro J. Amaro to both assault(s) and a series of batterys, and directly put him in a position to suffer from future harm through potentially fatal health problems associated with and/or stemming from exposure to carbon monoxide, cumulative exposures to carbon monoxide, and/or Carbon Monoxide Poisoning.

720) CLAIM XIV: Unconstitutional Infliction Of Harm.

721) As each DEFENDANT knew, knows, should know, or has been made aware that GCCF, by and through its structure, is inherently unsafe and presents a known risk of serious harm, injury, or death from a specific source in a particular manner, the harm and damages wrongfully inflicted upon the person of Pedro J. Amaro, including potentially fatal future health problems associated with exposure to carbon monoxide, cumulative exposures to carbon monoxide, and/or Carbon Monoxide Poisoning are outrightly unconstitutional in violation of the 8th/14th Amendments.

722) The intentional, willful, reckless, and grossly negligent conduct of STATE Defendants, GEO and GEO Defendants, CORIZON and CORIZON Defendants, and CENTURION Defendants, as well as Defendant OWNER(S), DOES #7 and/or the COUNTY OF GUADALUPE, in allowing GCCF's toxic contamination problem to persist even while utilizing GCCF as a place of confinement, clearly demonstrates not just a deliberate indifference to the unsafe conditions of confinement and/or lack of proper care or medical attention to a very serious medical need, but also complete contempt and total disregard for the lives of the persons they are either:

    a. lawfully entrusted and/or charged with keeping safe and free from unreasonable harm while under terms of confinement;

and/or,

    b. they are profiteering off of.


722) CLAIM XV: Denial OF Due Process In The Course Of Prison "Grievance" Proceedings.

723) Based on Constitutional requirements and/or Federal regulations, the State of New Mexico and NMCD have drafted statutorily-based policies and corresponding procedures regarding the State's confinement of prisoners and the conditions of said confinement.

724) One such "Policy/Procedure" is NMCD Policy 150500 "Inmate Grievances" which (statutorily) prescribes the State's:

    a. obligation to 'hear' and/or consider any respective "Grievance"; and,

    b. function in the processing of "Grievances" submitted by the State's prisoners.

725) Subsequent to suffering from Carbon Monoxide Poisoning on February 6, 2014, Plaintiff engaged the prison's "Grievance" process as outlined by NMCD Policy/Procedure, beginning with the filing of an "Informal Complaint" (NMCD Form 150501.3) within 5-days of the incident.

726) Despite facility documentation of the event and medical records of (CORIZON) Medical Staff's having 'looked at' Plaintiff as he was exhibiting outward signs of (acute) Carbon Monoxide Poisoning, GCCF staff summarily 'denied' Plaintiff's "Informal" and recommended he submit a "(formal) Grievance."

727) Within 20-days of the incident Plaintiff submitted the "Grievance" (NMCD Form 150501.1) as specified, regarding the unsafe conditions of confinement and the event itself.

728) Despite the significance of this particular "Grievance" and sheer gravity of the situation, the "Grievance" was ultimately ignored and remains unanswered/unresolved to this day.

729) As an "ongoing issue" at GCCF that Defendant NMCD Contract Monitors Y. RIVERA and G. CHAVEZ, respectively; NMCD and/or NMCD Grievance Personnel, STATE Defendants MADRID, PHILLIPS, LeMASTER, and ROARK, and NMCD Secretaries JABLONSKI and MARCANTEL, respectively; and Defendant GEO's A.C.A. Compliance Monitor A. CAMPOS facility WARDENS HORTON, GAY, G. CHAVEZ, GARNANID, MORRIS, BRAVO, and ULIBARRI either knew about or are fully aware of — and have fielded numerous complaints over — GCCF's "Grievance Lieutenant" Defendant K. RIVERA focuses mainly on "Disciplinary" matters and generally disregards Grievance-related issues and/or proceedings, contrary to published NMCD Policy.

730) This problem and wide-spread knowledge of it resulted in a GEO MEMORANDUM from Defendant WARDEN HORTON to GCCF's "Inmate Population", with carbon copies to: Associate Wardens G. CHAVEZ and D. GARMANIO; Chief of Security Major P. ARAGON; Captain C. GAUNA; and, K. RIVERA, DHO/Grievance Lt. (dated January 14, 2017) in which HORTON clearly disregards published NMCD Policy/Procedure regarding "Informal Complaints, Grievances, [and] Grievance Appeals" and expressly dictates to inmates:

> "DO NOT attempt, or give these documents to employees, or other inmates. Boxes provided, will ONLY be accessed by personnel designated by me. Boxes will be checked daily."

which counters NMCD Policy allowing the Forms to be submitted by hand - in-person.

731) Defendant HORTON, tacitly expressing knowledge of 'lost' Forms and/or lack of confidentiality, indicates his purpose and reason for his deviance from published NMCD Policy/Procedure by stating:

> "In our efforts to track and maintain accountability of informal complaints, grievances, grievance appeals, ALL listed documents are to be placed into the boxes provided for such documents, located in the housing units."

732) Despite the "Memo," the "Grievance" boxes are (still) not "checked daily," and Grievances continue to be ignored, disregarded, 'sand-bagged' (to expire time limitations), or 'lost' altogether.

733) The choice of Defendant Lt. K. RIVERA in refusing or failing to perform the duties of her position's job-description, regarding "Inmate Grievances," constitutes a physical interference with a correctional function, in violation of the $8^{th}/14^{th}$ Amendments.

734) STATE Defendants S. MARTINEZ and the GOVERNOR'S OFFICE, BALDERAS and the A.G.'s OFFICE, KING, DOES #4, NMCD, JABLONSKI, MARCANTEL, WILLIAMS, BREWSTER, ROARK, LeMASTER, PHILLIPS, MADRID, Y. RIVERA, and/or G. CHAVEZ, in choosing not to require GEO to enforce the application of - and adherence to - published NMCD Policy/Procedure, by GEO and/or GEO's employees and/or agents, essentially ratify the contractual noncompliance and effectively communicate to Defendant GEO that such oppressive noncompliance is not subject to penalty, who, in-turn, by keeping Lt. K. RIVERA employed and in her position as "Grievance Lt.," communicates to Defendant Lt. K. RIVERA that her failure to perform the duties and/or obligations of her position's job-description is behaviour that, while oppressive and abusive in nature, will not subject her or her "Grievance Techs" to either discipline

or termination, and thereby perpetuates Defendant Lt. K. RIVERA's (tacitly) endorsed and/or condoned abusive practice of disregarding "Inmate Grievances", which results in a denial of due process in the course of prison "Grievance" proceedings by Claim-related STATE Defendants as well as by GEO's GCCF – Claim-related – Staff, and by GEO's Oversight Personnel.

735) The failure and/or refusal of Defendant Lt. K. RIVERA to perform the duties and/or obligations of her position's job-description, regarding "Inmate Grievances" – especially where the issue (as the issue at-hand) concerns the safety of prisoners and/or the security of the institution, is intentional, willful, wanton, negligent, and/or grossly reckless conduct that demonstrates contempt for either her job-description, the company she works for, the contractual obligations she was entrusted to fulfill, and/or the prisoners she lords over, and amounts to an oppressive denial of due process with a complete and total disregard for the statutorily prescribed provisions under which the NMCD Policy/Procedure was mandated, in violation of the 5th, 8th, and/or 14th Amendments.

736) In effectively condoning, endorsing, enabling, and/or allowing Defendant Lt. K. RIVERA to practice oppressive conduct regarding published NMCD Policy/Procedure and thereby deprive inmates of the process due, Claim-related Defendants cause or contribute to the denial of due process in violation of the 5th, 8th, and/or 14th Amendments.


737) CLAIM <u>XVI</u>: Failure To Treat.

738) Defendants TRAPP and ALLEN, in choosing not to afford Plaintiff the normal course of treatment typically provided to victims of exposure to carbon monoxide and/or Carbon Monoxide Poisoning, or the standard or community level of care in 'follow-up' or 'after-care', thereby failed to provide treatment to Plaintiff for symptoms of toxic poisoning and/or for toxic poisoning-induced medical issues.


739) CLAIM <u>XVII</u>: Failure To Provide Any Adequate Or Viable Avenue Of Administrative Redress Or Relief.

740) Defendant Lt. K. RIVERA's blatant disregard of NMCD Policy/Procedure and subsequent failure/refusal to provide inmates with the Grievance process as statutorily prescribed constitutes a deliberate and intentional failure to provide any adequate or viable avenue of administrative redress or relief, as federally mandated, in violation of the 5th, 8th, and/or 14th Amendments.

741) The failure and/or refusal of Defendant Wardens HORTON, GAY, G. CHAVEZ, GARNAND, MORRIS, BRAVO, and/or ULIBARRI, and GEO's A.C.A. Compliance Administrator A. CAMPOS to require Defendant Lt. K. RIVERA to process "Inmate Grievance" Forms in full accordance with NMCD Policy/Procedure as statutorily prescribed amounts to a deliberate and intentional physical interference with a correctional function and failure to provide any adequate or viable avenue of administrative relief, as federally mandated, in violation of the 5th, 8th, and/or 14th Amendments.

742) STATE Defendants S. MARTINEZ and the GOVERNOR'S OFFICE, BALDERAS and the A.G.'s OFFICE, KING, DOES #4, NMCD, JABLONSKI, MARCANTEL, WILLIAMS, BREWSTER, LeMASTER, PHILLIPS, MADRID, Y. RIVERA, and/or G. CHAVEZ, in failing or refusing to require Defendants GEO and/or Lt. K. RIVERA to process "Inmate Grievances" Forms in full accordance with NMCD

Policy/Procedure as statutorily prescribed is deliberate and intentional conduct that amounts to a failure to provide any adequate or viable avenue of administrative redress or relief, as federally mandated, in violation of the $5^{th}, 8^{th}$, and/or 14th Amendments.

743) CLAIM <u>XVIII</u>: Negligent Supervision Of GEO And/Or GEO Defendants; By STATE Defendants S. MARTINEZ and the GOVERNOR'S OFFICE, RICHARDSON, BALDERAS and the A.G.'s OFFICE, KING, DOES #4, NMCD, JABLONSKI, MARCANTEL, WILLIAMS, BREWSTER, ROARK, LeMASTER, Y. RIVERA, and/or G. CHAVEZ.

744) Defendant GEO, having entered into for-profit contract(s) with the State of New Mexico or an agency thereof to perform a governmental function for the State, under color of law, by operating a correctional facility and acting to exercise custody and control over State Prisoners confined at the Guadalupe County Correctional Facility, was thereby duly obligated to fulfill the Federal Government's regulations and Constitutional requirements pertaining to the State's confinement of prisoners to the same degree as their State-operated counterparts.

745) Upon information and belief, for-profit companies contracting with the State to operate prisons or provide services to prisoners thereby assume the power, authority, and responsibilities of the State and MUST take appropriate steps to ensure the safety of each inmate which includes identifying threats of harm and acting to prevent the unnecessary infliction of harm from known and/or specific sources.

746) For-profit companies contracting with the State of New Mexico to operate prisons and provide services to inmates must also ensure that they provide adequate training, supervision, and discipline regarding Constitutional Rights of incarcerated persons.

747) Such training and supervision must include proper response to given emergency situations, especially where a particular situation is a repeating event – which is preventable and unnecessary.

748) For-profit prison companies, having appropriated State authority under color of law, MUST also afford prisoners under their control the full measure of their respective Constitutional Rights as incarcerated persons.

749) As demonstrated in this case, GCCF Staff oppressively failed to provide the facility's prisoners with safe and/or humane conditions of confinement, proper medical care, and/or due process in attempts at administrative redress, remedy, and/or relief, amongst other failures.

750) The widespread knowledge of these issues at GCCF on a continuing or ongoing basis demonstrates the failure of GEO's Controlling Board and/or Oversight Personnel – two of whom personally performed air-quality tests in every pod in H #2 (and select cells in those Pods) subsequent to a more recent event of toxic contamination of the sleeping quarters and living environments in H 2-B with carbon monoxide in conjunction with yet another mechanical malfunction of the prison's boiler(s)/flue(s) – to enforce contractual obligations upon its subordinate staff at GCCF – whose culture demonstrates a policy of lax inmate protections – and effectively communicates to the subordinate GCCF Staff that such contractual noncompliance and professional and/or occupational deviance will be accepted as 'common-place' and will not result in either discipline or termination, thereby perpetuating the contractual noncompliance by Defendant GCCF Staff.

751 ) Further perpetuating GEO's culture of noncompliance with its contractual obligations is the State's forgiveness of millions of dollars'-worth of fines/penalties assessed against GEO for Contract-based violations - most notably by Defendant WILLIAMS in his role as New Mexico's "Cabinet Secretary for the Department of Corrections," immediately prior to his position with GEO (as a 're-hire') as GEO's "Director of Operations for U.S. Corrections."

752 ) In failing to meaningfully address and/or correct the contractual noncompliance and professional, occupational deviance of GEO and/or GEO Defendants, Claim-related STATE Defendants — persons with some degree of power, in positions of authority under color of law with 'oversight responsibility-perpetuated the obvious violations of inmate Rights and allowed GEO and GEO Defendants to maintain the status quo at GCCF and, thus, demonstrate their individual and collective grossly negligent supervision of Defendant The GEO Group, Inc. in regard to the for-profit prison company's obligations to the State of New Mexico and/or the State's prisoners pursuant to a legally enforceable contract.

753 ) The conduct of Claim-related STATE Defendants was intentional, willful, reckless, and grossly negligent, and demonstrates a severe degree of deliberate indifference towards the full extent of GEO's contractual obligations and/or the interests, health, safety, and well-being of the State's prisoners, and, in violation of the $8^{th}/14^{th}$ Amendments, directly resulted in the wrongful infliction of unnecessary harm and damages upon the person of Pedro J. Amaro.

754 ) CLAIM XIX: Negligent Supervision of CORIZON, LLC, CORIZON HEALTH, and/or CORIZON Defendants; By STATE Defendants S. MARTINEZ and the GOVERNOR'S OFFICE, BALDERAS and the A.G.'s OFFICE, KING, DOE(s) #4, NMCD, MARCANTEL, WILLIAMS, BREWSTER, ROARK, LeMASTER, PHILLIPS, A. MARTINEZ, and G. CHAVEZ.

755 ) Upon information and belief, at all times pertinent to this Complaint, Defendant CORIZON contracted with the NMCD to provide healthcare services to confined persons in New Mexico's prisons.

756 ) Upon information and belief, for-profit companies contracting with the State of New Mexico to operate prisons and provide services to inmates, including and especially medical care, MUST take appropriate steps to identify and prevent causes of harm and protect patient welfare and Constitutional Rights to the same degree as their State-operated counterparts.

757 ) For-profit companies contracting with the State of New Mexico to operate prisons and provide services to inmates must also ensure that they provide adequate training, supervision, and discipline regarding medical incompetence, negligence, and malpractice in their facilities.

758 ) Such training and supervisory oversight must include ensuring that whenever a medical professional is providing care to a patient, the treatment is proper and the remedy is adequate and/or appropriate for a given affliction.

759 ) As demonstrated in this case, at no time ever did Defendant CORIZON Medical Staff at GCCF provide Plaintiff Amaro with the standard of medical care typically afforded to normal persons in the community at-large found to be suffering from exposure to carbon monoxide and/or (acute) Carbon Monoxide Poisoning, never administered professionally advised remedy (-ies), and never

referred Plaintiff Amaro to any professional or medical facility who could perform the tests normally associated with exposure to carbon monoxide or (acute) Carbon Monoxide Poisoning and/or provide appropriate treatment(s) for his personal levels of poisoning.

760) As demonstrated in this case, at no time ever did Defendant CORIZON or CORIZON Medical Staff at GCCF "take appropriate steps to identify and prevent causes of harm and protect patient welfare and Constitutional Rights" in regards to GCCF's recurring toxic contaminations and hazardous underlying conditions of confinement.

761) At no time did Defendant A. MARTINEZ, as MMCD's "Health Services Administrator"; Defendant GLORIA CHAVEZ, in her former capacity as NMCD's "Contract Monitor" at GCCF; or Defendant Y. RIVERA, in her current capacity as NMCD's "Contract Monitor" at GCCF require Defendant CORIZON or CORIZON Defendants to provide the standard medical care in cases of exposure to carbon monoxide and/or (acute) Carbon Monoxide Poisoning to Plaintiff Amaro or any other persons so afflicted at GCCF.

762) Upon information and belief, at no time has any other Claim-related STATE Defendant required Defendant CORIZON and/or CORIZON Defendants to take appropriate steps to prevent the unnecessary infliction of harm upon prisoners at GCCF.

763) Upon information and belief, at not time has any Claim-related STATE Defendant required Defendant CORIZON to adequately train, supervise, or discipline its Medical Staff at GCCF in regards to proper and/or adequate medical care and/or medical malpractice.

764) In failing to meaningfully address and/or correct Defendant CORIZON's breach(es) of contract and/or the professional/occupational deviance of CORIZON Medical Staff or CORIZON Defendants in general, Claim-related STATE Defendants demonstrate their individual and collective grossly negligent supervision of Defendant CORIZON, LLC and/or Defendant CORIZON HEALTH in regards to the contractual obligations of CORIZON and CORIZON Defendants to provide adequate medical care and to protect the health, safety, and general well-being of New Mexico prisoners.

765) Upon information and belief, despite department employees' warnings STATE Officials and Claim-related STATE Defendants allowed Defendant CORIZON "to operate almost unregulated" and could produce records of having performed and/or completed only 20 medical care audits of about 160 that should have been done between 2012 and 2015, this despite CORIZON's having "faced over 150 lawsuits by more than 200 inmates in the State since 2007."

766) Upon information and belief, Tim Keller, in his former capacity as "State Auditor," "wav[ed] red flags that have gone unaddressed... [resulting in a] lack of corrective action," regarding the "quality of CORIZON's care" of prisoners.

767) Upon information and belief, Defendant BREWSTER confirmed that Defendant CORIZON had been "[the] subject of an in-depth investigation by NMCD" and that NMCD had drafted a report that was "prepared in anticipation of litigation."

768) By all apparent indications, and as asserted by Deb Haaland, "[the] Martinez administration has not taken the proper steps to ensure [that New Mexico's] prison population is receiving the healthcare it should," which openly indicts Defendant S. MARTINEZ with violations of the 5th, 8th, and 14th Amendments.

769) As in the case of NMCD's previous Medical Services provider, Wexford Health Sources, STATE Defendants could have asserted "breach of contract" and properly dismissed or 'fired' Defendant CORIZON, but did not.

780) In failing to meaningfully address and/or correct the contractual noncompliance and substandard healthcare services provided to New Mexico inmates by CORIZON and/or CORIZON Defendants, Claim-related STATE Defendants perpetuated the obvious violations of inmate Rights and allowed CORIZON and CORIZON Defendants to maintain the status quo at GCCF and, thus, demonstrate their individual and collective grossly negligent and outright reckless supervision of Defendant CORIZON in regard to the for-profit prison healthcare services company's obligations to the State of New Mexico and/or the State prisoners to whom proper service was due, pursuant to a legally enforceable contract.

781) The conduct of Claim-related Defendants was intentional, deliberate, willful, wanton, reckless, and grossly negligent and, in violation of the $5^{th}, 8^{th}$, and/or 14th Amendments, directly resulted in the wrongful infliction of unnecessary harm and damages upon the person of Pedro J. Amaro.

782) CLAIM XX : Negligent Supervision Of "CENTURION", CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC, and/or CENTURION Defendants; By STATE Defendants S. MARTINEZ and the GOVERNOR'S OFFICE, BALDERAS and the A.G.'s OFFICE, DOES #4, NMCD, JABLONSKI, MARCANTEL, ROARK, LeMASTER, PHILLIPS, MADRID, A. MARTINEZ, SELVAGE, and Y. RIVERA.

783) Upon information and belief, at all times pertinent to this Complaint, Defendant CENTURION contracted with NMCD to provide healthcare services to New Mexico's inmate population.

784) Upon information and belief, for-profit companies contracting with the State of New Mexico to operate prisons and provide services to inmates, including and especially medical care, MUST take appropriate steps to identify and prevent causes of harm and protect patient welfare and Constitutional Rights to the same degree as their State-operated counterparts.

785) For-profit companies contracting with the State of New Mexico to operate prisons and provide services to inmates must also ensure that they provide adequate training, supervision, and discipline regarding medical incompetence, negligence, and malpractice in their facilities.

786) Such training and supervisory oversight must include ensuring that whenever a medical professional is providing care to a patient, the treatment is proper and the remedy is adequate and/or appropriate for a given affliction.

787) As demonstrated in this case, at no time ever did Defendant CENTURION Medical Staff at GCCF provide Plaintiff Amaro with the standard of medical care typically afforded to normal persons in the community at-large regarding exposure to carbon monoxide, follow-up or aftercare for toxic poisoning, diagnosis of carbon monoxide-related health issues, and/or referrals to a professional or medical facility who could properly ascertain the degree of internal damage done and risk level of future potentially fatal health problems due to exposure to carbon monoxide, cumulative exposures to carbon monoxide, and/or (acute) Carbon Monoxide Poisoning.

788) As demonstrated in this case, at no time ever did Defendant CENTURION or CENTURION Medical Staff at GCCF "take appropriate steps to identify and prevent causes of harm and protect patient welfare and Constitutional Rights" in regards to GCCF's recurring toxic contaminations and hazardous underlying conditions of confinement.

789) Upon information and belief, at no time has any Claim-related STATE Defendant required CENTURION and/or CENTURION Defendants to take appropriate steps to prevent the unnecessary infliction of harm upon prisoners at GCCF.

790) At no time did Defendant A. MARTINEZ, as NMCD's "Health Services Administrator"; Defendant SELVAGE, as NMCD's "Health Services Bureau Chief"; or Defendants G. CHAVEZ and/or Y. RIVERA, as NMCD's "Contract Monitors," respectively, require Defendant CENTURION or CENTURION Defendants to provide the standard medical care in cases of exposure to carbon monoxide and/or (acute) Carbon Monoxide Poisoning, or regarding proper follow-up and/or aftercare or diagnosis of toxic poisoning-related health issues to Plaintiff or any inmate.

791) Upon information and belief, at no time has any Claim-related STATE Defendant required Defendant CENTURION to adequately train, supervise, or discipline its Medical Staff at GCCF in regards to proper and/or adequate medical care and/or medical malpractice.

792) Upon information and belief, Claim-related Defendants have allowed CENTURION and CENTURION Defendants to continue with the very same course and manner of medical attention and/or treatment and level of healthcare services provided to New Mexico's inmate population as NMCD's previous healthcare services Medical Provider, Defendant CORIZON.

793) In failing to meaningfully address and/or correct Defendant CENTURION's breach(es) of contract and/or professional/occupational deviance of CENTURION Medical Staff or CENTURION Defendants in general, Claim-related STATE Defendants demonstrate their individual and/or collective grossly negligent supervision of Defendant "CENTURION" and/or Defendant CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC in regards to the contractual obligations of CENTURION and CENTURION Defendants to provide adequate medical care and to protect the health, safety, and general well-being of New Mexico's inmate population.

794) By all apparent indications and upon information and belief, as with CORIZON, the (S.) MARTINEZ administration has continued to not take proper steps to ensure that New Mexico's inmate population receives the healthcare it should ... from CENTURION and CENTURION Defendants (especially where the "CENTURION Defendants" are individuals who were retained from Defendant CORIZON's previous employment, who violated the Civil Rights of inmates, who caused and/or were the subjects of inmate-initiated lawsuits against CORIZON, and who have been allowed by both CENTURION and Claim-related STATE Defendants to maintain the status quo of medical care/treatment or lack thereof) in violation of the 5th, 8th, and/or 14th Amendments.

795) In failing to meaningfully address and/or correct the contractual noncompliance and substandard healthcare services provided to New Mexico inmates by CENTURION and/or CENTURION Defendants, Claim-related STATE Defendants perpetuated the obvious violations of inmate Rights and allowed CENTURION and CENTURION Defendants to maintain the status quo at GCCF and, thus, demonstrate their individual and collective grossly negligent and outright reckless supervision

-104-

of Defendant CENTURION in regard to the for-profit prison healthcare services company's obligations to the State of New Mexico and/or the State's prisoners to whom proper service was due, pursuant to a legally enforceable contract.

796) The conduct of Claim-related STATE Defendants was intentional, deliberate, willful, wanton, reckless, and grossly negligent and, in violation of the 5th, 8th, and/or 14th Amendments, directly resulted in the wrongful infliction of unnecessary harm and damages upon the person of Pedro J. Amaro.

797) CLAIM XXI: Negligent Hiring, Credentialing, Training, Supervision, and Retention; By The GEO Group, GEO Oversight Personnel, and GEO Defendants.

798) At all times pertinent hereto, Defendant The GEO Group, Inc. — "GEO" — was duly responsible for the due and proper care and safety of Plaintiff Amaro pursuant to its contract with the State of New Mexico or an agency thereof.

799) At all times pertinent hereto, Defendant GEO, through its employees and agents, was required to use the ordinary care of a reasonably prudent entity in hiring, credentialing, training, supervising, and staffing, and in having policies and procedures in place to ensure that inmates at GEO-operated facilities in New Mexico were not needlessly endangered.

800) For-profit companies contracting with New Mexico to operate prisons and provide services to inmates must also ensure that they provide adequate training, supervision, and discipline regarding staff insubordination, abuse, abusive practices, oppressive conduct, protection of inmates from harm and known threats of harm, and denial of Civil Rights to prisoners in their facilities.

801) Duties of companies operating prisons and providing services in prisons also include enacting and enforcing appropriate policies regarding background checks, qualifications, staff evaluations, and staff discipline.

802) When made aware of possible instances of harm, known threats and/or risk of harm, abusive practices, oppressive conduct, and/or any other potential violation of inmates' Civil Rights, companies such as GEO cannot maintain the status quo at their facilities, but must act immediately to put a stop to such conditions and/or misconduct.

803) Defendant GEO hired its Wardens, Defendants HORTON, GAY, G. CHAVEZ, GARNAND, G. MORRIS, BRAVO, ULIBARRI, JOHNSON, HATCH, FOSTER, and BEAIRD, as well as A.C.A. Compliance Administrator A. CAMPOS, to oversee the Guadalupe County Correctional Facility at Santa Rosa, New Mexico - a privately owned facility operated by Defendant GEO.

804) Defendant GEO has had millions of dollars in fines and/or penalties levied against it by the State of New Mexico for contractual violations (some of which were 'paid' by GEO while some were forgiven by State Officials).

805) Defendant GEO knew, knows, or should know that GCCF is susceptible to potentially deadly events of toxic contamination and poisoning through carbon monoxide-related 'emergency' events, the disruption of the facility's orderly daily operation by the events, through inmates' complaints and Grievances, Maintenance Reports, Medical Emergency reports, notice to and

inclusion of State Officials and personnel in the 'more serious' events, as well as through personal involvement and/or observations of correctional officers and GCCF Staff members.

806) Defendant GEO knew, knows, or should know - through the written Grievance procedure as well as oral reports of GCCF Staff members - that GCCF's Grievance Lieutenant " Defendant KRYSTLE RIVERA has an "ongoing issue" of physically interfering with the "Grievance" process and inmates' attempts at administrative relief by refusing or failing to process Inmate Grievances as prescribed by published NMCD Policy/Procedure.

807) Defendant GEO knew, knows, or should know, by and through inmates' complaints, the written Grievance procedure, as well as oral reports of staff members, that medical providers, Defendants CORIZON and CENTURION, respectively, were and/or do not adequately provide due and proper medical care or healthcare services.

808) In addition, as early as 2007, Defendant GEO was made aware of GCCF's particular issue via the written complaint or "Grievance" of an inmate or inmates at GCCF as well as through the event itself.

809) Despite this knowledge, GEO Defendants, through their employees and agents, knowingly, willfully, negligently, and/or recklessly continued to operate GCCF as a 'for-profit' prison, in spite of its inherently dangerous conditions of confinement and the risk of serious harm, injury, or death it presents.

810) Despite knowing of the risk of serious harm, injury, or death to prisoners at GCCF by exposure to carbon monoxide, and having the ability to address and/or cure the problem, or have the problem addressed and/or cured, GEO and GEO Defendants recklessly allow the dangerous conditions of confinement to continue posing a threat to the inmate population at GCCF.

811) Defendant GEO's Controlling Board and/or Oversight Personnel, through their employees and agents and Defendant Wardens HORTON, GAY, G. CHAVEZ, GARNANO, MORRIS, BRAVO, ULIBARRI, JOHNSON, HATCH, FOSTER, and BEAIRD, intentionally, willfully, recklessly, and/or negligently did not use the ordinary care of a reasonably prudent entity by committing acts and omissions including the following:

    a. Choosing not to ensure that inmates at GCCF were provided safe and humane conditions of confinement;

    b. Choosing not to ensure that the conditions of confinement at GCCF were inherently safe and reasonably free from harm;

    c. Choosing not to conduct adequate training of supervisors or staff to prevent abusive practices and/or oppressive conduct by facility staff;

    d. Choosing not to adequately supervise or prevent abusive or oppressive conduct by facility staff;

    e. Choosing not to have or enforce safety policies related to inmate protection(s) and prevention of unnecessary harm, or conduct adequate training and supervision related to inmate safety and protection of prisoners from harm and/or known threats of harm;

    f. Choosing not to have or enforce safety requirements or policies related to (building/structure) maintenance and/or the prevention of toxic contamination(s) of inmate sleeping quarters

and/or living environments and/or (mass) poisonings through exposure to carbon monoxide, or conduct adequate training and supervision related to (building/structure) maintenance and/or the prevention of toxic contamination(s) of inmates' sleeping quarters and/or living environments, and/or (mass) poisonings through exposure to the noxious fumes of carbon monoxide;

g. Choosing not to have or enforce safety requirements or policies strictly regarding exposure to carbon monoxide and/or (acute) Carbon Monoxide Poisoning, or conduct adequate training and supervision related to carbon monoxide and/or Carbon Monoxide Poisoning;

h. Choosing not to post warning signs and/or notices related to GCCF's problematic history of recurring events of toxic contamination and exposure to carbon monoxide, or conduct adequate training and supervision related to the posting of notices regarding the presence of a known threat and risk of harm, injury, or death;

i. Choosing not to investigate or adequately investigate the underlying or root cause(s) of recurring events of exposure to carbon monoxide and/or Carbon Monoxide Poisoning;

j. Choosing not to address and/or cure the underlying cause of GCCF's recurring events of toxic contamination, or cause the issue to be addressed and/or cured;

k. Choosing not to investigate or inadequately investigating the background and/or qualifications of prospective and current staff and management;

l. Choosing to hire and retain staff with a history of problematic behavior, insubordination and/or incompetence or abusive and/or oppressive conduct;

m. Choosing not to train management and employees to properly process, investigate, and resolve Inmate Grievances;

n. Choosing not to train management and employees to properly investigate and address issues and/or allegations of employee insubordination, abuse of authority, and/or abusive or oppressive conduct;

o. Choosing not to have or enforce adequate policies related to reporting, investigation, and resolution of issues and/or allegations of employee insubordination, abuse(s) of authority, and/or abusive or oppressive conduct; and,

p. Choosing not to take adequate steps to safely operate and/or maintain the facility and/or its physical structure.

812) Defendant GEO hired Defendants HORTON, GAY, G. CHAVEZ, GARNAND, MORRIS, BRAVO, ULIBARRI, JOHNSON, HATCH, FOSTER, and BEAIRD, respectively, to be the facility Wardens at the Guadalupe County Correctional Facility at Santa Rosa, New Mexico - a privately owned facility operated by Defendant GEO.

813) Prison Wardens are policy makers and supervisors at the facilities they oversee and are responsible for ensuring their facilities are administered to properly, lawfully, safely, humanely, and in keeping with their contracts.

814) Prison Wardens have the ability to control the conduct of their staff and are responsible for ensuring the facilities they operate are safe and free from abuse, including abusive practices and oppressive conduct by prison personnel.

815) Prison Wardens are also responsible for ensuring that personnel hired and retained are properly trained and supervised, and do not pose a danger to inmates housed under their care.

816) Prison Wardens are responsible for ensuring that their facilities have and enforce adequate policies and disciplinary measures to keep the facility running safely.

817) Having faced or dealt with (repeating) events of toxic contamination(s) of the inmates' sleeping quarters and/or living environments at GCCF pursuant to mechanical malfunctions of the prison's boiler(s) and/or flue(s), Defendant Wardens HORTON, GAY, G. CHAVEZ, GARNAND, MORRIS, BRAVO, ULIBARRI, JOHNSON, HATCH, FOSTER, and BEAIRD, respectively, were fully aware that GCCF was seriously afflicted with an inherently defective design and its corresponding construction that allows escaped fumes to congregate in 'common-space' shared with HVAC ductwork which itself is not adequately sealed and allows the fumes to penetrate the ductwork which then routes the noxious gases to individual cells with Pods closest to the boiler-rooms being the most drastically affected, yet have not acted to prevent further events of of toxic contamination or exposure to carbon monoxide by adopting or enforcing appropriate policies, training, discipline, or investigation procedures, or requiring GEO's Maintenance personnel at GCCF to address and correct the structural defects or otherwise cure the facility of its carbon monoxide-related 'emergency' events.

818) Having fielded repeating complaints levelled at or against Grievance Lieutenant K. RIVERA regarding her abuse of authority in failing to process Inmate Grievances pursuant to NMCD Policy/Procedure, and oppressive conduct in refusing to properly address and/or investigate Inmate Grievances, especially where the Grievance complaint alleges a serious threat and/or risk of harm, Defendant Wardens HORTON, GAY, G. CHAVEZ, GARNAND, MORRIS, BRAVO, ULIBARRI, and JOHNSON knew or had an awareness that Defendant Lt. K. RIVERA was abusing her authority, under color of law, at GCCF, yet have not acted to stop it by adopting or enforcing appropriate policies, training, discipline, or investigation procedures.

819) Instead, Defendant Wardens HORTON, GAY, G. CHAVEZ, GARNAND, MORRIS, BRAVO, ULIBARRI, and JOHNSON have perpetuated the continuing unsafe conditions of confinement, staff insubordination, contractual noncompliance, lax inmate protections, and a culture that allowed and allows this pervasive abuse and unreasonable risk of harm to continue unabated.

820) As a direct and proximate result of the intentional willful, reckless, or negligent acts and omissions of GEO, GEO Oversight Personnel, and GEO Defendants and their employees and agents, Plaintiff Amaro suffered physical and emotional damages, including physical injury, physical pain and suffering, invasion of bodily integrity, risk of future potentially health problems, denial of competent medical care and exposure to inadequate/unsafe medical treatment, and severe psychological and emotional distress, and is also now at-risk of future foreseeable harm and damages associated with exposure(s) to carbon monoxide and/or Carbon Monoxide Poisoning, and future-unprevented-incidents of toxic contamination/poisoning.

821) Pursuant to NMTCA, GEO, GEO Oversight Personnel, and GEO Defendants are each responsible for their own acts and omissions as well as the acts and omissions of their employees and agents pursuant to direct, joint, concurrent, vicarious, and/or successive

liability and under the doctrines of "Special Relationship Liability", "Supervisory Personal Liability", and/or respondeat superior.

822) CLAIM <u>XXII</u>: Negligent Hiring, Credentialing, Training, Supervision, and Retention; By CORIZON, CORIZON Oversight Personnel, and CORIZON Defendants.

823) At all times pertinent hereto, Defendant CORIZON, LLC - "CORIZON" - was duly responsible for providing adequate healthcare services to Plaintiff Amaro pursuant to its contract with the State of New Mexico or an agency thereof.

824) At all times pertinent hereto, Defendant CORIZON, through its employees and agents, was required to use the ordinary care of a reasonably prudent entity in hiring credentialing, training, supervising, and staffing, and in having policies and procedures in place to ensure that New Mexico inmates were not needlessly endangered.

825) For-profit companies contracting with New Mexico to operate prisons and provide services to inmates must also ensure that they provide adequate training, supervision, and discipline regarding staff insubordination, abuse, abusive practices, oppressive conduct, protection of inmates from harm and known threats of harm, and denial of Civil Rights to prisoners in their facilities.

826) Duties of companies operating prisons and providing services in prisons also include enacting and enforcing appropriate policies regarding background checks, qualifications, staff evaluations, and staff discipline.

827) When made aware of possible instances of harm, known threats and/or risk of harm, abusive practices, oppressive conduct, and/or any other potential violation of inmates' Civil Rights, companies such as CORIZON cannot maintain the status quo at their facilities, but must act immediately to put a stop to such conditions and/or misconduct.

828) Defendant CORIZON knew, knows, or should have known that GCCF is susceptible to potentially deadly events of Carbon Monoxide Poisoning through emergency responses to the events, CORIZON Medical Staff's treatment of Carbon Monoxide Poisoning victims, the disruption of the facility's orderly daily operation by the events, through Medical Reports, and the personal involvement and/or observations of CORIZON Medical Staff's personnel and oral reports.

829) Defendant CORIZON knew, knows, or should have known that CORIZON Medical Staff at GCCF simply failed to provide victims of Carbon Monoxide Poisoning with the professionally prescribed course of care, testing, and/or remedies by and through Medical Reports as well as records of inventory on-hand, inventory used/issued, staff referrals to outside medical providers and/or facilities - or lack thereof, and tests either performed or requested or lack thereof.

830) Defendant CORIZON hired Defendant ARMIJO as well as Defendant STABER to oversee the operation of the Medical Facility at GCCF, with Defendant ARMIJO holding the position of CORIZON's "Health Services Administrator" ("HSA") at GCCF.

831) Prison "Health Services Administrators are policy-makers and supervisors at the facilities where they oversee medical treatment, and are responsible for ensuring medical treatment to inmates is administered properly, lawfully, humanely, and pursuant to contract.

832) Prison HSAs have the ability to control the conduct of their staff and are responsible for ensuring the medical units they oversee are safe and free from abuse, including improper and/or inadequate medical care and/or treatment(s).

833) Prison HSAs are also responsible for ensuring that personnel hired and retained are properly trained and supervised, and do not pose a danger to inmates for whom they provide medical services.

834) Prison HSAs are responsible for ensuring that their facilities have and enforce adequate policies and disciplinary measures to provide proper and appropriate medical care.

835) Having faced or dealt with repeating events of toxic contamination of GCCF's sleeping quarters and living environments of prisoners pursuant to mechanical malfunctions of the prison's boiler(s)/flue(s), CORIZON Defendants STABER and ARMIJO were fully aware that GCCF was seriously afflicted with an inherently defective design and/or construction that results in mass cases of Carbon Monoxide Poisoning.

836) Upon information and belief, Defendants STABER and ARMIJO knew that GCCF inmates afflicted with toxic poisoning were not afforded the professionally prescribed course of care, testing, and/or remedy(-ies).

837) Despite this knowledge, neither Defendant STABER nor Defendant ARMIJO acted to intervene with the inadequate medical care or to protect the inmate population under their care by adopting or enforcing appropriate policies, training, discipline, or investigation procedures, or by requiring Defendant GEO to address and/or cure the underlying conditions of confinement responsible for the recurring events of toxic contamination, or by compelling the State and/or its Officials to take appropriate steps to protect the inmate population at GCCF from foreseeable, preventable, and unnecessary harm, injury, or death from exposure to carbon monoxide.

838) Instead, Defendants STABER and ARMIJO perpetuated the unsafe conditions of confinement, contractual noncompliance, medical malpractice, lax inmate protections, and a culture that allowed this pervasive abuse and unreasonable risk of harm, injury, or death to continue.

839) Defendant CORIZON, LLC's Controlling Board and/or Oversight Personnel, through their employees and agents and Defendants CORIZON HEALTH, JOHN(s)/JANE(s) DOE(s) #5, STABER, and ARMIJO, intentionally, willfully, recklessly, and/or negligently did not use the ordinary care of a reasonably prudent entity by committing acts and omissions that include the following:

a. Choosing not to ensure that inmates at GCCF were provided safe and humane conditions of confinement;

b. Choosing not to ensure that the conditions of confinement at GCCF were inherently safe and reasonably free from harm;

c. Choosing not to post notice(s) of GCCF's particular threat and/or risk of serious harm, injury, or death by exposure to carbon monoxide or the health risks associated with exposure to carbon monoxide;

d. Choosing not to ensure that inmates at GCCF had access to and were provided safe, competent, and appropriate medical care for a given affliction;

e. Choosing not to have or enforce adequate policies and procedures relating to medical care to prevent inmate abuse or inadequate treatment(s);

f. Choosing not to conduct adequate training of supervisors or staff to prevent abusive practices or improper use of (medical) authority by facility staff;

g. Choosing not to adequately supervise to prevent abusive practices or inadequate treatment(s) by facility staff;

h. Choosing not to have or enforce policies related to abusive conduct or practices by facility staff and/or prevention of abusive conduct or practices by staff, or conduct adequate training and supervision related to prevention of abusive conduct or practices by facility staff;

i. Choosing not to investigate or inadequately investigating the background and/or qualifications of prospective and current staff and management;

j. Choosing not to investigate or inadequately investigating the root cause(s) of recurring events of exposure to carbon monoxide and/or Carbon Monoxide Poisoning;

k. Choosing not to have or enforce policies related strictly to the care and treatment of GCCF inmates afflicted with varying levels and/or degrees of Carbon Monoxide Poisoning;

l. Choosing not to have or enforce policies strictly targeting care of toxic poisoning cases and constant readiness at GCCF for to treat victims of exposure to carbon monoxide;

m. Choosing not to conduct adequate training of supervisors or staff at GCCF specifically targeting toxic poisoning, exposure to carbon monoxide, and/or Carbon Monoxide Poisoning;

n. Choosing not to require CORIZON Medical Staff at GCCF to be adequately prepared to properly treat (mass) cases of toxic poisoning and/or exposure to carbon monoxide;

o. Choosing not to instruct and/or require CORIZON Defendants to provide inmates afflicted with carbon monoxide poisoning with the full spectrum of medically approved care, attention, and treatment(s) typically afforded to victims of Carbon Monoxide Poisoning;

p. Choosing to hire and retain staff with a history of abusive conduct or practices, or of providing inadequate or improper medical care and/or treatment(s);

q. Choosing not to train management and employees to properly investigate and address issues or allegations of inadequate or improper medical care, or abusive conduct or practices;

r. Choosing not to have or enforce adequate policies relating to reporting, investigation, and resolution of issues and/or allegations of inadequate or improper medical care, or abusive conduct or practices; and/or,

s. Choosing not to take adequate steps to properly operate the Medical Facility at GCCF in full accordance with normal standards of professional medical care and/or in compliance with contractual obligations and Constitutional requirements.

840) As a direct and proximate result of the intentional, willful, reckless, or grossly negligent acts and omissions of Defendants CORIZON, CORIZON Oversight Personnel, DOEs#5, CORIZON HEALTH, STABER, ARMIJO, TRAPP, and ALLEN and their respective employees and agents, Plaintiff Amaro suffered physical and emotional damages, including physical injury, physical pain and suffering, invasion of bodily integrity, denial of competent medical care and exposure to inadequate/unsafe medical treatment, and severe psychological and emotional distress, and is now not only at-risk of future harm and damages associated with exposure to carbon monoxide, cumu-

lative exposures to toxic poisoning by fumes of carbon monoxide, and (acute) Carbon Monoxide Poisoning, but is also at a worsened level of risk of future harm as a result of improper medical care and/or inadequate medical treatment for exposure to carbon monoxide, cumulative exposures to carbon monoxide, and (acute) Carbon Monoxide Poisoning, and remains at-risk of future harm(s) and damages stemming from future- unprevented- incidents of toxic contamination and exposure to carbon monoxide.

841) Pursuant to MMTCA, CORIZON, CORIZON Oversight Personnel, and CORIZON Defendants are each responsible for their own acts and omissions as well as the acts and omissions of their employees and agents, pursuant to direct, joint, concurrent, vicarious, and/or successive liability, and under the doctrines of "Special Relationship Liability", "Supervisory Personal Liability", agency, and respondeat superior.

842) CLAIM XXIII: Negligent Hiring, Credentialing, Training, Supervision, and Retention; By "CENTURION," CENTURION Oversight Personnel, and CENTURION Defendants.

843) At all times pertinent hereto, Defendant "CENTURION" was duly responsible for providing adequate healthcare services to Plaintiff Amaro pursuant to its contract with the State of New Mexico or an agency thereof.

844) At all times pertinent hereto, Defendant "CENTURION," through its employees and agents, was required to use the ordinary care of a reasonably prudent entity in hiring credentialing, training, supervision, and staffing, and in having policies and procedures in place to ensure that New Mexico inmates are not needlessly endangered.

845) For-profit companies contracting with New Mexico to operate prisons and provide services to inmates must also ensure that they provide adequate training, supervision, and discipline regarding staff insubordination, abuse, abusive practices, oppressive conduct, protection of inmates from harm and known threats of harm, and denial of Civil Rights to prisoners in their facilities.

846) Duties of companies operating prisons and providing services in prison also include enacting and enforcing appropriate policies regarding background checks, qualifications, staff evaluations, and staff discipline.

847) When made aware of possible instances of harm, known threats and/or risk of harm, abusive practices, oppressive conduct, and/or any other potential violation of inmates' Civil Rights, companies such as CENTURION cannot maintain the status quo at their facilities, but must act immediately to put a stop to such conditions and/or misconduct.

848) Defendant CENTURION knew, knows, or should know that GCCF is susceptible to potentially deadly events of Carbon Monoxide Poisoning through emergency responses to the events, CENTURION Medical Staff's treatment of persons exposed to carbon monoxide, the disruption of the facility's orderly daily operation by the events, through Medical Reports, and the personal involvement and/or observations of CENTURION Medical Staff's personnel and oral reports.

849) Defendant CENTURION knew, knows, or should know that CENTURION Medical Staff at GCCF failed to provide victims of toxic poisoning or exposure to carbon monoxide with the

professionally prescribed course of care, testing, and/or remedy (-ies) by and through Medical Reports as well as records of inventory on-hand, inventory used or issued, staff referrals to outside medical providers and/or facilities - or lack thereof, and tests either performed or requested - or lack thereof.

850) Defendants CENTURION and/or RIVERS hired Defendants YOUNG and ARMIJO to oversee the operation of the Medical Facility at GCCF.

851) Defendants CENTURION and/or RIVERS retained Defendant ARMIJO as "HSA" at GCCF, from Defendant CORIZON's previous employment.

852) Defendants CENTURION, RIVERS, and/or YOUNG had access to knowledge and information of Defendant CORIZON's substandard services and poor performance as a healthcare provider to New Mexico's inmates, and its track-record of inmate-based lawsuits alleging negligent care, Civil Rights violations, and sexual abuse.

853) Defendants CENTURION, RIVERS, and YOUNG had access to knowledge and information of Defendant ARMIJO's status as a "Defendant" in several of the more than 150 lawsuits against Defendant CORIZON, alleging negligent management of the Medical Facility at GCCF and/or Civil Rights violations, amongst other issues.

854) Prison "Health Services Administrators," such as Defendant ARMIJO, are policy makers and supervisors at the facilities where they oversee medical treatment, and are responsible for ensuring medical treatment to inmates is administered properly, lawfully, humanely, and pursuant to contract.

855) Prison HSAs have the ability to control the conduct of their staff and are responsible for ensuring the medical units they oversee are safe and free from abuse, including improper and/or inadequate medical care and/or treatment(s).

856) Prison HSAs are also responsible for ensuring that personnel hired and retained are properly trained and supervised, and do not pose a danger to inmates for whom they provide medical services.

857) Prison HSAs are responsible for ensuring that their facilities have and enforce adequate policies and disciplinary measures to provide proper and appropriate medical care.

858) Having faced or dealt with repeating events of toxic contamination of GCCF's sleeping quarters and living environments of prisoners subsequent to mechanical malfunctions of the prison's boiler(s)/flue(s), CENTURION Defendants YOUNG and/or ARMIJO were fully aware that GCCF was seriously afflicted with an inherently defective design and/or construction that results in (mass) cases of toxic poisoning with carbon monoxide.

859) Upon information and belief, Defendants YOUNG and ARMIJO knew that GCCF inmates afflicted with toxic poisoning were not afforded the professionally prescribed course of care, testing, and/or remedy (-ies).

860) Despite this knowledge, neither Defendant YOUNG nor ARMIJO have acted to intervene with the inadequate medical care or to protect the inmate population under their care by adopting or enforcing appropriate policies, training, discipline, or investigation procedures, or by requiring Defendant GEO to address and/or cure the the underlying conditions of confinement responsible for the recurring events of toxic contamination, or by compelling the State and/or its Officials to take appropriate steps to protect the inmate population at GCCF from foreseeable, preventable,

and unnecessary harm, injury, or death from exposure to carbon monoxide.

861) Instead, Defendants YOUNG and ARMIJO have perpetuated the unsafe conditions of confinement, contractual noncompliance, medical malpractice, lax inmate protections, and a culture that allowed this pervasive abuse and unreasonable risk of harm, injury, or death, to continue unabated.

862) Defendant CENTURION's Controlling Board and/or Oversight Personnel, through their employees and agents and Defendants CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC, JOHN(s)/JANE(s) DOE(s) #6, RIVERS, YOUNG, and ARMIJO, intentionally, willfully, recklessly, and/or negligently did not use the ordinary care of a reasonably prudent entity by committing acts and omissions that include the following:

a. Choosing not to ensure that inmates at GCCF are provided safe and humane conditions of confinement;

b. Choosing not to ensure that the conditions of confinement at GCCF are inherently safe and reasonably free from harm;

c. Choosing not to post notice(s) of GCCF's particular threat and/or risk of harm, injury, or death by exposure to carbon monoxide or the health risks associated with exposure to carbon monoxide, cumulative exposures to carbon monoxide, or (acute) Carbon Monoxide Poisoning;

d. Choosing not to ensure that inmates at GCCF have access to and are provided safe, competent, and appropriate medical care for a given affliction – namely, exposure to carbon monoxide and/or Carbon Monoxide Poisoning;

e. Choosing not to have or enforce adequate policies and procedures related to medical care to prevent inmate abuse or inadequate treatment(s);

f. Choosing not to conduct adequate training of supervisors or staff to prevent abusive practices or improper use of (medical) authority by facility staff;

g. Choosing not to adequately supervise to prevent abusive practices or inadequate treatment(s) by facility staff;

h. Choosing not to have or enforce policies related to abusive conduct or practices by facility staff and/or prevention of abusive conduct or practices by staff, or conduct adequate training and supervision related to prevention of abusive conduct or practices by facility staff;

i. Choosing not to investigate or inadequately investigating the background and/or qualifications of prospective or current staff and management;

j. Choosing not to investigate or inadequately investigating the root cause(s) of recurring events of exposure to carbon monoxide and/or Carbon Monoxide Poisoning;

k. Choosing not to have or enforce policies related strictly to the care and treatment of GCCF inmates afflicted with varying levels and/or degrees of Carbon Monoxide Poisoning;

l. Choosing not to have or enforce policies strictly targeting care of toxic poisoning cases and constant readiness at GCCF for to treat victims of exposure to carbon monoxide;

m. Choosing not to conduct adequate training of supervisors or staff at GCCF specifically targeting toxic poisoning, exposure to carbon monoxide, and/or Carbon Monoxide Poisoning;

n. Choosing not to require CENTURION Medical Staff at GCCF to be adequately prepared to properly treat (mass) cases of toxic poisoning and/or exposure to carbon monoxide;

a. Choosing not to instruct and/or require CENTURION Defendants to provide inmates afflicted with carbon monoxide poisoning with the full spectrum of medically approved care, attention, and/or treatment(s) typically afforded to victims of Carbon Monoxide Poisoning;

p. Choosing to hire and retain staff with a history of abusive conduct or practices, or of providing inadequate or improper medical care and/or treatment(s);

q. Choosing not to train management and employees to properly investigate and address issues or allegations of inadequate or improper medical care, or abusive conduct or practices;

r. Choosing not to have or enforce adequate policies relating to reporting, investigation, and resolution of issues and/or allegations of inadequate or improper medical care or abusive conduct or practices; and/or,

s. Choosing not to take adequate steps to properly operate the Medical Facility at GCCF in full accordance with normal standards of professional medical care and/or in compliance with contractual obligations and Constitutional requirements.

863) As a direct and proximate result of the intentional, willful, reckless, and/or grossly negligent acts and omissions of Defendants CENTURION, CENTURION Oversight Personnel, and CENTURION Defendants and their employees and agents, Plaintiff Amaro suffered physical and emotional damages, including physical injury, physical pain and suffering, invasion of bodily integrity, denial of competent medical care and exposure to inadequate/unsafe medical treatment, and severe psychological and emotional distress, and remains at-risk of future foreseeable harm and damages stemming from exposure(s) to carbon monoxide and/or Carbon Monoxide Poisoning and future - unprevented - incidents of toxic contamination/poisoning.

864) Pursuant to NMTCA, CENTURION, CENTURION Oversight Personnel, and CENTURION Defendants are each responsible for their own acts and omissions, as well as the acts and omissions of their employees and agents pursuant to direct, joint, concurrent, vicarious, and/or successive liability, and under the doctrines of "Special Relationship Liability", "Supervisory Personal Liability," agency, and respondeat superior.

865) CLAIM XXIV: Negligent Hiring, Credentialing, Training, Supervision, and Retention; By STATE OFFICIALS, Entities, and Defendants.

866) At all times pertinent hereto, the State of New Mexico, by and through its Officials, entities, employees, and agents or apparent agents were duly reasonsible for confining the person of Pedro J. Amaro in manners which were safe and humane, and in conditions of confinement that are also humane and reasonably safe - free from known threats of harm - and for providing proper medical care and treatment(s) as necessary.

867) At all times pertinent hereto, Defendant STATE OFFICIALS and their employees and/or agents were required to use the ordinary care of a reasonably prudent entity in appointing, hiring, credentialing, training, supervising, and staffing, and in having policies, and procedures in place to ensure that New Mexico inmates were confined in compliance with Federal regulations and Constitutional requirements, and were not needlessly endangered.

868) When contracting with for-profit companies to operate prisons and provide services to inmates STATE OFFICIALS must also ensure that they provide adequate training, supervision, and discipline regarding staff, abuse, abusive practices, oppressive conduct, protection of inmates from harm and known threats of harm, required and/or appropriate conditions of confinement, and denial of Civil Rights to prisoners in their facilities.

869) Duties of STATE OFFICIALS over companies contracting with the State of New Mexico or any agency thereof to operate prisons and provide services to prisoners also includes enacting and enforcing appropriate policies regarding background checks, qualifications, staff evaluations and staff discipline.

870) When made aware of possible instances of harm, known threats and/or risk of harm, unsafe conditions of confinement, abusive practices, oppressive conduct, and/or any other potential violation of inmates' Civil Rights, STATE OFFICIALS cannot maintain the status quo at the facility or facilities, but must act immediately to put a stop to such misconduct and/or eradicate such unsafe conditions of confinement.

871) Defendant DAVID JABLONSKI, Cabinet Secretary of Corrections and past Secretarys of Corrections GREGG MARCANTEL and JOE WILLIAMS, respectively, were each appointed by New Mexico Governors - Defendants S. MARTINEZ and/or RICHARDSON - to 'run' the New Mexico Department of Corrections and oversee the operation of prisons and prison facilities in New Mexico.

872) Defendants JABLONSKI, MARCANTEL, and WILLIAMS, as "NMCD Secretary" (or former Secretarys), respectively, were each responsible under color of law for ensuring that prisons in New Mexico were professionally operated and maintained reasonably safe environments complete with adequate medical care and appropriate healthcare services.

873) Defendants JABLONSKI, MARCANTEL, and WILLIAMS, respectively, were also each responsible under color of law for ensuring that each individual inmate:

    a. was adequately protected from harm and known threats or risk of harm;

    b. was free from staff abuse, abusive practices, and/or oppressive conduct;

    c. was afforded conditions of confinement which were reasonably safe and free from inherent risks of harm, injury, or death;

    d. had access to appropriate healthcare services including for Mental Health; and/or

    e. received adequate medical care and/or treatment(s), including that from Mental Health Providers.

874) Defendants JABLONSKI, MARCANTEL, and WILLIAMS, respectively, were each made aware of 6CCF's unsafe conditions of confinement by and through respective alerts from Defendants GEO, CORIZON, and/or CENTURION, and the need for "Emergency Response" by STATE OFFICIALS in regards to the more serious Carbon Monoxide-related events at 6CCF, and by or through recurring "Notice(s)" and/or "Report(s)" of:

    a. Carbon monoxide-related (emergency) events at 6CCF;

    b. treatment(s) of toxic-poisoning (carbon monoxide) victims at 6CCF by respective Medical Staffs;

    c. the direct personal involvement and/or observations of other State Officials and/or agents

or employees (such as NMCD's Contract Monitors at GCCF, Defendants Y. RIVERA and G. CHAVEZ, respectively, Unknown Defendant STATE OFFICIAL(s) from the New Mexico Department of Health as JOHN(s)/JANE(s) DOE #2, and/or Unknown STATE OFFICIAL(s) from the New Mexico Human Services Department as JOHN(s)/JANE(s) DOE #3); and/or,

d. the disruption of the facility's orderly daily operation by the events, as well as through oral reports of GEO Staff, CORIZON Staff, and CENTURION Staff stationed or employed at GCCF, including nurses, mental health practitioners, and correctional officers, or from STATE OFFICIALS/Defendants involved with NMCD's "Grievance" process.

875) Despite this knowledge, Defendants JABLONSKI, MARCANTEL, and WILLIAMS, respectively, did not act and have not intervened with or stop the repeating events of toxic contamination at GCCF, nor have these Defendants acted to compel Defendant GEO to properly address and/or cure the underlying or root cause(s) of the potentially deadly events of exposure to carbon monoxide taking place at GCCF, or compelled Defendant OWNER(S), DOES #7 and/or the COUNTY OF GUADALUPE to do the same.

876) Instead, Defendants JABLONSKI, MARCANTEL, and WILLIAMS, respectively, each perpetuated the continuing unsafe conditions of confinement, contractual non-compliance, lax inmate protections, violation of inmates' Civil Rights, and a culture that allows this pervasive abuse and unreasonable risk of harm to continue unabated.

877) Upon information and belief, having been appointed or hired as NMCD's "Deputy Secretary" and "Deputy Director of Operations," Defendants ROARK and LeMASTER, respectively, although not above "NMCD Secretary's," possessed, essentially, the same responsibilities as the actual "Cabinet Secretaries," and were also duly responsible under color of law for the interests, health, safety, and general well-being of New Mexico's inmate population.

878) Defendants ROARK and LeMASTER were each made aware of GCCF's unsafe conditions of confinement in the same manner(s) as Defendants JABLONSKI, MARCANTEL, and WILLIAMS.

879) As with Defendants JABLONSKI, MARCANTEL, and WILLIAMS, Defendants ROARK and LeMASTER also failed to meaningfully intervene with the continued operation of GCCF as a place of confinement by either Defendant GEO and/or Defendant OWNER(S), despite the prison's dangerous conditions of confinement.

880) Instead, Defendants ROARK and LeMASTER also perpetuated the continuing unsafe conditions of confinement, contractual noncompliance, lax inmate protections, violation of inmates' Civil Rights, and a culture that allows this pervasive abuse and unreasonable risk of harm, injury, or death to continue unabated.

881) Having also been involved with NMCD's "Grievance" process, Defendants ROARK and LeMASTER, along with NMCD Grievance personnel, Defendants PHILLIP and MADRID, were made aware of GCCF's dangerous conditions of confinement through the complaints from GCCF inmates who duly engaged the Grievance process pursuant to NMCD Policy/Procedure.

882) Despite this knowledge, Defendants ROARK, LeMASTER, PHILLIPS, and MADRID, respectively, did not properly investigate the nature of the complaints, nor did they act to intervene

with or stop the unnecessary exposure of GCCF inmates to the noxious fumes of carbon monoxide, or compel Defendants GEO and/or OWNER(S) to properly address and/or cure the underlying cause(s) of the potentially deadly events of toxic contamination/poisoning taking place at GCCF.

883) Instead, Defendants ROARK, LeMASTER, PHILLIPS, and MADRID have perpetuated the continuing unsafe conditions of confinement, contractual noncompliance, lax inmate protections, violations of inmates' Civil Rights, and a culture that allows this pervasive abuse and unreasonable risk of harm to continue unabated.

884) Defendants ROARK, LeMASTER, PHILLIPS, and MADRID, as NMCD's "Grievance" personnel, through oral reports and observations of staff members of the State and of GEO (at GCCF), and through the complaints of inmates and the written Grievance process, were made aware of Defendant Lt. K. RIVERA's failure and/or refusal to process either "Informal Complaints" and/or "Inmate Grievances" pursuant to published NMCD Policy/Procedure ~ amounting to "contractual noncompliance" by Defendant GEO and constituting a physical interference with a Correctional function as her failure to complete the Grievance process prevented, thwarted, or otherwise hindered Plaintiff Amaro's efforts to avail himself of an administrative remedy, rendering remedy and/or relief unavailable, thus prolonging the process and unreasonably delaying relief from the unsafe conditions of confinement, thereby denying to Plaintiff Amaro the process he was statutorily due.

885) Despite this knowledge, Defendants ROARK, LeMASTER, PHILLIPS, and MADRID have not acted to stop Lt. K. RIVERA's insubordination, abuse, abusive practices, or oppressive conduct or GEO's contractual noncompliance, and have not acted to meaningfully compel GEO to come into compliance regarding the processing of "Informal Complaints" and/or "Inmate Grievances" at GCCF.

886) Defendants A. MARTINEZ and SELVAGE, as NMCD's "Health Services Administrator" and "Health Services Bureau Chief," respectively, were made aware of GCCF's dangerous conditions of confinement, the recurring events of toxic contamination of the inmate's sleeping quarters and/or living environments with carbon monoxide, and of the failures of Defendants CORIZON and CENTURION, to render appropriate medical care, testing, treatment(s), and/or remedies to victims of exposure to carbon monoxide through personal involvement with and/or oversight responsibilities for the healthcare provided to prisoners by the State of New Mexico, and through oral reports and observations of (concerned) GEO Staff, CORIZON Staff, and/or CENTURION Staff stationed or employed at GCCF, including nurses, mental health practitioners, and correctional officers, or from STATE OFFICIALS involved with NMCD's Grievance process.

887) Despite this knowledge, neither Defendant A. MARTINEZ nor Defendant SELVAGE acted to protect New Mexico prisoners at GCCF from the dangerous conditions of confinement, or the ensuing medical malpractice.

888) Instead, Defendants A. MARTINEZ and SELVAGE, respectively, perpetuated the continuing unsafe conditions of confinement, contractual noncompliance of Defendants GEO, CORIZON, and CENTURION, respectively, lax inmate protections, violation of inmates' Civil Rights, medical malpractice, and a culture that allows this pervasive abuse and unreasonable risk of harm to continue.

Additionally:

889) Defendant A. MARTINEZ, as NMCD's "HSA" was made aware of the fact that at one time NMCD undertook an in-depth investigation of Defendant CORIZON and CORIZON Defendants which, after more than a year, "resulted in a report of several hundred pages" and "revealed deep problems with inmate care provided by the company - and of the state's lax oversight of the company."

890) Defendant A. MARTINEZ was made aware of the fact that the 'in-depth' investigation and its report were "prepared in anticipation of litigation" by the NMCD.

891) Despite this knowledge, Defendant A. MARTINEZ still did not act to protect New Mexico prisoners at GCCF, and did not act to intervene with or stop the repeating events of carbon monoxide contamination/poisoning at GCCF, nor did Defendant A. MARTINEZ compel Defendant GEO to properly address and/or cure the underlying cause(s) of the potentially deadly events of toxic contamination/poisoning taking place at GCCF, nor did Defendant A. MARTINEZ compel or require Defendant CORIZON to provide adequate medical care, testing, treatment(s) and/or remedies to victims of Carbon Monoxide Poisoning at GCCF.

892) Instead, Defendant A. MARTINEZ perpetuated the continuing unsafe conditions of confinement, contractual noncompliance of both Defendant GEO and Defendant CORIZON, lax inmate protections, violations of inmates' Civil Rights, medical malpractice, and a culture that allows this pervasive abuse and unreasonable risk of serious harm, injury, or death to continue unabated,

893) Defendants ROARK, LeMASTER, PHILLIPS, and MADRID, as NMCD "Grievance" personnel, through oral reports and observations of staff members of the State and from GEO (at GCCF), and through the complaints of inmates and the written Grievance process, were made aware of the failure(s) of Defendants CORIZON and/or CENTURION to properly render adequate medical care or provide appropriate treatment(s) and/or remedies to victims of toxic poisoning by exposure to carbon monoxide at GCCF.

894) Despite this knowledge, Defendants ROARK, LeMASTER, PHILLIPS, and MADRID, respectively, did not properly investigate the nature of the complaints, nor did they act to intervene with or stop the failure(s) of Defendant CORIZON and/or CENTURION to properly render adequate medical care or provide appropriate treatment(s) and/or remedies to victims of carbon monoxide poisoning at GCCF.

895) Instead, Defendants ROARK, LeMASTER, PHILLIPS, and MADRID have perpetuated the continuing inadequate medical care, medical malpractice, contractual noncompliance, lax inmate protections, violations of inmates' Civil Rights, and a culture that allows this pervasive abuse and unreasonable risk of harm to continue unabated.

896) Defendants Y. RIVERA and G. CHAVEZ, respectively, as NMCD "Contract Monitors", stationed at GCCF - both having been 'long-time' employees of GEO at the same facility (with Defendant G. CHAVEZ being back in GEO's employ as a Warden at GCCF) — were made aware of the recurring incidents of carbon monoxide poisoning, failure of respective facility

Medical Staff(s) to render the appropriate course of care, treatment(s), and/or remedies to victims of Carbon Monoxide Poisoning at 6CCF, and the failure(s) of Lt. K. RIVERA to properly process "Informal Complaints" and/or "Inmate Grievances" per NMCD Policy/Procedure through personal involvement and/or observation, oral reports and observations of staff members, including nurses, mental health practitioners, and corrections officers, and through both oral and written complaints from inmates.

897) Despite this knowledge Defendants Y. RIVERA and/or 6. CHAVEZ did not act to compel either GEO or Defendant OWNER(S) to 'fix' GCCF's problem, did not act to compel respective Medical Staff employees to properly afford 6CCF inmates the community level of care in cases of toxic exposure/poisoning and did not or have not required GEO and/or GEO Defendants to actually comply with NMCD Policy/Procedure regarding "Informal Complaints," "Inmate Grievances," "Grievance Appeals," and/or the Grievance program and process in general.

898) Instead, Defendants Y. RIVERA and 6. CHAVEZ perpetuated the continuing inadequate medical care, medical malpractice, contractual noncompliance, lax inmate protections, violations of inmates' Civil Rights, and a culture that allows this pervasive abuse and unreasonable risk of harm to continue.

899) Additionally, Defendant 6. CHAVEZ - who is currently a "Warden" at 6CCF - before acting as NMCD Contract Monitor at 6CCF was actually employed by GEO as GCCF's "Grievance Lieutenant."

900) Despite her particular and intimate knowledge of the NMCD Grievance Policy/Procedure, Defendant 6. CHAVEZ, neither as NMCD Contract Monitor nor as a Warden at 6CCF, has she meaningfully acted to correct Lt. K. RIVERA's professional insubordination and occupational deviance regardless of her oversight or supervisory capacity to do so, backed by the knowledge and experience with which to properly train Lt. K. RIVERA.

901) Instead, Defendant 6. CHAVEZ perpetuates the continuing insubordination, occupational deviance, contractual noncompliance, lax inmate protections, violations of inmates' Civil Rights, and a culture that allows this pervasive abuse and unreasonable risk of harm to continue unabated.

902) Upon information and belief, Defendant JAMES R. BREWSTER, as "NMCD Legal Counsel," possessed a unique perspective on the issue of "contractual non compliance" by Defendants GEO, CORIZON, and/or CENTURION, and has specific knowledge regarding the full extent of Defendant CORIZON's defective healthcare policy, substandard healthcare services, and medical malpractice concerning its care and treatment of inmates in New Mexico.

903) Defendant BREWSTER was privy to the several-hundred-page report stemming from an in-depth NMCD investigation on Defendant CORIZON and into its healthcare practices in New Mexico, which, having taken in excess of a year to conduct, "revealed deep problems with inmate care provided by [CORIZON], and the state's lax oversight of the company."

904) On August 5, 2016, Defendant BREWSTER was quoted by Ms. Phaedra Haywood, of The New Mexican, as having asserted that "[t]here is a report on Corizon, but you can't see it."

905) Defendant BREWSTER also asserted that the report "was prepared in anticipation of

litigation"

906) Ms. Haywood's article includes the paragraph:

> Brewster said currently there is not any pending litigation related to the information in the report, "but the statute of limitations in which litigation could be filed has not expired."

907) Incidentally, at that particular time, Defendant CORIZON had several pending cases against it for sexual abuse and violation of Civil Rights - in the "Dr. Walden" scandal, which indicates that the several-hundred-page report omitted information related to Dr. Walden's sexual abuse of inmates.

908) Coincidentally, Plaintiff Amaro had a standing "Notice of Claim" and initially filed his Complaint in this action just under 30 days from the article and one month from the statute of limitations' expiration, indicating that the several-hundred-page report may concern or include 'in-depth' information regarding the toxic contamination/poisoning events at GCCF as well as Defendant CORIZON's failure to provide GCCF's carbon monoxide poisoning victims with the standard or community level of care typically provided to Carbon Monoxide Poisoning victims in the public at-large.

909) The careful review of every facet of healthcare provided to New Mexico inmates in an "in-depth' investigation" would have revealed Defendant CORIZON's administration of medical care and level of treatment(s) to inmates at GCCF suffering from exposure to carbon monoxide.

910) Despite:

a. this particular level of knowledge and information;

b. legal obligation to his 'client' to warn them of possible outcomes and/or legal ramifications pertaining to either issues;

c. an affirmative duty to New Mexico inmates to protect them from harm; and,

d. his responsibility as a State Official and Officer of the Court to intervene in the corrupt allowance of his 'colleagues' to continue contributing profits to Defendants GEO and CORIZON (and now CENTURION) while they practiced their respective contractual violations and thereby defrauded the State of millions of dollars in tax money,

Defendant BREWSTER did not act to stop the corruption-based misconduct, require either Defendant GEO, CORIZON, or CENTURION to actually come into (contractual) compliance, enforce the terms of the State's contracts with either Defendant GEO, Defendant CORIZON, or Defendant CENTURION, or act meaningfully in any other way so as to prevent foreseeable, preventable, and unnecessary harm from being wrongfully inflicted upon any New Mexico prisoner.

911) Instead, Defendant BREWSTER refused to avoid this lawsuit and merely prepared for the anticipated litigation, and thereby perpetuated the misconduct, the continuing unsafe conditions of confinement at GCCF, the lax inmate protections, the violations of inmates' Civil Rights, the contractual noncompliance, and the culture that allows this pervasive corruption, abuse, and unreasonable risk of harm to continue unabated.

-121-

912) Defendants New Mexico DEPARTMENT OF HEALTH ("DOH") and Unknown JOHN(s)/JANE(s) DOE #2 were made aware of GCCF's dangerous conditions of confinement through official alert(s) and oral reports and observations of staff members from the STATE, GEO, and (upon information and belief) from an inspector for Southwestern gas company.

913) Despite this knowledge, Defendant STATE OFFICIALS and/or personnel and/or agents or employees of the N.M. DOH did not act to exert or engage its (oversight) authority so as to protect the human life of New Mexico's prisoners at GCCF but allowed Defendants GEO and/or DOES #) and/or the COUNTY OF GUADALUPE to continue operating GCCF as a for-profit prison facility without further investigation of the recurring toxic contaminations and carbon monoxide poisonings, or any kind of oversight meant to protect the health of persons confined at GCCF.

914) Instead, Defendant NM DOH and DOH Defendants, where they would normally "shut-down" and/or "condemn" a toxically contaminated 'establishment' - especially one with recurring events of carbon monoxide poisoning - acted arbitrarily and capriciously with the decision not to intervene with Defendants OWNER(S) and/or GEO's operation of the potentially fatal facility and thereby perpetuated the misconduct, the continuing unsafe conditions of confinement at GCCF, the lax inmate protections, the violations of inmates' Civil Rights, the contractual noncompliance, and the culture that allows this pervasive corruption, abuse, and unreasonable risk of harm to continue unabated.

915) Upon information and belief, Defendants New Mexico HUMAN SERVICES DEPARTMENT ("HSD") and Unknown JOHN(s)/JANE(s) DOE #3 were made aware of GCCF's dangerous conditions of confinement through official alert(s) and oral reports and observations of staff members from the STATE, GEO, and (upon information and belief, a representative from Southwestern gas company.

916) Despite this knowledge, Defendant STATE OFFICIALS and/or employees or agents of the HSD did not act to engage or exert it official 'STATE' authority so as to protect the human life of New Mexico's prisoners at GCCF but allowed Defendants GEO and/or DOES #) and/or the COUNTY OF GUADALUPE to continue operating GCCF as a for-profit prison facility without further investigation of the recurring toxic contaminations and carbon monoxide poisonings, or any kind of oversight meant to protect the health of persons confined at GCCF.

917) Instead, Defendant NM HSD and HSD Defendants acted arbitrarily and capriciously with the decision not to intervene with Defendants OWNER(S) and/or GEO's operation of the potentially fatal facility and thereby perpetuated the misconduct, the continuing unsafe conditions of confinement at GCCF, the lax inmate protections, the violations of inmates' Civil Rights, the contractual noncompliance, and the culture that allows this pervasive corruption, abuse, and unreasonable risk of harm to continue unabated.

918) Defendants HECTOR BALDERAS and GARY KING, respectively, as "New Mexico ATTORNEY GENERAL" ("A.G."), by virtue of position and responsibilities for the State of New Mexico, were made aware of GCCF's dangerous conditions of confinement and Defendant CORIZON's

quality of healthcare provided to New Mexico prisoners (or lack thereof), as well as the issue of New Mexico's lax oversight (of CORIZON) in a number of ways that include oral reports of staff members from the State, NMCD Secretary's, NMCD's "General Counsel" Defendant BREWSTER, NMCD's in-depth investigation and ensuing several-hundred-page report, (former State Auditor) Tim Keller, and/or from oral reports and observations of State Officials and/or staff who fielded questions relating to NMCD's year-long-plus investigation into Defendant CORIZON and/or the six-month investigation into the matter by *The New Mexican*, as well as from "Risk Management" pursuant to Plaintiff Amaro's submission of the "Notice of Claim" filed as a precursor to this action as required by law.

919) Despite this knowledge Defendants BALDERAS and KING, respectively, did not act to compel either Defendant OWNER(S) and/or CEO to 'fix' GCCF's problem and did not compel CORIZON to properly afford GCCF inmates the community level of care in cases of toxic contamination/poisoning.

920) Instead, Defendants BALDERAS and KING, respectively perpetuated the misconduct, the continuing unsafe conditions of confinement at GCCF, the lax inmate protections, the violations of inmates' Civil Rights, the contractual noncompliance, and the culture that allows this pervasive corruption, abuse, and unreasonable risk of harm to continue unabated.

921) Additionally, Defendant KING was made aware of the issues of this matter through written notice of Plaintiff Amaro who submitted a true copy of his "Notice of Claim, dated December 29, 2014, directly to the A.G.'s Office at the time it was drafted, and simultaneously with the Claims' submission to "Risk Management Division".

922) Defendant BALDERAS, having had knowledge of the issues through notice from "Risk Management" of Plaintiff Amaro's submission of the Claim as well as Plaintiff's submission of a true copy of the Claim directly to the A.G.'s Office, was made further aware of the issues by Plaintiff's submission of a true copy of the original Complaint and its Exhibits directly to the A.G.'s Office simultaneously to his filing of the Complaint with the U.S. District Court, District of New Mexico, in Albuquerque.

923) Despite this additional information and particular level of knowledge, neither Defendant BALDERAS nor KING acted to intervene with and/or stop:

    a. the recurring exposures of New Mexico prisoners to carbon monoxide at GCCF;

    b. Defendant GEO's failure to correct the facility's inherently dangerous underlying conditions of confinement or otherwise act to protect New Mexico prisoners from the foreseeable, preventable, and unnecessary harm, injury, or death;

    c. Defendant OWNER(S), DOES #7 and/or the COUNTY OF GUADALUPE, failure to correct the facility's inherently dangerous underlying conditions of confinement;

    d. Defendant CORIZON's failure to render proper medical care regarding treatment(s) to GCCF inmates for carbon monoxide poisoning; or,

    e. the corruption-based allowance of STATE OFFICIALS to continue contributing to the profits of Defendants GEO and CORIZON (and now CENTURION) as they practiced their respective contractual noncompliance(s) and violation of inmates' Civil Rights while, thereby bilking and/or defrauding the State of millions of dollars in taxpayer funds.

924) Instead, Defendants BALDERAS and KING, respectively, refused to avoid this lawsuit (with Defendant BALDERAS, presumably, preparing for this litigation in cooperation with Defendant BREWSTER) and perpetuated the corruption-based misconduct, the continuing unsafe conditions of confinement at GCCF, the lax inmate protections, the violation of inmates' Civil Rights, the contractual non-compliance of Defendants GEO and CORIZON (and now CENTURION), and the culture that allows this pervasive corruption, abuse, and unreasonable risk of harm to continue unabated.

925) Defendants JOHN(s)/JANE(s) DOE #1 and JOHN(s)/JANE(s) DOE #4 are any currently Unknown and/or Unidentified person or persons within the STATE Government or their respective "Legal Counsels" or legal representatives of State actors/agents who had or has sufficient knowledge or awareness of GCCF's dangerous conditions of confinement, Defendant OWNER(S)'s inherently dangerous structure, Defendant GEO's contractual noncompliance in the operation of GCCF as a for-profit prison, Defendant CORIZON's inadequate medical care of New Mexico prisoners at GCCF and ensuing medical malpractice, and/or Defendant CENTURION's inadequate medical care of New Mexico prisoners at GCCF and ensuing medical malpractice to establish a legally culpable state of mind, with sufficient power and/or authority to intervene with the wide-spread corruption-based misconduct, violation of inmates' Civil Rights, and/or continuing unsafe conditions of confinement at GCCF yet failed or fails to intervene with the hazardous conditions or take appropriate administrative action or measures so as to ensure the safety of New Mexico prisoners, who, despite their information and knowledge and (civic) duty, perpetuate or contribute to the perpetuation of the corruption-based misconduct, abuse, abuse of authority, abusive practices, oppressive conduct, lax inmate protections, violation of inmates' Civil Rights, the contractual noncompliance of Defendants GEO, CORIZON, and/or CENTURION, and the culture that allows this pervasive corruption, abuse, and unreasonable risk of harm to continue unabated.

926) Defendants SUSANA MARTINEZ and BILL RICHARDSON, as New Mexico "Governor" and former Governor, respectively, appointed, hired, or allowed to be hired, the same above-cited Claim-related Defendant STATE OFFICIALS and/or Defendants who have allowed the issues raised in this lawsuit to go, essentially, unaddressed, and who perpetuated the corruption-based misconduct, the continuing unsafe conditions of confinement at GCCF, the lax inmate protections, the violation(s) of inmates' Civil Rights, the contractual noncompliance of Defendants GEO, CORIZON, and/or CENTURION, and the culture that allows this pervasive abuse, corruption, and unreasonable risk of harm to continue unabated.

927) Additionally, besides the notice(s) and/or (official) alert(s) of the issues and/or threatened litigation from former State Auditor Tim Keller, Defendants BALDERAS and KING, regarding Plaintiff's Grievances, Notice of Claim, initial filing of Federal 42 U.S.C. §1983 Complaint, and letter presenting conditions under which Amaro would consider settlement, Defendant S. MARTINEZ "was silent when asked through a spokesman for reaction to the findings of _The Santa Fe New Mexican_ investigation into the lack of oversight of medical care delivered to state prison inmates by [Defendant CORIZON], . . ." indicating that S. MARTINEZ, a former "District Attorney" and legal professional, by all available indications, cannot deny knowledge of the issues at hand; the in-depth, year-long-

plus investigation by NMCD; the several-hundred-pages-long report "reveal[ing] deep problems with inmate care...and... the state's lax oversight..."; and/or the personal knowledge of the recurring events of toxic contamination and/or carbon monoxide poisoning taking place at GCCF which came about through a direct alert from NMCD and/or State Officials responding to a particularly serious event of Carbon Monoxide Poisoning at GCCF.

928) Despite this knowledge, Defendants S. MARTINEZ and RICHARDSON, respectively, did not act to enforce their responsibilities to New Mexico's inmate population or public at-large, and did not meaningfully engage any other type of corrective action against subordinate Defendant STATE OFFICIALS and/or employees or agents, Defendant GEO, Defendant CORIZON, or Defendant CENTURION.

929) Defendants S. MARTINEZ and RICHARDSON, respectively, through their appointments, employees, and agents, and STATE Defendants S. MARTINEZ, RICHARDSON, BALDERAS, KING, NM DOH and DOE(s) #2, NM HSD and DOE(s) #3, JABLONSKI, MARCANTEL, WILLIAMS, ROARK, LeMASTER, PHILLIPS, MADRID, A. MARTINEZ, SELVAGE, Y. RIVERA, G. CHAVEZ, BREWSTER, DOE(s) #1, and DOES #4 intentionally, willfully, recklessly, and/or negligently did not use the ordinary care of a reasonably prudent entity in hiring, credentialing, training, supervising, and/or staffing by committing acts and omissions including the following:

a. Choosing not to ensure that New Mexico prison inmates housed at GCCF were provided safe and humane conditions of confinement;

b. Choosing not to enforce the State's contract with GEO to ensure that the for-profit prison company provided, and maintained, a facility that was inherently safe and reasonably free from harm;

c. Choosing not to require the Guadalupe County Correctional Facility's private owners, DOES #7 and/or the COUNTY OF GUADALUPE, to address and/or cure the structure's inherently defective design and/or construction (so as to protect the inmates confined thereat);

d. Choosing not to enforce the State's contract with CORIZON to ensure that the for-profit prison healthcare services company provided adequate medical care and treatment(s) to New Mexico prisoners victimized by exposure to carbon monoxide in accordance with the standard or community level of care typically afforded to the public at-large;

e. Choosing not to enforce the State's contract with CENTURION to ensure that the for-profit prison healthcare services company provided adequate medical care and treatment(s) to New Mexico prisoners victimized by exposure to carbon monoxide in accordance with the standard or community level of care typically afforded to the public at-large;

f. Choosing not to conduct adequate training of supervisors or staff regarding proper enforcement of the terms of the State's contracts with respective contractors;

g. Choosing not to enforce the terms of the State's contracts upon respective contractors;

h. Choosing not to adequately supervise appointed State Officials and/or subordinate staff;

i. Choosing not to have or enforce safety policies related to inmate protection(s) and prevention of unnecessary harm, or conduct adequate training and supervision related to inmate safety and protection of prisoners from harm and/or known threats of harm;

j. Choosing not to have or enforce safety requirements or policies related to (building) mainte-
nance and/or the prevention of toxic contamination of inmates' sleeping quarters and/or living
environments and/or (mass) poisonings through exposure to carbon monoxide, or conduct adequate
training and supervision related to (building) maintenance and/or the prevention of toxic contam-
ination of inmates' sleeping quarters and/or living environments and/or (mass) poisonings through
exposure to the noxious fumes of carbon monoxide;

k. Choosing not to have or enforce safety requirements or policies strictly regarding Carbon Mon-
oxide Poisoning, or conduct adequate training and supervision related to carbon monoxide
and its effects;

l. Choosing not to post warning signs or notices related to GCCF's problematic history of recurring
events of toxic contamination/poisoning, or conduct adequate training and supervision related to
the posting of notices regarding the presence of a known threat and risk of harm, injury, or death;

m. Choosing not to investigate or adequately investigate the underlying or root cause(s) of the
recurring events of carbon monoxide exposure/poisoning at GCCF;

n. Choosing not to address and/or cure the underlying cause(s) of GCCF's recurring events of toxic
contamination/poisoning, or cause the issue to be addressed and/or cured;

o. Choosing to hire and/or retain staff with a history of insubordination and/or incompetence, or
abusive and/or oppressive conduct;

p. Choosing not to train management and employees to properly process, investigate and resolve
Inmate Grievances and/or Grievance Appeals;

q. Choosing not to train management and employees to properly investigate and address issues
and/or allegations of employee or agent insubordination, abuse of authority, and/or abusive
or oppressive conduct;

r. Choosing not to have or enforce adequate policies related to reporting, investigation, and
resolution of issues and/or allegations of employee/agent insubordination, abuse(s) of authority,
and/or abusive practices and/or oppressive conduct;

s. Choosing not to take adequate steps to ensure the safe operation and maintenance of prison
facilities in New Mexico, for the safety of th State's inmate population; and/or

t. Choosing not to require subordinate State Officials, staff, employees, and/or agents to
perform the actual duties of their Office, offices, post(s), and/or position(s).

930) As a direct and proximate result of the intentional, willful, reckless, or grossly negligent acts
and omissions of STATE Defendants S. MARTINEZ and the GOVERNOR'S OFFICE, RICHARDSON,
BALDERAS and the A.G.'s OFFICE, KING, NM DOH and DOE(s) #2, NM HSD and
DOE(s) #3, NMCD, JABLONSKI, MARCANTEL, WILLIAMS, ROARK, Le MASTER,
PHILLIPS, MADRID, A. MARTINEZ, SELVAGE, Y. RIVERA, G. CHAVEZ, BREWSTER,
DOE(s) #1, and DOE(s) #4, and their employees and agents, Plaintiff Amaro suffered physical
and emotional damages, including physical injury, physical pain and suffering, invasion of bodily
integrity, risk of future potentially fatal health problems, denial of competent medical care and expo-
sure to inadequate/unsafe medical treatment which puts him at a worsened degree of risk of

-126-

future potentially fatal health problems than he would have been had he been provided due and proper treatment(s) and/or remedies, and severe psychological and emotional distress, and is also now at-risk of foreseeable harm and damages associated with exposure(s) to carbon monoxide and/or Carbon Monoxide Poisoning, and future - unprevented - incidents of toxic contamination and/or poisoning.

931) Pursuant to NMTCA, the above-cited Claim-related STATE Defendants are each responsible for their own acts and omissions as well as the acts and omissions of their employees and agents pursuant to direct, joint, concurrent, vicarious, and/or successive liability, and under the doctrines of "Special Relationship Liability," "Supervisory Personal Liability, "agency, and respondeat superior.

932) CLAIM <u>XXV</u>: Failing To Protect From Foreseeable, Preventable, And Unnecessary Harm, Injury, Or Death Posed By The Continuing Conditions Of Confinement At GCCF, Going Into The Future

933) All STATE Defendants, GEO and GEO Defendants, CORIZON and CORIZON Defendants, CENTURION and CENTURION Defendants, and Defendant OWNER(S), DOES #7 and/or the COUNTY OF GUADALUPE, in failing to proactively avert or prevent future events of toxic contamination and/or poisoning at GCCF by addressing and/or curing or causing the addressing and/or curing of the potentially fatal underlying conditions of confinement at GCCF, are individually and collectively perpetuating the unsafe conditions of confinement at GCCF and are uncontrovertedly allowing the unreasonable risk of harm to continue unabated and thereby demonstrate a profound refusal to protect the inmate population at GCCF from a known threat of serious harm, injury, or death that is foreseeable, preventable and unnecessary, in direct violation of the 5th, 8th, and 14th Amendments' requirements and/or protections.

934) CLAIM <u>XXVI</u>: Failing To Protect From Any Future Potentially Fatal Harm(s) And/Or Damages Associated With Carbon Monoxide, Cumulative Exposures To Carbon Monoxide, And/Or (Acute) Carbon Monoxide Poisoning.

935) All STATE Defendants, GEO and GEO Defendants, CENTURION and CENTURION Defendants, and Defendant OWNER(S), DOES#7 and/or the COUNTY OF GUADALUPE, in failing to ensure the safety of GCCF's inmate population by proactively seeking addressment and/or cure of the facility's dangerous underlying conditions of confinement and proceeding to not issue and/or administer proper treatment(s) and/or remedies to lessen the harmful effect(s) of carbon monoxide once it enters the body, through absorption and/or filtration, are thereby individually and collectively failing to protect GCCF's inmate population from any future potentially fatal harm(s) and/or damages associated with carbon monoxide, cumulative exposures to carbon monoxide, and/or (acute) Carbon Monoxide Poisoning in direct contravention of the 5th, 8th, and/or 14th Amendments' requirements and/or protections.

936) CLAIM **XXVII**: Negligent Operation Of A Correctional Facility.

937) STATE Defendants, GEO and GEO Defendants, CENTURION and CENTURION Defendants, and Defendant OWNER(S), DOES #7 and/or the COUNTY OF GUADALUPE, in operating or allowing the operation of GCCF as a for-profit prison while it poses a continuing risk of serious harm, injury, or death from a known source in a particular manner constitutes negligent operation of a correctional facility with deliberate and intentional conduct that demonstrates a gross and reckless disregard for life and for Plaintiff Amaro's interests, health, safety, and/or general well-being in direct violation of the $5^{th}, 8^{th}$, and/or 14th Amendments.

938) CLAIM **XXVIII**: Wrongful Subjection To Foreseeable, Preventable, and Unnecessary Harm.

939) The failure of Defendant OWNER(S), STATE Defendants, GEO and GEO Defendants, to protect Plaintiff Amaro from the known risk of harm resulted in the wrongful infliction of harm stemming from the (prolonged) exposure of Plaintiff Amaro's person to the toxic fumes of carbon monoxide taking place on February 6, 2014, with additional exposures to the fumes of the noxious gas(es) on:
    a. October 18-23, 2016;
    b. February 4, 2018; and,
    c. March 27, 2018.

940) While suffering from (acute) Carbon Monoxide Poisoning on February 6, 2014, Defendant CORIZON's Medical Staff at GCCF provided limited medical attention but failed to issue or administer even simple remedies known to aid the body in its recuperation from Carbon Monoxide Poisoning through absorption and/or filtration, such as a high-fiber diet and distilled water.

941) In the subsequent exposures Plaintiff received no medical attention for his symptoms, due mainly to the fact that he is no longer in the Pod most drastically affected, but in a Pod that experiences exposure to carbon monoxide with a decreased ratio, with CENTURION's Medical Staff at GCCF focusing their attention on the inmate population housed in H2-B Pod.

942) The failure of CORIZON and CORIZON Defendants to provide Plaintiff with the proper medical care and testing typically afforded to victims of Carbon Monoxide Poisoning precluded Plaintiff Amaro from receiving appropriate treatment and/or remedies coupled with the failure to issue and/or administer even the simple, easy-to-get remedies caused his body to store a larger quantity of the deadly fumes which, in turn, gave the toxic fumes a prolonged opportunity to attach themselves to molecules in the blood and/or blood-stream thereby wrongfully subjecting Plaintiff to a level of risk of future harm that is higher than it would have been had Defendant CORIZON provided the proper medical care or even issued/administered the aforementioned easy-to-get, 'simple' remedies, amounting to a direct violation of Plaintiff Amaro's $5^{th}, 8^{th}$, and 14th Amendment Rights of protection from the infliction of foreseeable, preventable, and unnecessary harm.

943) The failure of CENTURION and CENTURION Defendants to provide Plaintiff with protection from the exposures to carbon monoxide and subsequent failure to provide proper remedies meant

-728-

to absorb and/or filter the fumes from the blood and/or blood stream results in inhalation of the fumes with a prolonged opportunity to attach themselves to molecules in the blood and/or blood stream, thereby subjecting Plaintiff to an increase in level or degree of risk of future potentially fatal health problems with each incident of toxic contamination/poisoning, and amounting to a direct violation of Plaintiff's 5th, 8th, and 14th Amendments' Rights.

944) CLAIM XXIX : Negligent Operation Of A Medical Facility

945) CORIZON and CORIZON Defendants were deliberately indifferent to Plaintiff Amaro's serious medical needs and recklessly negligent in the following ways:

  a. Choosing not to intervene with the hazardous conditions of confinement or act so as to protect the inmate population at GCCF from the dangers of carbon monoxide;

  b. Choosing not to provide the standard or community level of medical care to Plaintiff Amaro on February 16, 2014, as he suffered from (acute) Carbon Monoxide Poisoning at GCCF;

  c. Choosing not to immediately transfer or refer Plaintiff to be transferred to a medical facility capable of providing the proper level of care, testing, treatment(s) remedies, and/or observation typically afforded to victims of Carbon Monoxide Poisoning;

  d. Choosing not to refer Plaintiff Amaro to a physician who could professionally and effectively evaluate the degree of carbon monoxide saturation (poisoning) and extent of Plaintiff Amaro's immediate injuries as well as degree of risk for future harm associated with carbon monoxide and/or Plaintiff's level of Carbon Monoxide Poisoning;

  e. Choosing not to perform or cause to be performed any of the common medical tests typically considered standard treatment/tests in cases of Carbon Monoxide Poisoning, such as analyses of blood, urine, hair, and/or fatty tissue for chemical content; and/or,

  f. Choosing not to employ, exercise, or engage its oversight power(s) and authority over GEO to ensure the safety of the inmate population at GCCF.

946) Such conduct, coupled with CORIZON's history of negligent care, Civil Rights violations, and sexual abuse of prisoners in New Mexico, as well as NMCD's in-depth investigation into CORIZON, which revealed "deep problems with inmate care provided by the company," incontrovertibly establishes and/or supports Defendant CORIZON's negligent operation of the Medical Facility at GCCF, in direct violation of the 5th, 8th, and 14th Amendments' requirements and/or protections.

947) CENTURION and CENTURION Defendants are deliberately indifferent to the serious medical needs of GCCF's inmate population and is recklessly negligent in the following ways:

  a. Choosing not to provide the standard or community level of medical care to GCCF inmates during recent toxic contaminations and/or incidents of exposure to carbon monoxide;

  b. Choosing to utilize persons with histories of negligent conduct, who have been named as "Defendants" in previous violations and/or deprivation of Civil Rights lawsuits;

  c. Choosing to maintain the status quo of medical care - or lack thereof - set in place by CORIZON and/or CORIZON staff; and/or

  d. Choosing not to employ, exercise, or engage its (medical) oversight authority and/or power(s)

over GEO to ensure the safety of the inmate population at GCCF.

948) Such conduct is intentional, willful, and reckless, and incontrovertibly establishes and/or supports Defendant CENTURION's negligent operation of the Medical Facility at GCCF, in direct violation of the 5th, 8th, and 14th Amendments' Rights, requirements, and/or protections.

949) CLAIM XXX: Negligence And Negligence Per Se.

950) Defendant OWNER(S), DOES #7 and/or the COUNTY OF GUADALUPE, intending confinement of a portion of New Mexico's inmate population at their privately owned prison facility, owed Plaintiff a duty to provide a prison structure that was humane and reasonably safe and free from harm and/or inherently hazardous structural defects.

951) The State of New Mexico and its entities, and STATE Defendants owed a duty to Plaintiff Amaro to use ordinary care in acting to confine his person under color of law.

952) Defendant GEO owed a duty to Plaintiff Amaro to use ordinary care in operating and managing GCCF as a for-profit prison.

953) Defendant CORIZON owed a duty to Plaintiff Amaro to use ordinary care in providing medical services to his person at GCCF.

954) Defendant CENTURION owed a duty to Plaintiff Amaro to use ordinary care in providing medical services to his person at GCCF.

955) By choosing not to use ordinary care to prevent foreseeable harm to Plaintiff Amaro, STATE Defendants, GEO and GEO Defendants, CORIZON and CORIZON Defendants, CENTURION and CENTURION Defendants, and Defendant OWNER(S), DOES #7 and/or the COUNTY OF GUADALUPE, acted willfully, recklessly, wantonly, negligently and/or were negligent per se, breaching the duty they owed to Plaintiff in multiple ways including but not limited to the following:

    a. Choosing to continue utilizing the Guadalupe County Correctional Facility as a place of confinement despite the structure's unchanged and inherently dangerous conditions of confinement;

    b. Choosing not to protect Plaintiff Amaro from a known risk of serious harm, injury, or death;

    c. Choosing not to warn Plaintiff Amaro about the known risk of harm;

    d. Choosing to subject Plaintiff Amaro to the known risk of harm, resulting in the infliction of injuries to his person;

    e. Choosing not to provide Plaintiff Amaro with the proper medical care for treatment of toxic poisoning and/or (acute) Carbon Monoxide poisoning;

    f. Choosing to allow the known risk of harm to continue unabated;

    g. Choosing to deny administrative relief or remedy to Plaintiff Amaro;

    h. Choosing to inflict emotional distress on Plaintiff Amaro through their extreme and deliberately indifferent conduct towards Plaintiff Amaro, the unsafe conditions of confinement at GCCF, and the gravity of the situation as a whole;

    i. Choosing to hire and promote individuals who are either not sufficiently qualified for their respective position(s) or who have a history of insubordination, or who have a history of negligent conduct or action(s);

j. Choosing not to perform background checks, or performing inadequate background checks, and making inadequate efforts to contact prior employers before hiring new staff members; and/or,

k. Choosing not to conduct training, or to conduct adequate training on inmates' Rights to be free from harm, abuse, and known threats of harm; inmates' right to due process; inmates' right to adequate medical care and appropriate healthcare services; and, inmates' right to humane conditions of confinement which are reasonably safe and do not pose an unnecessary risk of injury.

956) Plaintiff Amaro is an individual sought to be protected by the Rights, requirements, and prohibitions of the 5th, 8th, and 14th Amendments, and the injuries suffered are the type intended to be prevented by the aforementioned Amendments and their Rights, requirements, and prohibitions.

957) CLAIM XXXI: Breach Of Contract Claim By Plaintiff Amaro.

958) The for-profit contracts under which The GEO Group; CORIZON, LLC and CORIZON HEALTH; and "CENTURION" and CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC performed services at the Guadalupe County Correctional Facility compelled them to execute their duties thereunder professionally, competently, safely, and reasonably and in full compliance with applicable Federal and State standards and Constitutional requirements.

959) These contracts required GEO, CORIZON, and CENTURION to take all steps reasonably necessary to protect the safety and security of the inmate population at GCCF, and to prevent reasonably foreseeable harm to the inmates, including harm from the prison's inherently defective design and/or construction and negligent or shoddy maintenance and/or repair of the facility and/or its grounds, as well as future harm from toxic poisoning and/or inadequate healthcare services or improper medical medical care/treatment(s).

960) Defendants GEO, CORIZON, and CENTURION breached those duties through their decisions not to adequately evaluate, qualify, train, monitor, supervise, discipline, and enforce policies in order to prevent foreseeable harm to the inmate population at GCCF.

961) Plaintiff Amaro was an intended third-party beneficiary to the contracts under which GEO, CORIZON, and CENTURION performed their services.

962) Defendants GEO, CORIZON, and CENTURION's breach(es) of their service contracts proximately caused Plaintiff Amaro's damages, including physical injury, physical pain and suffering, invasion of bodily integrity, denial of competent medical care and exposure to inadequate/unsafe medical treatment; risk of future harm from potentially fatal health problems related to exposure to carbon monoxide, cumulative exposures to carbon monoxide, and/or (acute) Carbon Monoxide Poisoning - at an elevated level of risk due to inadequate medical care/treatment, and severe psychological and emotional distress.

963) Defendants GEO and CENTURION's ongoing breach of their service contracts and duty(-ies) owed acts to perpetuate the continuing risk of foreseeable harm, injury, or death from the Guadalupe County Correctional Facility's inherently unsafe conditions of confinement.

964) CLAIM XXXII: Negligent Management And Administrative Inadequacy.

965) The respective organizations of STATE Defendants, GEO, CORIZON, and CENTURION are each operated by the named Defendants through a support staff of Unknown, Unidentified, and/or Unnamed management and administrative staff who, through their administrative ineffectiveness or inadequacies and/or grossly negligent management has caused and/or contributed to Plaintiff Amaro's injuries and damages and causes or contributes to the looming threat of harm from GCCF's unsafe conditions of confinement.

966) Pursuant to NMTCA, STATE Defendants, GEO, CORIZON, and CENTURION are each responsible for their own acts and omissions as well as the acts and omissions of their employees and agents — including the grossly negligent management and/or administrative inadequacy of their respective support staff and its members pursuant to the doctrines of agency and respondent superior.

967) CLAIM XXXIII: Malfeasance, Misfeasance, And/Or Nonfeasance Of Office.

968) The total omission(s) or failure(s) of State officials to perform the distinct duties of their respective capacities in breach of a duty of public concern — or improperly performing the duties of office in a wrongful or injurious manner — establishes the misfeasance and/or nonfeasance of STATE Defendants S. MARTINEZ, RICHARDSON, BALDERAS, KING, JABLONSKI, MARCANTEL, and WILLIAMS in the following ways:

a. Choosing not to duly ensure the safety of New Mexico's inmate population at GCCF, including Plaintiff Amaro, in violation of the 5th, 8th, and 14th Amendments;

b. Choosing not to duly protect the portion of New Mexico's inmate population confined at GCCF from harm that was known, knowable, foreseeable, and preventable, in violation of the 5th, 8th, and 14th Amendments;

c. Intentionally choosing to subject New Mexico inmates to wrongful endangerment and the ensuing infliction of unnecessary harm, in violation of the 5th, 8th, and 14th Amendments;

d. Choosing not to provide New Mexico inmates with any meaningful avenue of administrative redress and/or relief, in violation of the 5th, 8th, and 14th Amendments;

e. Choosing not to provide New Mexico inmates with adequate healthcare services and/or appropriate medical care/treatment, in violation of the 5th, 8th, and 14th Amendments;

f. Choosing to engage in or maintain contracts with for-profit companies who have a history of failing to adequately perform the governmental function(s) for which they were enjoined to perform;

g. Choosing to engage or maintain contracts with for-profit companies who have a history of violating inmates' Civil Rights, especially where the Rights violations are habitually practiced or practiced with impunity;

h. Choosing to effectively endorse or condone a contractor's noncompliance and/or substandard performance by failing to enforce the terms of the contract;

i. Choosing to allow for-profit contractors to continue 'bilking' the State of millions of dollars in taxpayer-money while continuing operate in clear breach of respective contractual obligations and/or duties;

j. Choosing to ignore contractual infractions and effectively condone or endorse a contractor's violation of innates' Civil Rights and infliction of unnecessary harm upon New Mexico's inmate population by failing to require Contractual compliance and fulfillment of duties as per the terms of the respective contract (while simultaneously contributing to the respective contractor's profits; and/or,

k. Choosing to heedlessly ignore serious warnings from numerous sources concerning the unsafe conditions of confinement at GCCF as well as - at least - CORIZON's abject failure to meet its contractual obligations thereby intentionally putting the health, safety, and well-being of New Mexico's inmate population wrongfully in harm's way.

969) The deliberate decision(s) of Defendant STATE OFFICIALS S. MARTINEZ, BALDERAS, and JABLONSKI in allowing Defendants GEO and CENTURION to continue defrauding the State of New Mexico of taxpayer funds while operating in obvious breach of their respective contracts by failing to abide by the terms of their respective contracts and/or inadequately performing the services they were contractually engaged to render or provide amounts to both malfeasance of office and misconduct in office.

970) The deliberate contemplated conduct of STATE Defendants S. MARTINEZ, RICHARDSON, KING, JABLONSKI, MARCANTEL, and WILLIAMS demonstrates the individual and collective depravity of these persons in regards to the private and social duties each respective Defendant owed to the State of New Mexico, New Mexico's society at-large, and also to New Mexico's inmate population.

971) As a direct and proximate result of the intentional, willful, reckless, or grossly negligent acts and omissions of STATE Defendants S. MARTINEZ, RICHARDSON, KING, JABLONSKI, MARCANTEL, and WILLIAMS, coupled with their individual and collective misfeasance, nonfeasance, malfeasance, misconduct, and/or moral turpitude, Plaintiff Amaro suffered physical and emotional damages, including physical injury, physical pain and suffering, invasion of bodily integrity, risk of future potentially fatal health problems related to the toxic poisoning(s), denial of competent medical care and exposure to inadequate/safe medical treatment, and severe psychological and emotional distress, and also continues to be at-risk of foreseeable harm and damages associated with exposure(s) to carbon monoxide and/or Carbon Monoxide Poisoning and future- unprevented-incidents of toxic contamination/poisoning.

972) CLAIM <u>XXXIIII</u>: Abuse Of Authority Under Color Of Law.

973) Utilizing State authority to exercise custody and control over a portion of New Mexico's inmate population, Defendant Lt. K. RIVERA, by virtue of her position as GCCF's designated "Grievance Lieutenant," had specific power(s) and responsibility (-ies) delegated strictly to her person, which she was entrusted to apply and/or enforce.

974) In choosing not to fulfill her official responsibilities and choosing, instead, to insolently default on her duties by choosing not to complete NMCD's Grievance process, Lt. K. RIVERA deliberately and intentionally physically prevented, thwarted, or otherwise hindered Plaintiff Amaro's efforts to avail himself of an administrative remedy, thereby rendering remedy and/or relief unavailable and unnecessarily prolonging the relief process, unreasonably delaying vital relief from the continuing unsafe

conditions of confinement.

975) Defendant Lt. K. RIVERA's oppressive conduct constitutes an abuse of authority and/or discretion under color of law and perpetuates the continuation of GCCF's unsafe conditions of confinement, GEO's contractual noncompliance, lax inmate protections, violation of inmates' Civil Rights, and a culture that allows this pervasive abuse and unreasonable risk of serious harm, injury, or death to continue unabated, in violation of the 5th, 8th, and 14th Amendments.

976) CLAIM  XXXV : Deprivation Of Civil Rights Under 42 U.S.C. §1983 Under The 5th And 14th Amendments: Denial Of Right To Due Process In The Course Of Prison Grievance Proceedings.

977) Defendant Lt. K. RIVERA is a State actor employed by The GEO Group to perform a governmental function — as the Guadalupe County Correctional Facility's "Grievance Lieutenant" — pursuant to GEO's contract with NMCD, and at all times pertinent hereto was acting under color of State law.

978) Pursuant to Federal standards and/or Constitutional requirements, NMCD constructed, employed, and published an inmate Grievance policy which strictly enumerates the process and procedure(s) to be engaged by a prisoner and applied by the Grievance officer when a prisoner has or wishes to address a "Grievance" or complaint in an effort to formally resolve material issues: NMCD Policy 150500 "Inmate Grievances".

979) NMCD's "Grievance" Policy prescribes a particular set of steps that MUST be followed by both the inmate seeking relief and the officer conducting the Grievance proceeding(s).

980) Subsequent to the toxic contamination and Carbon Monoxide Poisoning incident taking place on February 6, 2014, Plaintiff Amaro, seeking relief and to be protected from the unsafe conditions of confinement, duly engaged the prison system's "Grievance" process as required by NMCD Policy by, first, filling out and submitting an "Informal Complaint", NMCD Form 150501.3.

981) Relief was summarily 'denied' and the matter was referred to the filing of a formal "Grievance" as there was no resolution to the issue.

982) Plaintiff filled-out and submitted a formal "Grievance", NMCD Form 150501.1, within 20-days of the February 6, 2014 event of toxic contamination and Carbon Monoxide Poisoning as required by NMCD Policy.

983) Contrary to statutory law and NMCD "Grievance" Policy/Procedure, Defendant Lt. K. RIVERA physically interfered with the governmental function of the Grievance program and it's process when she made the decision not to investigate, answer, or otherwise respond to the formal "Grievance" filed by Plaintiff.

984) The deliberate decision by Defendant Lt. K. RIVERA, ultimately, to forego the completion of the "Grievance" process in Plaintiff Amaro's case as duly prescribed by law, put Plaintiff Amaro at a continued risk of serious harm, injury, or death; resulted in Plaintiff's subjection to additional exposures to fumes of carbon monoxide and an elevated risk of future potentially fatal health problems associated with carbon monoxide, cumulative exposures to carbon monoxide, and/or (acute) Carbon Monoxide Poisoning; and, amounted to a clearly oppressive denial to Plaintiff Amaro of the procedural process he

was due as a ward of the State under terms of confinement.

985) Defendant K. RIVERA's deliberate denial to Plaintiff of the procedural process he was due as a ward of the State, under terms of confinement, clearly violates due process principles and inescapably amounts to the deprivation to Plaintiff Amaro of his Right to the process due, as duly prescribed by law.

986) As recently asserted by NMCD Contract Monitor Y. RIVERA, Defendant Lt. K. RIVERA's impudent conduct, regarding her decision(s) not to properly process inmate Grievances or complete NMCD Grievance Policy/Procedure as duly prescribed by law is "an ongoing issue" that has been practiced for an extended duration.

987) Defendant Lt. K. RIVERA acted purposefully, maliciously, and with reckless indifference to - and disregard for - Plaintiff Amaro's Constitutional Rights and his emotional and physical well-being when she decided to oppressively abuse the power of her authority under color of law by choosing not to complete the Grievance process in Plaintiff Amaro's attempt to avail himself of administrative remedy and/or relief in the manner duly prescribed by law.


988) At all times pertinent hereto, Defendant WARDENs HORTON, GAY, G. CHAVEZ, GARNAND, MORRIS, BRAVO, ULIBARRI, JOHNSON, and/or FOSTER were State actors who have been, respectively, employed by Defendant GEO since February 2014 to serve as "Warden(s)" at GCCF pursuant to a contract with the NMCD.

989) At all times pertinent hereto, Claim-related Defendant WARDENS were acting under color of State law.

990) Prison Wardens are policy makers and supervisors at the facilities they oversee, and are responsible for ensuring their facilities are administered properly, lawfully, safely, humanely, and in keeping with their contracts.

991) Prison Wardens have the ability to control the conduct of their staff and are responsible for ensuring the facilities they operate are safe and free from abuse, including abusive practices and oppressive conduct by prison personnel.

992) Prison Wardens are responsible for ensuring that personnel hired and retained are properly trained and supervised, and do not pose a danger to inmates housed under their care.

993) Prison Wardens are responsible for ensuring that their facilities have and enforce adequate policies and disciplinary measures to keep the facility running safely.

994) Upon information and belief, Defendants HORTON, GAY, G. CHAVEZ, GARNAND, MORRIS, BRAVO, ULIBARRI, JOHNSON, and/or FOSTER knew that Defendant Lt. K. RIVERA was continually and/or habitually choosing to take improper advantage of her great authority under color of law by deliberately deciding not to process inmate Grievances and/or complete NMCD Grievance Policy as prescribed, thereby denying to prisoners the procedural process they were due yet did not meaningfully act to stop it by adopting or enforcing appropriate policies, training, discipline, or investigation procedures.

995) Instead, Defendant Wardens HORTON GAY, G. CHAVEZ, GARNAND, MORRIS, BRAVO, ULIBARRI, JOHNSON, and FOSTER perpetuated lax inmate protections and Defendant

Lt. K. RIVERA's violation of inmates' Civil Rights, abusive practices, and oppressive conduct, and a culture that allowed this pervasive abuse to continue.

996) At all times pertinent hereto, Defendant A. CAMPOS was a State actor employed by Defendant GEO to serve as Defendant GEO's "A.C.A. Compliance Administrator" at GCCF.

997) At all times pertinent hereto, Defendant A. CAMPOS was acting under color of State law.

998) Upon information and belief, the function of Defendant GEO's "A.C.A. Compliance Administrator" is, essentially, to ensure the management of GEO's affairs at GCCF in compliance with the standards and requirements set forth by the American Correctional Association.

999) Upon information and belief, administratrix Defendant A. CAMPOS had clear knowledge of Defendant Lt. K. RIVERA's insubordination and abusive practices yet did not meaningfully act to stop the oppressive conduct by adopting or enforcing appropriate policies, training, discipline, or investigation procedures, on behalf of her employer - The GEO Group.

1000) Instead, Defendant A. CAMPOS purposefully neglected her managerial responsibilities and intentionally disregarded her administrative function as Defendant GEO's "A.C.A. Compliance Administrator", thereby perpetuating GCCF's lax inmate protections and Def. Lt. K. RIVERA's violation of inmates' Civil Rights, abusive practices, and oppressive conduct, and a culture that allowed this pervasive abuse to continue.

1001) At all times pertinent hereto, Defendants Y. RIVERA and G. CHAVEZ were respectively employed by NMCD as "Contract Monitor" stationed at GCCF.

1002) At all times pertinent hereto, Defendants Y. RIVERA and G. CHAVEZ were acting under color of State law.

1003) Upon information and belief, the function of an "NMCD Contract Monitor" is to ensure a contractor's compliance with the terms of a respective contract.

1004) Upon information and belief, Defendant Y. RIVERA and Defendant G. CHAVEZ both had clear knowledge of Defendant K. RIVERA's insubordination and abusive practices yet did meaningfully act to stop the oppressive conduct by adopting or enforcing appropriate policies, training, discipline, or investigation procedures.

1005) Instead, Defendants Y. RIVERA and G. CHAVEZ purposefully neglected their respective responsibilities and/or intentionally disregarded their respective administrative functions as "NMCD Contract Monitors" and thereby perpetuated lax inmate protections and Defendant Lt. K. RIVERA's violation of inmates' Civil Rights, abusive practices, oppressive conduct, and a culture that allowed this pervasive abuse to continue.

1006) Despite their individual and collective awareness of Defendant Lt. K. RIVERA's insubordination, abusive practices, and/or oppressive conduct, Defendant Wardens HORTON, GAY, G. CHAVEZ, GARNAND, MORRIS, BRAVO, ULIBARRI, JOHNSON, and FOSTER, GEO's "A.C.A. Compliance Administrator", Defendant A. CAMPOS, and STATE Defendants Y. RIVERA and G. CHAVEZ, as "NMCD Contract Monitors"

maintained the status quo and demonstrated a policy and custom of failing to adequately evaluate, train, monitor, administer, supervise, discipline, enforce policies, enforce contractual terms, and/or otherwise control their agents and/or employees.

1007) The duration over which Defendant Lt. K. RIVERA has been allowed to practice her oppressive conduct - extending over a period of years - as well as the awareness of this abuse of authority under color of law by prison personnel including Wardens, Deputy Wardens, Associate Wardens, A.C.A. Compliance Administrators, and/or NMCD Contract Monitors shows a permanent and well-settled practice of choosing not to afford the inmate population at GCCF their Civil Rights or protect them from known, foreseeable, preventable, and/or unnecessary harm, in violation of the 5th, 8th, and 14th Amendments.

1008) Defendant GEO's policy-makers and A.C.A. Standards/Contract(s) 'enforcer', and NMCD's contract 'enforcers' were each deliberately indifferent to Lt. K. RIVERA's insolent insubordination, abusive practices, and oppressive conduct and the obvious result of depriving inmates, such as Plaintiff Amaro, of their Civil Rights.

1009) CLAIM XXXVI. Deprivation Of Civil Rights Under 42 U.S.C. §1983 Under The 8th And 14th Amendments.

1010) STATE Defendants S. MARTINEZ and the GOVERNOR'S OFFICE, RICHARDSON, BALDERAS and the A.G.'s OFFICE, KING, NMCD, JABLONSKI, MARCANTEL, WILLIAMS, BREWSTER, ROARK, LeMASTER, PHILLIPS, MADRID, A. MARTINEZ, SELVAGE, Y. RIVERA, G. CHAVEZ, DOH, HSD, and DOE(s)1-4;    Defendant GEO, GEO's Controlling Board, and GEO Defendants A. CAMPOS, HORTON, GAY, G. CHAVEZ, GARNAND, MORRIS, BRAVO, ULIBARRI, JOHNSON, HATCH, FOSTER, BEAIRD, Maj. P. ARAGON, G. MORRIS, "RESNICK", JOHNSON, CASTILLO, S. CHAVEZ, "Mr." CHAVEZ, TENORIO, GERHARDT, SWAGGART, GARCIA, BRANCH, EVERHART, Lt. K. RIVERA, RODGERS/VIGIL, G. CHAVEZ, and ROMERO;    Defendant CORIZON, CORIZON's Controlling Board, and CORIZON Defendants DOE(s)#5, STABER, ARMIJO, TRAPP, and ALLEN; and,    Defendant CENTURION, CENTURION's Controlling Board, and CENTURION Defendants DOE(s)#6, RIVERS, YOUNG, ARMIJO, and ALLEN were State actors/agents who at all times pertinent hereto were acting under color of State law.

1011) STATE Defendants S. MARTINEZ and the GOVERNOR'S OFFICE, RICHARDSON, BALDERAS and the A.G.'s OFFICE, KING, NMCD, JABLONSKI, MARCANTEL, WILLIAMS, BREWSTER, ROARK, LeMASTER, PHILLIPS, MADRID, A. MARTINEZ, SELVAGE, Y. RIVERA, and G. CHAVEZ;    GEO Defendants A. CAMPOS, HORTON, GAY, G. CHAVEZ, GARNAND, MORRIS, BRAVO, ULIBARRI, JOHNSON, HATCH, FOSTER, BEAIRD, Maj. P. ARAGON, G. MORRIS, "RESNICK"; J. JOHNSON, CASTILLO, S. CHAVEZ, TENORIO, GERHARDT, SWAGGART, GARCIA, BRANCH, EVERHART, Lt. K. RIVERA, RODGERS/VIGIL, G. CHAVEZ, and ROMERO; CORIZON Defendants STABER, ARMIJO, TRAPP, and ALLEN; and,    CENTURION Defendants RIVERS, YOUNG, ARMIJO, and ALLEN had an affirmative duty to ensure the safety of all persons under their direct care, custody, and control, including the person of Pedro J. Amaro.

1012) The above-cited Claim-related Defendants' policy and practice of inadequate training and supervision and of turning a blind eye to ongoing issues of:

a. unsafe conditions of confinement;

b. subjection of inmates to wrongful endangerment and an unreasonable, unnecessary, and preventable risk of serious harm, injury, or death from a known source;

c. subjection of inmates to an unnecessary and preventable infliction of harm from toxic poisoning;

d. substandard or improper medical care and/or healthcare services;

e. exposure to inadequate/unsafe medical treatment;

f. abusive practices; and/or,

g. oppressive conduct,

violated the Constitutional Right of Plaintiff Amaro to be free from cruel and unusual punishment(s), and to be protected in his bodily integrity and personal security.

1013) All Claim-related Defendants were plainly aware of conditions at the Guadalupe County Correctional Facility that created a substantial risk that inmates would suffer serious harm—namely from toxic poisoning combined with inadequate medical treatment for the toxic poisoning—but chose not to take appropriate steps to protect inmates from such harm or the dangerous underlying conditions of confinement, disregarding the serious risk of harm to the inmate population under their care.

1014) Defendants JABLONSKI, MARCANTEL, BREWSTER, ROARK, LeMASTER, PHILLIPS, MADRID, Y. RIVERA, and G. CHAVEZ, and GEO Defendants A. CAMPOS, HORTON, GAY, G. CHAVEZ, GARNAND, MORRIS, BRAVO, ULIBARRI, JOHNSON, FOSTER, Maj. P. ARAGON, and ROMERO were further aware that an oppressive abuse of authority was occurring by Defendant Lt. K. RIVERA, but chose not to put an end to the abusive practices, oppressive conduct, or resulting deprivation of the process due and the resulting perpetuation of the abusive practices and unsafe conditions of confinement.

1015) Despite the awareness of these issues, Claim-related Defendants had a policy and custom of failing to adequately evaluate, train, monitor, supervise, discipline, enforce policies and otherwise control their agents and employees.

1016) All Claim-related Defendants further had respective policies and customs of inadequate training and failing to adequately investigate and address inmate complaints.

1017) Claim-related STATE Defendants also had a policy and custom of permitting healthcare providers to continue 'treating' New Mexico prisoners at GCCF, essentially, unregulated and unmonitored despite a history of neglect, violation of inmates' Civil Rights, and abuse, where Defendant CENTURION retained CORIZON's problematic staff members and personnel upon obtaining the healthcare services provider contract with NMCD thereby replacing Defendant CORIZON (substantially, in name only).

1018) The number of inmates who have been victimized by either exposure to toxic poisoning of carbon monoxide or Defendant Lt. K. RIVERA's insolent insubordination, abusive practices, and oppressive conduct, both at the Guadalupe County Correctional Facility, over a period of years – as

well as the awareness of the issues by prison personnel including nurses, mental health officers, and correctional officers – shows a permanent and well-settled practice of choosing not to protect inmates from unnecessary harm stemming from preventable cases of exposure to carbon monoxide and the related toxic poisoning.

1019) Defendants GEO, CORIZON, and CENTURION's policy makers were deliberately indifferent to conditions at the Guadalupe County Correctional Facility that permitted the infliction of harm upon the inmate population at GCCF, and their obvious consequence of depriving individuals like Plaintiff Amaro of their Civil Rights.

1020) STATE Defendants were deliberately indifferent to conditions at GCCF that permitted the infliction of harm upon the inmate population at the Guadalupe County Correctional Facility, and their obvious consequence of depriving individuals like Plaintiff Amaro of their Civil Rights.

1021) The deliberate indifference of All Claim-related Defendants further deprived Plaintiff Amaro of access to competent medical care while incarcerated.

1022) DEFENDANTS acted with a demonstrably gross and severe level of reckless disregard for Mr. Amaro Right to be free from harm and invasion of bodily integrity when under the control and protection of the Defendants, in violation of Plaintiff Amaro's due process rights.

1023) The DEFENDANTS' decisions not to adequately train and supervise and/or deliberate indifference to the inherently unsafe conditions of confinement and abusive practices at the Guadalupe County Correctional Facility that enabled Defendant Lt. K. RIVERA's impudent insubordination and oppressive conduct, and perpetuated the continuing risk of harm posed by GCCF's structural defects directly and proximately caused the Constitutional deprivation resulting in Plaintiff Amaro's damages, including physical injury, physical pain and suffering, invasion of bodily integrity, denial of competent medical care and exposure to inadequate/unsafe medical treatment, risk of future potentially fatal health problems stemming from the toxic poisoning(s) of carbon monoxide - at a higher level of risk than he would have been at had he been provided proper treatment and recommended remedies – and severe psychological and emotional distress.

1024) DEFENDANTS acted intentionally, maliciously, and with reckless indifference to Mr. Amaro's Constitutional Rights and his emotional and physical well-being when they wrongfully endangered him by permitting conditions that enabled the unsafe conditions of confinement to exist and continue without abatement.

1025) Plaintiff further restates paragraphs 556 and 557 under this Claim.

1026) CLAIM XXXVII : Deprivation Of Civil Rights Under 42 U.S.C. §1983 Under The
5th And 14th Amendments: Wrongful Infliction OF Punishment
Which Is Not Lawfully Prescribed Nor Constitutionally Sanctioned
In Violation OF Right To Due Process OF Law.

1027) Plaintiff restates the content and subject matter of paragraphs 558, 559, 560, 561, and 562, with the addition of the injuries inflicted consistent with this Cause.

[028] CLAIM XXXIII: Deprivation Of Civil Rights Under 42 U.S.C.§1983 Under The 8th And 14th Amendments: Wrongful Infliction Of Punishment Which Is Cruel And/Or Unusual.

[029] Plaintiff restates the content and subject-matter of paragraphs 563, 564, 565, and 566, with the addition of the injuries inflicted, consistent with this Cause.

[030] CLAIM XXXIX: Deprivation Of Civil Rights Under 42 U.S.C. §1983 Under the 5th, 8th, and 14th Amendments: Wrongful Infliction Of Punishment Which Is Cruel And/Or Unusual: Totality Of The Circumstances.

[031] The continued and continuing confinement of Plaintiff Amaro, under the totality of the circumstances and conditions of confinement and cumulative bases of tortious action, together with their respective points of risk of harm and infliction of psychological and emotional distress – on top of and in addition to the known threat and continuing risk of serious harm, injury, or death, infliction of actual physical injury, worry and fright over possible future potentially fatal health problems stemming from the toxic poisoning of carbon monoxide and Claims I – XXXVIII in their aggregate incontrovertibly and inescapably amounts to the wrongful infliction of punishment which is cruel and unusual by Defendant OWNER(S), DOES #7 and/or the COUNTY OF GUADALUPE; STATE Defendants S. MARTINEZ and the GOVERNOR'S OFFICE, BALDERAS and the A.G.'s OFFICE, NMCD, JABLONSKI, ROARK, LeMASTER, SELVAGE, Y. RIVERA, and DOE(s) 1 and 4; GEO, and GEO Defendants A. CAMPOS, HORTON, GAY, G. CHAVEZ, Maj. P. ARAGON, TENORIO, EVERHART, Lt. K. RIVERA, and ROMERO; and, CENTURION and CENTURION Defendants RIVERS, YOUNG, and ARMIJO.


JURY DEMAND

Plaintiff hereby demands a trial by jury on all counts.


PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests judgment as follows:

1. Injunctive Relief against the unsafe underlying conditions of confinement resulting in toxic contamination of the inmates' sleeping quarters and/or living environments, pending mechanical malfunctions of the prison's boiler(s)/flue(s).

2. Declaratory Relief against STATE Defendants S. MARTINEZ, BALDERAS, and JABLONSKI; The GEO Group; and Defendant OWNER(S), DOES #7 and/or the COUNTY OF GUADALUPE, seeking correction of the prison's inherently unsafe conditions of confinement.

3. Agency Commitment to staff training and discipline in regards to inmates' Civil Rights and acceptable conditions of confinement.

4. Reform of Conditions and attitudes endemic to the current correctional culture of indifference to inmate Rights, interests, health, safety, and/or well-being.

5. Legal Termination and/or Dissolution of State's contracts with The GEO Group, Inc., and/or "CENTURION" or CENTURION CORRECTIONAL HEALTHCARE OF NEW MEXICO, LLC.

6. Various Compensatory Damages.

7. Punitive Damages.

8. Hedonic Damages.

9. Court costs and related costs/fees

10. Judicial Discharge of current sentence for wrongful subjection to torturing conditions of confinement with life-long consequences in direct violation of the $8^{th}/14^{th}$ Amendments.

11. Any Other Damages or Relief(s) the Court deems applicable and/or appropriate.

Executed this 23rd day of September, 2018.

Duly Submitted By:

PEDRO J. "PETE" AMARO
STATE PRISONER #44726
GCCF
P.O. Box 520
SANTA ROSA, N. MEX. 88435

I, PEDRO J. AMARO, declare under penalty of perjury that I am the Plaintiff/Claimant in this action.

I have read the foregoing petition and know and understand its content, and the information contained herein is true and correct to the best of my knowledge, information, and belief.

In compliance with 28 U.S.C. Section 1746,

I, PEDRO J. AMARO, declare under penalty of perjury that I am mailing an original version of this document to the U.S. District Court, District of New Mexico, at 333 Lomas Blvd., N.W., Suite 270, Albuquerque, New Mexico 87102, by placing the document into a sealed envelope and submitting such into the prison's mailing system by depositing the parcel into the prison mailbox designated as being for "Legal Mail" on September 23, 2018, at approximately 4:00 PM, and that such is being sent by way of U.S.P.S. under first-class postage which has been prepaid.

Executed on September 23, 2018.

*Pedro J. Amaro*

STATE PRISONER #44726
GCCF
P.O. Box 520
SANTA ROSA, N. MEX. 88435

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

# PRIORITY
## ★ MAIL ★

DATE OF DELIVERY SPECIFIED*

USPS TRACKING™ INCLUDED*

INSURANCE INCLUDED*

PICKUP AVAILABLE

* Domestic only

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

**UNITED STATES POSTAL SERVICE®**

NEOPOST™

USPS TRACKING #

9488 8178 9820 3203 5742 57

Label 888-NP, Nov. 2014

EP14F July 2013
OD: 12.5 x 9.5

RECEIVED
SEP 26 2018
Albuquerque NM
CLERK

# PRIORITY
## ★ MAIL ★

**UNITED STATES POSTAL SERVICE®**

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM: Pedro Amparo #44724
PCCF
P.O. Box 520
Santa Rosa NM 88435

TO: United States District
Court - District of NM
333 Lomas Blvd. NW
Suite 270
Albuquerque NM 87102

Label 228, July 2013

FOR DOMESTIC AND INTERNATIONAL USE

# PRIORITY
## ★ MAIL ★

★★★ TRACKED ★★★
★★★ INSURED ★★★

**UNITED STATES POSTAL SERVICE®**

For Domestic and International Use

Label 107, May 2014

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE



**UNITED STATES POSTAL SERVICE®**

Hasler
09/25/2018
US POSTAGE $006.
ZIP 88
01D116